# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In Re:

DISPOSABLE CONTACT LENS
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

All Class Actions

Case No. 3:15-md-2626-HES-JRK

Judge Harvey E. Schlesinger
Mag. Judge James R. Klindt

## DEFENDANT COOPERVISION, INC.'S RESPONSE TO CLASS PLAINTIFFS' MOTION TO COMPEL COOPERVISION TO INCLUDE ADDITIONAL CUSTODIANS AND PROVIDE A HIT LIST

## ORAL ARGUMENT REQUESTED PER LOCAL RULE 3.01(j)

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     FACTS ....................................................................................................................4

        A.      CVI implemented a UPP on a very limited basis (on 3 out of 28 lines of
                contact lenses) and only on newly launched products ..............................4

        B.      CVI produced documents for 9 custodians in connection with an NYAG
                investigation, which has not resulted in any charges against, or interviews
                of, CVI ........................................................................................................4

        C.      Recognizing "the new dictates of Rule 26," the Court limited the scope of
                discovery in this litigation in its Order of July 25, 2016 .........................5

        D.      The parties reached an agreement as to all 70 search terms that CVI will
                use to produce documents in this litigation on August 10, 2016 ............5

        E.      Plaintiffs did not engage on CVI's proposal to reach a holistic agreement
                as to custodians ..........................................................................................6

        F.      CVI's capacity to respond to discovery requests is limited, and the cost of
                collecting, reviewing, and producing documents for the 18 custodians
                Plaintiffs seek to add would be burdensome for CVI ...............................7

        G.      CVI was not a party to, or otherwise involved in, *In re Disposable Contact
                Lens Antitrust Litig.,* MDL No. 1030 (M.D. Fla.) ...................................7

III.    PLAINTIFFS' REQUEST FOR 18 ADDITIONAL CUSTODIANS (FOR A
        TOTAL OF 30) IS NOT PROPORTIONAL.......................................................8

        A.      The 2015 revisions to Rule 26 narrowed the permissible scope of
                discovery .....................................................................................................8

        B.      Plaintiffs are incorrect about the costs and burden of adding new
                custodians; that burden would be significant for CVI ..............................9

        C.      Plaintiffs have not shown that there is an actual need to add the 7
                management custodians at issue .................................................................9

        D.      Plaintiffs have not shown that there is an actual need to add the 11
                regional sales managers at issue ...............................................................13

E.      The determination of how many custodians to include is a fact-specific
         one that must be made on a case-by-case basis ......................................................14

IV.    PLAINTIFFS' REQUEST FOR A SEARCH TERM HIT LIST IS MOOT ....................15

V.     CONCLUSION...............................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*Brown v. W. Corporation*,
    No. 8:11CV284, 2013 WL 4456556 (D. Neb. Aug. 16, 2013) ................................ 16

*Euromodas, Inc. v. Zanella, Ltd.*,
    368 F.3d 11 (1st Cir. 2004) ..................................................................... 15

*Gilead Sciences, Inc. v. Merck & Co.*,
    Case No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ...................... 9, 13

*Helmert v. Butterball, LLC*,
    No. 4:08CV00342 JLH, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ................................ 14

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984). ............................................................................ 15

*Procaps S.A. v. Patheon Inc.*,
    12-24356-CIV, 2014 WL 800468 (S.D. Fla. Feb. 28, 2014) ................................... 16

*Vasudevan Software, Inc. v. MicroStrategy Inc.*,
    11-cv-06637-RS-PSG, 2012 U.S. Dist. LEXIS 163654 (N.D. Cal. Nov. 15, 2012). ............... 16

*XTO Energy, Inc. v. ATD, LLC*,
    No. CIV 14-1021 JB/SCY, 2016 WL 1730171 (D.N.M. Apr. 1, 2016) ..................................... 3

*Yee v. Cliff Veissman, Inc.*,
    No. 14-CV-01531, 2016 WL 950948 (N.D. Ill. March 7, 2016) ................................ 9

### OTHER AUTHORITIES

6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.60 (3d ed. 1997)................................. 4

Chief Justice John Roberts, *2015 Year-End Report on the Federal Judiciary* (2015) ............... 2, 3

Federal Judicial Center, *Managing Electronic Discovery of Electronic Information: A Pocket Guide for Judges* 15 (2d ed. 2012) ........................................................... 13

Federal Judicial Center, *Manual for Complex Litigation, Fourth,* § 11.423 (4th ed. 2004)......... 10

