# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| In Re: | Case No. 3:15-md-2626-HES |
| **DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Judge Harvey E. Schlesinger** |
| **THIS DOCUMENT RELATES TO:** | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. JOHN SOLOW AND PRECLUDE TESTIMONY REGARDING PURPORTED COLLUSION BETWEEN THE DEFENDANTS, PURSUANT TO FED. R. EVID. 702 AND *DAUBERT*** |
| **All Class Actions** | |
| | **(FILED UNDER SEAL)** |

**TABLE OF CONTENTS**

Glossary ............................................................................................................ vi

MEMORANDUM OF LAW ...............................................................................1

I.      CASE BACKGROUND ............................................................................1

II.     LEGAL STANDARDS .............................................................................2

III.    DR. SOLOW'S EXPERT OPINIONS ARE BASED ON A RELIABLE
        METHODOLOGY .....................................................................................3

A.      DR. SOLOW'S TESTIMONY REGARDING CIRCUMSTANCES
        INDICATIVE OF COLLUSION IS ADMISSIBLE .......................................4

B.      DR. SOLOW PROPERLY REVIEWED THE RECORD ............................7

        1.      *Dr. Solow Identified the Facts that Form a Basis for His Opinion* .................7

        2.      *Dr. Solow Was Not Required to Review Deposition Testimony* .....................10

C.      PLAINTIFFS' CLAIMS DO NOT REQUIRE THE IDENTIFICATION OF
        COMMUNICATIONS BETWEEN THE MANUFACTURER
        DEFENDANTS ......................................................................................11

D.      DR. SOLOW HAS NOT MISREPRESENTED THE RECORD
        REGARDING THE MANUFACTURER DEFENDANTS' UPPS ...........................13

        1.      *Alcon UPP* .......................................................................14

        2.      *Bausch & Lomb UPP* ...................................................................15

        3.      *JJVC UPP* ...........................................................................16

        4.      *CVI UPP* ............................................................................17

IV.     DR. SOLOW'S REPORT WILL ASSIST THE TRIER OF FACT ...........................18

V.      CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*325 Goodrich Ave., LLC v. Southwest Water Co.*,
  891 F. Supp. 2d 1364 (M.D. Ga. 2012) ........................................................4, 8

*Allstate Ins. Co. v. Guagliardo Plumbing, Heating, and Air Conditioning, Inc*,
  No. 3:16cv55, 2017 WL 1928384 (M.D. Pa. May 10, 2017) ...........................10

*Apopka Clear Lake Inv., LLC v. Sema Constr., Inc.*,
  No. 6:14-cv-881-Orl-41DAB, 2015 WL 12830495 (M.D. Fla. Nov. 13,
  2015) .................................................................................................................7

*Barber v. United Airlines, Inc.*,
  17 F. App'x 433 (7th Cir. 2001) .......................................................................9

*Burns v. Sec'y of the Dep't of Health and Human Services*,
  3 F.3d 415 (Fed. Cir. 1993)............................................................................11

*Chadwick v. WellPoint, Inc.*,
  561 F.3d 38 (1st Cir. 2009).............................................................................11

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
  158 F.3d 548 (11th Cir. 1998) ...............................................................3, 19, 20

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ? (3) ...................................................................... *passim*

*DeJager Constr., Inc. v. Schleininger*,
  938 F. Supp. 446 (W.D. Mich. 1996) ..............................................................10

*DeLong Equip. Co. v. Washington Mills Abrasive Co.*,
  887 F.2d 1499 (11th Cir. 1989) .........................................................................4

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
  No. 1:09-md-2089-TCB, 2017 WL 1186416 (N.D. Ga. Mar. 28, 2017)...........19

*In re Denture Cream Prods. Liab. Litig.*,
  No09-2051-MD, 2015 WL 392021 (S.D. Fla. Jan. 28, 2015) ...........................9

*In re Disposable Contact Lens Antitrust*,
  215 F. Supp. 3d 1272, 1294 (M.D. Fla. 2016).................................................12

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Domestic Drywall Antitrust Litig.*,
 163 F. Supp. 3d 175, 242-44 (E.D. Pa. 2016) ...................................................................12

*Dunmiles v. Jubilee Towing, LLC*,
 No. 16-14325, 2017 WL 1212091 (E.D. La. Apr. 3, 2017) ...............................................10

*Florida Power & Light Co. v. Qualified Contractors, Inc.*,
 No. 9:04-cv-80505-MGC 2005 U.S. Dist. LEXIS 48047 (S.D. Fla. Dec. 2,
 2005) ...................................................................................................................................11

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
 No. 04-md-1628 (RMB)(MHD), 2009 WL 3241401 (S.D.N.Y. Sept. 30,
 2009) ...................................................................................................................................11

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997) ...........................................................................................................13

*Heard v. Illinois Dep't of Corrections*,
 No. 06 C 0644, 2012 WL 2524748 (N.D. Ill. June 29, 2012) .............................................7

