**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| In Re: | Case No. 3:15-md-2626-HES-JRK |
|---|---|
| **DISPOSABLE CONTACT LENS**<br>**ANTITRUST LITIGATION** | **Judge Harvey E. Schlesinger**<br>**Mag. Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br><br>**All Class Actions** | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**TO AMEND THE CASE MANAGEMENT AND SCHEDULING ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ........................................................................................................................ 4

I.     PLAINTIFFS CANNOT SHOW "GOOD CAUSE" TO AMEND THE
       CMO. ........................................................................................................................ 4

II.    PLAINTIFFS CANNOT SHOW "EXCUSABLE NEGLECT" FOR
       THEIR FAILURE TO COMPLY WITH THE CMO............................................. 6

       A.     Plaintiffs' Proposal Would Result in Undue Prejudice to
              Defendants. ................................................................................................ 7

       B.     The Proposed Delay Is Unnecessary and Inordinate and Would
              Have an Adverse Impact on the Just and Efficient Resolution of
              This Case.................................................................................................... 9

       C.     Plaintiffs Alone Are Responsible for Their Default. ............................... 11

       D.     Plaintiffs Cannot Establish Good Faith................................................... 12

III.   AT MOST, THE CMO SHOULD BE ADJUSTED TO PERMIT
       PLAINTIFFS TO SUBMIT THEIR EXPERTS' REPORTS BY
       JANUARY 8, 2018 .............................................................................................. 15

CONCLUSION................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballard v. United States*,
   No. 3:15-cv-101-J-25MCR 2016 WL 9560008 (M.D. Fla. Oct. 18,
   2016) ...............................................................................................................15

*Blanton v. Univ. of Fla. ex rel. Bd. of Trs. of Univ. of Fla.*,
   No. 2:05-cv-421-FtM-34SPC, 2008 WL 928114 (M.D. Fla. Apr. 4
   2008) ...............................................................................................................15

*Demint v. NationsBank Corp.*,
   208 F.R.D. 639 (M.D. Fla. 2002).....................................................................11

*In re FG Wilson (Eng'g) Ltd.*,
   No. 10-20843-MC, 2011 WL 5361073 (S.D. Fla. Nov. 7, 2011).................6

*Grilli v. Metro. Life Ins. Co.*,
   78 F.3d 1533 (11th Cir. 1996) .....................................................................14

*Hurley v. Anderson*,
   No. 16-80102-CIV-MARRA, 2017 WL 4304894 (S.D. Fla. May 30,
   2017) ...............................................................................................................15

*Jarvis v. Griffin*,
   No. 6:08-cv-138-Orl-19KRS, 2009 WL 10670740 (M.D. Fla. Apr. 14,
   2009) .................................................................................................................5

*Johnson v. Hercules Inc.*,
   No. CV298-102, 1999 WL 35648160 (S.D. Ga. Apr. 28, 1999)................14

*Molina v. SMI Sec. Mgmt.*,
   No. 11-24245-CIV-ROSENBAUM/SELTZER, 2012 WL 12864927
   (S.D. Fla. July 24, 2012) ...............................................................................14

*Sentinel Capital Orlando, LLC v. Centennial Bank*,
   No. 6:12-cv-785-Orl-40GJK, 2014 WL 12618336 (M.D. Fla. Nov. 23,
   2015) ...........................................................................................................6, 14

*Sosa v. Airprint Sys., Inc.*,
   133 F.3d 1417 (11th Cir. 1998) ......................................................................5

*Vega v. Bank of Am., N.A.*,
   No. 14-cv-21931, 2015 WL 12556300 (S.D. Fla. July 20, 2015) ................9

*Wilcox v. Taco Bell of Am., Inc.*,
   No. 8:10-cv-2383-T-33MAP, 2011 WL 3444261 (M.D. Fla. Aug. 8,
   2011) ........................................................................................................................9

**Statutes & Rules**

FED. R. CIV. P. 6(b)(1) ........................................................................................4

FED. R. CIV. P. 16(b)(4) .......................................................................................4

FED. R. CIV. P. 26(a)(2)........................................................................................12

Local Rule 3.05(c)(3)(D) ....................................................................................10

Defendants ABB Concise Optical Group, LLC; Alcon Laboratories, Inc.; Bausch & Lomb Inc; and Johnson & Johnson Vision Care, Inc. ("Defendants") respectfully submit this memorandum in opposition to Plaintiffs' motion to amend the case management and scheduling order (the "CMO").

