**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>DISPOSABLE CONTACT LENS<br>ANTITRUST LITIGATION | Case No. 3:15-md-02626-HES-JRK<br>Judge Harvey E. Schlesinger<br>Magistrate Judge James R. Klindt |
| This Document Relates to:<br><br>All Class Actions | **FILED UNDER SEAL** |

**DEFENDANT JOHNSON & JOHNSON VISION CARE, INC.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A.    Dr. Glazier and His Facebook Groups ...............................................2

    B.    ████████████████ ..................................................................7

    C.    Litigation Background ............................................................9

        1.    ██████████████ ...............................................9

        2.    ████████████████████████
            ████████████████████████
            ████ ................................................................9

        3.    The Court's Prior Ruling on Dr. Glazier's Facebook Groups ..........10

        4.    ████████████████████████ ...............11

        5.    Plaintiffs Wait to File Their Motion Until Four Months After
            the Meet and Confer Process is Complete, and File
            Immediately Before the Class Certification Hearing .......................12

ARGUMENT .................................................................................................12

I.    The Court Should Not Draw an Adverse Presumption or Inference Because
    JJVCI Did Not Act with Intent to Deprive Plaintiffs of Information ............................12

II.    JJVCI Did Not Have a Duty to Preserve a Third-Party Website It Did Not Have
    Any Legal or Practical Ability to Control .....................................................15

III.    The Evidence Plaintiffs Seek Could Not Possibly Support an Inference of
    Conspiracy .........................................................................................18

CONCLUSION.................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. Aircraft Indus. v. Boeing Co.*,
319 F.R.D. 730 (N.D. Ala. 2017) .................................................................................18

*Bashir v. Amtrak*,
119 F.3d 929 (11th Cir. 1997) .....................................................................................14

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
138 F. Supp. 3d 352, 389-90 (S.D.N.Y. 2015) .............................................................17

*Davenport v. State Farm Mut. Auto. Ins. Co.*,
No. 3:11-CV-632-J-JBT, 2012 U.S. Dist. LEXIS 20944 (M.D. Fla. Feb.
21, 2012) ........................................................................................................................17

*Federico v. Lincoln Military Hous., LLC*,
No. 2:12-cv-80, 2014 U.S. Dist. LEXIS 178943 (E.D. Va. Dec. 31, 2014) .....................16

*Goodman v. Praxair Servs., Inc.*,
632 F. Supp. 2d 494 (D. Md. 2009) .......................................................................15, 16

*Helicopter Support Sys., Inc. v. Hughes Helicopter, Inc.*,
818 F.2d 1530 (11th Cir. 1987) ...................................................................................19

*Higgins v. Koch Dev. Corp.*,
No. 3:11–cv–81, 2013 U.S. Dist. LEXIS 94139 (S.D. Ind. July 5, 2013) .........................17

*Howell v. Buckeye Ranch, Inc.*,
No. 2:11–cv-1014, 2012 U.S. Dist. LEXIS 141368 (S.D. Ohio Oct. 1,
2012) ..............................................................................................................................17

*Jackson v. Haynes & Haynes, P.C.*,
No. 2:16-cv-01297, 2017 U.S. Dist. LEXIS 116582 (N.D. Ala. July 26,
2017) ..............................................................................................................................14

*Living Color Enters. v. New Era Aquaculture Ltd.*,
No. 14-cv-62216 2016 U.S. Dist. LEXIS 39113 (S.D. Fla. Mar. 22, 2016)...............14, 18

*Mamani v. Sanchez De Lozada Sanchez Bustamente*,
No. 07-22459-CIV, 2017 U.S. Dist. LEXIS 127818 (S.D. Fla. Aug. 11,
2017) .......................................................................................................................15, 16

*Mann v. Taser Int'l, Inc.*,
    588 F.3d 1291 (11th Cir. 2009) (per curiam)....................................................18

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)........................................................................................19

*Painter v. Atwood*,
    No. 12-cv-01215, 2014 U.S. Dist. LEXIS 35060 (D. Nev. Mar. 18, 2014) .....................16

