**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>DISPOSABLE CONTACT LENS ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Class Actions | Case No. 3:15-md-02626-HES-JRK<br>Judge Harvey E. Schlesinger<br>Magistrate Judge James R. Klindt |

**DEFENDANTS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF MAINTAINING ELEVEN SPOLIATION
EXHIBITS UNDER SEAL**

## INTRODUCTION

Contrary to Plaintiffs' contention, Defendant Johnson and Johnson & Johnson Vision Care ("JJVC") has good cause for requesting that a handful of documents attached to briefing associated with Plaintiffs' Motion for Spoliation Sanctions against JJVC and Alcon (ECF Nos. 854, 879, 881, 882, 885, 901, 913 & 914) remain sealed. As JJVC articulated in the Joint Notice Regarding Unsealing of Plaintiffs' Motion for Spoliation Sanctions (ECF No. 944), the documents in question contain details about JJVC's marketing strategies, which are critical to JJVC's ability to compete effectively. Giving its competitors access to its marketing playbook would severely curtail JJVC's ability to win customers from these competitors. Plaintiffs' baseless assertions that the information is stale are unavailing.

Plaintiffs also fail to address the Court's question of whether there is "any overlap between the spoliation exhibits and the dispositive exhibits that Plaintiffs are seeking to unseal." (Order, ECF No. 960 at 1.) This is because, simply put, there is not. The information in these documents is irrelevant to the core issues in this case—and, therefore, to the public's understanding of how the Court resolves these issues. *See United States v. Lee Mem'l Health Sys.*, No. 2:14-cv-437-FtM-38CM, 2018 U.S. Dist. LEXIS 177525, at *27-29 (M.D. Fla. Oct. 16, 2018) (sealing documents containing information "irrelevant to the allegations"). In short, the public's interest in unsealing the documents in question is minimal.

JJVC understands the importance of transparency in judicial proceedings and wants to seal only those documents that contain extremely sensitive information. To that end, JJVC reexamined the 13 documents it has requested to seal and determined that two of these,

Exhibit 123 to the Declaration of Benjamin Steinberg (ECF No. 854-1 (hereinafter "Steinberg Declaration")) and Exhibit 50 to the Declaration of Benjamin Steinberg in Support of Plaintiffs' Reply Brief (ECF No. 901-1 (hereinafter "Steinberg Reply Declaration")) are no longer sensitive enough to justify sealing. Accordingly, JJVC withdraws its request to seal those three documents.

The arguments below apply to the eleven remaining documents: Exhibits 38, 98, 99, and 122 to the Steinberg Declaration (ECF No. 854-1); Exhibits 51 and 52 to the Steinberg Reply Declaration (ECF No 901-1); Exhibits 22, 23, 24, and 25 to the Declaration of Benjamin Jackson (ECF No. 881-1 (hereinafter "Jackson Declaration")), and Exhibit 1 to the Declaration of Benjamin Jackson in Support of Defendants' Surreply Brief (ECF No. 914-1 (hereinafter "Jackson Surreply Declaration")).

JJVC respectfully requests that the Court maintain these documents under seal, as they contain sensitive information that would cause injury to JJVC if it became public.

## ARGUMENT

Plaintiffs' only argument in favor of unsealing JJVC's documents is that they are "old, stale documents that have no current proprietary value." *E.g.*, ECF No. 962 at 2, 3. Plaintiffs offer no evidence or explanation to support their position, aside from the documents' age.

In reality, the documents outlining JJVC's social media strategy are relevant to JJVC's marketing *today*, and their publication would cause significant harm to JJVC by revealing its marketing playbook to competitors. *See* Declaration of Lauren Westin (hereinafter "Westin Declaration"). Just as the basic principles of platforms like Twitter have

3

not changed over the last few years, neither has JJVC's approach to reaching consumers and customers on those platforms. *Id.* The documents in question provide guidance on strategic decisions about post timing, content, style, and other considerations, which remain essential to JJVC's social media marketing. *Id.*

As such, the cases on which Plaintiffs rely are inapposite. They stand for the proposition that old documents should not remain under seal ***to the extent that they relate to discontinued business practices***. *See, e.g.*, *Zavala v. Wal-Mart Corp.*, No. 03-5309 (JAG), 2007 WL 2688934, at *9-10 (D.N.J. Sept. 12, 2007) ("[T]hese materials . . . relate to . . . a commercial practice which Wal-Mart has since abandoned"); *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 WL 11430775, at *7 (E.D.N.Y. May 24, 2016) ("This supposedly competitive information . . . concerns lending practices most of which have long since been discontinued"). Here, by contrast, the strategies outlined in the documents are still in effect.

## I. JJVC HAS GOOD CAUSE FOR KEEPING EIGHT "ADVICE AND ANALYSIS" DOCUMENTS UNDER SEAL

As explained below, the eight remaining sealed documents in the "advice and analysis" category form the very backbone of JJVC's social media strategy.

- Exhibits 98, 99, and 122 to the Steinberg Declaration (ECF No. 854-1) lay out a specific approach to social media that becomes the foundation of JJVC's current strategy. A competitor who saw this information could implement its own social media policy designed to counter JJVC's. Westin Decl. at ¶¶ 3, 4, 6.

