**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **In Re:** | **Case No. 3:15-md-2626-HES-JRK** |
| **DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Judge Harvey E. Schlesinger** <br> **Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:** <br> **All Class Actions** | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT AGREEMENT WITH DEFENDANT BAUSCH & LOMB, INC.**
**AND AMENDMENT OF PROPOSED NOTICE PLAN**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 4

    A.  Procedural History ..................................................................................... 4

        1.  Lead Counsel's Investigation.......................................................... 4

        2.  The Course of Proceedings ............................................................. 5

        3.  CVI Settlement................................................................................ 9

        4.  Summary of the Settlement Terms .................................................. 9

III.  ARGUMENT ..................................................................................................... 12

    A.  The Legal Standard for Preliminary Approval ....................................... 12

    B.  This Settlement Satisfies the Criteria for Preliminary Approval ........................ 14

    C.  This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations ............................................................................................. 15

    D.  The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate, and Reasonable ....................................................................... 16

        1.  Likelihood of Success at Trial ...................................................... 16

        2.  Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair .................................... 17

        3.  Complexity, Expense, and Duration of Litigation .................................... 18

        4.  Stage of the Proceedings ............................................................... 18

    E.  The Court Should Allow Notice of the Settlement to Be Included as Part of the Notice Plan Subject to Plaintiffs' Pending Motion for Notice ............................. 19

    F.  The Court Should Defer Distribution of the B&L Net Settlement Fund.............. 20

IV.  CONCLUSION ................................................................................................. 20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ............................................................................13

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ......................15, 17, 18

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...........................................................................12, 13, 16

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...........................................................................13, 15, 17

*Francisco v. Numismatic Guaranty Corp. of Am.*,
    No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)..................................................16

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-1775 (E.D.N.Y. Nov. 6, 2015) ...............................................................19

*In Re: Disposable Contact Lens Antitrust Litigation*,
    Case No. 3:15- md-2626-J-HES-JRK............................................................................5

*In re Polyurethane Foam Antitrust Litig.*,
    No. 10-md-2196 (N.D. Ohio Nov. 6, 2014).................................................................19

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................12

*In re Vitamin C Antitrust Litig.*,
    No. 06-md-1738 (E.D.N.Y. June 15, 2012).................................................................19

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .....................................................................15, 17, 18

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992)........................................................................18

*Smith v. Wm. Wrigley Jr. Co.*,
    No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010)......................................13, 14

*Turner v. Gen. Elec. Co.*,
    No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275
    (M.D. Fla. Sept. 13, 2006) ...............................................................................15

**Statutes, Rules, and Regulations**

15 U.S.C.
    §1............................................................................................................................5
    §3............................................................................................................................5

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................................12
    Rule 23(b)(3)...............................................................................................9, 10, 11
    Rule 23(c)(2)(B)...................................................................................................12
    Rule 23(e)..............................................................................................................12
    Rule 23(f) .......................................................................................................2, 3, 8

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, Third, §30.42 (West 1995) .................................13

4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) ..........................................13, 15

Plaintiffs and Lead Counsel respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of the Settlement Agreement with Bausch & Lomb, Inc. ("B&L"), attached as Exhibit A ("Settlement" or "Agreement"), which will resolve all claims against B&L in the Action.[1]

For the reasons set forth herein, the Court should grant Preliminary Approval because this Settlement provides substantial and meaningful relief for the Settlement Class, and because the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, the Settlement, under which B&L will pay $10,000,000 (10 million dollars) in cash to create a Settlement Fund for the Settlement Class.  *See* Declaration of Joseph P. Guglielmo ("Guglielmo Decl."), ¶¶2, 27, attached hereto as Exhibit B.  The Settlement satisfies all Eleventh Circuit criteria for Preliminary Approval.

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court take the following initial steps in the settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) approve and order the revisions to the proposed notice plan and the proposed opt-out and objection procedures; (3) stay the Action against B&L pending final approval of the Settlement; and (4) enter the [Proposed] Order Preliminarily Approving Class Settlement and Amended Long Form and Short Form Notice, attached hereto as Exhibit C.

