# EXHIBIT B

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| In Re: | Case No. 3:15-md-2626-HES-JRK |
|---|---|
| DISPOSABLE CONTACT LENS ANTITRUST LITIGATION | Judge Harvey E. Schlesinger<br>Magistrate Judge James R. Klindt |
| THIS DOCUMENT RELATES TO:<br>All Class Actions | |

**DECLARATION OF JOSEPH P. GUGLIELMO IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT WITH DEFENDANT BAUSCH & LOMB, INC.
AND AMENDMENT OF PROPOSED NOTICE PLAN**

I, Joseph P. Guglielmo, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am a member of Scott+Scott Attorneys at Law LLP, Co-Lead Counsel for the Plaintiffs in the above-captioned litigation. I make this declaration in further support of Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with Defendant Bausch & Lomb, Inc. and Amendment of Proposed Notice Plan. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. Plaintiffs have consummated a Settlement Agreement attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval ("Settlement" or "Agreement"), which will resolve all claims against Bausch & Lomb, Inc. ("B&L") in the Action.[1] The Settlement provides that B&L will pay $10,000,000 (10 million dollars) in cash to create a Settlement Fund. This is substantial and meaningful relief and is a great result for the Settlement Class.

I. PROCEDURAL HISTORY

3. Plaintiffs are seeking monetary damages and injunctive relief from the Defendants, on behalf of themselves and all others similarly situated who purchased disposable contact lenses subject to UPPs. Plaintiffs alleged that Defendants instituted UPPs as a means of jointly raising the price of disposable contact lenses. Plaintiffs further alleged that Defendants' actions violated Section 1 of the Sherman Act and several state competition laws.

4. B&L and other Defendants have denied all of Plaintiffs' allegations of wrongdoing. B&L consistently defended its conduct by, *inter alia*, arguing that its UPP complied with the law, that it never entered into an agreement with the other Defendants to adopt, implement, or enforce the UPPs. B&L advanced additional defenses.

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

1

### A.     Lead Counsel's Investigation

5.     Lead Counsel devoted substantial time to investigating the potential claims against Defendants.  Lead Counsel interviewed customers and potential plaintiffs to gather information about Defendants' conduct and the impact on customers.  This information was essential to Lead Counsel's ability to understand the nature of B&L's conduct, the nature of the UPPs, and potential remedies.  Lead Counsel also consulted with experts to develop and refine their legal and damages theories.

### B.     The Course of Proceedings

6.     On March 3, 2015, Plaintiffs John Machikawa, Bernadette Goodfellow, and Georgina Lepe filed the first consumer complaint against Defendants in the United States District Court for the Northern District of California ("*Machikawa*"), alleging that the major manufacturers of disposable contact lenses, B&L, Johnson & Johnson Vision Care ("JJVC"), Alcon Laboratories, Inc. ("Alcon"), CooperVision, Inc. ("CVI"), and their primary distributor, ABB Concise Optical Group ("ABB"), collectively, "Defendants," alleging that their "Unilateral Pricing Policies" ("UPPs") were illegal restraints on competition under §1 of the Sherman Act and various state unfair competition laws.

7.     Numerous additional suits were filed following the March 3, 2015 complaint.  On June 10, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated and centralized Machikawa along with all other pending class action lawsuits regarding the above-described conduct to the United States District Court for the Middle District of Florida.  The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, Case No. 3:15-md-2626-J-HES-JRK.

8. On July 15, 2015, the Court entered a Case Management Order Pertaining to the MDL, the first in a series of scheduling orders to be applicable to this case. (ECF No. 61)

9. On October 7, 2015, the Court granted Lead Counsel's motion appointing Hausfeld LLP, Scott+Scott Attorneys at Law LLP, and Robins Kaplan LLP as interim lead counsel. (ECF No. 116) On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act. (ECF No. 133)

10. On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint. (ECF No. 146) Following briefing and oral argument, the Court denied Defendants' motion. (ECF Nos. 185, 190) On July 27, 2016, Defendants filed their Answers and Affirmative Defenses. (ECF Nos. 266-70)

11. On March 1, 2017, Plaintiffs filed the operative complaint in this matter. (ECF No. 395)

**C.  Discovery Proceedings**

12. Discovery commenced on April 1, 2016. (ECF No. 204) During the course of discovery, Lead Counsel also served written discovery requests on Defendants and certain third parties.

