**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS**<br>**ANTITRUST LITIGATION** | **Case No. 3:15-md-02626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br><br>**All Class Actions** | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AGREEMENTS WITH DEFENDANTS BAUSCH & LOMB, INC.**
**AND COOPERVISION, INC.; AND MEMORANDUM OF LAW**
**IN SUPPORT THEREOF**

**<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .....................................................................................2

    A.  Lead Counsel's Investigation..........................................................................2

    B.  Procedural History .........................................................................................2

    C.  Settlement History ..........................................................................................6

    D.  Summary of the Settlement Terms .................................................................8

        1.  CVI.......................................................................................................8

        2.  B&L .....................................................................................................8

        3.  Monetary Relief for the Benefit of the Class ......................................9

        4.  Class Releases...................................................................................10

        5.  Settlement Termination......................................................................10

        6.  Class Representatives' Service Award ...............................................10

        7.  Attorneys' Fees and Costs ................................................................11

        8.  The Court-Approved Notice Program was Implemented ...................11

        9.  Reaction to the Settlements Has Been Positive .................................12

    E.  The Standards of Rule 23(a) and (b)(3) Have Already Been Met ..................12

III. ARGUMENT........................................................................................................12

    A.  The Legal Standard for Final Approval ........................................................12

    B.  The Court Has Personal Jurisdiction Over the Settlement Classes Because Members of the Settlement Classes Received Adequate Notice and an Opportunity to Be Heard................................................................................13

        1.  The Best Notice Practicable Was Furnished......................................14

        2.  The Notice and Notice Program Were Reasonably Calculated to Inform Settlement Class Members of Their Rights ............................15

      C.     The Settlements Should Be Approved as Fair, Adequate, and Reasonable.....16

           1.     These Settlements are the Product of Good-Faith, Informed, and Arm's-Length Negotiations ...............................................................18

           2.     Complexity, Expense, and Duration of Litigation .............................19

           3.     The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment ...............................................20

           4.     Likelihood of Success on the Merits....................................................21

           5.     Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair .........................................21

IV.    CONCLUSION...........................................................................................22

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ........................................................................13

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ........................19, 21

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ...........................................................................13, 16, 17

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ..........................................................................13

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .............................................................................18, 21

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)..............................................19

*Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*,
No. 8:03-cv-02246-SDM-TGW, Report and Recommendation (M.D. Fla. Aug.
4, 2006), *adopted by Merryday, J.*, 2006 WL 2474062 (M.D. Fla. Aug. 25, 2006)..........13

*Leverso v. Southtrust Bank*,
18 F.3d 1527 (11th Cir. 1994) .............................................................................16, 17

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...........................................................18, 20, 21, 22

*In re Lorazepam & Clorazepate Antitrust Litig.*,
MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ..........................................17

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................................................17

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ...............................................................................15

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...............................................................................14, 16

iii

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)................................................................................14

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992)..................................................................19

*Turner v. Gen. Elec. Co.*,
    No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275 (M.D. Fla. Sept. 13, 2006)............18

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ...........................................................................12

**OTHER AUTHORITIES**

4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ...................................................13, 18

For the reasons set forth herein, Plaintiffs respectfully move for final approval of the settlement agreements with Bausch & Lomb, Inc. ("B&L") (the "B&L Settlement") and CooperVision, Inc. ("CVI") (the "CVI Settlement") (together, the "Settlements").[1]

## I. INTRODUCTION

As set forth in greater detail below, the Court should grant Final Approval to the Settlements because they satisfy all Eleventh Circuit criteria for Final Approval. First, the Settlements provide substantial and meaningful relief for the Settlement Classes. Second, the terms of the Settlements are well within the range of reasonableness and consistent with applicable case law. Indeed, the Settlements, under which B&L will pay $10,000,000 in cash and CVI will pay $3,000,000 in cash to create two Settlement Funds, are an excellent result for the Settlement Classes. *See* Jt. Decl. ¶¶ 51-52, 55-56.[2]

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant Final Approval to the Settlements and Certify the Settlement Classes; (2) dismiss B&L and

---

[1] Simultaneously with this motion, Lead Counsel are also filing a Motion for Payment of: (1) Common Expenses; and (2) Class Representatives' Service Award from the B&L and CVI Settlement Funds to request that the Court: (i) permit Lead Counsel to withdraw $4,329,000 (33.3%), split equally between the two Settlement Funds, to reimburse Lead Counsel the common expenses incurred or to be incurred in litigating this Action; and (ii) permit the payment of a Service Award of $2,500 to each of the current or former named Plaintiffs (totaling $40,000), also split equally between the two Settlement Funds. Lead Counsel are not seeking payment of their attorneys' fees or non-common expenses at this time and reserve the right to do so at an appropriate point in the future. Unless otherwise defined, all capitalized terms used herein shall have the same meanings as those set forth in the Settlement Agreements. ECF Nos. 781-1, 1037-1.