Hon. Craig B. Shaffer, *The "Burdens" of Applying Proportionality*, The Sedona Conference Journal, Vol. 16, Fall 2015 ....................................................................... 13

### RULES

Fed. R. Civ. P. 26 ...................................................................................... 2, 4, 9

## I.     INTRODUCTION

Plaintiffs' motion seeks to compel CooperVision, Inc. ("CVI") to increase the number of custodial files searched by 150% (from 12 custodians to 30) and to produce a "hit list" even though CVI has already agreed on the 70 search terms that will be utilized to search for responsive electronic documents.  Plaintiffs' motion is predicated on unreliable assumptions, misapprehensions regarding the meet-and-confers between the parties, and a fundamental misunderstanding of the documents produced by CVI and the law.  Plaintiffs' motion is properly denied in its entirety.

First, Plaintiffs' argument that CVI provided only generalized objections and did not establish the incremental burden of adding 18 custodians to the 12 agreed custodians is incorrect.  CVI provided testimony regarding the cost of the NYAG review (over $700,000 for a review of documents from the files of 9 custodians).  Searching the files of an additional 18 custodians (especially when utilizing 70 search terms) can be expected to add over $1.5 million in incremental cost.

Second, Plaintiffs continue to rely on cases that predate the "proportionality" amendments to Rule 26 and, in any event, do not establish that adding an additional 18 custodians is in any way proportional.  Plaintiffs emphasize that defendant Johnson & Johnson Vision Care ("JJVC") agreed to search the files of 19 custodians and that CVI should therefore be compelled to search additional custodial files.  But that argument ignores the fact that CVI is differently situated than JJVC.  As Plaintiffs' Complaint alleges, JJVC is much larger than CVI and, even more importantly, JJVC chose to apply a UPP across its many product lines.[1]  By contrast, CVI used a UPP with only 3 of its 28 product lines.  As a

---

[1] Consolidated Corrected Class Action Complaint ("Complaint") ¶¶ 73, 99-101.

result, it is natural and to be expected that CVI would need to search fewer custodial files than JJVC.

The proportionality amendments to Rule 26 grew out of the proliferation of electronic documents and the potentially crushing costs of reviewing and producing documents from the files of dozens of custodians.  Proportionality must therefore be evaluated based on a "careful and realistic assessment of *actual need*."[2]  Here, Plaintiffs have not met their burden of showing that the additional custodians are necessary.  To the contrary, the documents that Plaintiffs purport to summarize only highlight the fact that CVI chose its custodians well, and that the custodians Plaintiffs seek to add likely do not possess unique documents.  For instance, Plaintiffs argue that CVI should add Mike McCleary as a custodian by claiming that a document produced by CVI establishes that █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  Yates Decl., Ex. K.  Nearly every other document cited by Plaintiffs similarly shows only that CVI's custodians were well-selected.  As a result, the collection, review, and production of documents for 18 new custodians will result in an expensive undertaking of marginal benefit.  This is precisely the type of "unnecessary or wasteful discovery" that the 2015 amendments to Rule 26 sought to

---

[2] Chief Justice John Roberts, *2015 Year-End Report on the Federal Judiciary* 7 (2015) (emphasis added).

2

prevent.[3]

Third, Plaintiffs contend that the parties are at an "impasse" with respect to all identified custodians.  But this is not so.  Plaintiffs *never* proposed that either Chris Holloway or Bob Weiss (who is not even a CVI employee) should be custodians.  Nor did Plaintiffs identify *any* of the eleven regional sales employees whose files they ask the Court to compel CVI to search.  The first time Plaintiffs proposed adding these individuals to the custodian list was in their Motion to Compel.  This failure to properly confer about this potential step is unfortunate, as it may have at the least led to additional fruitful discussion.  Moreover, Plaintiffs ignore the fact that CVI's counsel proposed that the parties reach an overall agreement on custodians and search terms.  CVI invited Plaintiffs to circulate a final proposal on July 15, but Plaintiffs never did so.  Declaration of Christopher S. Yates ("Yates Decl.") ¶ 6.

Any dispute regarding a "hit list" was mooted by the parties' agreement as to the 70 search terms that CVI will use to review and produce electronic documents in this litigation.  Yates Decl. ¶ 10.  Absent any argument by CVI that the search terms are overbroad—and there is none at this point, given that the final, agreed-upon search terms comply with the Court's July 25 ruling on the proper scope of discovery—producing a search term hit list would serve no purpose.  In any event, Plaintiffs have not met their burden of establishing a basis to compel CVI to provide one.