*Holden Metal & Aluminum Works v. Wismarq Corp.*,
 No. 00 C 0191, 2003 WL 1797844 (N.D. Ill. Apr. 2, 2003) ...............................................9

*Huskey v. Ethicon, Inc.*,
 29 F. Supp. 3d 691, 735 (S.D. W. Va. 2014) ....................................................................10

*Johns v. Bayer Corp.*,
 09cv1935 AJB, 2013 WL 1498965 ...................................................................................19

*Kilgore v. Reckitt Benckiser, Inc.*,
 917 F. Supp. 2d 1288 (N.D. Ga. 2013) ...............................................................................2

*LeClercq v. the Lockformer Co.*,
 00 C 7164, 2005 WL 1162979 (N.D. Ill. Apr. 28, 2005) ...................................................9

*LinkCo, Inc. v. Fujitsu Ltd.*,
 No. 00 Civ. 7242 (SAS), 2002 WL 1585551 ....................................................................18

*United States ex rel. Martin v. Lockheed Martin Corp.*,
 No. 1:99-cv-285, 2014 WL 1233081 (S.D. Ohio Mar. 25, 2014) .......................................8

**TABLE OF AUTHORITIES**
(continued)

Page

*McCorvey v. Baxter Healthcare Corp.*,
   No. 99-1250-CIV, 2001 WL 36393134 (S.D. Fla. Sept. 30, 2001) ...................................13

*Navelski v. Int'l Paper Co.*,
   No. 3:14cv1445/MCR/CJK, 2017 WL 2239579 (N.D. Fla. May 21, 2017) ......................3

*Oliver v. City of Orlando*,
   No. 6:06-cv-1671-Orl-28DAB, 2011 WL 2174010 (M.D. Fla. May 31,
   2011) ...........................................................................................................................13

*Ortiz v. Wiwi*,
   No. 3:11-CV-033 (CAR), 2012 WL 4482367 (M.D. Ga. Sept. 26, 2012) ........................8

*PB Property Mgmt., Inc. v. Goodman Mfg. Co.*,
   No. 3:12-cv-1366-HES-JBT, 2016 WL 7666179 (M.D. Fla. May 12,
   2016) .............................................................................................................................3

*PODS Enters. v. U-Haul Int'l, Inc.*,
   No8:12-cv-01479-T-27MAP, 2014 WL 12628664 (M.D. Fla. June 26,
   2014) .............................................................................................................................8

*In re Polyurethane Foam Antitrust Litig.*,
   152 F. Supp. 3d 968, 1012 (N.D. Ohio 2015).................................................................13

*In re Processed Egg Prods. Antitrust Litig.*,
   81 F. Supp. 3d 412, 424 (E.D. Pa. 2015) ..................................................................19, 20

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
   326 F.3d 1333 (11th Cir. 2003) .....................................................................................2

*In re Titanium Dioxide Antitrust Litig.*,
   959 F. Supp. 2d 799 (D. Md. 2013)...............................................................................13

*U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*,
   313 F. Supp. 2d 213 (S.D.N.Y. 2004)...........................................................................19

*United States v. 0.161 Acres of Land*,
   837 F.2d 1036 (11th Cir. 1988) ....................................................................................10

*United States v. City of Miami*,
   115 F.3d 870 (11th Cir. 1997) ...................................................................................9, 13

## TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948)......................................................................................................11

*Viterbo v. Dow Chem. Co.*,
   826 F.2d 420 (5th Cir. 1987) ........................................................................................7

*Whatley v. Merit Distribution Services*,
   166 F. Supp. 2d 1350 (S.D. Ala. 2001).........................................................................2

*Williamson Oil Co., v. Philip Morris USA*,
   346 F.3d 1287 (11th Cir. 2003) ....................................................................................4

## Glossary

| | |
|---|---|
| ABB | ABB Concise Optical Group, LLC |
| Alcon | Alcon Laboratories, Inc. |
| B&L | Bausch & Lomb Inc. |
| CLs | Disposable contact lenses |
| CLI | Contact Lens Institute |
| *CL1* | *In Re Disposable Contact Lens Antitrust Litigation* 170 F.R.D. 524 (M.D. Fla. 1996) |
| CV | CooperVision, Inc. |
| ECP | Eye care professionals (*e.g.*, optometrists and ophthalmologists who sell contact lenses to consumers) |
| JSR | "Expert Report of Dr. John L. Solow" (March 3, 2017) (Redacted Version Filed As ECF No. 397) |
| JJVC | Johnson & Johnson Vision Care, Inc. |
| LD | Accompanying "Declaration of  Michael Lockamy" |
| MDs | Manufacturer Defendants Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb Inc., and CooperVision, Inc. |
| MDL 1030 | Prior disposable contact lens MDL adjudicated in U.S. District Court for the Middle District of Florida |
| MRPM | Minimum resale price maintenance |
| MSSR | "Defendants' Motion To Strike Portions Of The Expert report Of Dr. John L. Solow And preclude Testimony Regarding The Purported Collusion Between The Defendants, Pursuant To Fed. R. Evid. 702 And Daubert, And Memorandum Of Law In Support Of Motion To Strike" (June 15, 2017) (Redacted Version Filed As ECF No. 500) |

| | |
|---|---|
| ST | Transcript of deposition of John Solow, attached as Exhibit B to the accompanying Declaration of Michael Lockamy |
| UPP | Unilateral Pricing Policy |
| WR | "Export Report of Michael A. Williams Ph.D" (May 3, 2017) (Redacted Version Filed As ECF No. 398) |