## PRELIMINARY STATEMENT

In their papers, Plaintiffs concede they ignored this Court's long-standing deadline for the disclosure of their merits expert reports. As set forth herein, there is neither good cause to amend the established schedule for this case, nor is Plaintiffs' admitted neglect in ignoring the merits expert deadline "excusable" and, accordingly, their request to rewrite the governing CMO to their liking—and delay the entirety of the case schedule—should be rejected. Plaintiffs' motion should be denied.

A motion to amend a case management order should only be granted upon a showing of good cause. Plaintiffs have not shown, and cannot show, good cause here because they did not act diligently in requesting relief (only moving for an extension of time a week after the deadline had passed), and their claim that it would be more efficient to submit merits expert reports at a later date is baseless. While the Court could have set the deadline for the submission of merits expert reports in any number of ways, it elected, at Plaintiffs' request, to set a date certain for their submission, *not* to tie their submission to a class certification hearing or any other event in the case. That was the right way to go then, and it is the right way to proceed now. Plaintiffs' unstated desire is to preserve their ability to reinvent their case if the class certification ruling does not go their way. That desire is not good cause for deferring the deadline for merits expert reports and ordering a wholesale amendment of the CMO. Nor is Plaintiffs' demand for additional fact discovery many months after fact discovery closed on August 4. The Court entered a

comprehensive scheduling order after input from all parties; that schedule has been reaffirmed several times including in a recent ruling rejecting Plaintiffs' effort to hold open the discovery deadline; and there is no reason to abandon the schedule now. Plaintiffs' motion should be denied for this reason alone.  (*See* Section I below.)

Plaintiffs' motion also cannot satisfy the requirement of "excusable neglect" that applies where, as here, a party seeks to amend a case management order with which it has already failed to comply.  Plaintiffs argue that their neglect in failing to adhere to the Court's deadline for submitting merits expert reports was excusable because they "reasonably" believed the deadline had somehow been suspended.  However, this argument is demonstrably false.  The CMO is crystal clear that Plaintiffs' expert reports were due on December 8.  Plaintiffs offer no support for their rationalization that the deadline was somehow suspended.  And, in direct contradiction to what Plaintiffs represent in their motion, they told the Court just weeks ago in their Unopposed Motion and Memorandum of Law to Extend the Deadline to Respond to Defendants *Daubert* Motion that the deadline to submit expert reports should remain in place.  To quote Plaintiffs:  "[t]he requested extension ***will not affect any of the ensuing deadlines in the case schedule***."  (Doc. 695 at 1 (emphasis added).)  Thus, Plaintiffs' own words debunk their argument for excusable neglect.

In any case, review of the four factors cited by Plaintiffs demonstrate that their deliberate resort to self-help cannot establish excusable neglect:

(1)  Plaintiffs' failure to meet the deadline for submission of their expert reports has already caused undue prejudice to Defendants, imposing unnecessary expense, administrative burden and inconvenience.  Moreover, excusing

Plaintiffs' failure to comply with the CMO and permitting them to submit merits expert reports six months from now would prejudice Defendants by unnecessarily delaying the disclosure of information important to the preparation and advancement of this case, and imposing the additional expense associated with prolonging the ultimate resolution of the case.

(2)  The proposed delay is unnecessary and inordinate and would prevent the just and efficient resolution of this case.  Despite their pretensions of diligence, Plaintiffs' delay is self-evident.  They took no steps to seek a change in the schedule until *after* they had ignored the Court's Order—without consulting Defendants or, more importantly, seeking permission of the Court before the deadline had passed.  Plaintiffs' proposed amendment would significantly change every future date in the CMO rather than curing their failure to abide by the December 8, 2017 deadline that was the sole subject of Defendants' motion to preclude or enforce.

(3)  Plaintiffs alone are responsible for the circumstances giving rise to the amendment they seek.  They requested the changes resulting in the governing CMO that established the December 8, 2017 deadline they have now ignored. They made no effort to seek any adjustment in the CMO before their deadline to submit expert reports.  And they failed to submit expert reports according to the existing deadline.