*Selectica, Inc. v. Navotus, Inc.*,
    No. 6:13-cv-1708, 2015 U.S. Dist. LEXIS 30460 (M.D. Fla. Mar. 12,
    2015) ........................................................................................13, 14, 15

*Silvestri v. GMC*,
    271 F.3d 583 (4th Cir. 2001) ............................................................................18

*Tesoriero v. Carnival Corp.*,
    No. 16-21769-Civ, 2017 U.S. Dist. LEXIS 156460 (S.D. Fla. Sept. 22,
    2017) ..............................................................................................18

*Wooden v. Barringer*,
    No. 1:16-CV-00378, 2017 U.S. Dist. LEXIS 183170 (N.D. Fla. Nov. 6,
    2017) ..............................................................................................15

**Other Authorities**

Fed. R. Civ. P.  37(e)(1)................................................................................18, 20

Fed. R. Civ. P.  37(e)(2)................................................................................ *passim*

Defendant Johnson & Johnson Vision Care, Inc. ("JJVCI") respectfully submits this

memorandum of law in opposition to Plaintiffs' motion for spoliation sanctions (ECF No.

854).

## PRELIMINARY STATEMENT

There is no legal or factual basis upon which to sanction JJVCI for Dr. Glazier's

decision to delete the "UPP Violations" Facebook Group. JJVCI and its employees had no

involvement in Dr. Glazier's idea to create this group or his decision to end it. Nor was this

group and its Facebook page ever in JJVCI's possession, custody, or control.



Far from being concealed, the group was discoverable by anyone

with internet access and a keyboard. That Plaintiffs failed to take further steps to obtain

discovery they claim is relevant to their case until after Dr. Glazier deleted this Facebook

group is not a valid basis for sanctioning JJVCI.

Plaintiffs have failed to meet any of the requirements for the imposition of spoliation

sanctions. *First*, there is absolutely no evidence that anyone at JJVCI intended to deprive

Plaintiffs of the UPP Violations Group.

██████████████████████████████████████████████████████████████

████████████████████ Only a finding of deliberate, bad-faith deletion of evidence can

support an adverse inference, and Plaintiffs offer absolutely no evidence that JJVCI had

anything to do with the deletion of the UPP Violations Group.

*Second*, there is no basis either in the law or in this Court's preservation order for

imposing on JJVCI a duty to preserve a third party's Facebook group that JJVCI did not

control or administer.  All of the cases cited by Plaintiffs concern parties' responsibility to

preserve *their own* Facebook data on *their own* Facebook accounts.  JJVCI had no ability to

control or preserve the UPP Violations Group, as it was not within JJVCI's possession,

custody, or control. ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████ An adverse presumption or inference against JJVCI is therefore unwarranted.

*Third*, because JJVCI did not create, control, or submit content to the UPP Violations

Group—and Plaintiffs have no evidence to the contrary from JJVCI's own files, where it

would logically exist—the posts in the UPP Violations Facebook group would have shown

only that certain independent ECPs ("iECPs") approved of Defendants' respective UPPs and

wanted them to be enforced.  JJVCI does not dispute that some iECPs liked UPPs, and

Plaintiffs are already able to show that with existing evidence produced by Defendants.  But

as explained in Defendants' summary judgment briefing, this evidence cannot support an

inference of conspiracy.

## STATEMENT OF FACTS

**A.**     **Dr. Glazier and His Facebook Groups**

████████████████████████████████████████████████████

2



Despite its size, the group is what is known in Facebook terminology as a "closed" group (as opposed to a "secret" group). This means that even though only members can view content posted there, ***anyone*** can find the group through a Google or Facebook search, read its description, and request to join it.  Ex. 3.  Thus, the group is not, and never has been, a secret group, as Plaintiffs suggest.  *See* ECF No. 854 ("Pls.' Br.") at 2–3.  Indeed, Plaintiffs' very first complaint referred to the group.  *See* Steinberg Decl. Ex. 75 ¶¶ 77, 92, 101. ▬

---

[1] All exhibits are attached to the accompanying Declaration of Benjamin F. Jackson ("Jackson Decl.") unless otherwise noted.