- Exhibits 23, 24, and 25 to the Jackson Declaration (ECF No. 881-1) contain specific advice about connecting with consumers on social media, relying on principles that have not changed since 2015. Should JJVC's competitors received this information, they could institute the same strategy that JJVC has employed. Westin Decl. at ¶¶ 3, 4, 6.

- Exhibit 22 to the Jackson Declaration (ECF No. 881-1) and Exhibit 51 to the Steinberg Reply Declaration (ECF No. 901-1) are detailed summaries of extremely sensitive, specific information about how JJVC can better support customers, including through creative uses of LinkedIn, Twitter, Instagram, and other platforms.  Again, because the basic mechanisms of those platforms remain unchanged, these documents essentially outline JJVC's current social media strategy.  To release these to competitors would hand over JJVC's playbook in the most important modern marketing landscape. Westin Decl. at ¶¶ 3-6.

Plaintiffs argue that three of these documents mention a UPP, which JJVC concedes is relevant to the subject matter of this action.  As JJVC no longer maintains a UPP, the release of information about JJVC's UPP does not carry with it the competitive threats posed by the publication of JJVC's social media strategy.  Accordingly, in the following three documents identified by Plaintiffs, JJVC would be amenable to the redaction of all but the information regarding the UPP, as reflected in the redacted versions of these documents attached to the accompanying Declaration of Kathrina Szymborski.  The portions pertaining to JJVC's UPP are quoted below:

- Exhibit 122 to the Steinberg Declaration (ECF No. 854-1):  The portion regarding UPP reads, "Strengths—upp[.]  Grab attention now with our programs, looks favorable."

- Exhibit 22 to the Jackson Declaration (ECF No. 881-1) and Exhibit 51 to the Steinberg Reply Declaration (ECF No. 901-1):  The portion regarding UPP reads, "They [the Social Media Advisory Board] felt we could be doing more to educate ECPs on UPP and why we are supporting it."

Because JJVC's social media marketing strategy is confidential, sensitive information that would be valuable to competitors, the documents outlining this strategy should be not be made public.

## II. JJVC Has Good Cause for Keeping Three Internal Sales and Product Strategy Document Under Seal

Plaintiffs incorrectly argue that JJVC "offers no explanation" as to what unfair advantage the disclosure of internal sales and product strategy documents would impart on JJVC's competitors. In fact, JJVC explained exactly what confidential information these documents include in the Joint Notice. ECF No. 944. Specifically:

- Exhibit 38 to the Steinberg Declaration (ECF No. 854-1) contains competitively sensitive information about JJVC's R&D pipeline, which is FOIA exempt and was voluntarily provided to FTC with the expectation that it would remain confidential. The subsequent disclosure of such documents would hamper FTC's ability to gather confidential information from companies like JJVC through voluntary disclosure.

- Exhibit 52 to the Steinberg Reply Declaration (ECF No. 901-1) contains a "sales strategy document concerning JJVCI's assessment of its 'must win' customer accounts and revealing customer specific sales figures." ECF No. 962 at 6. JJVC's assessments of the most important accounts—including dollar amounts associated with each of those accounts—constitute valuable competitive information and do not change drastically from year to year.

- Exhibit 1 to the Jackson Surreply Declaration includes launch plans, competitor comparisons, and financial projections *through 2020*. ECF No. 914-1. Because it includes internal analysis of JJVC's future performance, this document is not stale.

Accordingly, the release of these documents would harm JJVC.

## III. There Is No Overlap Between the Spoliation Exhibits and the Summary Judgment Exhibits

The Court also asked the parties to address whether there is "any overlap between the spoliation exhibits and the dispositive exhibits that Plaintiffs are seeking to unseal." Order, ECF No. 960 at 1. Plaintiffs vaguely assert that these exhibits are "incorporated by reference" into their summary judgment motion, in effect conceding that the documents are

6

not cited in, attached to, or mentioned in any dispositive motion. This further underscores their irrelevance to the core issues in the case.

Indeed, the documents at issue here have not been mentioned in any Court order. *See* ECF No. 943. Where documents contain information with little relevance to the issues before the court, the public's interest in those documents is minimal. *See Lee Mem'l Health Sys.*, 2018 U.S. Dist. LEXIS 177525, at *27-29. Because the eleven documents discussed herein have not been relied on by the Court in the disposition of any dispute or mentioned by any party in briefing of dispositive motions, and because the harm to JJVC should they be unsealed would be significant, JJVC's interest in sealing outweighs the public's interest in disclosure.

## CONCLUSION

For the reasons above, JJVC respectfully requests that the Court maintain under seal eleven exhibits to the briefing regarding Plaintiffs' Motion for Spoliation Sanctions against JJVCI and Alcon (ECF Nos. 854, 879, 881, 882, 885, 901, 913 & 914).

Dated this 14th day of May, 2019.

By: /s/ *R. Troy Smith*
R. Troy Smith (Florida Bar No. 485519)
GRAY ROBINSON, P.A.
50 N Laura Street, Suite 1100
Jacksonville, FL 32202-3611
(904) 632-8483
troy.smith@gray-robinson.com

William F. Cavanaugh, Jr.
Jonathan H. Hatch
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

                wfcavanaugh@pbwt.com
                jhatch@pbwt.com

*Attorneys for Johnson & Johnson Vision Care, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 14, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

                /s/ *R. Troy Smith*