## I.      INTRODUCTION

Beginning in early 2015, Plaintiffs filed suits against the major manufacturers of disposable contact lenses, B&L, Johnson & Johnson Vision Care ("JJVC"), Alcon Laboratories, Inc. ("Alcon"), CooperVision, Inc. ("CVI"), and their primary distributor, ABB Concise Optical Group ("ABB"), collectively, "Defendants," alleging that their "Unilateral Pricing Policies" ("UPPs")

---

[1]      All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

were illegal restraints on competition under Section 1 of the Sherman Act and various state unfair competition laws.  Eventually, on June 10, 2015, all of the cases were consolidated before this Court by the United States Judicial Panel on Multidistrict Litigation.  (ECF No. 1.)

The Action involved sharply opposed positions on several fundamental legal questions, including whether B&L entered into a conspiracy to restrict competitive pricing practices in violation of federal and state competition laws.  Guglielmo Decl., ¶¶20-26.  B&L consistently argued that its UPP was entered into without collusion with other market participants and done within the bounds of established law.  *Id*., ¶4.

Plaintiffs and Lead Counsel actively litigated the Action for the past four and a half years. The parties engaged in significant motion practice and extensive formal discovery, including 68 depositions of Plaintiffs, Defendants' employees, and 35 third parties, and the production of more than 4.1 million pages of documents and voluminous electronically stored information by Defendants and third parties.  *Id*., ¶18.  The parties briefed and argued Plaintiffs' motion for class certification, involving thousands of pages of briefing, exhibits, expert reports, and two days of argument.  *Id*., ¶21.  The parties also briefed Defendants' motion for summary judgment, involving thousands of pages of briefing, exhibits, multiple expert reports, and two days of arguments.  *Id*., ¶26.

On December 4, 2018, the Court issued an order granting Plaintiffs' motion for class certification in its entirety.  *Id*., ¶23.  On December 18, 2018, Defendants filed petitions to appeal the Court's class certification order pursuant to F.R.C.P. 23(f).  The parties briefed Defendants' petitions.

On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Court's class certification order. *Id.*, ¶25. On June 20, 2019, the Eleventh Circuit denied Defendant Alcon's and B&L's petition to appeal the Court's class certification order. *Id.*

Beginning in August 2018, counsel for Plaintiffs and counsel for B&L began bilateral settlement discussions. *Id.*, ¶28. Ultimately, after 12 months of negotiations, which included both in-person, written, and telephonic communications, the parties reached an agreement in principle on August 17, 2019 to resolve the Action based on B&L's payment of $10,000,000. *Id.*, ¶¶28-29. On August 19, 2019, the parties executed the Settlement Agreement which memorialized the material terms of the Settlement, including the notice and administration of the Settlement. *Id.*, ¶29.

Reflecting the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Settlement Lead Counsel negotiated a $10,000,000 cash payment, which represents between 72% and 81% of the maximum recovery Settlement Class Members could have achieved at trial, based on Dr. Michael Williams' merits report. *Id.*, ¶30.

On August 8, 2018, Plaintiffs filed their Uncontested Motion for Appointment of a Notice Administrator, Approval of Notice Plan, Approval of Deferring Distribution of the CVI Net Settlement Fund, and Setting a Schedule for Notice and Final Approval of the CVI Settlement (ECF No. 1011) (the "Motion for Notice").

Plaintiffs now seek to amend the proposed notice set forth in the Motion for Notice to include information pertaining to the Settlement. Plaintiffs believe that providing the additional information relating to the Settlement, along with the prior CVI Settlement and class certification in one notice would be most efficient and eliminate any potential confusion by class members if notice of the Settlement were to be sent out separately. Copies of the proposed Amended Email

Notice, Postcard Notice, Publication Notice, Internet Banner Advertisement and Long Form Notice are attached as Exhibits 2-6 to the Supplemental Declaration of Cameron R. Azari, Esq. on Notice Plan (Ex. D).

Plaintiffs and Lead Counsel now seek Preliminary Approval so they can notify Settlement Class Members of the terms of the Settlement, and provide them with an opportunity to opt out of, or object to, the Settlement.  For the reasons set forth herein and in the Guglielmo Declaration, Plaintiffs and Lead Counsel respectfully request that the Court grant Preliminary Approval and approve the proposed Amended Notice to provide for the inclusion of this settlement to Settlement Class Members.