13. In response to Plaintiffs' discovery requests, Defendants and 35 third parties produced approximately 4.1 million pages of documents, as well as voluminous electronic data

3

files and spreadsheets in native format. Lead Counsel and their experts reviewed and analyzed substantially all of the documents and electronic data files produced by Defendants.

14. Discovery specific to B&L was similarly hard-fought and vigorous, as evidenced by the numerous docket entries pertaining to B&L discovery issues.

15. For example, B&L and Plaintiffs' Counsel engaged in negotiation on the adequacy of B&L's privilege logs, including an NYAG log, an initial categorical log produced for this action. Objecting to the content and format of B&L's categorical privilege logs, Plaintiffs' Counsel conducted frequent teleconferences and engaged in correspondence with B&L's counsel and ultimately moved to compel a more detailed privilege log.

16. On May 25, 2018, Magistrate Klindt, granted, in part Plaintiffs' motion to compel. (ECF No. 825) As a result of these negotiations and motion practice, B&L agreed to produce a revised privilege log and documents it initially deemed privileged but which, after further review, believes are not privileged.

17. Throughout discovery, B&L produced more than 571,000 documents totaling roughly 2.3 million pages. In addition, Plaintiffs' counsel took five depositions of B&L employees.

18. In addition to the discovery from B&L, during this time, the parties engaged in significant motion practice and extensive formal discovery, including 68 depositions of Plaintiffs, Defendants' employees, and third parties, and the production of more than 4.1 million pages of documents and voluminous electronically stored information by Defendants, including B&L, as well as from third parties.

19. Over the course of the litigation, Plaintiffs and Defendants have participated in regularly scheduled status calls with Magistrate Judge James R. Klindt. These calls have been the

primary means through which discovery disputes have been litigated, including motion practice with B&L.

### D. Class Certification and Summary Judgment Proceedings

20. The parties also briefed and argued Plaintiffs' motion for class certification, involving thousands of pages of briefing, expert reports, and two days of argument. The parties also briefed Defendants' motions for summary judgment, involving thousands of pages of briefing and six expert reports.

21. On March 3, 2017, Plaintiffs filed a Motion for Class Certification and Supporting Memorandum of Law, and accompanying expert reports. (ECF Nos. 396-398.) On June 15, 2017, Defendants filed their Motion to Strike certain portions of Plaintiffs' Expert Reports and their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, accompanying expert reports, and other declarations. (ECF Nos. 500-510, 693) Plaintiffs filed their Reply and supporting declarations to the Class Certification Opposition on September 8, 2017 as well as their oppositions to Defendants' Motion to Strike certain portions of Plaintiffs' Expert Reports. (ECF Nos. 611-618, 715) On October 20, 2017, Defendants filed their Sur-Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Class Certification. (ECF Nos. 674-678)

22. On August 1 and 2, 2018, the Court held an evidentiary hearing on Plaintiffs' class certification motion, which involved examination and cross examination of Plaintiffs' and Defendants' experts, presentation of more than 50 exhibits and more than 10 hours or argument relating to Plaintiffs' motion for class certification and Defendants' motion to strike portions of Plaintiffs' expert reports. (ECF Nos. 865-1, 865-2, 866)

23. On December 4, 2018, the Court issued an order granting Plaintiffs' motion for class certification and certified the following horizontal class (the "Litigation Horizontal Class"), among other classes:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

(ECF No. 940) ("Class Certification Order"). The Court appointed Hausfeld LLP, Scott+Scott Attorneys at Law LLP, and Robins Kaplan LLP as counsel for the litigation classes, and appointed named Plaintiffs Rachel Berg, Miriam Pardoll, Jennifer Sineni, Elyse Ulino, Susan Gordon, Cora Beth Smith, Brett Watson, Tamara O'Brien, Sheryl Marean, Catherine Dingle, Amanda Cunha, Alexis Ito, Kathleen Schirf, John Machikawa, and Joseph Felson as class representatives.

24. On December 18, 2018, Defendants filed petitions to appeal the Court's class certification order pursuant to F.R.C.P. 23(f). The parties briefed Defendants' petitions.

25. On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Court's class certification order. On June 20, 2019, the Eleventh Circuit denied Defendant Alcon's and B&L's and petition to appeal the Court's class certification order.