[2] "Joint Declaration" or "Jt. Decl." references are to the Joint Declaration of Christopher Lebsock, Eamon O'Kelly, and Joseph Guglielmo filed concurrently herewith.

CVI from the case; and (3) enter an order finally approving the Settlements and entering a Final judgment and order of dismissal with prejudice as to B&L and CVI.[3]

## II.     STATEMENT OF FACTS

### A.     Lead Counsel's Investigation

Lead Counsel devoted substantial time to investigating the potential claims against Defendants.  Lead Counsel interviewed customers and potential plaintiffs to gather information about Defendants' conduct and the impact on customers.  Jt. Decl. ¶¶ 15-16.  This information was essential to Lead Counsel's ability to understand the nature of Defendants' conduct, the nature of the UPPs, and potential remedies.  Lead Counsel also consulted with experts to develop and refine their legal and damages theories.  *Id.*

### B.     Procedural History

On March 3, 2015, Plaintiff John Machikawa, among others, filed the first consumer complaint against the major manufacturers of disposable contact lenses, B&L, Johnson & Johnson Vision Care, Inc. ("JJVC"), Alcon Laboratories, Inc. ("Alcon"), CVI, and their primary distributor, ABB Concise Optical Group ("ABB") (collectively, "Defendants"), in the U.S. District Court for the Northern District of California ("*Machikawa*") alleging that their "Unilateral Pricing Policies" ("UPPs") were illegal restraints on competition under § 1 of the Sherman Act, 15 U.S.C. § 1, and various state unfair competition laws and seeking, *inter alia*, monetary damages, interest, attorneys' fees, restitution, and equitable relief.  Jt. Decl. ¶ 8.

---

[3]     Lead Counsel will submit a Proposed Order with their reply brief after they have the final statistics on settlement participation and once the opt-out and objection deadline has passed on January 31, 2020.

Eventually, on June 10, 2015, all of the cases were consolidated before this Court by the U.S. Judicial Panel on Multidistrict Litigation ("JPML").  ECF No. 1.

On June 10, 2015, the JPML consolidated and centralized *Machikawa*, along with all other pending class action lawsuits regarding the above-described conduct to the U.S. District Court for the Middle District of Florida.  *Id.*  The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626-J-HES-JRK.

On October 7, 2015, the Court granted Lead Counsel's motion appointing Hausfeld LLP ("Hausfeld"), Scott+Scott Attorneys at Law LLP ("Scott+Scott"), and Robins Kaplan LLP ("Robins Kaplan") as interim lead counsel.  ECF No. 116.  On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§ 1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§ 1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act.  ECF No. 133.

On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint.  ECF No. 146.  Following briefing and oral argument, the Court denied Defendants' motion.  ECF Nos. 185, 190.  On July 27, 2016, Defendants filed their Answers and Affirmative Defenses.  ECF Nos. 266-70.

On July 15, 2015, the Court entered a Case Management Order pertaining to the multi-district litigation ("MDL"), the first in a series of scheduling orders to be applicable to this Action.  ECF No. 61.  Discovery commenced on April 1, 2016.  ECF No. 204.

Plaintiffs and Lead Counsel actively litigated this Action for the nearly five years. The parties engaged in significant motion practice and extensive formal discovery, including 78 depositions of Plaintiffs, Defendants' employees, and third parties, and the production of more than 4.3 million pages of documents and voluminous electronically stored information by Defendants and third parties. Jt. Decl. ¶¶ 19, 21.