Plaintiffs have simply ignored their "responsibility to consider the proportionality of

---

[3] *Id.*; *see also XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (noting the proportionality standard is intended "to address the 'explosion' of information that 'has been exacerbated by the advent of e-discovery'").

all discovery and consider it in resolving discovery disputes,"[4] even in light of the Court's Order of July 25, which emphasized, and is predicated on, "the new dictates of Rule 26."[5] Plaintiffs' frequent (and often inaccurate) references to CVI's purportedly "unlimited resources to devote toward this litigation," Mot. at 20, suggest that discovery is being misused "to wage a war of attrition."[6]  The proportionality requirements are meant "to encourage judges to be more aggressive in identifying and discouraging discovery overuse."[7] Because Plaintiffs' insistence on expensive, unnecessary, and overbroad discovery is not proportional or measured, CVI respectfully submits that the motion is to be denied.

## II.  FACTS

### A.  CVI implemented a UPP on a very limited basis (on 3 out of 28 lines of contact lenses) and only on newly launched products

CVI was the last of the Manufacturer Defendants to sell a contact-lens product subject to a UPP, in September 2014.  Compl. ¶ 104.  Out of the 28 contact-lens products that CVI sells in the U.S., only three—clariti®, MyDay®, and Biofinity® XR toric—are subject to a UPP.  Moreover, CVI has never sold these products without a UPP.  MyDay® and Biofinity® XR toric were new, innovative products that were launched subject to a UPP, and clariti® was a product that CVI acquired when it purchased a company called Sauflon and that Sauflon had always sold subject to a UPP.

### B.  CVI produced documents for 9 custodians in connection with an NYAG investigation, which has not resulted in any charges against, or interviews of, CVI

---

[4] Fed. R. Civ. P. 26 advisory committee's note 2015 amendment.
[5] ECF No. 264 at 3.
[6] 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.60 (3d ed. 1997) (noting that a court "must" apply the proportionality standard to prevent use of discovery "to wage a war of attrition or as a device to coerce a party").
[7] Fed. R. Civ. P. 26 advisory committee's note 2015 amendment.

The New York Attorney General ("NYAG") issued a subpoena to CVI in 2015 in connection with its investigation of the sale of contact lenses subject to a UPP—in other words, the same subject matter at issue in this litigation.  The NYAG accepted 9 custodians (the same 9 individuals that CVI originally offered as custodians in this action), which included the President of CVI, the current and former President of North America, the EVP of Global Sales and Marketing, among other high-ranking officials.  Declaration of Clay Arnold ("Arnold Decl.") ¶ 3.  In response, CVI produced to the NYAG 20,724 documents (124,666 pages) for these 9 custodians, as well as 33.5 GB of transactional data.  CVI produced to Plaintiffs all of the documents and data it produced to NYAG on May 5, 2016, the same day it responded to Plaintiffs' First Set of Requests for Documents.  Yates Decl. ¶ 2.  The NYAG has not requested any interviews of, or filed any charges or claims against, CVI for any antitrust violation.  CVI spent over $700,000 to collect, review, and produce documents for 9 custodians for the NYAG investigation.  Arnold Decl. ¶ 2.

**C.      Recognizing "the new dictates of Rule 26," the Court limited the scope of discovery in this litigation in its Order of July 25, 2016**

Since discovery opened, the parties have participated in several teleconferences and exchanged multiple letters and emails regarding search terms and custodians.  Initially, the parties' disputes as to search terms and custodians were based on a disagreement as to the proper scope of discovery.  This disagreement was resolved by the Court's Order of July 25, in which the Court relied on "the new dictates of Rule 26" to limit non-transactional discovery to post-2013 documents that relate to UPP products.  ECF No. 264.

**D.      The parties reached an agreement as to all 70 search terms that CVI will use to produce documents in this litigation on August 10, 2016**

CVI originally proposed 16 search terms, but Plaintiffs dramatically expanded the list to 70 terms and also proposed modifications to significantly broaden the original 16 terms.

Yates Decl. ¶ 3.  Prior to the Court's July 25 Order, the parties disagreed as to the proper breadth of the search terms; following the Court's July 25 Order, CVI asked Plaintiffs to narrow their proposed search terms to comply with the Court's ruling so that the parties could proceed with their negotiations.  *Id.* ¶ 7.  Plaintiffs failed to propose revisions even though they indicated during the July 27 teleconference with the Court that they would do so. *Id.* ¶ 8.  To move the negotiations forward, on August 5, CVI proposed revised search terms that comply with the Court's July 25 Order, and the parties reached an agreement as to all 70 terms on August 10.  *Id.* ¶ 9.  Thus, no dispute remains with respect to search terms.