<u>MEMORANDUM OF LAW</u>

I.      **CASE BACKGROUND**

Plaintiffs allege that the MDs conspired with each other, as well as with wholesaler ABB and independent ECPs represented by ABB, to eliminate price competition for certain CLs—including competition from "big box" retail stores, discount buying clubs, and online retailers. The MDs sought to eliminate competition by agreeing to enter into, and entering into, *per se* illegal or unreasonable MRPM agreements. Plaintiffs offered the JSR--the Expert Report of Dr. John L. Solow, a well-qualified economist who testified before this Court in MDL 1030--to establish that the liability and causation elements of Plaintiffs' claims are subject to common economic proof. JSR ¶ 9. Defendants do not challenge Dr. Solow's qualifications, methodology, or the overwhelming majority of his opinions.

In their MSSR, they only seek to exclude Sections X and XI of the JSR, in which Dr. Solow submits his analysis of common conduct in the CL industry, and the roles of ABB and the CLI in the alleged common conduct. Defendants also seek to preclude any testimony from Dr. Solow regarding alleged collusion relating to any of the MDs' UPPs.

Although Defendants claim that the issues with Dr. Solow's opinion are "manifold" (MSSR at 2), they really only have two complaints about: (1) the number of documents he reviewed, and (2) that his opinion will not assist the trier of fact; neither warrants excluding his opinion. That Defendants can only muster two minor complaints, which can be tested through cross-examination, supports the view that the Court should deny the motion.

## II.    LEGAL STANDARDS

In order to determine the admissibility of expert testimony, this Court must engage in a three-part inquiry:  (1) Is the expert qualified to testify competently regarding the matters he intends to address? (2) Is the methodology that the expert uses to reach his conclusions sufficiently reliable pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ("*Daubert*")? (3) Does the testimony assist the trier of fact, through the application of specialized expertise, to understand the evidence or to determine a fact in issue?  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-1341 (11th Cir. 2003) ("*Quiet Tech*") (citations omitted). Here, Defendants have conceded the first point.

While the Court must conduct a rigorous analysis on class certification, there are limitations to its function as a gatekeeper.  Indeed, "the rejection of expert testimony is the exception rather than the rule."  *Kilgore v. Reckitt Benckiser, Inc.,* 917 F. Supp. 2d 1288, 1293 (N.D. Ga. 2013) (quotation marks and citation omitted).

> In the end, although "[r]ulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology," **it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Indeed … "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury**.'"

*Quiet Tech.,* 326 F.3d at 1341 (citations omitted) (alterations in original) (emphasis added). *See Whatley v. Merit Distribution Services*, 166 F. Supp. 2d 1350, 1353 (S.D. Ala. 2001) (Rule 702 "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other….").

Defendants' description of the Eleventh Circuit's adoption of *Daubert* in class certification cases is simplistic, biased, and fails to recognize the nuance of applying *Daubert*

in the context of Rule 23.  While *Daubert* requires a ruling on any challenges to an expert's opinion that must be resolved in order to establish Rule 23's requirements (*PB Property Mgmt., Inc. v. Goodman Mfg. Co.,* No. 3:12-cv-1366-HES-JBT, 2016 WL 7666179, at *9 (M.D. Fla. May 12, 2016) (citing *Sher v. Raytheon Co.*, 419 F. App'x 887, 891 (11th Cir. 2011)), the Court need not reach the ultimate merits of Plaintiffs' claims at this stage.  *Navelski v. Int'l Paper Co.*, No. 3:14cv1445/MCR/CJK, 2017 WL 2239579, at *2 (N.D. Fla. May 21, 2017) (challenges to experts on the merits are inappropriate at class certification).

## III.   DR. SOLOW'S EXPERT OPINIONS ARE BASED ON A RELIABLE METHODOLOGY

As Defendants' own authority recognizes, every antitrust action is different: "[e]conomic…analysis of markets alleged to be collusive…cannot readily be repeatedly tested, because each such case is widely different from other such cases…."  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 566 n.25 (11th Cir. 1998) ("*Tuscaloosa*").  For that reason, "[t]he proper inquiry regarding the reliability of the methodologies…is not whether other experts, faced with substantially similar facts, have repeatedly reached the same conclusions (because there will be few or no cases that have presented substantially similar facts). Instead, the proper inquiry is whether the techniques utilized by the experts are reliable…." *Id.*

The *Tuscaloosa* court went on to hold that there are many factors relevant to determining whether an expert's reasoning or methodology is reliable, and that there is no "definitive checklist or test." *Id.* at  563 n.16.  In *Daubert*, the Supreme Court identified the following factors that may be applicable:  whether the methodology can be (and has been) tested; whether the methodology has been subjected to peer review and publication; the known

or potential rate of error of the technique; and the degree to which the relevant scientific community accepts the theory or technique as reliable.  509 U.S. at 593-95. *See 325 Goodrich Ave., LLC v. Southwest Water Co.*, 891 F. Supp. 2d 1364, 1378 (M.D. Ga. 2012) ("*325 Goodrich*").