(4)  Plaintiffs cannot establish that they acted in good faith in ignoring the CMO.  Again, the CMO is crystal clear and Plaintiffs' reliance on an earlier version of the order (which was expressly superseded) is misplaced.  Plaintiffs'

claim that they thought the deadlines were no longer applicable is flatly contradicted by their statements to the Court just weeks ago.  If, as Defendants believe, Plaintiffs' motion is an effort to defer the submission of expert reports that will demonstrate the flaws in Plaintiffs' class certification motion and extend the case to impose burden and expense on Defendants, then it is plainly antithetical to a finding of good faith.  Even taking Plaintiffs' explanations at face value, their motion is simply the product of legal error, and legal error cannot justify an extension as a matter of law.  (*See* Section II below.)

While Defendants believe the Court should enforce the CMO as written and preclude Plaintiffs from submitting merits expert reports for the reasons explained in Defendants' motion to preclude, if the Court elects to excuse Plaintiffs' default, it should nonetheless require the submission of any expert reports on a timeline that keeps the case moving on the dates suggested in Defendants' previous submission.  If the Court amends the CMO, it should require Plaintiffs to submit their merits expert reports by January 8, 2018, to be followed by the depositions of Plaintiffs' merits experts, the Defendants' submission of their merits expert reports, and the depositions of Defendants' merits experts.  Preserving the balance of the existing schedule is important to the fair and efficient resolution of this case.  (*See* Section III below.)

## ARGUMENT

## I.   PLAINTIFFS CANNOT SHOW "GOOD CAUSE" TO AMEND THE CMO.

Plaintiffs' motion should be denied because they cannot establish "good cause" to amend the CMO.  *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time");

*Jarvis v. Griffin*, No. 6:08-cv-138-Orl-19KRS, 2009 WL 10670740, at *1 (M.D. Fla. Apr. 14, 2009) (denying motion to amend after deadline in scheduling order because movant failed to make required showing of both good cause and excusable neglect).

As an initial matter, Plaintiffs themselves concede they have not acted diligently to meet their existing deadlines. (Pls.' Mot. at 2 ("Plaintiffs concede that they could have been more diligent in meeting and conferring with Defendants before December 8, 2017 to discuss formally amending the Operative CMO").) And that is reason enough to deny their motion. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (affirming denial of untimely motion to amend outside timeframe set forth in scheduling order because movant lacked diligence in pursuing the requested relief).

Notwithstanding their lack of diligence, Plaintiffs argue "there is good cause to amend" because "doing so is necessary to preserve the logical sequence and timing of events envisioned in the CMOs". (Pls.' Mot. at 9.) According to Plaintiffs, "[a]mending the case schedule so that merits-related expert discovery occurs several months after class certification briefing, as is contemplated in the CMOs, makes sense and will help avoid the ***inefficiencies*** associated with ***Defendants'*** proposed schedule." (*Id.* (emphases added).) However, Defendants are not proposing a schedule; rather, the Court set a schedule more than a year ago at Plaintiffs' request. Defendants have adhered to that schedule since it was adopted and ask only that Plaintiffs do the same. Defendants seek simply to enforce the schedule the Court ordered at ***Plaintiffs'*** request.

Moreover, contrary to Plaintiffs' contention, amending the governing CMO is not "necessary to preserve the logical sequence and timing of events envisioned in the CMOs". (*Id.*) Just the opposite. Changing the CMO as Plaintiffs propose would

frustrate both the logic and the language of the ***governing*** CMO.  It makes perfect sense for the Court and Defendants to have the benefit of expert reports *prior* to the hearing on class certification.  Those reports are certainly relevant to whether Plaintiffs can prove their case on a classwide basis using a common body of evidence and to cross-examining Plaintiffs' experts during an evidentiary hearing on class certification.  Indeed, Defendants believe Plaintiffs' merits expert reports will further illuminate the methodological problems in Plaintiffs' case and underscore why it cannot be tried on a classwide basis using common proof.