[2] ▬

[3] ▬

4

███████████████████████████ Therefore, Plaintiffs' claim that the group was "strategically concealed," Pls.' Br. at 1, is simply wrong.

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

██████████████████████████ ████████████████████ But Plaintiffs' claim that JJVCI's "senior management secretly used the UPP Violations Group to exchange non-public information about UPPs, police UPP Violations, and monitor their co-conspirators' commitment to the conspiracy," Pls.' Br. at 1, is contradicted by the record. JJVCI produced several hundred thousand pages of documents and not a single one suggests such a scheme. JJVCI never posted any content in the UPP Violations Facebook group, asked anyone to post content there, or played any role in the deletion of the UPP Violations Group. █████████

████████████████████████████████████████████

████████████████████████████████ There is no evidence

---

[4] ████████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
████████████████████████████

that JJVCI used the group to exchange information, and there is no evidence that any of JJVCI's employees used the group to take note of what their competitors were doing.

Nor is there any evidence that JJVCI "systematic[ally] and extensive[ly]" used the group."  Pls.' Br. at 6.  As support for this statement, Plaintiffs cite only a single example:

████████████████████████████████████[5]  *See* Pls.' Br. at 6.  And even in that instance, ████████████████████████████████████████████

████████████████████████████████████████████

Plaintiffs cite no other evidence of "systematic" use of the group.

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

[5] ████████████████████████████████████████████

6

**B.** ███████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

█████████████████████████████████████

7



**C.**    **Litigation Background**

**1.**

**2.**

Plaintiffs filed this lawsuit on March 3, 2015.  *See* Steinberg Decl. Ex. 75.

9

█████████████████████████████████████████████████ After the case

proceeded to discovery, on April 27, 2016, the Court entered a Document Preservation Order,

which imposed a duty to preserve "currently existing documents within the parties'

possession, custody, or control."  *See* ECF No. 227 (Document Preservation Order) § II.C.

The Document Preservation Order also states that the parties were not under an obligation to

preserve data not retained in the usual course of business.  *See id.* § V.B.  The order required

the parties to exchange lists of custodians and non-custodial sources, which set out the

"presumptive limit on ESI and document preservation and discovery."  *Id.* § II.D.

Importantly, the order did not impose an obligation to preserve third-party websites or data

from those websites.  *See id.* § II.C. █████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

### 3. The Court's Prior Ruling on Dr. Glazier's Facebook Groups

In July 2016, Plaintiffs and Defendants met and conferred about whether Defendants

would produce communications from ODs on Facebook.  On July 15, 2016, JJVCI sent

Plaintiffs a letter stating: "JJVCI does not intend to produce communications from the

---

[7] ███████████████████████████████████████
███████████████████████████████████████

[8] ███████████████████████████████████████
███████████████████████████████████████

█████

websites 'ODs on Facebook' or 'ODWire,' unless those communications are reproduced in
emails or otherwise preserved in our custodians' files.  Any other communications are not
within JJVCI's custody or control."  Ex. 54.  Plaintiffs acknowledged as much by instead
subpoenaing Dr. Glazier on July 22, 2016.  *See* Steinberg Decl. Ex. 159.  ████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████

Dr. Glazier did not initially produce materials in response to the subpoena, and
following extended motion practice, the Court ordered Dr. Glazier to produce the requested
documents in October 2017.  Steinberg Decl. ¶ 51.  As the Court found, (1) "Dr. Glazier is
the only administrator" of ODs on Facebook, (2) "Dr. Glazier acts as the gatekeeper of the
group," and (3) "Dr. Glazier has the sole discretion whether to delete his group at any time he
chooses."  Ex. 55.  The Court also dismissed Dr. Glazier's argument that Plaintiffs first
needed to exhaust their efforts to obtain the requested information from Defendants, stating,
"it does not appear that Defendants have in their control the majority of the information
Plaintiffs seek, especially in light of Dr. Glazier's contention that there are no direct
communications with Defendants regarding UPPs on the ODs on Facebook page.  Thus, the
information is appropriately sought from Dr. Glazier, as the group's administrator."  *Id.*