## II.     STATEMENT OF FACTS

### A.     Procedural History

Plaintiffs are seeking monetary damages and injunctive relief from the Defendants, on behalf of themselves and all others similarly situated who purchased disposable contact lenses subject to UPPs.  Plaintiffs alleged that Defendants instituted UPPs as a means of jointly raising the price of disposable contact lenses.  Plaintiffs further alleged that Defendants' actions violated Section 1 of the Sherman Act and several state competition laws.  Guglielmo Decl., ¶3.

B&L and other Defendants have denied all of Plaintiffs' allegations of wrongdoing.  B&L consistently defended its conduct by, *inter alia*, arguing that its UPP complied with the law, and that it never entered into an agreement with distributors, retailers, or with the other Defendants to adopt, implement, or enforce the UPPs.  B&L further advanced additional defenses.  Guglielmo Decl., ¶4.

#### 1.     Lead Counsel's Investigation

Lead Counsel devoted substantial time to investigating the potential claims against Defendants.  Lead Counsel interviewed customers and potential plaintiffs to gather information

about Defendants' conduct and the impact on customers.  *Id.*, ¶5.  This information was essential to Lead Counsel's ability to understand the nature of B&L's conduct, the nature of the UPPs, and potential remedies.  Lead Counsel also consulted with experts to develop and refine their legal and damages theories.  *Id.*

### 2. The Course of Proceedings

On March 3, 2015, Plaintiffs John Machikawa, Bernadette Goodfellow, and Georgina Lepe filed the first consumer complaint against Defendants in the United States District Court for the Northern District of California ("*Machikawa*"), alleging that Defendants had entered into UPPs in violation of the Sherman Act and various state consumer protection laws and seeking, *inter alia*, monetary damages, interest, attorneys' fees, restitution, and equitable relief.  *Id.*, ¶6.

On June 10, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated and centralized Machikawa, along with all other pending class action lawsuits regarding the above-described conduct to the United States District Court for the Middle District of Florida.  (ECF No. 1.)  The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, Case No. 3:15- md-2626-J-HES-JRK.

On October 7, 2015, the Court granted Lead Counsel's motion appointing Hausfeld LLP, Scott+Scott Attorneys at Law LLP, and Robins Kaplan LLP as interim lead counsel.  (ECF No. 116.)  On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act.  (ECF No. 133.)

On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint. (ECF No. 146.) Following briefing and oral argument, the Court denied Defendants' motion. (ECF Nos. 185, 190.) On July 27, 2016, Defendants filed their Answers and Affirmative Defenses. (ECF Nos. 266-70.)

Over the course of the litigation, Plaintiffs and Defendants have participated in regularly scheduled status calls with Magistrate Judge James R. Klindt. *Id*., ¶19. These calls have been the primary means through which discovery disputes have been litigated, including motion practice with B&L. *Id.*

On July 15, 2015, the Court entered a Case Management Order pertaining to the MDL, the first in a series of scheduling orders to be applicable to this case. (ECF No. 61.)

Discovery commenced on April 1, 2016. (ECF No. 204.) During the course of discovery, Lead Counsel also served written discovery requests on Defendants and certain third parties. In response, Defendants and certain third parties produced approximately 4.1 million pages of documents, as well as voluminous electronic data files and spreadsheets in native format. Lead Counsel and their experts reviewed and analyzed substantially all of the documents and electronic data files produced by Defendants. Guglielmo Decl., ¶13.

Plaintiffs similarly took substantial discovery of B&L. Guglielmo Decl., ¶¶12-18. Plaintiffs propounded their first Request for Production of Documents and First Set of Interrogatories to B&L on March 7, 2016; and their Second Request for Production of Documents on April 3, 2017. *Id*., ¶14.

B&L initially limited its production of documents to the documents produced in the previous government investigation which were made to the New York Attorney General's office.

However, as a result of negotiations, B&L produced additional documents as a result of Plaintiffs' efforts. *Id.*, ¶15.