26. On August 20, 2018, Defendants filed multiple motions for summary judgment, including multiple declarations and dozens of exhibits, arguing that Plaintiffs lacked evidence to support their allegations of both the horizontal and vertical conspiracies. (ECF Nos. 871-877) On October 22, 2018, Plaintiffs opposed Defendants' summary judgment motions. (ECF Nos. 917-

923)  On November 19, 2018, Defendants filed their replies in support of their motions.  (ECF Nos. 930-935)  On December 17, 2018, Plaintiffs filed their sur-reply in opposition.  (ECF No. 942)  On August 21-22, 2019, the Court held oral argument on the summary judgment motions. (ECF Nos. 1015-1016)

### E.     CVI Settlement

27. On August 30, 2017, Plaintiffs reached a settlement agreement with Defendant CVI.  The settlement included a monetary payment of $3,000,000 to the following settlement class:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

(ECF No. 781-1, ¶1.37)  On July 10, 2018, the Court preliminarily approved the settlement with Defendant CVI.  On August 8, 2018, Plaintiffs filed a Motion for Appointment of a Notice Administrator, Approval of Notice Plan, Approval of Deferring Distribution of the CVI Net Settlement Fund, and Setting a Schedule for Notice and Final Approval of the CVI Settlement. (ECF No. 1011)  That motion remains pending.

### F.     B&L Settlement

28. Beginning in the summer of 2018, the counsel for Plaintiffs and counsel for B&L began bilateral settlement discussions.  Ultimately, after approximately 12 months of negotiations, which included both in-person, written, and telephonic communications, and exchanges of various proposals for settlement, the parties reached an agreement in principle on August 17, 2019 to resolve the Action based on B&L's payment of $10,000,000.

7

29.     On August 19, 2019, the parties executed the Settlement, which memorialized the material terms, including the notice and administration of the Settlement.  The Settlement Class is consistent with the litigation class certified by the Court and is defined as

> all persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.  This Settlement Class is coterminous with the Horizontal Class certified by the Court pursuant to Fed. R. Civ. P. 23(b)(3) on December 4, 2018." ECF No. 940.

30.     Based on Dr. Williams' calculations in his Merits Report (ECF No. 918-2), the $10,000,000 cash payment represents between 72% and 81% of the maximum recovery Settlement Class Members could have achieved at trial.

31.     The Net Settlement Fund – which will be distributed at a later date on a pro rata basis among eligible Settlement Class Members who do not opt out of the Settlement – is equal to the Settlement Fund plus any accrued interest and less: (i) any Fee and Expense Award and any Plaintiffs' Service Awards (if requested and to the extent allowed by the Court); (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.  (Agreement, ¶1.16)

32.     Any uncashed or returned checks will remain in the Settlement Fund after a reasonable period of time after the date the first Settlement Fund payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member payments.  (Agreement, ¶8.9) Any

residual funds still remaining after that period will be distributed to Authorized Claimants until no fund remain, or there is a *de minimus* amount the remaining in the Settlement Fund. *Id.* If a *de minimus* amount remains after distribution to Authorized Claimants, any remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Lead Counsel and approved by the Court. *Id.*

33. The Settlement was reached in the absence of collusion and is the product of good-faith, informed, and arm's-length negotiations by competent counsel. I believe that, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

34. Lead Counsel believe that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time, and expenses associated with completing trial and final appellate review, particularly in the context of a large and complex multi-district litigation.

35. The Settlement here is the result of intensive, arm's-length negotiations over approximately 12 months between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. All negotiations were arm's-length and extensive.

36. Furthermore, Lead Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Lead Counsel zealously represented Plaintiffs and the classes throughout the litigation. Lead Counsel ultimately prevailed at class certification, where this Court made its own independent determination that "Lead Counsel are skilled and adequate in all respects." (ECF No. 940 at 127)

37. Plaintiffs and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the defenses available to B&L, and the risks inherent in trial and post-judgment appeal. Lead Counsel believes that the Settlement outweighs the risks of continued litigation. Lead Counsel are also highly familiar with the challenged practices and defenses at issue in the Action through their experience litigating similar cases in MDL No. 1030 and elsewhere.

### G.  Conclusion

38. Lead Counsel believe that the Settlement if fair and reasonable and satisfies the requirements for preliminary approval.

I declare under penalty of perjury under the laws of the United States that the above statements are true to the best of my knowledge and belief.

Dated: New York, New York

September 17, 2019                                        *s*/Joseph P. Guglielmo
                                                          Joseph P. Guglielmo