On March 1, 2017, Plaintiffs filed the operative complaint in this matter. ECF No. 395. On March 3, 2017, Plaintiffs filed a Motion for Class Certification and Supporting Memorandum of Law, with accompanying expert reports. ECF Nos. 396-98. On June 15, 2017, Defendants filed their Motion to Strike certain portions of Plaintiffs' Expert Reports and their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, accompanying expert reports, and other declarations. ECF Nos. 500-10, 693. Plaintiffs filed their Reply and supporting declarations to the Class Certification Opposition on September 8, 2017, as well as their oppositions to Defendants' Motion to Strike certain portions of Plaintiffs' Expert Reports. ECF. Nos. 611-18, 715. On October 20, 2017, Defendants filed their Sur-Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Class Certification. ECF Nos. 674-78. On August 1 and 2, 2018, the Court held an evidentiary hearing on Plaintiffs' class certification motion, which involved examination and cross examination of Plaintiffs' and Defendants' experts, presentation of more than 50 exhibits, and more than ten hours of argument relating to Plaintiffs' motion for class certification and Defendants' motion to strike portions of Plaintiffs' expert reports. ECF Nos. 865-1, 865-2, 866.

On December 4, 2018, the Court granted Plaintiffs' motion for class certification ("Class Certification Order") and certified the following class (the "Horizontal Class"), among others:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, or B&L [during the Settlement Class Period] for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800[-]Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the [Settlement] Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 940 at 162.  The Court appointed Hausfeld, Scott+Scott, and Robins Kaplan as counsel for the Horizontal Class, among others, and appointed the Plaintiffs as class representatives for the Horizontal Class.

On December 18, 2018, Defendants filed petitions to appeal the Class Certification Order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure ("F.R.C.P.").  The parties briefed Defendants' petitions.  On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Class Certification Order.  Jt. Decl. ¶ 31.  On June 20, 2019, the Eleventh Circuit denied Defendant Alcon's and B&L's and petition to appeal the Class Certification Order.  *Id*.

On August 20, 2018, Defendants filed four motions for summary judgment regarding all of Plaintiffs' claims.  ECF Nos. 872-74, 877.  Briefing on the motions was completed on December 17, 2018 (ECF No. 942) and a two-day hearing was held on August 21 and 22, 2019.

ECF Nos. 1015, 1017.  On November 27, 2019, the Court entered an Order denying Defendants' motions.  ECF No. 1091.

B&L, CVI, and other Defendants have denied all of Plaintiffs' allegations of wrongdoing.  B&L and CVI consistently defended their conduct by, *inter alia*, arguing that their UPPs complied with the law and that they never entered into an agreement with distributors, retailers, or with the other Defendants to adopt, implement, or enforce the UPPs. B&L and CVI further advanced additional defenses.

### C.     Settlement History

Beginning in mid-July 2017, Lead Counsel began bilateral settlement discussions with counsel for CVI.  Jt. Decl. ¶ 50.  Ultimately, after nearly a month of negotiations, which included both in-person, written, and telephonic communications, the parties reached an agreement-in-principle on August 11, 2017, to resolve this Action based on CVI's payment of $3,000,000. *Id.* ¶ 51.  On August 30, 2017, the parties executed the full Settlement Agreement that memorialized the material terms of the Settlement.  *Id.* ¶ 53.

Based on CVI's transactional data, the $3,000,000 Settlement Fund represents approximately 38% of Plaintiffs' and Settlement Class Members' estimated damages recovery at the time of Settlement.  This "ice breaker" settlement was entered into before Plaintiffs had their class certified and survived Defendants' summary judgment motions.  *Id.* ¶ 52.

On February 21, 2018, Lead Counsel filed the Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.  ECF No. 781.  A hearing on the motion was held on June 16, 2018.  ECF No. 831.  On July 10, 2018, the Court granted Lead

Counsel's motion and entered an Order preliminarily approving the CVI settlement.  ECF No. 841.

Beginning in August 2018, Lead Counsel and counsel for B&L began bilateral settlement discussions with B&L.  Jt. Decl. ¶ 55.  Ultimately, after 12 months of negotiations, which included both in-person, written, and telephonic communications, the parties reached an agreement-in-principle on August 17, 2019, to resolve this Action based on B&L's payment of $10,000,000.  *Id.*  On August 19, 2019, the parties executed the Settlement Agreement, which memorialized the material terms of the Settlement, including the notice and administration of the Settlement.  *Id.* ¶ 57.

Reflecting the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund.  Lead Counsel negotiated a $10,000,000 cash payment, which represents between 72% and 81% of the maximum recovery Settlement Class Members could have achieved at trial, based on Dr. Michael Williams' merits report.  *Id.* ¶ 56.