### E. Plaintiffs did not engage on CVI's proposal to reach a holistic agreement as to custodians

CVI originally offered to Plaintiffs the 9 custodians that the NYAG accepted as sufficient for its investigation.  These 9 custodians cover a wide array of positions and job duties within CVI.  Over time, Plaintiffs requested a total of 8 additional custodians plus an undefined number of unnamed regional sales managers.  *Id.* ¶ 3.  Plaintiffs never mentioned Chris Holloway or Bob Weiss in any of their letters to, or calls with, CVI; nor did Plaintiffs ever identify the names of any regional sales employees so that CVI could consider them.  *Id.* ¶ 4.  In an effort to reach a compromise and avoid unnecessary disputes, on July 5, CVI agreed to add 3 out of the 8 additional custodians Plaintiffs identified by name (for a total of 12 agreed custodians).  *Id.* ¶ 5.

On July 15, the parties had a telephonic meet-and-confer during which Plaintiffs proposed adding 4 regional sales managers (who Plaintiffs never identified by name) as a "compromise" to resolve the dispute as to their original request to add an unlimited number of regional sales managers.  *Id.* ¶ 6.  CVI responded that its acceptance of this proposal would depend on the parties' ability to reach an agreement for *all* custodians (including the

remaining 5 custodians who are not regional sales managers as to whom the parties had not yet reached an agreement). CVI requested that Plaintiffs propose an overall list of custodians that was proportional and reasonable, which could include regional sales managers. Plaintiffs never proposed the overall list of custodians that CVI requested, or responded to this effort to reach a global resolution of these issues. *Id. ¶* 6.

### F. CVI's capacity to respond to discovery requests is limited, and the cost of collecting, reviewing, and producing documents for the 18 custodians Plaintiffs seek to add would be burdensome for CVI

CVI has a very small legal department and must rely on outside vendors and law firms to respond to discovery requests in litigation matters. For that reason, overbroad discovery requests are burdensome and taxing on CVI's resources (financially and otherwise). Arnold Decl. ¶ 4. Based on the cost of the collection, review, and production of documents for the NYAG investigation (which covered the documents of 9 custodians for a 2.5 year period), CVI expects that the costs it will incur in collecting, reviewing, and producing documents for 18 additional custodians using 70 search terms will be at least $1.5 million. *Id. ¶* 6.

### G. CVI was not a party to, or otherwise involved in, *In re Disposable Contact Lens Antitrust Litig., MDL No. 1030 (M.D. Fla.)*

In their motion, Plaintiffs make several references to *In re Disposable Contact Lens Antitrust Litig*, MDL 1030 (M.D. Fla) and claim that "[t]his case alleges a horizontal and vertical price-fixing scheme involving parties who have been caught in such a conspiracy once before." *See, e.g.*, Mot. at 19-20. That argument is badly misplaced, particularly as to CVI. First, CVI was not a party to MDL 1030. Second, Plaintiffs' own Complaint disclaims any allegations of price-fixing. *See* Compl. ¶ 3 ("To be clear, Plaintiffs are not alleging that the Manufacturer Defendants, working with ABB, conspired to fix the prices of their

respective contact lenses at the same level.").

## III.   PLAINTIFFS' REQUEST FOR 18 ADDITIONAL CUSTODIANS (FOR A TOTAL OF 30) IS NOT PROPORTIONAL

### A.   The 2015 revisions to Rule 26 narrowed the permissible scope of discovery

Under revised Rule 26(b), a party may obtain discovery if it is both "relevant to any party's claim or defense and proportional to the needs of the case."[8]  The scope of permissible discovery under revised Rule 26(b) is much narrower than the pre-2015-amendment standard. First, discovery is not permissible unless it is relevant to a party's claim or defense.[9]  Second, relevant discovery is not permissible unless it is "proportional to the needs of the case" based on a variety of factors, including "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[10]