Here, all of Defendants' arguments regarding Dr. Solow's methodology actually address the weight to be given to Dr. Solow's testimony, not the admissibility of his opinion.

As this Court held over twenty years ago:

> The Court finds that Plaintiffs have demonstrated at least a "colorable method" of proving impact at trial.  That Defendants' expert disagrees with the methodology and conclusions propounded by Dr. Solow is not reason to deny class certification.  Whether or not plaintiffs will be successful in persuading the jury that there has been a common impact remains to be seen.  For purposes of this [class certification] motion, however, the Court finds Plaintiffs' allegations and the methodology they will advance to prove their claims are sufficient to satisfy Rule 23.

*CL1*, 170 F.R.D. at 531-32 (citations omitted).  The Court's holding is equally applicable here, and Defendants have not shown otherwise.

### A.     Dr. Solow's Testimony Regarding Circumstances Indicative of Collusion Is Admissible

Defendants assert that they seek to preclude any testimony from Dr. Solow "regarding collusion."  While the basis for this argument is difficult to discern, it appears to be based on assertions that Dr. Solow has no explicit evidence of the alleged conspiracy.  As a preliminary matter, this Court has recognized that such evidence is unlikely to exist.[1]

---

[1] *See Williamson Oil Co., v. Philip Morris USA,* 346 F.3d 1287, 1300 (11th Cir. 2003) ("[F]requently, price fixing plaintiffs are relegated to relying on indirect means of proof."); *DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1515 (11th Cir. 1989) ("Conspiracies are rarely evidenced by explicit agreements, and must almost always be proven by inferences that may be fairly drawn from the behavior of the alleged conspirators.").

More significantly, Defendants' argument disregards the very purpose of Dr. Solow's opinion. Dr. Solow seeks only to determine "whether the liability elements of Plaintiffs' claims are subject to common economic proof." JSR ¶ 9. In order to accomplish this goal, Dr. Solow--utilizing academic treatises and articles, Federal Trade Commission studies, industry research, his extensive knowledge of the industry, and Defendants' own documents --reviewed the background of the CL industry, including the influence of ECPs and the effect of the introduction of CLs on the market (*id.* ¶¶ 12-32); explained the effects of oligopoly (*id.* ¶¶ 33-37); and explains that common economic analysis and evidence can be used in this case, because the analysis of the contact lens industry will not vary by Class member (*id.* ¶¶ 39-40). Dr. Solow went on to review retail and wholesale markets for CLs and concluded "it is my opinion as an economist that the wholesale market for replacement disposable contact lenses was … conducive to cooperative behavior" and that "conditions in these markets were favorable for successful collusion…." *Id.* ¶ 67. Dr. Solow then analyzed the circumstances of each MD's adoption of a UPP (*id.* ¶¶ 68-116), and the roles of ABB and the CLI in the alleged misconduct (*id.* ¶¶ 117-147).

Finally, Dr. Solow demonstrates that the economic impact of UPPs can be ascertained through common evidence that: (1) customers purchasing contact lenses at mass merchandisers and internet sellers would be paying higher prices than they would have without UPPs; (2) customers purchasing contact lenses from ECPs would have paid higher prices than they would have without UPPs; (3) ECP prices would be above prices that would have otherwise prevailed in the market without UPPs. *Id.* ¶¶ 148-50. ████████████████████ ████████████████████████████ Dr. Solow concludes

that "the characteristics of the disposable contact lens market were conducive to collusion during the relevant period" and that the methods of analysis used in his report would be applicable on a classwide basis. *Id.* ¶ 157.

One thing Dr. Solow did *not* do is opine on whether Defendants' documents in fact evinced illegal or conspiratorial conduct. ██████████████████████████████████ ████████████████████████████████████████████ He left it to the Court to study the materials to which he referred and to assess whatever legal significance they might have in the context of a motion for class certification. The Court in *CL1* noted as follows:

> the Court is satisfied that Plaintiffs have made a threshold showing that the proof they intend to offer at trial of the alleged conspiracy will be sufficiently generalized in nature to warrant certification of the class. In this case, the alleged conspiracy involves parallel agreements reached between the leading trade associations and the three largest contact lens manufacturers. Plaintiffs have produced evidence from which a reasonable juror could infer there was agreement to limit the supply of replacement lenses. "[P]roof of consciously parallel business behavior is circumstantial evidence from which an agreement, tacit or express, can be inferred.... [however t]he evidence must give rise to more than speculation." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013 (3rd Cir.1994) (noting that "a particularly detailed memorandum of a telephone call can give rise to a reasonable inference of agreement"), *cert. denied*, --- U.S. ----, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). Again, the Court need not determine at this juncture whether Plaintiffs ultimately will prevail on the ***merits*** of their claims; that is for the jury to decide.