Even if Plaintiffs' preferred order of events were more efficient (and it is not), courts in this Circuit have expressly rejected efficiency as a justification in situations of knowing default.  *E.g.*, *In re FG Wilson (Eng'g) Ltd.*, No. 10-20843-MC, 2011 WL 5361073, at *2 (S.D. Fla. Nov. 7, 2011) (granting a motion to quash where the serving party employed a "strategy of ignoring a court-imposed deadline because (unknown to the Court) it now says it privately believed a later deadline was more efficient" and holding that such a strategy "does not constitute good cause to excuse its violation"); *see also Sentinel Capital Orlando, LLC v. Centennial Bank*, No. 6:12-cv-785-Orl-40GJK, 2014 WL 12618336, at *2 (M.D. Fla. Nov. 23, 2015) ("A party's tactical decision, without more, certainly cannot be said to constitute excusable neglect").

## II.  PLAINTIFFS CANNOT SHOW "EXCUSABLE NEGLECT" FOR THEIR FAILURE TO COMPLY WITH THE CMO.

In addition to the fact that Plaintiffs cannot show "good cause", which alone is enough to deny their motion, *see Zurich Am. Ins. Co.*, 2017 WL 638640, at *2 , Plaintiffs' motion to amend should be denied because they cannot show "excusable neglect".  None of the relevant factors supports Plaintiffs' application.

A.     Plaintiffs' Proposal Would Result in Undue Prejudice to Defendants.

Excusing Plaintiffs' failure to comply with the CMO and permitting them to submit merits expert reports six months from now would result in undue prejudice to Defendants.

*First*, Plaintiffs' decision to ignore the Court's Order has already prejudiced Defendants, and Plaintiffs' proposed amendment, if granted, would result in further prejudice.  Plaintiffs' failure to serve their reports as ordered has interfered with Defendants' plans to meet their own deadline under the governing CMO, disrupted Defendants' and their expert teams' schedules, impaired the work necessary to serve reports by January 8 under the CMO's deadline for service of Defendants' merits expert reports and imposed unnecessary costs (including those associated with the present motion practice).  More importantly, extending this case again would impose further burden and expense in an already costly litigation.  Defendants and their experts planned around Court-ordered deadlines far in advance, blocking off large chunks of time to ensure that the deadlines were met, and scheduling other matters around the current schedule in this case.

*Second*, reinventing the CMO, as Plaintiffs propose, would unnecessarily delay the disclosure of information important to the just and efficient resolution of the case. Though Plaintiffs cite to this Court's observation that "the arc of a civil case, including trial, is the quintessential search for truth" (Pls.' Mot at 3 (citing CMO at 3)), it is Plaintiffs who are seeking to delay disclosure of the expert methodologies that support how they actually plan to present this case, until ***after*** a hearing on class certification. Plaintiffs' failure to disclose their merits expert reports also impedes Defendants' ability to prepare their responsive merits expert reports and summary judgment briefing—

7

especially in a case where Plaintiffs will rely heavily on experts as a major part of their case.

*Third*, permitting Plaintiffs' proposed amendment would preclude the Court from taking account of Plaintiffs' merits expert reports in making its class certification decision. Plaintiffs themselves have previously conceded that merits discovery is probative of the class certification issues. In fact, Plaintiffs argued in their last motion to amend the CMO as follows: "***Before*** moving for ***class certification***, ***Plaintiffs need*** to obtain complete, usable transactional data from each Defendant; obtain, process and review, and analyze responsive ***merits discovery*** documents". (Doc. 328 (emphases added).) Yet, Plaintiffs now seek to deprive Defendants and the Court of merits discovery material of the kind they themselves thought necessary for filing their motion for class certification—with the hope of subsequently reinventing their liability theory after a ruling on class certification.[1]

Plaintiffs claim that Defendants would not be prejudiced by their proposed extension because they "ignore the extent to which delay has ***already occurred*** in this case". (Pls.' Mot. at 10.) However, Plaintiffs do not cite any authority, nor are Defendants aware of any, allowing a party to violate the express terms of a case management order simply because other dates previously have been altered. While there have been delays in this case along the way, none has required modification of the CMO as Plaintiffs now contend. Fact discovery concluded on August 4, 2017, with modest

---

[1] Plaintiffs argue that Defendants "have long been aware of Plaintiffs' intention to rely upon merits-related expert testimony" and thus there can be no "unfair surprise". (Pls.' Mot. at 11.) To be sure, Defendants have long expected that Plaintiffs intended to serve merits expert material. It is typically done in these cases, and Plaintiffs asked for a deadline to do so. Plaintiffs deliberate disregard of the deadline, however, came with no notice at all.

exceptions that were approved in advance by the Court.  (Doc. 584.)  None of these exceptions contemplated any further adjustment to the schedule, as Plaintiffs expressly represented to the Court.  (*See* Doc. 568 at 13 n.10 ("The requested relief would have no impact or bearing on any other date or obligation.").)