### 4.    Dr. Glazier Deletes the UPP Violations Facebook Group

Sometime after April 2016—over a year after this litigation was filed—Dr. Glazier
deleted the UPP Violations Group.[9]  JJVCI neither instructed nor suggested that he do so.
████████████████████████████████████████████████████████████████  In

---

[9] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

November 2017, Dr. Glazier gave Plaintiffs' forensic examiner access to ODs on Facebook

so that Plaintiffs could preserve data from the group.  Declaration of Nathaniel C. Giddings

¶ 3 ("Giddings Decl.").  Plaintiffs claim that in reviewing this data "in early 2018," they

"first learned of the UPP Violations Group" and "became aware" of it, Pls.' Br. at 1 and

Giddings Decl. ¶ 7, even though ███████████████████████████████████

███████████████████████

>     **5.    Plaintiffs Wait to File Their Motion Until Four Months After the
>             Meet and Confer Process is Complete, and File Immediately
>             Before the Class Certification Hearing**

Four months ago, on March 8, 2018, Plaintiffs contacted Defendants and requested

that Defendants disclose the steps they had taken to preserve information relating to the UPP

Violations Group.  Ex. 56 (3.5.2018 Steinberg Letter).  On March 22, 2018, the parties met

and conferred regarding Plaintiffs' request, with Defendants reiterating their lack of control

over the group and the fact that they were not in a position to produce any material they did

not control.  Steinberg Decl. ¶¶ 53–55.  Despite the fact that the parties reached an impasse,

Plaintiffs declined to raise this issue with Magistrate Judge Klindt at either of the two

discovery status conferences scheduled for May 31, 2018 and June 28, 2018.  *See* ECF Nos.

866 & 876 .  Instead, Plaintiffs waited until July 30, 2018—two days before the class

certification hearing began—to file their spoliation motion.

## ARGUMENT

**I.    THE COURT SHOULD NOT DRAW AN ADVERSE PRESUMPTION OR
       INFERENCE BECAUSE JJVCI DID NOT ACT WITH INTENT TO
       DEPRIVE PLAINTIFFS OF INFORMATION**

Rule 37(e)(2) does not permit the Court to draw an adverse presumption or inference

against Defendants for purposes of class certification or at summary judgment or trial,

because they did not act with intent to deprive Plaintiffs of the UPP Violations Facebook group.  Rule 37(e)(2) permits an adverse presumption or adverse inference instruction only against "*the party that lost the information*," and even then only if they "*acted with the intent to deprive* another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2) advisory committee's notes on 2015 amendments (emphasis added).  Dr. Glazier is responsible for losing the information—not JJVCI.  JJVCI did not instruct or ask Dr. Glazier to delete the UPP Violations Group, nor did JJVCI suggest that he do so.  ███████████

████████████████████████████████████████████████████████████

███████████████  There is no basis for a Rule 37(e)(2) adverse presumption or inference against *JJVCI*, because *JJVCI* did not act with intent to deprive Plaintiffs of the UPP Violations Facebook group.

As the court found in *Selectica, Inc. v. Navotus, Inc.*, No. 6:13-cv-1708, 2015 U.S. Dist. LEXIS 30460 (M.D. Fla. Mar. 12, 2015), the deletion of material by a nonparty—even one with a business relationship with a party—does not warrant sanctions against that party if the party did not intend to destroy the evidence.  There, after litigation began, a Novatus employee deleted files he had stolen from Selectica and stored on his personal Box.com account, a third party storage service.  After Selectica discovered the deletion, it moved for spoliation sanctions against Novatus.  *Id.* at *5–6.  The Court denied the motion because even though the employee himself acted in bad faith in destroying the files, there was "no evidence that he acted on instructions from Novatus, or with its knowledge or approval."  *Id.* at *16.  There was "no evidence that Novatus acted willfully, purposefully, or otherwise in bad faith when it failed to place a litigation hold on the information in [the employee's] Box

account," and even though Novatus was arguably negligent in failing to place a litigation

hold on the information in the employee's Box.com account, "'[m]ere negligence' in losing

or destroying the records is not enough for an adverse inference." *Id.* at * 16–17 (quoting

*Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)); *see also Jackson v. Haynes & Haynes,*

*P.C.*, No. 2:16-cv-01297, 2017 U.S. Dist. LEXIS 116582, at *8–9 (N.D. Ala. July 26, 2017)

(denying motion for Rule 37(e)(2) adverse inference because party's "being negligent and

irresponsible in maintaining the information and knowing of her obligation to preserve the

integrity of the information are not sufficient to show an intent to deprive" (alteration,

citation, and quotation marks omitted)); *Living Color Enters. v. New Era Aquaculture Ltd.*,

No. 14-cv-62216 2016 U.S. Dist. LEXIS 39113, at *21–22 (S.D. Fla. Mar. 22, 2016)

(declining to impose Rule 37(e)(2) sanctions in absence of evidence of intent to deprive, even

if conduct was arguably negligent).

Here, as in *Selectica*, a Rule 37(e)(2) adverse presumption or inference is

unwarranted, because there is no evidence that Dr. Glazier deleted the UPP Violations Group

based on an instruction or suggestion from JJVCI, or that he did so with knowledge or

approval of anyone from JJVCI.  Alexander Decl. ¶ 6; Miura Decl. ¶ 6; Hamada Decl. ¶ 5;

Ball Decl. ¶ 9; Lee Decl. ¶ 8. ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████ Plaintiffs cannot show intent to deprive on the part of JJVCI, and therefore

there is no basis for an adverse inference instruction.

## II.     JJVCI DID NOT HAVE A DUTY TO PRESERVE A THIRD-PARTY WEBSITE IT DID NOT HAVE ANY LEGAL OR PRACTICAL ABILITY TO CONTROL

The UPP Violations Group was not within JJVCI's possession, custody, or control, and JJVCI therefore had no duty to preserve it.  "A party can only preserve evidence that is within its possession, custody, or control."  *Selectica*, 2015 U.S. Dist. LEXIS 30460, at *9.  Although "[a] party may be in control of evidence that it does not own or physically possess," a party is only "in control" of such evidence if it has "the legal right, authority, or practical ability to obtain the materials upon demand."  *Wooden v. Barringer*, No. 1:16-CV-00378, 2017 U.S. Dist. LEXIS 183170, at *17 (N.D. Fla. Nov. 6, 2017).  "Under the practical ability test, a party might control a non-party based on their relationship, such as where there is a contract empowering the party to obtain information from the non-party or where it is customary in the industry for the non-party to furnish the information to the party."  *Id.*  But "even under the most expansive interpretation of control, the practical ability to demand production must be accompanied by a similar ability to enforce compliance with that demand."  *Mamani v. Sanchez De Lozada Sanchez Bustamente*, No. 07-22459-CIV, 2017 U.S. Dist. LEXIS 127818, at *12 (S.D. Fla. Aug. 11, 2017) (quotation marks omitted).  For this reason, a party does not have a duty to preserve a third-party consultant's documents where the consulting agreement "is silent as to . . . possessory rights, access to, or control of any documents prepared and maintained by [the consultant]."  *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 514–16 & n.10 (D. Md. 2009).

No one from JJVCI was an administrator of the group or had the ability to control access to it or what was published there—as the Court has already found with respect to ODs

on Facebook, "Dr. Glazier ha[d] the sole discretion whether to delete his group at any time he chooses." Ex. 55. JJVCI had no legal right, authority, or practical ability to obtain the materials Plaintiffs claim were deleted, ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████ Dr. Glazier also has no personal stake in the outcome of this litigation, and it is clear that he has a history of being uncooperative with document requests. Accordingly, there is no basis for a Rule 37(e)(2) adverse presumption or inference against JJVCI here.