B&L and Plaintiffs' counsel engaged in negotiation on the adequacy of B&L's privilege logs (including an NYAG log, and an initial categorical log produced for this action. Objecting to the content and format of B&L's categorical privilege logs, Plaintiffs' counsel conducted frequent teleconferences and engaged in correspondence with B&L's counsel and ultimately moved to compel a more detailed privilege log. On May 25, 2018, Magistrate Klindt, granted, in part Plaintiffs' motion to compel. (ECF No. 825.) As a result of these negotiations and motion practice, B&L agreed to produce a revised privilege log and documents it initially deemed privileged but which, after further review, believes are not privileged.

Throughout discovery, B&L produced more than 571,000 documents, totaling more than 2.3 million pages. In addition, Plaintiffs' counsel took five depositions of B&L employees. *Id.*, ¶17.

On March 1, 2017, Plaintiffs filed the operative complaint in this matter. (ECF No. 395.) On March 3, 2017, Plaintiffs filed a Motion for Class Certification and Supporting Memorandum of Law, and accompanying expert reports. (ECF Nos. 396-98.) On June 15, 2017, Defendants filed their Motion to Strike certain portions of Plaintiffs' Expert Reports and their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, accompanying expert reports, and other declarations. (ECF Nos. 500-510, 693.) Plaintiffs filed their Reply and supporting declarations to the Class Certification Opposition on September 8, 2017 as well as their oppositions to Defendants' Motion to Strike certain portions of Plaintiffs' Expert Reports. (ECF. Nos. 611-618, 715.) On October 20, 2017, Defendants filed their Sur-Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Class Certification. (ECF Nos. 674-678.) On August 1 and

2, 2018, the Court held an evidentiary hearing on Plaintiffs' class certification motion, which involved examination and cross examination of Plaintiffs' and Defendants' experts, presentation of more than 50 exhibits and more than ten hours of argument relating to Plaintiffs' motion for class certification and Defendants' motion to strike portions of Plaintiffs' expert reports.  (ECF Nos. 865-1, 865-2, 866.)

On December 4, 2018, the Court issued an order granting Plaintiffs' motion for class certification and certified the following class, among others (the "Litigation Horizontal Class"):

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

(ECF No. 940) ("Class Certification Order").  The Court appointed Hausfeld LLP, Scott+Scott Attorneys at Law LLP, and Robins Kaplan LLP as counsel for the class, and appointed named Plaintiffs Rachel Berg, Miriam Pardoll, Jennifer Sineni, Elyse Ulino, Susan Gordon, Cora Beth Smith, Brett Watson, Tamara O'Brien, Sheryl Marean, Catherine Dingle, Amanda Cunha, Alexis Ito, Kathleen Schirf, John Machikawa, and Joseph Felson as class representatives for the Litigation Horizontal Class.

On December 18, 2018, Defendants filed petitions to appeal the Court's class certification order pursuant to F.R.C.P. 23(f).  The parties briefed Defendants' petitions.

On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Court's class certification order.  *Id.*, ¶25.  On June 20, 2019, the Eleventh Circuit denied Defendant Alcon's and B&L's and petition to appeal the Court's class certification order.  *Id.*

### 3.     CVI Settlement

On August 30, 2017, Plaintiffs reached a settlement agreement with Defendant CVI.  *Id.*,

¶27.  The settlement included a monetary payment of $3,000,000 to the following settlement class:

> [a]ll persons and entities residing in the United States who made retail purchases of
> disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson &
> Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB
> Concise Optical Group) during the Settlement Class Period for their own use and
> not for resale, which were sold at any time subject to a Unilateral Pricing Policy.
> Excluded from the Settlement Class are Defendants, their parent companies,
> subsidiaries and affiliates, any coconspirators, all governmental entities, and any
> judges or justices assigned to hear any aspect of this action.

(ECF No. 781-1, ¶1.37.)  On July 10, 2018, the Court preliminarily approved the settlement with

Defendant CVI.  (ECF No. 841.)

On August 8, 2018, Plaintiffs filed their Motion for Notice relating to the CVI Settlement.