On August 8, 2019, Plaintiffs filed their Uncontested Motion for Appointment of a Notice Administrator, Approval of Notice Plan, Approval of Deferring Distribution of the CVI Net Settlement Fund, and Setting a Schedule for Notice and Final Approval of the CVI Settlement (the "Motion for Notice").  ECF No. 1011.  On September 17, 2019, Lead Counsel filed a Motion for Preliminary Approval of Settlement Agreement with Defendant B&L and Approval of Amendment of Proposed Notice Plan.  ECF No. 1037.  On October 8, 2019, the Court entered an Order preliminarily approving the B&L Settlement.  ECF No. 1046.

### D.       Summary of the Settlement Terms

B&L and CVI Settlements' terms are detailed in their respective Settlement Agreements.  The following is a summary of the material terms of the Settlements.  The Settlement Classes are opt-out classes under F.R.C.P. 23(b)(3).

#### 1.       CVI

The CVI Settlement Class is defined as:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1 ¶ 1.37.  The Court preliminarily certified the above CVI Settlement class in its Order dated July 10, 2018.  ECF No. 841.

#### 2.       B&L

B&L's Settlement Class is defined as

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 1037-1 ¶ 1.35.

This Settlement Class is coterminous with the Horizontal Class certified by the Court pursuant to F.R.C.P. 23(b)(3) on December 4, 2018.  ECF No. 940 at 162.

Given that the Settlement Class is essentially identical to the Horizontal Class already certified by the Court in its Class Certification Order (*compare* ECF No. 1037-1 ¶ 1.35 *with* ECF No. 940 at 162), it is not necessary for the Court to make a determination of whether to certify a class for purposes of approving the Settlement Agreement.

### 3.  Monetary Relief for the Benefit of the Class

B&L deposited $10,000,000 (ten million dollars) into an Escrow Account following Preliminary Approval.  That deposit created the Settlement Fund.

CVI deposited $3,000,000 (three million dollars) into an Escrow Account following Preliminary Approval.  That deposit created a separate Settlement Fund.

The Net Settlement Funds – which will be distributed at a later date on a *pro rata* basis among eligible Settlement Class Members who do not opt-out of the Settlements – are equal to the Settlement Funds plus any accrued interest and less: (1) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (to the extent allowed by the Court); (2) Class Notice and Administration Expenses; (3) Taxes and Tax Expenses; and (4) any other fees or expenses approved by the Court.  ECF Nos. 781-1 ¶ 1.17, 1037-1 ¶ 1.16.

Any uncashed or returned checks will remain in the Settlement Funds after a reasonable period of time after the date the first Settlement Funds payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member payments.  ECF Nos. 781-1 ¶ 8.9, 1037-1 ¶ 8.9.  Any residual funds still remaining after that period will be distributed to Authorized

Claimants until no fund remains, or there is a *de mimimis* amount remaining in the Settlement Funds.  *Id.*  If a *de minimis* amount remains after distribution to Authorized Claimants, any remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Lead Counsel and approved by the Court.  *Id.*

### 4.  Class Releases

In exchange for the benefits conferred by the Settlements, all Settlement Class Members who do not timely opt-out will release B&L and CVI from claims relating to the subject matter of this Action.  The detailed release language is found in ¶ 7 of the Settlement Agreements.

### 5.  Settlement Termination

Any party may terminate the Settlements if the Settlements are rejected or materially modified by the Court or by an appellate court.  ECF Nos. 781-1 ¶ 10.2, 1037-1 ¶ 10.2.

### 6.  Class Representatives' Service Award

Contemporaneous with this motion, and as allowed by the Settlement Agreements, Lead Counsel seek a reasonable Service Award for Class Representatives of $2,500 each.  ECF Nos. 781-1 ¶ 9.2, 1037-1 ¶ 9.2.  If approved by the Court, the Service Award will be paid from the Settlement Funds, in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement.  *Id.*  This Service Award will compensate the Class Representatives for their time and effort in this Action, including preparing for and appearing at a deposition, and for the risks assumed in prosecuting this Action against B&L and CVI.

### 7.    Attorneys' Fees and Costs

At this time, Lead Counsel are not seeking an award of attorneys' fees to be paid from the CVI and B&L Settlement Funds.  Lead Counsel are only seeking reimbursement of incurred and anticipated litigation costs at this time.  Lead Counsel reserve the right to request their reasonable attorneys' fees from any future settlements in this Action or from the non-Settling Parties, if Plaintiffs prevail at trial in this Action.