The proportionality requirement is the primary factor that courts consider when determining whether a request for discovery is proper.  Indeed, "a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."[11]  All of the cases Plaintiffs rely on to support their contention that "Rule 26 'sets a remarkably low bar' for the discovery of relevant information" *pre-date* the implementation of the 2015 proportionality amendments.  *See* Mot. at 9.  Those cases rely on the now-superseded "reasonably calculated to lead to the discovery of admissible evidence" standard, and thus are of little use in resolving the issues at bar, which

---

[8] Fed. R. Civ. P. 26(b)(1).
[9] *See Yee v. Cliff Veissman, Inc.*, No. 14-CV-01531, 2016 WL 950948, at *1 (N.D. Ill. March 7, 2016) (noting that the 2015 amendments "narrowed the concept of relevance for purposes of discovery").
[10] Fed. R. Civ. P. 26(b)(1).
[11] *Gilead Scis., Inc. v. Merck & Co.*, Case No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016).

turn on proportionality considerations.

### B.   Plaintiffs are incorrect about the costs and burden of adding new custodians; that burden would be significant for CVI

Plaintiffs argue that the addition of new custodians would not result in significant additional burdens for CVI.  Mot. at 21.  This contention fails to take into account the realities of how electronic discovery works.

Adding new custodians means starting the collection process all over again, resulting in costs and burdens that are in no way diminished by the fact that other collections have already been conducted.  Custodial documents cannot be evaluated for relevance, size, scope, etc., until they are collected *and processed*.[12]  This costs real money, requires a significant time investment by CVI's legal department and IT staff, and disrupts custodians' other job duties given that, among other things, custodian interviews must be conducted as part of this process.  Arnold Decl. ¶ 5.  The cost of the collection and review of 18 additional custodians' documents is expected to be over $1.5 million.  *Id.* ¶ 6.  These factors should be considered by the Court when evaluating Plaintiffs' motion and deciding whether Plaintiffs have established that the discovery sought is proportional.

### C.   Plaintiffs have not shown that there is an actual need to add the 7 management custodians at issue

Plaintiffs argue that they "require" the "additional seven upper management custodians" to obtain evidence of the implementation and enforcement of CVI's UPP and because these custodians "participated in trade associations and/or working groups that discussed or implemented UPPs."  Mot. at 10.  But beyond this naked assertion, Plaintiffs

---

[12] *See, e.g.*, Federal Judicial Center, *Manual for Complex Litigation, Fourth,* § 11.423 (4th ed. 2004) ("Computerized data, however, are often not accessible by date, author, addressee, or subject matter without costly review and indexing.").

make no showing of *actual need*.  Plaintiffs ignore the fact that Bob Weiss is not an employee of CVI and that the documents of the other 6 additional custodians are duplicative of the documents of the 12 previously agreed-upon custodians, and of the documents that Plaintiffs have and will continue to receive from other defendants and third-party trade associations and retailers.  The documents that Plaintiffs point to in their motion to compel serve to emphasize this fact.  The examples below highlight the disconnect between Plaintiffs' contentions and the actual documents that have been produced:



| Plaintiffs' Contention | What the Document Actually Shows |
|---|---|
| Mike McCleary - CVI00013381, Yates Decl., Ex. K | |
| Gary Orsborn - CVI00094968, Yates Decl., Ex. L | |
| Aldo Zucaro - CVI00105254, Yates Decl., Ex. M | |



| Plaintiffs' Contention | What the Document Actually Shows |
|---|---|

**Chris Holloway - CVI00107501, Yates Decl., Ex. N**

**Andrew Sedgwick - CVI00023313, Yates Decl., Ex. O**

**Roger Kennedy - CVI00093710, Yates Decl., Ex. P**

Plaintiffs' motion assumes that it is enough to show that a proposed custodian received an email that mentions UPP. That is not the law. The Court's determination as to whether additional custodians are necessary must be driven by considerations of

11

proportionality.[13]  In the context of e-discovery, where large-scale duplication of e-documents is inevitable, the "proportionality requirement" can be satisfied by limiting e-discovery to "key" custodians.[14]  This is because "[p]roportionality principles presume that all relevant information is not equally important."[15]  Here, CVI has already agreed to produce the documents of the key CVI decision-makers with respect to its decision to use a UPP on 3 of its 28 products.  These documents are more than sufficient for Plaintiffs to study UPP implementation and enforcement at CVI.