170 F.R.D. at 530 (emphasis in original). Here, as in MDL 1030, the Plaintiffs have set before the Court numerous documents demonstrating that the issue of a proof of their claims is sufficiently generalized. Dr. Solow summarizes some of them in his discussion of the structure and performance of the industry with respect to UPPs, but unlike Defendants' expert, Dr. Cremieux, does not tell the Court how merits questions should be answered.

*Daubert* does not require anything more to establish the reliability of Dr. Solow's

methodology.  Therefore, the Court must deny Defendants' request to preclude Dr. Solow from testifying whether circumstances conducive to collusion exist.

### B. Dr. Solow Properly Reviewed the Record

#### 1. *Dr. Solow Identified the Facts that Form a Basis for His Opinion*

As discussed above, Dr. Solow provided a substantial basis for his opinion that Plaintiffs' claims may be prosecuted on a classwide basis. Defendants seek to strike his opinions based on their assertion that he did not consider the full record of over 600,000 documents. DMSS at 8-9. However, whether Dr. Solow reviewed a sufficient number of documents to earn Defendants' approval is irrelevant.  *See Heard v. Illinois Dep't of Corrections*, No. 06 C 0644, 2012 WL 2524748, at *5 (N.D. Ill. June 29, 2012). ("[N]either *Daubert* nor the Federal Rules of Evidence requires an expert to review all of the facts, only a 'sufficient' amount is required.").

> "[W]here the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis." *Id.*  To that end, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) (holding that the defendants' objections to the bases of the expert's opinion "plainly" went to the "weight and sufficiency" of the opinion rather than its admissibility).

*Apopka Clear Lake Inv., LLC v. Sema Constr., Inc.*, No. 6:14-cv-881-Orl-41DAB, 2015 WL 12830495, at *7 (M.D. Fla. Nov. 13, 2015) (second alteration in original).  *See Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987) (the trier of fact should evaluate any questions relating to the sources of an expert's opinion).

Defendants emphasize that Plaintiffs' counsel directed Dr. Solow towards some of the

documents he considered as a basis for his opinion.  MRSS at 9.  But Defendants ignore the full record. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████  *See also* JSR ¶ 10 ("I have reviewed various pleadings in this matter…various business documents produced by the parties; publicly available information about the contact lens industry; and pricing and other statistical data.").

Moreover, courts repeatedly reject the exact argument Defendants make here, holding that if an expert "has based his opinions on overstated facts, provided by a biased source, i.e. Plaintiff's counsel, this may certainly be brought to the jury's attention through cross-examination," but "these potential weaknesses in his testimony only go to the weight of the opinions—not their admissibility—and are thus not grounds for exclusion." *Ortiz v. Wiwi*, No. 3:11-CV-033 (CAR), 2012 WL 4482367, at *5 (M.D. Ga. Sept. 26, 2012).  *See 325 Goodrich Ave.,* 891 F. Supp. 2d at 1382  (even when an expert relies "on biased sources to form his opinions," such as counsel, "these potential weaknesses in his testimony only go to the weight of the opinions and not their admissibility"); *United States ex rel. Martin v. Lockheed Martin Corp.*, No. 1:99-cv-285, 2014 WL 1233081 (S.D. Ohio Mar. 25, 2014) ("Lockheed faults the experts for relying on only a set of documents hand-picked by Relators' attorneys…. [C]riticisms of the factual foundations for the experts' opinions bear more on the weight of the evidence than its admissibility.").

Defendants' own authority is in agreement.  *See PODS Enters. v. U-Haul Int'l, Inc.*, No8:12-cv-01479-T-27MAP, 2014 WL 12628664, at *2 (M.D. Fla. June 26, 2014) (cited in

DMSS at 8) (expert's "methodology and conclusions are sufficiently reliable to be admissible, notwithstanding that virtually all of the materials he examined were provided to him by…counsel. While that may be fruitful cross examination bearing on the weight of his opinions, it does not render his methodology of usage and context unreliable.").

The other case law that Defendants cite (DMSS at 7-8) is inapposite. In those cases, the experts ignored data that did not conform with their opinions. For example, in *United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997) ("*Miami*"), an affirmative action case, the court excluded testimony because the expert used erroneous and incomplete data in violation of a court mandate dictating exactly which data to be used. Similarly, in *In re Denture Cream Prods. Liab. Litig.*, No09-2051-MD, 2015 WL 392021 (S.D. Fla. Jan. 28, 2015), a case alleging copper deficiency as a result of using denture adhesive, the court found that the expert's "dismissal of an obvious factor" regarding his calculations of bioavailability of zinc reflected "an attempt to make the available data support Plaintiffs' opinion…." Moreover, it was the opposing parties' expert that challenged the expert's flawed analysis. *Id*. at *18. Here, Defendants offer no expert in support of any element of the instant motion.