      B.    <u>The Proposed Delay Is Unnecessary and Inordinate and Would Have an Adverse Impact on the Just and Efficient Resolution of This Case.</u>

Despite their pretensions of diligence, Plaintiffs' delay is self-evident.  They took no steps to seek a change in the schedule until ***after*** they ignored the Court's Order in favor of their preferred means of proceeding.  They simply did as they wished—without consulting Defendants or, more importantly, seeking permission of the Court.  That is reason enough for Plaintiffs' motion to be denied.  *See Vega v. Bank of Am., N.A.*, No. 14-cv-21931, 2015 WL 12556300, at *2-3 (S.D. Fla. July 20, 2015) (noting that "motions for extensions of time should be filed *prior* to the deadline" and finding no diligence when Plaintiffs did not file a motion for extension of time in the five days after the deadline before which the court issued an order to show cause); *Wilcox v. Taco Bell of Am., Inc.*, No. 8:10-cv-2383-T-33MAP, 2011 WL 3444261, at *2 (M.D. Fla. Aug. 8, 2011) (finding length of delay weighed against movant where he did not "promptly file for extension of time to move for class certification, instead including a request for extension in his response to Defendants' Motion to Strike").

In addition, Plaintiffs' proposed amendment would significantly change every future date in the CMO.  For example, Plaintiffs' proposed order moves the completion of merits experts' depositions from March 9, 2018 to September 14, 2018 (a difference of more than six months); moves the deadline for summary judgment motions from April 20, 2018 to October 12, 2018 (a difference of almost six months); moves the deadline for

any oppositions to summary judgment from June 22, 2018 to November 16, 2018 (a difference of almost five months); and proposes a long-deferred date for oral argument on summary judgment (which had not previously been set) for December 5, 2018.

Plaintiffs argue that this factor supports their proposal because the CMO "provided a seven-month gap between the close of class certification briefing and the submission of Plaintiffs' merits expert reports" and their plan would effectively be the same now that "class certification briefing *and class expert work* has extended into December". (Pls.' Mot. at 12 (emphasis added).) However, the governing CMO did not call for events to occur X months or Y days after a preceding event or ruling, and instead established dates certain for events including the class certification briefing (motion and opposition) and submission of merits expert reports. (*See* Doc. 361 ¶¶ 1(a)-(b), (e)-(f).)[2]

Plaintiffs also ignore altogether the fact that their proposed order runs afoul of the Local Rules. The Local Rules provide that this type of case (a complex antitrust class action) should proceed to trial within *three* years of the filing of the complaint, and that any motion to "continue any pretrial conference, hearing or trial is *severely disfavored* because, in light of the need for special judicial attention, counsel should prosecute or defend [cases such as complex antitrust class actions] only if able to accommodate the scheduling demands." Local Rule 3.05(c)(3)(D) (emphasis added); *see also Zurich Am. Ins.*, 2017 WL 638640, at *2 ("[W]here the extension will lead to other pretrial or trial

---

[2] Plaintiffs also argue—incorrectly—that the "schedule has always contemplated serving merits expert reports at least six months after the parties completed class certification expert work and briefing". (*Id.* at 11.) The mere fact that there was a period of time between the dates set by the Court for class briefing and the dates set for the disclosure of merits expert reports does not mean the Court intended to preserve that gap in the event of an extension of the class briefing. If that has been the parties' and the Court's intent, it would have been easy to write the CMO to key the submission of merits expert reports to a determination of the class issues, for example, by stating that Plaintiffs should serve merits expert reports 30 days after a ruling on class certification. The CMO did not do that—for good reason (as discussed above)—and instead did just the opposite.

deadlines being modified, courts will find that the second factor also weighs against a finding of excusable neglect").  Plaintiffs do not address the Local Rule at all.