Plaintiffs misleadingly cite a number of cases for the proposition that "when a party has *access* to relevant evidence on Facebook, that evidence falls within the party's 'possession, custody, or control' and must be preserved and/or produced." Pls.' Br. at 18-19. But these cases state only that the ***parties*** to a litigation have a duty to preserve relevant data ***from their own Facebook accounts***. None of the cases Plaintiffs cite addresses whether a ***party*** has a duty to preserve Facebook data controlled by a ***non-party***. *See Federico v. Lincoln Military Hous., LLC*, No. 2:12-cv-80, 2014 U.S. Dist. LEXIS 178943, at *4–15, 22 (E.D. Va. Dec. 31, 2014) (addressing production of evidence from plaintiffs' own Facebook accounts); *Painter v. Atwood*, No. 12-cv-01215, 2014 U.S. Dist. LEXIS 35060, at *25–26 (D. Nev. Mar. 18, 2014) (imposing adverse inference sanctions on plaintiff for failure to preserve

16

Facebook posts and comments made from her own account); *Howell v. Buckeye Ranch, Inc.*, No. 2:11–cv-1014, 2012 U.S. Dist. LEXIS 141368, at *3–4 (S.D. Ohio Oct. 1, 2012) (plaintiff has a duty to preserve "information in the private sections of her social media accounts"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 389–90 (S.D.N.Y. 2015) (defendant had duty to preserve a Facebook post she wrote); *Higgins v. Koch Dev. Corp.*, No. 3:11–cv-81, 2013 U.S. Dist. LEXIS 94139, at *7–8, (S.D. Ind. July 5, 2013) (compelling plaintiffs to produce data from their own Facebook archives).

*Davenport v. State Farm Mutual Automobile Insurance Co.*, No. 3:11-CV-632-J-JBT, 2012 U.S. Dist. LEXIS 20944 (M.D. Fla. Feb. 21, 2012), also cited by Plaintiffs, likewise misses the mark. In *Davenport*, which does not concern a spoliation motion, the Court ordered the plaintiff to produce any photographs that had been "tagged" as depicting her on social media websites. *Id.* at *1–2. But "tagging" a photograph on social media can give that person a degree of control over the photograph and the ability to easily access, download, and preserve it. Indeed, the Court in *Davenport* noted that "[s]ince, under the applicable discovery rule, Plaintiff is obligated to produce only those photographs in her possession, custody, or control, it is likely that Plaintiff will need to produce only photographs that she posted or in which she was tagged." *Id.* at *5 n.4 (citation and quotation marks omitted). There is no contention that anyone from JJVCI was "tagged" in this fashion on either group.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ There is no basis in the rules or in case law for imposing an adverse presumption or inference against a party because a non-party deleted

evidence on the internet over which the party had no control.[10]  Nor does the Court's

Document Preservation Order impose any such duty.  *See* ECF No. 227.

Even assuming, *arguendo*, that Plaintiffs could establish that JJVCI was negligent in

failing to inform Dr. Glazier of his need to preserve the UPP Violations Facebook group,

"mere negligence in losing or destroying records is not enough for an adverse inference, as it

does not sustain an inference of consciousness of a weak case.  In fact, even gross negligence

is insufficient to make a finding of bad faith."[11]  *Tesoriero v. Carnival Corp.*, No. 16-21769-

Civ, 2017 U.S. Dist. LEXIS 156460, at *64 (S.D. Fla. Sept. 22, 2017) (alteration, citations,

and quotation marks omitted); *see also* Fed. R. Civ. P. 37(e)(2) advisory committee's notes on

2015 amendments (Rule 37(e)(2) "reject[s] cases . . . that authorize the giving of adverse-

inference instructions on a finding of negligence or gross negligence").

### III.  THE EVIDENCE PLAINTIFFS SEEK COULD NOT POSSIBLY SUPPORT AN INFERENCE OF CONSPIRACY

Plaintiffs' effort to argue that it has also satisfied the "prejudice" prong under Rule

37(e)(1), Pls.' Br. at 22, and are therefore entitled to an adverse inference on class

---

[10] If a party cannot fulfill a duty to preserve because they do not own or control the evidence in question, the party may still have "an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."  *Silvestri v. GMC*, 271 F.3d 583, 591 (4th Cir. 2001).  As explained above, ██████████ ██████████████ and in any event, ████████ ██████████ because the group was publicly discoverable by anyone with access to Google or Facebook.