(ECF No. 1011.)  This motion remains pending.  Plaintiffs seek to amend the notice proposed in

Motion for Notice to include information relating to the Settlement with B&L.

### 4.     Summary of the Settlement Terms

B&L Settlement's terms are detailed in the Agreement.  The following is a summary of the

material terms of the Settlement.

### a)     The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil

Procedure.  The Settlement Class is consistent with the litigation class certified by the Court and

is defined as:

> all persons and entities residing in the United States who made retail purchases of
> disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson &
> Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own
> use and not for resale, where the prices for such contact lenses were subject to a
> Unilateral Pricing Policy and the purchase occurred during the period when the
> Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are
> any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's
> Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015.

Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.  This Settlement Class is coterminous with the Horizontal Class certified by the Court pursuant to Fed. R. Civ. P. 23(b)(3) on December 4, 2018.  ECF No. 940.

Given that the Settlement Class is essentially identical to the Litigation Horizontal Class already certified by the Court in its Class Certification Order, Agreement, ¶1.36, it is not necessary for the Court to make a determination of whether to certify a class for purposes of approving the Settlement Agreement.

### b) Monetary Relief for the Benefit of the Class

The Settlement requires B&L to deposit $10,000,000 (10 million dollars) into an Escrow Account within 14 days following Preliminary Approval. Agreement, ¶3.1.  That deposit will create the Settlement Fund.

The Net Settlement Fund – which will be distributed at a later date on a *pro rata* basis among eligible Settlement Class Members who do not opt-out of the Settlement – is equal to the Settlement Fund plus any accrued interest and less: (i) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (if requested and to the extent allowed by the Court); (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court. Agreement, ¶1.16.

Any uncashed or returned checks will remain in the Settlement Fund after a reasonable period of time after the date the first Settlement Fund payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member payments.  Agreement, ¶8.9.  Any residual funds still remaining after that period will be distributed to Authorized Claimants until no fund remains, or there is a *de minimus* amount remaining in the Settlement Fund.  *Id.*  If a *de minimus* amount remains after distribution to Authorized Claimants, any remaining balance shall be donated

10

to an appropriate 501(c)(3) non-profit organization selected by Lead Counsel and approved by the Court. *Id.*

### c)      Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not timely opt out will release B&L from claims relating to the subject matter of the Action. The detailed release language is found in Section 7 of the Agreement.

### d)      Settlement Termination

Either party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court.  Agreement, ¶10.2.

### e)      Class Representatives' Service Award

At a later date, Lead Counsel may seek, and B&L will not oppose, a reasonable Service Award for the Class Representatives.  Agreement, ¶9.2.  If the Court approves it, the Service Award will be paid from the Settlement Fund, in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement. *Id.*  This Service Award will compensate the Class Representatives for their time and effort in the Action, including preparing for and appearing at a deposition, and for the risks assumed in prosecuting the Action against B&L.

### f)      Attorneys' Fees and Costs

At a later date, Lead Counsel may apply for, and B&L will not oppose, attorneys' fees that represent a reasonable percentage of the Settlement Fund, plus reimbursement of litigation costs and expenses.  Agreement, ¶9.1.

### g)      Notice and Distribution

The Settlement provides that Claims Notice and Administration Expenses will be paid out of the Settlement Fund.  Agreement, ¶¶1.16, 8.2.  The Settlement Agreement further provides that Lead Counsel, without further approval of B&L, may pay from the Settlement Fund an amount to

cover Class Notice and Administration Expenses, Taxes and Tax Expenses associated with providing notice to the Settlement Class.  Agreement, ¶¶3.9, 8.1-8.2.  Plaintiffs request that the Court authorize Lead Counsel to spend up to $500,000 of the Settlement Fund for Class Notice and Administration Expenses for the purposes of effectuating notice consistent with the Settlement Agreement and Rule 23.

Specifically, Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. Plaintiffs have already filed their Motion for Notice.  As the Motion for Notice lays out, Plaintiffs have proposed the best notice practicable, in accordance with the standards laid out under Rule 23(c)(2)(B).