### 8.    The Court-Approved Notice Program was Implemented

The Settlements provide that Claims Notice and Administration Expenses were to be paid out of the Settlement Funds.  ECF Nos. 781-1 ¶¶ 1.17, 8.3, 1037-1 ¶¶ 1.16, 8.3.  The Settlement Agreements further provide that Lead Counsel, without further approval of CVI or B&L, may pay from the Settlement Funds an amount to cover Class Notice and Administration Expenses, Taxes and Tax Expenses associated with providing notice to the Settlement Classes. ECF Nos. 781-1 ¶¶ 3.9, 8.1-8.2, 1037-1 ¶¶ 3.9, 8.1-8.2.  In Orders dated July 10, 2018, and October 8, 2019, the Court authorized Lead Counsel to spend up to $500,000 of each of the CVI and B&L Settlement Funds for Class Notice and Administration Expenses for the purposes of effectuating notice consistent with the Settlement Agreements and F.R.C.P. 23. ECF Nos. 841, 1046.  Plaintiffs' Notice was the best notice practicable, in accordance with the standards laid out under F.R.C.P. 23(c)(2)(B).  Epiq Decl. ¶ 10.[4]

In order to save on costs to the litigation classes, and Settlement Classes for the CVI and B&L Settlements, and in order to provide for efficient notice, Plaintiffs proposed changes

---

[4]    All "Epiq Decl." references are to the Declaration of Cameron R. Azari, Esq. On Implementation and Adequacy of Notice Plan filed in support hereof.

to the proposed plan of notice to allow for the noticing of the Settlements and the litigation classes together.  ECF No. 1037.

### 9.      Reaction to the Settlements Has Been Positive

In accordance with the Notice Plan, class members who wish to opt-out of the Settlements must do so by no later than January 31, 2020, and a class member who does not opt-out may object to the Settlements by no later than January 31, 2020.  As of January 16, 2020, there have been just six requests for exclusion from and no objections to the Settlements. Epiq Decl. ¶ 35.  Lead Counsel and Epiq will provide updated information regarding the requests for exclusions and any objections to the Settlements after the close of the opt-out and objection period on January 31, 2020.

### E.      The Standards of Rule 23(a) and (b)(3) Have Already Been Met

The Court previously found that the requirements of Rule 23(a) and 23(b)(3) have been satisfied in this Action when certifying the litigation classes.  ECF No. 940.  This Court should make the same determinations in granting Final Approval and certifying the Settlement Classes.

For the reasons set forth herein and in the Joint Declaration, Plaintiffs and Lead Counsel respectfully request that the Court grant Final Approval of the Settlements.

## III.    ARGUMENT

### A.      The Legal Standard for Final Approval

F.R.C.P. 23(e) requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil & Gas Litig.*, 967 F.2d

489, 493 (11th Cir. 1992).  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). The Eleventh Circuit instructs that courts determining whether to approve a settlement be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-cv-02246-SDM-TGW, Report and Recommendation (M.D. Fla. Aug. 4, 2006) (ECF No. 111), *adopted by Merryday, J.*, 2006 WL 2474062 (M.D. Fla. Aug. 25, 2006).  The policy favoring settlement is especially relevant in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).

The Settlements here meet the standards of Rule 23(e) and applicable case law and Final Approval should therefore be granted.

> **B.    The Court Has Personal Jurisdiction Over the Settlement Classes Because Members of the Settlement Classes Received Adequate Notice and an Opportunity to Be Heard**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Classes

13

because they received the requisite notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

### 1.     The Best Notice Practicable Was Furnished

The Notice Program was comprised of three parts: (1) direct email and mail postcard notice ("Mailed Notice") to all identifiable Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members through advertisements in publications, the internet, and social media for whom direct mail notice was not possible; and (3) a "Long-Form" Notice, with more detail than the Mailed or Published Notices, that has been available on the Settlement Website and via mail upon request.  Epiq Decl. ¶¶ 13-27.