Additionally, Plaintiffs will be able to examine CVI's participation in trade associations based on CVI's existing productions, and through the productions of the Contact Lens Institute ("CLI") and the American Optometric Association ("AOA").  The documents that Plaintiffs point to in their motion confirm this.[16]  In their motion, Plaintiffs suggest that the manufacturer defendants used CLI's Statistical Task Force and the reports that Veris Consulting produced to collude on pricing.  Mot. at 12.[17]  This is directly contradicted by the

---

[13] *Gilead*, 2016 WL 146574, at *1; Federal Judicial Center, *Judicial Benchbook for U.S. District Judges* 195 (6th ed. 2013) ("Remember that parties are not entitled to all discovery that is relevant to the claims and defenses.  The judge has a duty to ensure that discovery is proportional to the needs of the case.").

[14] *See, e.g.*, Federal Judicial Center, *Managing Electronic Discovery of Electronic Information: A Pocket Guide for Judges* 15 (2d ed. 2012) ("To ensure that the proportionality requirement is met, a judge may need to review the parties' proposed production requests. The judge should encourage the lawyers to stage the discovery by first searching for the ESI associated with the most critical or key players[.]")

[15] Hon. Craig B. Shaffer,  *The "Burdens" of Applying Proportionality*,  The Sedona Conference Journal,  Vol. 16, Fall 2015, at 117.

[16] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
Yates Decl., Ex. Q, T, U, V.

[17] Veris Consulting, Inc. is an independent forensic accounting consultant that compiles manufacturer sales data and provides it in aggregated fashion which maintains "the confidentiality of each participant's individual data."  CLI Committees, Contact Lens

thousands of pages of documents that CLI has produced to date, ███████████████

███████████████████████████████████████████████████████

███████████████[18]  Similarly, any suggestion of collusion between CVI and AOA is refuted

by one of the documents that Plaintiffs themselves point to in their motion, ███████████

████████████████████████████████████████████  *See*

CVI00117166, Yates Decl., Ex. Q ██████████████████████████████

█████████████████████████

  In situations like this, where the marginal benefit to be gained from the new

custodians' documents is outweighed by the burden of searching for and collecting them,

courts routinely deny requests for additional custodians.[19]

###   D. Plaintiffs have not shown that there is an actual need to add the 11 regional sales managers at issue

  Plaintiffs request to add 11 regional sales managers on the ground that the files of

these custodians are "likely to reveal important communications between the Manufacturer

Defendants and ECPs."  Mot. at 14.

  First, Plaintiffs overstate the import of the regional managers' communications with

ECPs to their claims.  The Supreme Court has recognized that manufacturers are entitled to

meet with customers and consider their concerns, and that a conspiracy cannot be inferred

---

Institute, http://contactlensinstitute.org/initiatives/#3.  This sort of information exchange is
entirely within the "antitrust safety zone" set out in the Department of Justice and Federal
Trade Commission's Statements of Antitrust Enforcement Policy in Healthcare.
[18] *See* Yates Decl., Ex. W █████████████████████████████████████

█████████████████████████████████████

 *See, e.g.*, *Helmert v. Butterball, LLC*, No. 4:08CV00342 JLH, 2010 WL 2179180, at *6
(E.D. Ark. May 27, 2010) (denying request to add proposed custodian because "any emails to
which [the proposed custodian] was a party almost surely would have included [other
custodians] whose emails will be searched, so a search of [the proposed custodian's] emails
would be duplicative").

from such facts.[20]  Thus, evidence that a manufacturer acts in response to retailer complaints, or terminates a discounter in response to a retailer's request, is not suggestive of a conspiracy as a matter of law because this kind of behavior is to be expected.[21]  Second, Plaintiffs imply that they currently do not have access to "discovery regarding communications with ECPs regarding the UPPs," Mot. at 14, but the opposite is true.  Indeed, ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  Additionally, CVI agreed to add Michele Andrews as a custodian, whose duties include coordinating communications with ECPs, to ensure that Plaintiffs would have access to a broad scope of communications with ECPs.  Arnold Decl. ¶ 7.

Once again, the marginal benefit to be gained from these custodians' documents (the pertinent information of which is already contained in the files of the agreed-upon custodians) is outweighed by the burden of searching for and collecting the files of 11 additional people.  This is sufficient reason to deny this unnecessary request.

### E.   The determination of how many custodians to include is a fact-specific one that must be made on a case-by-case basis

Plaintiffs argue that some courts have approved "larger numbers of custodians" in an effort to persuade the Court that their request for 30 total custodians here is reasonable.  Mot. at 10-11.  But courts routinely hold that the relevance of each custodian "is inescapably fact

---

[20] *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762, 763-64, 768 (1984).