Defendants' other cases are similarly inapposite. *See Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (in case involving injuries sustained from turbulence on an airline flight, the court affirmed expert exclusion because he specifically rejected certain facts and opinions, and "did not adequately explain why"); *LeClercq v. the Lockformer Co.*, 00 C 7164, 2005 WL 1162979, *4  (N.D. Ill. Apr. 28, 2005) (expert ignored "uncontested material facts"); *Holden Metal & Aluminum Works v. Wismarq Corp.*, No. 00 C 0191, 2003 WL 1797844, at *3 (N.D. Ill. Apr. 2, 2003) (in case regarding protective coating chipping off

gutters, expert failed to conduct testing, employ an identifiable methodology, and sufficiently account for existing data and research); *DeJager Constr., Inc. v. Schleininger*, 938 F. Supp. 446, 448-49 (W.D. Mich. 1996) (expert made unsupported assertions and projections and improperly opined on defendants' ultimate liability).

By misconstruing the facts and the law, Defendants fail to undermine Dr. Solow or his opinions.

### 2.   *Dr. Solow Was Not Required to Review Deposition Testimony*

Defendants' argument that Dr. Solow is unfamiliar with other deposition testimony is also misplaced.  DMSS at 9.  Defendants claim that this testimony may have provided an alternate explanation for the alleged misconduct.  Even if this were true, it would not preclude Dr. Solow's testimony.  Rejecting an identical argument, one court held that the failure to review deposition testimony would be "proper for cross examination of the witness and perhaps argument to the jury. [It does] not, however, rise to the level of rendering [the expert's] testimony unreliable under *Daubert*." *Allstate Ins. Co. v. Guagliardo Plumbing, Heating, and Air Conditioning, Inc*, No. 3:16cv55, 2017 WL 1928384, at *3 (M.D. Pa. May 10, 2017).  *See United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) (an expert opinion is admissible when "he states the assumptions on which his opinions are based" even if those assumptions omit certain evidence); *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 735 (S.D. W. Va. 2014) (the failure to review documents that refute an expert's conclusion go to weight, not admissibility); *Dunmiles v. Jubilee Towing, LLC*, No. 16-14325, 2017 WL 1212091, at *4 (E.D. La. Apr. 3, 2017) (allowing in evidence testimony of expert who did not review deposition testimony).

In addition, the Supreme Court has long endorsed an expert relying on contemporaneous documents, rather than litigation testimony trying to explain them away. In *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395-96 (1948), the held that when contemporaneous documents contradict oral testimony, the trier of fact should give little weight to the testimony. *See Burns v. Sec'y of the Dep't of Health and Human Services*, 3 F.3d 415, 417 (Fed. Cir. 1993) (special master properly accepted contemporaneous medical records over fact witness testimony).[2]

C.    **Plaintiffs' Claims Do Not Require the Identification of Communications Between the Manufacturer Defendants**

Defendants' assertion that Dr. Solow's testimony should be precluded because he did not identify inter-competitor communications regarding UPPs (DMSS at 20-22) is puzzling, given the Court's previous rejection of this very argument in denying the motion to dismiss. The Court observed:

> It is only in rare cases that a plaintiff can establish the existence of a conspiracy by showing an explicit agreement; most conspiracies are inferred from the behavior of the alleged conspirators, and from other circumstantial evidence (economic and otherwise), such as barriers to entry and other market conditions.

_____

[2] Defendants cite to a series of cases (DMSS at 9-10) that are factually distinct. For example, a case like *Florida Power & Light Co. v. Qualified Contractors, Inc*., No. 9:04-cv-80505-MGC 2005 U.S. Dist. LEXIS 48047 (S.D. Fla. Dec. 2, 2005), where the expert never physically examined an allegedly defective turbine, or even visited the plant where the malfunction occurred, has no meaningful application here. *See also Chadwick v. WellPoint, Inc*., 561 F.3d 38, 48 (1st Cir. 2009) (in sex discrimination case, the court affirmed expert exclusion because "there was a mismatch between the expert's knowledge and qualifications and her ability to helpfully opine on the specifics of this case" and expert was unfamiliar with the details of the case); *In re Fresh Del Monte Pineapples Antitrust Litig*., No. 04-md-1628 (RMB)(MHD), 2009 WL 3241401, *8 (S.D.N.Y. Sept. 30, 2009) (expert's analysis overlooked facts regarding the appropriate market definition, namely that there were two other types of pineapples that were reasonable substitutes for the product at issue)2; *Stein v. Pacific Bell*, No. C 00-2915 SI, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007) (expert "reviewed various documents and then restated as his 'opinions' the findings or allegations in those materials") .