      C.    <u>Plaintiffs Alone Are Responsible for Their Default</u>.

Nor can Plaintiffs blame anyone but themselves for the circumstances giving rise to the amendment they seek.  It is they who requested the changes resulting in the governing CMO that required them to serve their merits expert reports on December 8, 2017.  It is they who made no effort to seek any adjustment in the CMO before their deadline to submit expert reports.  And it is they who failed to submit expert reports according to the existing deadline, despite the fact that they retained experts more than 10 months ago.  *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 642 (M.D. Fla. 2002) ("Nothing in the record demonstrates or even suggests that the delay resulted from circumstances outside [Plaintiffs'] or their counsel's reasonable control."); *see also Wright*, 2016 WL 3912050, at *6 ("Certainly, the ability to file a motion . . . to extend the deadline . . . was within the control of Plaintiffs").

Contrary to the arguments set forth by Plaintiffs (Pls.' Mot. at 12), the parties' briefing accompanying class certification does not excuse Plaintiffs' blatant disregard of the merits expert deadline.  As an initial matter, the necessity for *Daubert* motion practice was of Plaintiffs' own making, as they chose to submit class certification expert reports that were so methodologically flawed that preclusion was the only option:  a fact that Plaintiffs impliedly concede by their constantly changing econometric methodologies.  More importantly, the submission of *Daubert* motions did not delay anything.  It merely teed up issues that routinely arise in connection with class motions and that do not bear on the submission of merits experts' reports.  Plaintiffs are represented by a large group of the most sophisticated Plaintiffs' lawyers in the country, and there is no reason they

11

could not deal with *Daubert* motions in connection with class certification and submit

merits expert reports in the same general time frame.

      D.    <u>Plaintiffs Cannot Establish Good Faith</u>.

      Finally, Plaintiffs cannot establish excusable neglect because it is axiomatic that a

party's blatant disregard of a known deadline does not constitute good faith.  Plaintiffs

state that "by the time class certification briefing finally concluded on December 4, 2017,

Plaintiffs believed that the December 8, 2017 deadline for serving merits-related expert

reports was no longer operative, given the resulting overlap with class certification expert

briefing, which concluded only four days earlier".  (Pls.' Mot. at 2.)  Plaintiffs' position is

not only incredible, but also refuted by the plain language of the Court's Order and

Plaintiffs' own previous statements to the Court.

      The CMO expressly states that "Plaintiffs shall serve opening Rule 26(a)(2)

merits-related expert witness designations and disclosures and materials relied upon by

December 8, 2017".  (Doc. 361 ¶ 1(e).)  To leave no doubt, the CMO expressly states that

it amends and supersedes the provisions from the Original Order on which Plaintiffs rely:

"the deadlines from the Case Management and Scheduling Order [Doc. 204] are modified

as follows . . . ."  (*Id.* at 3 & *see id.* ¶ 1.)[3]  Further, Plaintiffs previously sought to have

their expert deadlines extended to February 2018 (Doc. 329), and the Court squarely

rejected the request, setting the December 8 date in the governing CMO (Doc. 361

¶ 1(e)).

---

    [3] Plaintiffs repeatedly argue that their proposal would comport with the Original Order (*e.g.*, "the requested scheduling changes are consistent with, and will help preserve, the sequence and timing of events that the Court outlined in **both** the Operative CMO and the initial Case Management Order" (Pls. Mot. at 1)).  That argument blatantly ignores the dispositive fact that the Original Order was expressly superseded as amended.  (Doc. 361 at 3.)

Plaintiffs' claim that they thought the CMO deadlines were somehow no longer operative contradicts both the language of the CMO and their own statements to the Court as recently as one month ago.  In the motion by which Plaintiffs sought an extension to file their opposition brief to Defendants' *Daubert* motion regarding Plaintiffs' expert Williams, which Plaintiffs sought to push to December 4, 2017, Plaintiffs stated that "[t]he requested extension ***will not affect any of the ensuing deadlines in the case schedule***."  (Doc. 695 (emphasis added).)  That included, of course, the December 8 deadline by which Plaintiffs were required to submit their merits expert reports.  Plaintiffs' previous reference to preserving the "ensuing deadlines" shows their current claim to have been confused about the existence of any deadline is false.  Their words also belie their claim that Defendants' desire to hold the schedule Plaintiffs themselves had endorsed just weeks before was somehow a "gotcha".[4]