[11] At least one court has suggested that "the 'intent to deprive' standard in Rule 37(e)(2) may very well be harmonious with the 'bad faith' standard previously established by the Eleventh Circuit." *Ala. Aircraft Indus. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (quoting *Living Color Enters.,* 2016 U.S. Dist. LEXIS 39113, at *6); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (per curiam) (setting forth "bad faith" standard for imposing adverse inference due to spoliation).  Plaintiffs have suggested that Defendants' attempt to incorporate such a "bad faith" standard into their proposed preservation order evidences a premeditated plan to spoliate evidence. *See* Pls.' Br. at 14.  Even if such a standard could be found to be more restrictive than "intent to deprive," Plaintiffs have no evidence that any counsel acted at the time with any intent or knowledge of the UPP Violations Group.

certification, summary judgment, or trial also fails.[12]  As explained above, JJVCI never

posted any content in the UPP Violations Group, nor did it otherwise communicate using the

group.  *See* Ex. 7; Ex. 8 at '391–92; Ex. 9.  At best, additional evidence from the UPP

Violations Facebook group could show only that certain iECPs approved of Defendants'

UPPs and desired that they be enforced against perceived violators.  A customer's support for

the adoption and enforcement of a manufacturer's unilateral pricing policy is equally

consistent with the customer's independent economic self-interest and thus does not

constitute evidence of a conspiracy.  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752,

763 (1984).  The Supreme Court and the Eleventh Circuit have held that receiving

complaints about policy violations and taking corrective action is appropriate and legal.  *Id.*

at 763; *see also Helicopter Support Sys., Inc. v. Hughes Helicopter, Inc.*,818 F.2d 1530, 1535

(11th Cir. 1987) (holding that a manufacturer taking corrective action on the basis of a

complaint does not go beyond what *Colgate* allows).  And in any event, ██████████

████████████████████████████

        Having failed to find ***any*** evidence in the millions of emails and other documents

produced by any of the manufacturer defendants that they communicated regarding

implementing UPPs, Plaintiffs now resort to using the deletion of this Facebook group to

suggest that this was the source of such communications.  ████████████████

████████████████████████████████████  Nor is there any

evidence JJVCI attempted to conceal evidence of the UPP Violations Group.  ████████

───────────────────────

[12] The UPP Violations Group also has no bearing on Plaintiffs' pending motion for class certification, including whether Plaintiffs have a common method of proving standing, injury, or damages on a classwide basis.

████████████████████████████████████████████████ Thus, Plaintiffs

cannot show they suffered any prejudice from Dr. Glazier's deletion of the UPP Violations

Facebook group, and no sanctions are warranted under Rule 37(e)(1).[13]

## CONCLUSION

Plaintiffs' motion for spoliation sanctions should be denied in its entirety.

Dated: August 31, 2018

_/s/ R. Troy Smith_____
Robert Troy Smith
Florida Bar No. 485519
GRAYROBINSON, P.A.
50 N Laura Street, Suite 1100
Jacksonville, FL 32202-3611
Phone: (904) 632-8483
Fax: (904) 598-9109
troy.smith@gray-robinson.com

William F. Cavanaugh, Jr.
Jonathan H. Hatch
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jhatch@pbwt.com

_Counsel for Johnson & Johnson
Vision Care, Inc._

---

[13] JJVCI also joins in the arguments presented in Alcon Laboratories, Inc.'s opposition to Plaintiff's motion.

## CERTIFICATE OF SERVICE

I certify that on August 31, 2018, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system, which will send a notice of electronic

filing to all CM/ECF participants.


*/s/ R. Troy Smith*

Robert Troy Smith
Florida Bar No. 485519
GRAYROBINSON, P.A.
50 N Laura Street, Suite 1100
Jacksonville, FL 32202-3611
Telephone: 904-632-8483
Facsimile: 904-598-9109
Email: troy.smith@gray-robinson