In order to save on costs to the litigation classes, and settlement classes for the CVI and B&L settlements and in order to provide for efficient notice, Plaintiffs herein propose changes to the proposed plan of notice to allow for the noticing of the two settlements and the litigation classes together.  Plaintiffs request that the Court grant Plaintiffs' Motion for Preliminary Approval of the B&L Settlement, authorize that up to $500,000 of the Settlement Fund be utilized to provide notice, and approve the Amended Notice as described herein.

## III.    ARGUMENT

### A.    The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The

policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 NEWBERG ON CLASS ACTIONS §11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* MANUAL FOR COMPLEX LITIGATION, Third, §30.42 (West 1995) ("[A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

When determining whether a settlement is ultimately fair, adequate, and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Courts have, at times, engaged in a

13

"preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See, e.g.*, *Smith*, 2010 WL 2401149, at *2.[2]

Neither formal notice nor a hearing is required at the preliminary-approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See* MANUAL FOR COMPLEX LIT. §13.14.

### B.     This Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion and is the product of good-faith, informed, and arm's-length negotiations by competent counsel. Guglielmo Decl., ¶35. Furthermore, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs and Lead Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. B&L argues that Plaintiffs' claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously.

The parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time, and expenses associated with completing trial and final appellate review, particularly in the context of a large and complex multi-district litigation. Guglielmo Decl., ¶34.

---

[2]     Class Counsel do not address the fifth factor related to objections to the Settlement because, at the preliminary-approval stage, notice has not yet been disseminated.

**C.      This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d 1326 at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Lead Counsel"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice. . . .'" (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41.

The Settlement here is the result of intensive negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. All negotiations were arm's-length and extensive. Guglielmo Decl., ¶35.

Furthermore, Lead Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.*, ¶36. Lead Counsel zealously represented their clients throughout the litigation including, *inter alia*, prevailing at the motion to dismiss stage, motion practice throughout the discovery process, which included review of more than 4.1 million pages of documents and electronic data as well as taking and defending approximately 68

depositions of party and non-party witnesses. *Id.*, ¶18.  Lead Counsel ultimately prevailed at class certification, where this Court made its own independent determination that "Plaintiffs' counsel are skilled and adequate in all respects."  (ECF No. 940 at 127.)

In negotiating this Settlement, Lead Counsel had the benefit of years of experience, a familiarity with the facts of the Action, as well as with other cases involving similar claims.  As detailed above, Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with B&L.  Lead Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations.  *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### D. The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate, and Reasonable

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

#### 1. Likelihood of Success at Trial

Plaintiffs and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the defenses available to B&L, and the risks inherent in trial and post-judgment appeal.  As noted above, Plaintiffs defeated Defendants' dismissal motions and successfully certified a class.  The success of Plaintiffs' claims, however, turned on questions that could arise at both summary judgment, again at trial, and during any post-judgment appeal.  Under

the circumstances, Lead Counsel appropriately determined that the Settlement outweighs the risks of continued litigation.  Guglielmo Decl., ¶37.

Even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without needless delays.

### 2.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses.  *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").  "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $10,000,000 cash recovery is fair, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement including, but not limited to, summary judgment motions and trial, as well as appellate review.  Based on Dr. Michael Williams' review of B&L's transactional data, the $10,000,000 Settlement Fund represents between 72% and 81% of Plaintiffs' and Settlement Class Members' estimated damages recovery as against B&L.  Guglielmo Decl., ¶30.

17

In light of B&L's defenses, and the challenging and unpredictable path of litigation Plaintiffs and all Settlement Class Members would face absent a settlement, this Settlement is a good result and represents a fair and reasonable recovery for the Settlement Class.

### 3. Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system and require a massive expenditure of public and private resources. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### 4. Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached after extensive pretrial discovery (including significant motion practice), the production and review of more than 4.1 million pages of documents produced by Defendants and more than 571,000 documents, totaling more than 2.3 million pages of documents produced by B&L, 68 depositions of Plaintiffs, Defendants' employees, and 35 third parties, including five lengthy depositions of B&L employees, expert discovery, and following briefing and a ruling on class certification and motions to exclude Plaintiffs' experts. Guglielmo Decl., ¶¶17-18. As a result, Lead Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at trial and on appeal. *Id.*

Lead Counsel are also highly familiar with the challenged practices and defenses at issue in the Action through their experience litigating similar cases in MDL No. 1030 and elsewhere. Guglielmo Decl., ¶37.