Each facet of the Notice Program was timely and properly accomplished.  *Id.* ¶¶ 36-39. The Notice Administrator received data files from Defendants that identified the names and last known addresses of identifiable Settlement Class Members and mailed postcards to 501,838 Settlement Class Members.  *Id.* ¶ 13.  The Notice Administrator performed follow-up research and is continuing to attempt, prior to the Final Approval Hearing, to re-mail postcards to Settlement Class Members whose initial postcard notices were returned by the postal service.  *Id.* ¶ 8.  The Long-Form Notice was also available on the Settlement Website and could be mailed in response to requests from Settlement Class Members.  *Id.* ¶ 29.  The Notice Administrator also performed and timely completed the Published Notice program through advertisements in *People* magazine.  *Id.* ¶ 19.  The Notice Administrator also published Notice

via advertisements on the internet and social media through banner advertisements and sponsored search listings on websites, such as *Google*, *Yahoo!*, *Facebook*, and *Instagram*. *Id*. Ads were also translated into Spanish and targeted to Spanish speakers on the *Pulpo Ad Network*. *Id*.

The Notice Administrator also established the Settlement Website, including the Long-Form Notice, to enable Settlement Class Members to obtain detailed information about the Action and the Settlement. Epiq Decl. ¶¶ 29-30. As of January 16, 2020, the Settlement Website had 221,760 unique visitors. *Id*. In addition, a toll free number was established and has been operational since December 1, 2019. *Id*. ¶¶ 31-32. By calling this number, Settlement Class Members can listen to answers to frequently asked questions and request a copy of the Long-Form Notice. *Id*. As of January 16, 2020 the toll-free number had handled 1,777 calls representing 6,007 minutes of use. *Id*.

### 2. The Notice and Notice Program Were Reasonably Calculated to Inform Settlement Class Members of Their Rights

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Classes, described the releases provided to CVI and B&L under the Settlements, as well as the plan of distribution, and informed members of the Settlement Classes of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class Members that a class judgment would bind them unless they opted-out and told them where they could get

more information – for example, the Settlement Website where copies of the Settlement Agreements, as well as other important documents, are posted.  Further, the Notice described Lead Counsel's intention to "ask the Court for attorneys' fees of up to one-third (33.3%) of the . . . Settlement[s] and/or reimbursement for costs and expenses for their work in the Litigation" and that any "fees and expenses awarded by the Court would be paid out of the . . . Settlement Funds."  ECF No. 1011.  The Notice also detailed that Lead Counsel could request a Service Award for the Class Representatives.  Settlement Class Members were thus provided with the best practicable notice that was "reasonably calculated, under . . . the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314-15 (1950)).

As of January 16, 2020, the Notice Administrator had received six requests to opt-out of the Settlements.  Epiq Decl. ¶ 35.  As of that date, no objections to the Settlements that relate to the Notice and Notice Program had been received.  *Id*.  Lead Counsel and Epiq will provide updated information regarding the requests for exclusions and any objections to the Settlements after the close of the opt-out and objection period on January 31, 2020.  On January 31, 2020, Lead Counsel also intend to file a reply brief to any objections that are timely filed and to further advocate for Final Approval using the complete set of class participation data.

**C.**     **The Settlements Should Be Approved as Fair, Adequate, and Reasonable**

In deciding whether to approve the Settlements, courts analyze whether they are "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett*, 737 F.2d at 986.  A settlement is fair, reasonable,

and adequate when "'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).[5]

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1)   the existence of fraud or collusion behind the settlement;
>
> (2)   the complexity, expense, and likely duration of the litigation;
>
> (3)   the stage of the proceedings and the amount of discovery completed;
>
> (4)   the probability of the Plaintiffs' success on the merits;
>
> (5)   the range of possible recovery; and
>
> (6)   the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows these Settlements to be eminently fair, adequate, and reasonable.

---

[5]      Unless otherwise indicated, all citations are omitted and emphasis is added.

1.     **These Settlements are the Product of Good-Faith, Informed, and Arm's-Length Negotiations**

A class action settlement should be approved, so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced [Lead] Counsel"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.'") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41.

The Settlements here are the result of intensive negotiations between experienced attorneys who are familiar with class action litigation and the legal and factual issues of this Action. All negotiations were arm's-length and extensive. Jt. Decl. ¶ 47.

Furthermore, Lead Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.* ¶¶ 4-5, 47. Lead Counsel zealously represented their clients throughout the litigation including, *inter alia*, prevailing at the motion to dismiss stage and motion practice throughout the discovery process, which included review

of more than 4.3 million pages of documents and electronic data, as well as taking and defending approximately 78 depositions of party and non-party witnesses.  *Id.* ¶¶ 19, 21.  Lead Counsel ultimately prevailed at class certification, where this Court made its own independent determination that "Plaintiffs' counsel are skilled and adequate in all respects."  ECF No. 940 at 127.