[21] *See, e.g.*, *Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 19-21 (1st Cir. 2004) (holding no agreement may be inferred from evidence that a manufacturer acted in response to complaints from a major dealer).

specific."[22]  That other courts have approved a certain number of custodians in other

litigation, or that JJVC has agreed to 19 custodians in this action, is irrelevant to whether the

Court should add any more CVI custodians.  Moreover, in light of the differences between

JJVC and CVI—JJVC is much larger than CVI and applied UPP across its many product

lines, whereas CVI only used a UPP with 3 of its 28 product lines, Compl. ¶¶ 73, 99-101— it

is consistent with proportionality that CVI would search fewer custodial files than JJVC.

## IV.     PLAINTIFFS' REQUEST FOR A SEARCH TERM HIT LIST IS MOOT

Plaintiffs have not shown an *actual need* for search term hit lists.  Hit lists are

exchanged in the context of search term negotiations in which the responding party argues

that the search terms in question are overbroad, or where there are allegations of discovery

misconduct.[23]  Here, however, the parties have already reached agreement on the scope of the

search terms that CVI will use to produce documents in this action.[24]  Because there is no

argument of overbreadth by CVI, and both parties have agreed on all 70 search terms, any

dispute as to whether CVI should produce a hit list is moot.

## V.      CONCLUSION

CVI respectfully submits that the Court should deny Plaintiffs' motion to compel in

its entirety.

---

[22] *See, e.g.*, *Brown v. W. Corp.*, No. 8:11CV284, 2013 WL 4456556, at *1 (D. Neb. Aug. 16, 2013).

[23] *See, e.g.*, *Vasudevan Software, Inc. v. MicroStrategy Inc.*, 11-cv-06637-RS-PSG, 2012 U.S. Dist. LEXIS 163654, at *14-17 (N.D. Cal. Nov. 15, 2012) (requiring search term hit list where the responding party argued that the search terms were overbroad); *Procaps S.A. v. Patheon Inc.*, 12-24356-CIV, 2014 WL 800468, at *2 (S.D. Fla. Feb. 28, 2014) (requiring hit list because of allegations of failure to implement litigation hold).

[24] The two defendants that produced hit lists did so in the course of their negotiations regarding the overbreadth of the search terms.

Date:  August 24, 2016

Respectfully submitted,

TANNER BISHOP

/s/ Michael G. Tanner
Michael G. Tanner (Florida Bar No. 261300)
Thomas E. Bishop (Florida Bar No. 956236)
One Independent Drive, Suite 1700
Jacksonville, FL 32202
Phone: (904) 598-0034
Fax: (904) 598-0395
E-Mail: mtanner@tannerbishoplaw.com
tbishop@tannerbishop.com

Daniel M. Wall
Christopher S. Yates
Elif Kimyacioglu
Ana Gardea
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 391-0600
Fax: (415) 395-8095
E-Mail: dan.wall@lw.com
chris.yates@lw.com
elif.kimyacioglu@lw.com
ana.gardea@lw.com
*Attorneys for Defendant CooperVision, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and that counsel for the following parties were served electronically with Defendant CooperVision Inc.'s Response to Class Plaintiffs' Motion to Compel CooperVision to Include Additional Custodians and Provide a Hit List:

Robert C. Gilbert
Florida Bar No. 561861
KOPLOWITZ OSTROW FERGUSON WEISELBERG GILBERT
2525 Ponce de Leon Boulevard, Suite 625
Coral Gables, FL 33134
Telephone: (305) 384-7270
Facsimile: (954) 525-4300
Email   gilbert@kolawyers.com

*PLAINTIFFS' LIAISON COUNSEL*

John A. DeVault, III
Florida Bar No. 103979
Courtney K. Grimm
Florida Bar No. 953740
BEDELL, DITTMAR, DEVAULT, PILLANS & COXE, P .A.
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307
Email: jad@bedellfirm.com
         cgrimm@bedellfirm.com

*PLAINTIFFS' LOCAL COUNSEL*

Christopher M. Burke
Walter W. Noss
John T. Jasnoch
Jennifer J. Scott
Kate Lv
SCOTT+ SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel.: (619) 233-4565

Fax: (619) 233-0508
Email: cburke@scott-scott.com
        wnoss@scott-scott.com
        jjasnoch@scott-scott.com
        jscott@scott-scott.com
        klv@scott-scott.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813
Email: mlehmann@hausfeld.com
        bsweeney@hausfeld.com
        clebsock@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeld.com
        jpizzirusso@hausfeld.com
        ngiddings@hausfeld.com