*In re Disposable Contact Lens Antitrust*, 215 F. Supp. 3d 1272, 1294 (M.D. Fla. 2016).

This Court went on to hold that communications between the MDsare not required for Plaintiffs to properly allege a horizontal conspiracy.  Plaintiff's allegations, including those that the MDs "knew of the ECPs' complaints, ABB's pressure on behalf of the ECPs to adopt UPPs, and the fact that each other MD was indeed adopting UPPs for a significant percentage of the contact lens market…plausibly infer participation in a horizontal conspiracy by all." *Id.* at 1299.  Therefore, Dr. Solow is not required to identify communications between the MDs in order to establish an adequate factual basis for his methodology.[3]

Indeed, as this Court recognized, Plaintiffs allege a hub and spoke conspiracy where ABB or influential ECPs communicated among competitors.  *Id.* ("[T]he plausible inference from Plaintiffs' allegations is that ABB, acting as agent to dominant retailers ECPs…as 'hub' facilitated and assisted in the enforcement of the vertical agreements between the MDs and ECP retailers, in the form of mandatory UPPs to which retailers were required to adhere.").  The use of third parties as conduits such as ABB or individual ECPs is well-established in antitrust cases. *See, e.g., In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 242-44 (E.D. Pa. 2016) (upholding theory that defendants used investment advisers as conduits to implement a price-fixing conspiracy); *In re Titanium Dioxide Antitrust Litig.*, 959 F. Supp. 2d 799, 829 (D. Md. 2013) (defendant manufacturers used consultant to confirm each other's price

[3] ████████████████████████████████████████████

increases); *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 1012 (N.D. Ohio 2015) (scrap broker "served as a conduit for Defendant employees looking to build support for another underlay increase in March 2006").

Thus, the failure to identify documents evidencing communications between manufacturers is far from a fatal flaw in Solow's methodology. At most, this would go to weight rather than admissibility.

**D.      Dr. Solow Has Not Misrepresented the Record Regarding the Manufacturer Defendants' UPPs**

Defendants' contention that Dr. Solow misrepresented the record in his discussions of the MDs' UPPs (DMSS at 11-20) finds no support in the record itself.  In fact, Defendants are guilty of the very things they accuse Dr. Solow of doing – cherry-picking statements and taking documents out of context.

Defendants' citations (*id*. at 11), none to antitrust cases, lend them no support.  In all of those cases, the expert's errors were clear.[4]  Here, Defendants' assertions regarding Dr. Solow's purported "errors" are really arguments that, at best, go to the proper weight to be assigned to his opinion, rather than admissibility.

---

[4] For the reasons discussed above, *Miami* (cited in DMSS at 11) is inapposite. The same is true with respect to Defendants' other authorities.  In *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-28DAB, 2011 WL 2174010, at *8  (M.D. Fla. May 31, 2011), the court excluded expert testimony regarding whether a Taser caused death because the expert's opinion was based "solely upon the fact that Oliver was Tasered on the day of his injuries" and did not take into account other factors, including cocaine use.  In *McCorvey v. Baxter Healthcare Corp.*, No. 99-1250-CIV, 2001 WL 36393134, at *7 (S.D. Fla. Sept. 30, 2001), the court held that the expert had not properly ruled out reasons for Foley catheter failure, such as poor storage conditions.  In *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Supreme Court found that an expert's testimony regarding whether exposure to a chemical caused lung cancer improperly relied upon four scientific studies that did not support his conclusion.

1.     *Alcon UPP*





**2.      *Bausch & Lomb UPP***



**3.**    *JJVC UPP*





**4.**     *CVI UPP*



████████████████████████████████████████

Therefore, Defendants' arguments regarding CVI are all easily overcome by viewing the relevant statements in the proper context of Dr. Solow's testimony.

## IV.    DR. SOLOW'S REPORT WILL ASSIST THE TRIER OF FACT

Defendants assert that the testimony of Dr. Solow, an economist with decades of experience in the contact lens industry, will not be helpful to the Court.  DMSS at 23-25. They suggest that the Court can read the relevant documents on its own, or that Defendants' own witnesses are better qualified to explain those documents.  *Id*. at  23. This argument completely misunderstands the standard under Rule 702:

> Rule 702 ... requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. The consideration has been aptly described ... as one of fit.