Nor can Plaintiffs feign ignorance of Defendants' understanding of the application of the governing deadlines.  Defendants expressly referred to the merits discovery deadline in a brief seeking to compel expert depositions and modification of the briefing schedule for class certification.  Specifically, Defendants stated:  "Currently, ***merits-related*** expert discovery must be ***completed*** by March 9, 2018 . . . ."  (Doc. 655 at 14 (emphasis added).)  Defendants also stated that "[t]he requested extension will ***not interfere with any remaining case management deadlines***".  (*Id.*)  Plaintiffs filed a responsive brief and took no issue with Defendants' statements.  Plaintiffs' argument that

---

[4] Equally frivolous is Plaintiffs' assertion that Defendants failed to meet and confer in good faith.  To the contrary, Defendants expressly affirmed their commitment to meet and confer regarding any issues that concerned Plaintiffs during their meet and confer last week, but Defendants also informed Plaintiffs that Defendants would have to act with expedition to mitigate the undue prejudice resulting from Plaintiffs' default.

they have been busy with additional fact discovery and motion practice is no indication of good faith.[5]

      If, as Defendants believe, Plaintiffs' motion is a calculated effort to gain a tactical advantage, then it is plainly not a good faith gesture.  As stated, Plaintiffs' request, if granted, would obfuscate their theory of the case, depriving Defendants of disclosures that are important to preparing their defense generally and are relevant to class certification by revealing how Plaintiffs and their experts would seek to present the case on the merits.  It would also push out the date for summary judgment motions, which Defendants believe would dispose of the case, in a bid to create the specter of even greater expense associated with a prolonged case schedule, and thereby procure additional settlement leverage.  And, ultimately, it would put Plaintiffs in a position to try to reinvent their case after a ruling on class certification.  Such tactical gamesmanship could never constitute excusable neglect.  *See, e.g.*, *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1538 (11th Cir. 1996) (affirming denial of extension of time because movant made "tactical decision" not to meet deadline); *Sentinel Capital Orlando, LLC v. Centennial Bank*, No. 6:12-cv-785-Orl-40GJK, 2014 WL 12618336, at *2 (M.D. Fla. Sept. 4, 2014) ("A party's tactical decision, without more, certainly cannot be said to constitute excusable neglect"); *Johnson v. Hercules Inc.*, No. CV298-102, 1999 WL 35648160, at *5 (S.D. Ga. Apr. 28, 1999) (explaining that the Eleventh Circuit in *Grilli* found a

---

[5] Again, the *Daubert* filings are of Plaintiffs' own making—they were only necessary because Plaintiffs presented class certification experts whose theories, as those experts themselves have conceded, were inconsistent and fundamentally flawed.  Moreover, while Plaintiffs assert that "fact discovery is ongoing", that claim is misleading.  Fact discovery ended on August 4, 2017 with the narrowest of exceptions, and Plaintiffs greatly exaggerate the importance of the outstanding disputes.  *See Molina v. SMI Sec. Mgmt.*, No. 11-24245-CIV-ROSENBAUM/SELTZER, 2012 WL 12864927, at *2 (S.D. Fla. July 24, 2012) ("The discovery rules are not a ticket . . . to an unlimited never-ending exploration of every conceivable matter that captures an attorney's interest." (internal quotation marks omitted)).

"tactical decision to delay [a] request . . . failed to meet the 'excusable neglect' standard of Rule 6(b)(2) because [the movant] lacked good faith").

At best for Plaintiffs, however, their motion is the product of a legal error—which notably Plaintiffs have not even claimed.  But a mistake as to the law—in Plaintiffs' claimed misreading of the governing CMO—does not qualify as excusable neglect. *Blanton v. Univ. of Fla. ex rel. Bd. of Trs. of Univ. of Fla.*, No. 2:05-cv-421-FtM-34SPC, 2008 WL 928114, at *2 (M.D. Fla. Apr. 4 2008) ("[N]o circuit has found that an attorney's failure to grasp the procedural law is excusable neglect"); *Hurley v. Anderson*, No. 16-80102-CIV-MARRA, 2017 WL 4304894, at *3-4 (S.D. Fla. May 30, 2017) ("Because Plaintiffs' attorneys made a mistake of law and, under the law in this circuit, mistakes or ignorance as to the law cannot constitute 'excusable neglect,' the Court need not consider the factors set forth in *Pioneer*.").