>     **E.    The Court Should Allow Notice of the Settlement to Be Included as Part of the Notice Plan Subject to Plaintiffs' Pending Motion for Notice**

On August 8, 2019, Plaintiffs submitted their Motion for Notice, outlining a detailed notice plan that will provide likely members of the litigation classes and the CVI settlement class with email, mail, and publication notice of their rights. (ECF No. 1011.) According to the proposed notice provider, Epiq, the various components of the notice plan will "effectively reach at least an estimated 70% of the Class (users of disposable contact lenses)." Azari Decl., ¶33 (Exhibit D).

Combining notice of this Settlement Class with notice of the CVI Settlement Class and the Litigation Classes (which is identical to the Settlement Class here), will promote efficiency, streamline costs, and avoid confusion. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio Nov. 6, 2014), ECF No. 1391 (approving notice plan that combined notice of class certification and settlement); *In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (E.D.N.Y. June 15, 2012), ECF No. 488 (approving notice plan that combined notice of class certification and multiple settlements); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y. Nov. 6, 2015), ECF No. 2370 (same).

Under the proposed notice plan, the first deadline for providing notice does not fall until 60 days after the Court approves the notice plan. Plaintiffs and the proposed Notice Administrator have already developed amended long form and short form notices with details about the B&L Settlement Agreement for the Court's approval. *See* Exhibits D to the Guglielmo Decl. Thus, assuming that the Court grants preliminary approval and approves of the amended notices at the same time as, or within 30 days of, its approval of Plaintiffs' Motion for Notice and Amended

Notice including information relating to the B&L settlement, there would be no need to delay any of the deadlines in Plaintiffs' proposed notice plan, and notice could issue on schedule.

### F.    The Court Should Defer Distribution of the B&L Net Settlement Fund

Finally, as Plaintiffs requested in conjunction with the CVI Settlement, Plaintiffs respectfully request that the Court permit them to defer distribution of the B&L Net Settlement Fund until a later point in this case.  The proposed Amended Long Form Notice informs Settlement Class members of Plaintiffs' intention to defer distribution (and of Plaintiffs' proposed plan to make such distributions on a *pro rata* basis), and for the reasons identified in Plaintiffs Motion for Notice, deferral is appropriate here in order to minimize administrative expenses and make distribution efficient.  *See* ECF No. 1011 [Motion for Notice] at 10.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) approve and order the amended plan of notice and the proposed opt-out and objection procedures; (3) stay the Action against B&L pending Final Approval of the Settlement; and (4) enter the [Proposed] Order Preliminarily Approving Class Settlement and Amended Notice documents, authorize that up to $500,000 of the Settlement Fund be utilized for Class Notice and Administration Expenses, and approve the Amended Notice as described herein and as attached as Exhibits 2-6 to the Azari Declaration.

Dated:  September 17, 2019

 *s/ Joseph P. Guglielmo*            John A. DeVault, III
Joseph P. Guglielmo                 Florida Bar No. 103979
Thomas K. Boardman                  BEDELL, DITTMAR, DEVAULT,
SCOTT+SCOTT                         PILLANS & COXE, P.A.
ATTORNEYS AT LAW LLP                101 East Adams Street
The Helmsley Building               Jacksonville, Florida 32202
230 Park Avenue, 17th Floor         Telephone: (904) 353-0211
New York, NY 10169                  Facsimile: (904) 353-9307
Telephone: (212) 223-6444           jad@bedellfirm.com

Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com

*Co-Lead Class Counsel*

Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, Florida 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

Hollis Salzman
Eamon O'Kelly
Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
eokelly@robinskaplan.com
bsteinberg@robinskaplan.com

*Plaintiffs' Local Counsel*

Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
1700 K. St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*

*Co-Lead Class Counsel*

Steven C. Marks
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
smarks@podhurst.com

*Plaintiffs' Trial Counsel*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Dated:  September 17, 2019

s/ Joseph P. Guglielmo