In negotiating these Settlements, Lead Counsel had the benefit of years of experience and a familiarity with the facts of this Action, as well as with other cases involving similar claims.  As detailed above, Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with CVI and B&L.  Lead Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in this Action and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2.      Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system and require a massive expenditure of public and private resources.  Thus, the Settlements are the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  These considerations, and the other considerations noted above, militate heavily in favor of granting Final Approval to the

Settlements. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (noting likely "battle of experts" at trial regarding damages that would pose "great difficulty" for plaintiffs); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### 3. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlements were reached after extensive pretrial discovery (including significant motion practice). Discovery from non-Settling Parties and third parties had also been substantially completed by the time both Settlements were reached. This resulted in millions of additional pages of documents and dozens of depositions that bolstered the factual record. Jt. Decl. ¶ 19, 21.

The CVI Settlement was reached after the completion of briefing on the Defendants' Motion to Dismiss and the Court's denial of that motion. The B&L Settlement was reached after the Motion to Dismiss Order and following briefing and a ruling on class certification and motions to exclude Plaintiffs' experts.

As a result, Lead Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at trial and on appeal. *Id.* Lead Counsel are also highly familiar with the challenged practices and defenses at issue

in this Action through their experience litigating similar cases in MDL No. 1030 and elsewhere. *Id.* ¶ 49.

### 4. Likelihood of Success on the Merits

Plaintiffs and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the defenses available to CVI and B&L, and the risks inherent in trial and post-judgment appeal. As noted above, Plaintiffs defeated Defendants' dismissal and summary judgment motions and successfully certified the Horizontal Class, among others. The success of Plaintiffs' claims, however, turns on questions that could arise again at trial and during any post-judgment appeal. Under the circumstances, Lead Counsel appropriately determined that the Settlements were appropriate. Epiq Decl. ¶¶ 44-49.

Even if Plaintiffs prevail at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). The Settlements therefore provide relief to Settlement Class Members without needless delays.

### 5. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the

settlement is unfair or inadequate.").   "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."   *Lipuma*, 406 F. Supp. 2d at 1323.

The $10,000,000 cash recovery is fair as to B&L, particularly given the complexity of this Action and significant risks and barriers that loomed in the absence of settlement, including, but not limited to, summary judgment motions and trial, as well as appellate review. Based on Dr. Michael Williams' review of B&L's transactional data, the $10,000,000 Settlement Fund represents between 72% and 81% of Plaintiffs' and Settlement Class Members' estimated damages recovery as against B&L. Jt. Decl. ¶ 56.

The $3,000,000 cash recovery for the "ice-breaker" settlement with CVI was an outstanding result, in part, because the $3,000,000 Settlement Fund represents approximately 38% of Plaintiffs' and Settlement Class Members' estimated damages recovery at the time of Settlement, before Plaintiffs had their class certified and survived Defendants' summary judgment motions.  *Id.* ¶ 52.

In light of B&L's and CVI's defenses, and the challenging and unpredictable path inherent to litigation, these Settlements are a good result and represents a fair and reasonable recovery for the Settlement Classes.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant Final Approval to the Settlements and Certify the Settlement Classes; (2) dismiss B&L and CVI from the case; and (3) enter an order finally approving the settlements and entering a final judgment and order of dismissal with prejudice as to B&L and CVI.

Dated:   January 16, 2020

Respectfully submitted,

_s/ Joseph P. Guglielmo_

Hollis Salzman
Eamon O'Kelly
Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@robinskaplan.com
eokelly@robinskaplan.com
bsteinberg@robinskaplan.com

*Co-Lead Class Counsel*

John A. DeVault, III
Florida Bar No. 103979
Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile:  (904) 353-9307
jad@bedellfirm.com
mel@bedellfirm.com

*Plaintiffs' Local Counsel*

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

Joseph P. Guglielmo
Thomas K. Boardman
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
cburke@scott-scott.com

*Co-Lead Class Counsel*

Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

23

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile:  (619) 338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

Telephone: (415) 633-1908
Facsimile:  (415) 217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

Steven C. Marks
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile:  (305) 358-2382
smarks@podhurst.com

*Plaintiffs' Trial Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/ Joseph P. Guglielmo
Joseph P. Guglielmo
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

*Co-Lead Class Counsel*