*INTERIM CO-LEAD CLASS COUNSEL*

Joseph P. Guglielmo
Thomas K. Boardman
SCOTT +SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington A venue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com
        tboardman@scott-scott.com

Hollis Salzman
Bernard Persky

William V. Reiss
Ben Steinberg
ROBINS KAPLAN LLP
601 Lexington A venue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email:  hsalzman@robinskaplan.com
        bpersky@robinskaplan.com
        wreiss@robinskaplan.com
        bsteinberg@robinskaplan.com

*INTERIM CO-LEAD CLASS COUNSEL*

George W. Sampson
Lucinda M. Dunlap
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, W A 98154
Telephone: (206) 369-3962
Facsimile: (206) 260-1318
Email:  george@sampsondunlap.com
        lucinda@sampsondunlap.com

*PLAINTIFFS' TRIAL COUNSEL*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: 619-338-1133
Facsimile: 619-338-1139
Email:  dennis@hulettharper.com

*PLAINTIFFS' TRIAL COUNSEL*

Steven C. Marks
Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
Email:  smarks@podhurst.com
        rjosefsberg@podhurst.com

*PLAINTIFFS' TRIAL COUNSEL*

Robert Troy Smith ((Florida Bar No. 485519)
GRAY ROBINSON, P.A.
50 N Laura Street, Suite 1100
Jacksonville, FL 32202-3611
Phone: (904) 632-8483
Fax: (904) 598-9109
Email: troy.smith@gray-robinson.com

William F. Cavanaugh, Jr.
Deirdre A. McEvoy
Jon a than H. Hatch
Jenny Ma
PATTERSON BELKNAP WEBB & TYLER LLP
113 3 A venue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
Email: wfcavanaugh@pbwt.com
        dmcevoy@pbwt.com
        jhatch@pbwt.com
        jma@pbwt.com

*COUNSEL FOR JOHNSON & JOHNSON VISION CARE, INC.*

A. Graham Allen (Florida Bar No. 11711 0)
James. M. Riley (Florida Bar No. 700411)
Samuel J. Horovitz (Florida Bar No. 0059015)
ROGERS TOWERS, P.A.
13 01 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
Phone: (904) 398-3911
Fax: (904) 396-0663
Email: gallen@rtlaw.com
        shorovitz@rtlaw.com

David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth A venue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474 3700
Email: dmarriott@cravath.com

iv

*COUNSEL FOR ALCON LABORATORIES, INC.*
Terrence Russell (Florida Bar No. 116057)
Jennifer L. Kifer (Florida Bar No. 77498)
HOLLAND & KNIGHT, LLP
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
Phone: (904) 353-2000
Fax: (904) 358-1872
Email: jennifer.kifer@hklaw.com
        terrence.russell@hklaw.com

Steven C. Sunshine
Paul M. Eckles
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7860
Fax: (202) 661-0560
Email: steve.sunshine@skadden.com
        paul.eckles@skadden.com

*COUNSEL FOR BAUSCH & LOMB INCORPORATED*

Benjamin H. Hill, III (Florida Bar No. 094585)
Dennis P. Waggoner (Florida Bar No. 509426)
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Phone: (813) 227-8426
Fax: (813) 221-2900
Email: dennis.waggoner@hwhlaw.com

Edwin John U *(pro hac vice)*
Patrick J. King *(pro hac vice)*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Phone: (202) 879-5000
Fax: (202) 879-5200
Email: edwin.u@kirkland.com
        patrick.king@kirkland.com

*COUNSEL FOR ABB OPTICAL GROUP*

DATED:   August 24, 2016                    TANNER BISHOP

/s/ Michael G. Tanner
Michael G. Tanner (Florida Bar No. 261300)
Thomas E. Bishop (Florida Bar No. 956236)
One Independent Drive, Suite 1700
Jacksonville, FL 32202
Phone: (904) 598-0034
Fax: (904) 598-0395
E-Mail: mtanner@tannerbishoplaw.com
tbishop@tannerbishop.com

Daniel M. Wall
Christopher S. Yates
Elif Kimyacioglu
Ana Gardea
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 391-0600
Fax: (415) 395-8095
E-Mail: dan.wall@lw.com
chris.yates@lw.com
elif.kimyacioglu@lw.com
ana.gardea@lw.com
*Attorneys for Defendant CooperVision, Inc.*