*Daubert*, 509 U.S. at 591 (citations, quotations and punctuation omitted).   Dr. Solow's testimony easily meets this standard.[6]

---

[6] Defendants' authorities on this issue (DMSS at 24-25) is unpersuasive.  In *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002, an unfair competition and misappropriation of trade secret case regarding computer software, the court held did not allow an expert's testimony because it only "contain[ed] arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language."  In *Johns v. Bayer Corp.*, 09cv1935 AJB (DHB), 2013 WL 1498965, at *27 (S.D. Cal. Apr. 10, 2013), a consumer class action regarding vitamins, the court precluded an expert because "11 ½ pages of [the expert's] 12-page report is nothing more than a synopsis of Bayer's marketing of the Vitamin Products during and before the Class Period, quoting

*Footnote continued on next page*

Expert testimony regarding circumstances that could lead to collusion, like the relevant testimony in the JSR, is regularly accepted throughout the country. "Courts in this circuit and others regularly admit expert testimony that certain conduct or evidence is 'consistent with a finding that Defendants engaged in a conspiracy to fix prices.'" *In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2017 WL 1186416, at *10 (N.D. Ga. Mar. 28, 2017), (quoting *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1355 (N.D. Ga. 2000), and *Tuscaloosa,* 158 F.3d at 565 (expert testimony is admissible so long as it "constitute[s] one piece of the puzzle that the plaintiffs endeavor to assemble before the jury")); *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015) ("*Eggs*") ("An economic expert may permissibly testify as to whether certain conduct is consistent with collusion or an entity or individual's self-interest...."); *U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*, 313 F. Supp. 2d 213, 240 (S.D.N.Y. 2004) ("Economists often explain whether conduct is indicative of collusion.").

Defendants proffer *Tuscaloosa* (DMSS at 24), a decision on a *motion for summary judgment*, to support their assertion that testimony regarding the circumstances of collusion will not be helpful to the trier of fact in the context of a *motion for class certification*. In that case, the court affirmed the district court's exclusion of expert testimony regarding evidence of a conspiracy and bid signaling because such an opinion was "outside of his competence as a statistician...." 158 F.3d at 565. Even reading *Tuscaloosa* in the light most favorable to Defendants, Dr. Solow's testimony would not be precluded. The court in *Tuscaloosa* observed

---

extensively from both third-party market research reports and Bayer's own internal documents." In contrast, the relevant sections of the JSR are an in-depth analysis of the market conditions that led to each MD's adoption and implementation of UPPs.

that the statistician's testimony constituted legal conclusions that were for the trier of fact, not an expert. *Id.* Here, as discussed above, Dr. Solow does not draw any legal conclusions, nor does he need to in order to establish that Plaintiffs' liability claims are subject to common economic proof.[7]

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: July 10, 2017

Respectfully submitted,

*/s/Robert C. Gilbert*
Robert C. Gilbert
Florida Bar No. 561861
robert@gilbertpa.com
gilbert@kolawyers.com
KOPLOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard
Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
Facsimile: (954) 525-4300

*Plaintiffs' Liaison Counsel*

*/s/John A. DeVault, III*
John A. DeVault, III
Florida Bar No. 103979
jad@bedellfirm.com
Michael E. Lockamy
Florida Bar No. 103979
mlockamy@bedellfirm.com
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

*Plaintiffs' Local Counsel*

---

[7] Moreover, courts have rejected Defendants' characterization of *Tuscaloosa*: "The more convincing and widely followed approach allows economic experts to testify about whether certain conduct is indicative of collusion." *Eggs,* 81 F. Supp. 3d at 420-21 (citing *In re Titanium Dioxide Antitrust Litig.,* No. 10–0318, 2013 WL 1855980 (D. Md. May 1, 2013)).

*/s/Christopher M. Burke*
Christopher M. Burke
Walter W. Noss
John T. Jasnoch
Jennifer J. Scott
Kate Lv
SCOTT + SCOTT, ATTORNEYS AT
LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
cburke@scott-scott.com

*/s/Joseph P. Guglielmo*
Joseph P. Guglielmo
Thomas K. Boardman
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com

*Interim Co-Lead Class Counsel*

*/s/Hollis Salzman*
Hollis Salzman
Bernard Persky
Benjamin Steinberg
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
bsteinberg@robinskaplan.com

*Interim Co-Lead Class Counsel*

*/s/Michael P. Lehmann*
Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*/s/Michael D. Hausfeld*
Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
1700 K St. NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
ngiddings@hausfeld.com

*Interim Co-Lead Class Counsel*

*/s/George W. Sampson*
George W. Sampson
Lucinda M. Dunlap
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com
lucinda@sampsondunlap.com

*Plaintiffs' Trial Counsel*

/s/Dennis Stewart
Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: 619-338-1133
Facsimile: 619-338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

/s/Steven C. Marks
Steven C. Marks
Robert C. Josefsberg
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
smarks@podhurst.com
rjosefsberg@podhurst.com

*Plaintiffs' Trial Counsel*

/s/Dan Drachler
Dan Drachler
ZWERLING, SCHACHTER &
ZWERLING, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Telephone:  (206) 223-2053
Facsimile:  (206) 343-9636
ddrachler@zsz.com

Sona R. Shah
ZWERLING, SCHACHTER &
ZWERLING, LLP
41 Madison Avenue, 32nd Floor
New York, NY
Telephone:  (212) 223-3900
Facsimile:  (212) 371-5969
sshah@zsz.com

*Plaintiffs' Counsel*, on brief

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2017, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing

to all CM/ECF participants.

/s/ John A. DeVault III
John A. DeVault III (Florida Bar No. 103979)
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307
jad@bedellfirm.com

1355845.1