## III.    AT MOST, THE CMO SHOULD BE ADJUSTED TO PERMIT PLAINTIFFS TO SUBMIT THEIR EXPERTS' REPORTS BY JANUARY 8, 2018

As is explained in Defendants' motion to preclude, Plaintiffs' failure to comply with the CMO justifies preclusion, not the kind of lengthy extension now sought by Plaintiffs.  *See, e.g.*, *Ballard v. United States*, No. 3:15-cv-101-J-25MCR 2016 WL 9560008, at *1 (M.D. Fla. Oct. 18, 2016) (striking expert report where Plaintiff ignored court-imposed deadlines).

However, if the Court elects not to preclude Plaintiffs from presenting merits expert reports but rather to adjust the CMO, then it should at most extend the deadline for Plaintiffs to serve their merits expert disclosures to January 8, 2018.  That gives them 30 days beyond the deadline they have already disregarded and is feasible, in spite of the intervening holidays, because Plaintiffs have had their experts in place for more than one

year and submitted numerous expert reports on class certification that are expected to mirror what they will say in their merits reports.

Requiring Plaintiffs to submit any merits expert materials no later than January 8, 2018 (30 days from the deadline they ignored) would at least allow the parties to maintain the remainder of the dates in the CMO.  Specifically, if Plaintiffs submit their merits reports on January 8 (which was Defendants' prior deadline for their responsive reports), then Defendants could (1) depose Plaintiffs' merits experts in the ensuing 30 days; (2) serve responsive merits expert disclosures by February 21, 2018; and (3) present their own experts for deposition before summary judgment briefs are submitted on April 20, 2018 (as required by the current schedule).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend the CMO should be denied.  In the alternative, Plaintiffs should be required to submit any merits expert reports no later than January 8, 2018.

RESPECTFULLY SUBMITTED this 18th day of December, 2017.

/s/ David R. Marriott
      David R. Marriott
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
E-Mail: dmarriott@cravath.com

A. Graham Allen (Florida Bar No. 117110)
James M. Riley (Florida Bar No. 700411)
Samuel J. Horovitz (Florida Bar No. 0059015)
ROGERS TOWERS, P.A.
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
Phone: (904) 398-3911
Fax: (904) 396-0663
E-Mail: gallen@rtlaw.com
jriley@rtlaw.com
shorovitz@rtlaw.com

*Attorneys for Alcon Laboratories, Inc.*

Robert Troy Smith (Florida Bar No. 485519)
GRAY ROBINSON, P.A.
50 N Laura Street, Suite 1100
Jacksonville, FL 32202-3611
Phone: (904) 632-8483
Fax: (904) 598-9109
Email: troy.smith@gray-robinson.com

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
Email: wfcavanaugh@pbwt.com

*Attorneys for Johnson & Johnson Vision Care, Inc.*

Terrence Russell (Florida Bar No. 116057)
Jennifer L. Kifer (Florida Bar No. 77498)
HOLLAND & KNIGHT, LLP
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
Phone: (904) 353-2000
Fax: (904) 358-1872
Email: terrence.russell@hklaw.com
jennifer.kifer@hklaw.com

Steven C. Sunshine
Paul M. Eckles
SKADDEN ARPS SLATE MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7860
Fax: (202) 661-0560
Email: steve.sunshine@skadden.com
paul.eckles@skadden.com

*Attorneys for Bausch & Lomb Incorporated*

Benjamin H. Hill, III (Florida Bar No. 094585)
Dennis P. Waggoner (Florida Bar No. 509426)
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Phone: (813) 227-8426
Fax: (813) 221-2900
Email: ben.hill@hwhlaw.com
dennis.waggoner@hwhlaw.com

Edwin John U (pro hac vice)
Patrick J. King (pro hac vice)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Fax: (202) 8795200
Email: Edwin.u@kirkland.com
Patrick.king@kirkland.com

*Attorneys for ABB Optical Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day of December 18, 2017, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to be sent to all CM/ECF participants for this matter.

/s/ David R. Marriott
David R. Marriott