# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| **In Re:** | **Case No. 3:15-md-2626-HES-JRK** |
| **DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br>**All Class Actions** | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT WITH DEFENDANT ABB OPTICAL GROUP LLC AND PROPOSED NOTICE PLAN

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 2

II.     STATEMENT OF FACTS ................................................................................... 5

      A.      Procedural History ................................................................................... 5

            1.      Lead Counsel's Investigation ........................................................ 5

            2.      The Course of Proceedings ........................................................... 5

            3.      The CVI and B&L Settlements ....................................................... 7

            4.      The ABB Settlement ...................................................................... 8

      B.      Summary of the ABB Settlement Terms .................................................. 9

            1.      The Settlement Class ..................................................................... 9

            2.      Monetary Relief for the Benefit of the Class ................................. 9

            3.      Class Release ............................................................................... 10

            4.      Settlement Termination ................................................................. 10

            5.      Class Representatives' Service Award .......................................... 10

            6.      Attorneys' Fees and Costs ............................................................ 11

            7.      Notice and Distribution ................................................................ 11

III.    ARGUMENT ..................................................................................................... 12

      A.      The Legal Standard for Preliminary Approval ..................................... 12

      B.      This Settlement Satisfies the Criteria for Preliminary Approval ......................... 13

      C.      This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations ........................................................................... 14

      D.      The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate, and Reasonable ...................................................... 16

            1.      Likelihood of Success at Trial .................................................... 16

            2.      Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair ................................. 17

            3.      Complexity, Expense, and Duration of Litigation ..................... 18

            4.      Stage of the Proceedings .............................................................. 18

      E.      The Proposed Notice Plan Is Substantially the Same and Builds off of the Prior Approved Notice Plan from the B&L and CVI Settlements ................................. 19

i

F.    The Court Should Set a Schedule for Notice and Final Approval of the ABB Settlement ........................................................................................................ 21

G.    With Only Trial Remaining, Distribution of Funds Should Be Postponed to Save the Class from Incurring Unnecessary Costs ............................................... 22

IV.    CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackal v. Centennial Beauregard Cellular L.L.C.*,
    700 F.3d 212 (5th Cir. 2012) ...................................................20

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ...............................................12

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .......................14, 17, 18

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .............................................12, 13

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...........................................12, 14, 17

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ...............................................22

*Francisco v. Numismatic Guaranty Corp. of Am.*,
    No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)....................15

*Greco v. Ginn Dev. Co., LLC*,
    635 Fed. Appx. 628 (11th Cir. 2015).........................................21

*In re Auto. Parts Antitrust Litig.*,
    No. 12-cv-00103, 2017 WL 3499291 (E.D. Mich. July 10, 2017)...........22

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    310 F.R.D. 300 (E.D. La. 2015).............................................20

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
    No. 07-cv-05634, ECF No. 968 (N.D. Cal. Dec. 15, 2014)..................22

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ..............................................12

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) .............................................20

*Legg v. Spirit Airlines, Inc.*,
    No. 15-cv-61375, 2015 WL 11197784 (S.D. Fla. Oct. 28, 2015) ...........21

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................14, 16, 17, 18

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...............................................................................22

*Morgan v. Public Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................................20

*Prather v. Wells Fargo Bank, N.A.*,
  15-cv-04231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) .................................................21

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992) ................................................................................18

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010) .....................................12, 13

*Turner v. Gen. Elec. Co.*,
  No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275 (M.D. Fla. Sept. 13,
  2006) ...........................................................................................................................14

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
  Rule 23 .........................................................................................................................1, 11
  Rule 23(b)(3) .............................................................................................................8, 9, 10, 21
  Rule 23(c)(2)(B) ........................................................................................................11, 20
  Rule 23(e) ...................................................................................................................11, 12

**Other Authorities**

Manual for Complex Litigation, Third (West 1995)
  §13.14 .........................................................................................................................13
  §30.42 .........................................................................................................................12

4 Newberg on Class Actions (4th ed. 2002)
  §11.26 .........................................................................................................................12
  §11.41 .........................................................................................................................12, 14

Plaintiffs and Lead Counsel respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of the Settlement Agreement with ABB Optical Group LLC ("ABB"), attached as Exhibit A ("Settlement" or "Agreement"), which will resolve all claims against ABB in the Action.[1]

As discussed in greater detail below, the Court should grant Preliminary Approval because this Settlement provides substantial and meaningful relief for the Settlement Class and because the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, the Settlement, under which ABB will pay $30,200,000 (thirty million, two hundred thousand dollars) in cash to create a non-reversionary Settlement Fund, is an excellent result for the Settlement Class.  *See* Declaration of Joseph P. Guglielmo ("Guglielmo Decl."), ¶2, attached hereto as Exhibit B.  The Settlement satisfies Rule 23 and all Eleventh Circuit criteria for Preliminary Approval.

In addition, and also as detailed below, the Court should approve the notice plan for the ABB Settlement.  First, the notice plan is substantially the same as the notice disseminated for the B&L and CVI settlements, which the Court noted:

> constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes . . . constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreements and . . . satisfies the requirement of Rule 23 of the Federal Rules of Civil procedure and the United States Constitution (including the Due Process Clause.)

(ECF No. 1164.)  Importantly, class members who already made a timely and valid claim in the CVI and/or B&L settlements will not need to make a new claim in the ABB Settlement in order to benefit from this settlement.  Second, due to an oversight in the earlier-disseminated notice, as

---

[1]   All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

described further below, the proposed notice would give consumers who purchased *only* B&L contact lenses subject to a UPP an additional opportunity to opt-out of the Litigation Classes.

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court take the following initial steps in the settlement approval process:  (1) grant Preliminary Approval to the Settlement; (2) approve and order the notice plan and the proposed opt-out and objection procedures; (3) stay the Action against ABB pending final approval of the Settlement; (4) establish a schedule with deadlines for notice, opting out, objecting, filing claims, and setting a fairness hearing; and (5) enter the [Proposed] Order Preliminarily Approving Class Settlement and Notice Plan, attached hereto as Exhibit C.

## I.    INTRODUCTION

Beginning in early 2015, Plaintiffs filed suits against the major manufacturers of disposable contact lenses, Bausch & Lomb, Inc. ("B&L"), Johnson & Johnson Vision Care ("JJVC"), Alcon Laboratories, Inc. ("Alcon"), CooperVision, Inc. ("CVI"), and their primary distributor, ABB, collectively, "Defendants," alleging that the manufacturers' "Unilateral Pricing Policies" ("UPPs") on certain disposable contact lenses were illegal restraints on competition under Section 1 of the Sherman Act and various state unfair competition laws.  Eventually, on June 10, 2015, all of the cases were consolidated before this Court by the United States Judicial Panel on Multidistrict Litigation.  (ECF No. 1.)

This litigation has involved sharply opposed positions on several fundamental legal questions, including whether Defendants, including ABB, entered into a conspiracy to restrict pricing competition in violation of federal and state competition laws.  Guglielmo Decl., ¶4.  ABB consistently argued that there was no collusion in the adoption, implementation, or enforcement of the UPPs and any actions taken were within the bounds of established law.  *Id*.

On August 8, 2018, Plaintiffs filed their Uncontested Motion for Appointment of a Notice Administrator, Approval of Notice Plan, Approval of Deferring Distribution of the CVI Net Settlement Fund, and Setting a Schedule for Notice and Final Approval of the CVI Settlement (ECF No. 1011) (the "Motion for Notice").

On August 30, 2017, Plaintiffs reached a $3,000,000 settlement with Defendant CVI. Guglielmo Decl., ¶31. On July 10, 2018, the Court preliminarily approved the settlement with Defendant CVI and delayed dissemination of notice until a later date. (ECF No. 841.) On September 17, 2019, Plaintiffs filed their Motion for Settlement Preliminary Approval and Approval of Amendment of Proposed Notice Plan regarding the $10,000,000 settlement reached with B&L. (ECF No. 1037.) The notice plan was to be amended, in part, to provide potential class members of the now-certified Litigation Classes. *Id*. On October 8, 2019, the Court preliminarily approved the B&L settlement and amendment of the Notice Plan to include notice to the certified Litigation Classes along with the CVI and B&L Settlement Classes. (ECF No. 1046.)

On January 16, 2020, Plaintiffs filed a motion requesting final approval of the B&L and CVI settlements. (ECF Nos. 1136-39.) On February 25, 2020, the Court held a fairness hearing on both settlements. (ECF No. 1154.) On March 4, 2020, the Court granted final approval of the B&L and CooperVision settlements. (ECF No. 1164.) The claims period for both settlements ended on March 31, 2020. (ECF No. 1176.)

On April 3, 2020, this Court entered an Order regarding the impact of the COVID-19 pandemic on the case schedule which, among other things, indefinitely suspended the case's trial date. (ECF No. 1180.) In the final paragraph of the Order, the Court stated as follows:

> Notwithstanding the paragraph above, because of this life and death crisis, the Court sincerely urges the Parties to earnestly confer with each other in

a deliberate attempt to reach an agreement that completely resolves this litigation.  Specifically, the Court implores the remaining Defendants to have their corporate executives seriously consider this request and the basis for it.

*Id*. at 5.

Plaintiffs and ABB took the Court's words to heart.  On Sunday, August 30, 2020, they engaged in a day-long mediation session with former U.S. District Judge Layn Phillips via video conference.  Guglielmo Decl., ¶29.  Prior to the August 30, 2020 mediation session, the parties engaged in a series of pre-mediation discussions with Judge Phillips over the terms of a proposed settlement.  *Id.*  With Judge Phillips' guidance and assistance, the Parties were able to reach an agreement to resolve the case against ABB.  *Id.*  ABB will pay $30,200,000 into a settlement fund in exchange for dismissal of all claims against it.[2]  *Id.*, ¶2.  The Parties fully executed the Settlement Agreement on September 22, 2020.  *Id.*, ¶30.

Plaintiffs and Lead Counsel now seek Preliminary Approval of the ABB Settlement and approval of their proposed notice.  The proposed notice would provide putative members of the Settlement Class with information regarding the terms of the Settlement and provide them with an opportunity to opt-out of, or object to, the Settlement.  It also gives class members who purchased *only* B&L contact lenses subject to a UPP an additional opportunity to opt-out of the Litigation Classes.

Copies of the proposed Notice Plan are attached as Exhibits 1 - 5 to the Declaration of Cameron R. Azari, Esq. on Notice Plan, filed herewith ("Azari Decl.").  For the reasons set forth

---

[2]     ABB will pay $500,000 of the Settlement Amount in cash into the Escrow Account controlled by the Escrow Agent within fifteen (15) days of the Court's entry of the Preliminary Approval Order and the remainder of the Settlement Amount ($29,700,000) into the Escrow Account as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and 50% of the remainder ($14,850,000) by January 14, 2022.  Agreement, ¶3.1.

herein and in the Guglielmo and Azari Declarations, Plaintiffs and Lead Counsel respectfully request that the Court grant Preliminary Approval to the ABB Settlement and approve the proposed Notice Plan.

## II.   STATEMENT OF FACTS

### A.   Procedural History

Plaintiffs are seeking monetary damages and injunctive relief from the Defendants, on behalf of themselves and all others similarly situated who purchased disposable contact lenses subject to a UPP.  Plaintiffs alleged that Defendants jointly adopted, implemented, and enforced UPPs to certain disposable contact lenses in the United States.  Plaintiffs further alleged that Defendants' actions violated Section 1 of the Sherman Act and several states' competition laws. Guglielmo Decl., ¶6.

ABB and other Defendants have denied all of Plaintiffs' allegations of wrongdoing.  ABB consistently defended its conduct by, *inter alia*, arguing that the UPPs complied with the law, and that it never entered into an agreement with manufactures, retailers, or with the other Defendants to adopt, implement, or enforce the UPPs.  ABB advanced additional defenses.  *Id.*, ¶4.

#### 1.   Lead Counsel's Investigation

As set forth in detail in the declaration supporting preliminary approval of the B&L and CVI settlements, Lead Counsel have devoted substantial time to investigating the potential claims against Defendants.  (ECF No. 1037.)  Plaintiffs incorporate by reference the facts regarding their investigation from those declarations into this brief.

#### 2.   The Course of Proceedings

An exhausting accounting of the course of proceedings in this case through September 19, 2019 is set forth in the motion and declaration supporting preliminary approval of the B&L

settlement.  (ECF Nos. 1037, 1037-2.)  Plaintiffs incorporate by reference the facts regarding this case history from that declaration into this brief.

Plaintiffs and Lead Counsel have continued litigating this case with vigor against ABB since the filing of the B&L preliminary approval motion.  The ABB-specific facts and recent case history are described in greater detail below.

Plaintiffs have undertaken substantial discovery of ABB.  Throughout discovery, ABB produced more than 68,761 documents, totaling more than 287,875 pages.  In addition, Plaintiffs' counsel took five depositions of current and former ABB employees.  Guglielmo Decl., ¶15.

The parties briefed Defendants' motions for summary judgment. This involved thousands of pages of briefing, exhibits, multiple expert reports, and two days of argument.  *Id.*, ¶24.  On November 27, 2019, the Court denied Defendants' motions for summary judgement.  (ECF No. 1091.)  In relevant part, the Court concluded as follows:

> This Court's job is to determine triable issues and it must examine the record as a whole.  The Court finds Plaintiffs have produced satisfactory evidence supporting their position that Defendants had a conscious commitment to a common scheme designed to achieve an unlawful objective.  There is evidence that the UPPs were instituted pursuant to coordinated pressure exerted by certain ECPs and ABB, the manufacturers sought agreement regarding the UPPs and the Defendants jointly policed the pricing policies.  Plaintiffs have also proffered ample evidence of potential or actual anticompetitive market effects, demonstrated the alleged conspiracy was economically reasonable and substantiated their allegation that the UPPs imposed an unreasonable restraint on competition with no pro-competitive benefit.
>
> \*\*\*
>
> Finally, the Court finds that Plaintiffs have done more than show conduct that is as consistent with lawful competition as it is with an illicit conspiracy; weighing the competing inferences, it is reasonable for a jury to find Defendants were engaged in an illicit price fixing.

(ECF No. 1091 at 23.)

For the next few months, the Parties worked to prepare their respective cases for the February trial date that was originally scheduled.  Guglielmo Decl., ¶26.  This included drafting, exchanging, and meeting and conferring regarding proposed jury instructions, witnesses, and exhibit lists.  *Id*.  The Parties also filed competing motions *in limine* (ECF Nos. 1160, 1103, 1092, 1064, 1061, 1060, 1059, 1058, 1056, and 1055), which this Court ultimately ruled on, granting some in favor of Defendants and some in favor of Plaintiffs.  (ECF Nos. 1142, 1150, and 1174.)

On March 30, 2020, Plaintiffs and Defendants filed a Joint Notice in which they requested the Court's guidance on pre-trial and trial scheduling issues regarding the impact of the COVID-19 pandemic.  (ECF No. 1178.)  On April 3, 2020, the Court issued its Order in response, delaying the start of trial indefinitely on account of the many difficulties and dangers of attempting to hold a trial during the pandemic.  (ECF No. 1180.)  The Court also called for Plaintiffs and Defendants to use the down time to seriously consider resolving the litigation through settlement.  *Id*.

### 3.      The CVI and B&L Settlements

On August 30, 2017, Plaintiffs reached a settlement agreement with Defendant CVI. Guglielmo Decl., ¶31.   The settlement included a monetary payment of $3,000,000 and was reached on behalf of a settlement class defined as follows:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

(ECF No. 781-1, ¶1.37) (the "CVI Settlement Class").  On July 10, 2018, the Court preliminarily approved the settlement with Defendant CVI and delayed dissemination of notice until a later date. (ECF No. 841.)

On August 19, 2019, Plaintiffs signed a settlement agreement with B&L. Guglielmo Decl., ¶33.  The settlement included a monetary payment of $10,000,000 and was reached on behalf of a settlement class defined as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015.  Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

(ECF No. 781-1, ¶1.37) (the "B&L Settlement Class").  The B&L Settlement Class is coterminous with the Horizontal Class certified by the Court pursuant to Fed. R. Civ. P. 23(b)(3) on December 4, 2018.  (ECF No. 940.)  On October 8, 2019, the Court granted preliminary approval of the B&L settlement and approved the notice to be disseminated to putative members of the litigation classes, the CVI Settlement Class, and the B&L Settlement Class.  (ECF No. 1046.)

On January 16, 2020, Plaintiffs filed their Motion for Final Approval of Settlement Agreements with Defendants Bausch & Lomb, Inc. and CooperVision, Inc.  (ECF No. 1136.)  On February 25, 2020, the Court held a fairness hearing regarding the CVI settlement.  (ECF Nos. 1154 and 2/25/20 Hr'g Trans.)  On March 4, 2020, the Court issued its Final Approval Order and Final Judgment and Order of Dismissal with Prejudice as to Bausch & Lomb, Inc. and CooperVision, Inc., which granted the CVI and B&L settlements final approval.  (ECF No. 1164.)

### 4.    The ABB Settlement

The ABB Settlement was reached after an all-day session on Sunday, August 30, 2020, with former U.S. District Judge Layn Phillips.  Guglielmo Decl., ¶29.  Prior to the start of the

mediation, ABB and Plaintiffs each separately participated in several discussions with Judge Phillips' staff regarding the strengths and weaknesses of their respective cases and exchanged detailed mediation briefs. *Id.*

### B.   Summary of the ABB Settlement Terms

The ABB Settlement terms are detailed in the Agreement. The following is a summary of the material terms of the Settlement.

### 1.   The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is coterminous with the CVI Settlement Class given that ABB was a distributor of contact lenses made by all of the manufacturer Defendants including Alcon, JJVC, CVI, and B&L, and is defined as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

Agreement, ¶1.35.

### 2.   Monetary Relief for the Benefit of the Class

The Settlement requires ABB to deposit $500,000 into an Escrow Account within 15 days following Preliminary Approval. Agreement, ¶3.1. That deposit will create the Settlement Fund. ABB will then deposit the remainder of the Settlement Amount ($29,700,000) into the Escrow Account as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and 50% of the remainder ($14,850,000) by January 14, 2022. *Id.*

The Net Settlement Fund – which Lead Counsel intend to distribute at a later date on a *pro rata* basis among eligible Settlement Class Members who do not opt out of the Settlement – is equal to the Settlement Fund plus any accrued interest and less: (i) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (if requested and to the extent allowed by the Court); (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court. Agreement, ¶1.16.

### 3.     Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not timely opt out will release ABB from claims relating to the subject matter of the Action. The detailed release language is found in Section 7 of the Agreement.

### 4.     Settlement Termination

Either party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court. Agreement, ¶10.2.

### 5.     Class Representatives' Service Award

Lead Counsel have not yet determined wither they will seek Service Awards. The Settlement provides that, prior to the deadline to opt out or object to the Settlement, Lead Counsel may seek, and ABB will not oppose, reasonable Service Awards for the Class Representatives. Agreement, ¶9.2. If any such Service Awards are requested, Lead Counsel will do so as part of a motion filed at least 14 days before the deadline to opt-out or object to the Settlement. If the Court approves it, the Service Award will be paid from the Settlement Fund, in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement. *Id*. This Service Award if requested and permitted would compensate the Class Representatives for their time and effort in the Action, including preparing for and appearing at a deposition, and for the risks assumed in prosecuting the Action against ABB.

### 6.   Attorneys' Fees and Costs

The Settlement also provides that, prior to the deadline to opt out or object to the Settlement, Lead Counsel may apply for, and ABB will not oppose, attorneys' fees that represent a reasonable percentage of the Settlement Fund, plus reimbursement of litigation costs and expenses.  Agreement, ¶9.1.  Lead Counsel will file any motion for fees and costs at least 14 days before the deadline to opt out or object to the Settlement.

### 7.   Notice and Distribution

The Settlement provides that Claims Notice and Administration Expenses will be paid out of the Settlement Fund.  Agreement, ¶¶1.16, 8.2.  The Settlement Agreement further provides that Lead Counsel, without further approval of ABB, may pay from the Settlement Fund an amount to cover Class Notice and Administration Expenses, Taxes and Tax Expenses associated with providing notice to the Settlement Class up to $500,000.  Agreement, ¶¶3.9, 8.1-8.2.  Plaintiffs request that the Court authorize Lead Counsel to spend up to $500,000 of the Settlement Fund for Class Notice and Administration Expenses for the purposes of effectuating notice consistent with the Settlement Agreement and Rule 23.  Any notice costs above $500,000 will only be paid from the Settlement Fund subject to further application by Lead Counsel and Court approval.

Specifically, Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. As set forth below and in the declarations and exhibits supporting this motion, Plaintiffs have proposed the best notice practicable in accordance with the standards laid out under Rule 23(c)(2)(B).

III.     ARGUMENT

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of the ABB Settlement, authorize that up to $500,000 of the Settlement Fund be utilized to provide notice, and approve the Notice Plan as described herein.

A.      The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions §11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg on Class Actions §11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  Settlement negotiations that involve arm's-length, informed bargaining

with the aid of experienced counsel support a preliminary finding of fairness.  *See* MANUAL FOR COMPLEX LITIGATION, Third, §30.42 (West 1995) ("[A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

When determining whether a settlement is ultimately fair, adequate, and reasonable, courts in this Circuit have also looked to six factors set forth in *Bennett* (the "Bennett Factors"):  "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.  *See, e.g.*, *Smith*, 2010 WL 2401149, at *2.[3]

Neither formal notice nor a hearing is required at the preliminary-approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *See* MANUAL FOR COMPLEX LIT. §13.14.

**B.      This Settlement Satisfies the Criteria for Preliminary Approval**

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement.  First, the Settlement was reached in the absence of collusion and is the product of good-faith, informed, and arm's-length negotiations by competent counsel.  Guglielmo Decl., ¶44. Furthermore, a preliminary review of the factors related to the fairness, adequacy, and

---

[3]      Lead Counsel do not address the fifth factor related to objections to the Settlement because, at the preliminary-approval stage, notice has not yet been disseminated.

reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs and Lead Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. ABB argues that Plaintiffs' claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously.

The parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time, and expenses associated with completing trial and final appellate review, particularly in the context of a large and complex multi-district litigation.  *Id*., ¶45.

### C.   This Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d 1326 at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Lead Counsel").  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial

resources, and achieve the speedy resolution of justice. . . .'" (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41.

The Settlement here is the result of intensive negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. All negotiations were arm's-length and overseen by former Judge Layn Phillips, one of the top mediators in the field. Guglielmo Decl., ¶29. As noted above, ABB and Plaintiffs also each separately participated in discussions with Judge Phillips' staff regarding the strengths and weaknesses of their respective cases and exchanged detailed mediation briefs. *Id*.

Furthermore, Lead Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. *Id.*, ¶47. Lead Counsel zealously represented their clients throughout the litigation including, *inter alia*, prevailing at the motion to dismiss stage, conducting motion practice throughout the discovery process, which included review of more than 4.1 million pages of documents and electronic data as well as taking and defending approximately 68 depositions of party and non-party witnesses. *Id.*, ¶16. Lead Counsel ultimately prevailed at class certification and summary judgment, where this Court made its own independent determination that "Plaintiffs' counsel are skilled and adequate in all respects." (ECF No. 940 at 127 and No. 1091.)

In negotiating this Settlement, Lead Counsel had the benefit of years of experience, a familiarity with the facts of the Action, as well as with other cases involving similar claims. Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with ABB. Guglielmo Decl., ¶48. Lead Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action

and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677, 2008 WL 649124, at \*11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### D.   The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate, and Reasonable

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.[4]

#### 1.   Likelihood of Success at Trial

Plaintiffs and Lead Counsel are confident in the strength of their case but are also pragmatic in their awareness of the defenses available to ABB, and the risks inherent in trial and post-judgment appeal.   As noted above, Plaintiffs defeated Defendants' dismissal motions and successfully certified a class.   The success of Plaintiffs' claims, however, turned on questions that could arise again at trial and during any post-judgment appeal.   Under the circumstances, Lead Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Guglielmo Decl., ¶48.

Even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay

---

[4]   In addition to the reasons detailed herein, the Court should also preliminarily approve the ABB Settlement Class because the Settlement Class is substantively the same as the CVI settlement class already certified by the Court and substantially similar to the approved B&L settlement class and the Litigation Horizontal Class certified by the Court in its Order Granting Motion to Certify Class. *Compare* Agreement, ¶1.35 *with* ECF Nos. 940 and 1164.

class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without needless delays.

> ### 2. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses.  *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").  "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $30,200,000 cash recovery is fair, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement including, but not limited to, further pre-trial motion, a jury trial, and any possible appellate review.  As referenced above, the $30,200,000 cash payment represents an increase in the settlements in this litigation when compared to the previously approved settlements with CVI and B&L in terms of dollar value of UPP commerce in the United States. During the Class Period, the volume of commerce of UPP lenses sold in the United States was approximately $5.3 billion.  Guglielmo Decl., ¶41.  During the Class Period, ABB distributed $994,371,643 in UPP lens commerce.  *Id*.  The $30.2 million settlement represents a total over 3% of ABB's total UPP lens sales throughout the class period

and an over threefold increase in the dollar value of the settlement compared to the previously approved B&L settlement.  *Id*.[5]

In light of ABB's defenses, and the challenging and unpredictable path of litigation and any appeal Plaintiffs and all Settlement Class Members would face absent a settlement, this Settlement is a good result and represents a fair and reasonable recovery for the Settlement Class.

### 3.    Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system and require a massive expenditure of public and private resources.  Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### 4.    Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached after over five years of vigorously contested litigation including extensive pretrial discovery (including significant motion practice), the production and review of more than 571,000 documents, totaling more than 4.1 million pages, including more than 287,875 pages of documents produced by ABB alone.  The Parties took 68 depositions of

---

[5]    For comparison, CVI's $3 million settlement represented 1.6% of CVI's total UPP lens commerce and B&L's $10 million settlement represented 2.7% of its UPP sales.  *Id*.

Plaintiffs and Defendants' employees, and 35 depositions of third parties.  This included five depositions of current and former ABB employees.  The Parties also engaged in contested expert discovery and motions to exclude Plaintiffs' experts.  Guglielmo Decl., ¶19.

Further, as detailed above, the Parties here had already litigated motions to dismiss, class certification, motions for summary judgment, and motions *in limine*.  As a result, Lead Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at trial and on appeal.  *Id.*  Lead Counsel are also highly familiar with the challenged practices and defenses at issue in the Action through their experience litigating similar cases in MDL No. 1030 and elsewhere.  Guglielmo Decl., ¶48.

### E.    The Proposed Notice Plan Is Substantially the Same and Builds off of the Prior Approved Notice Plan from the B&L and CVI Settlements

Plaintiffs previously sought and obtained approval of a notice plan that provided putative members of the CVI Settlement Class, the B&L Settlement Class, and the Litigation Classes of their rights.  *See* ECF Nos. 1011, 11037, 1046, and 1164.

As described in greater detail below, Plaintiffs intend to use effectively the same means to provide notice as previously approved by this Court with two important additions.  First, class members that have provided their email addresses to the claims administrator (*e.g.*, class members who submitted an electronic claim in one of the earlier settlements) will receive notice to the email account they provided.  Second, class members who have made a timely and valid claim in the B&L and/or CVI settlements will not need to make a claim in the ABB settlement; they will be able to benefit without taking any further action. Using the same general means of notice, with these two additions, will promote efficiency, streamline costs, and avoid confusion.

Specifically, the notice plan here, like the earlier notice, features a multi-layered approach incorporating direct mailings, email, social media ads, and traditional publication notice.  Azari,

Decl., ¶¶13-26.  According to the proposed notice provider, Epiq, the various components of the Notice Plan will "effectively reach at least an estimated 70% of the Class (users of disposable contact lenses)."  Azari Decl., ¶12.  Courts routinely approve similar multi-layered notice programs.  *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261-66 (S.D. Fla. 2016) (notice primarily by email and newspaper advertising); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 317-8 (E.D. La. 2015) (email, digital ads, and print publication).  In addition, courts have consistently recognized that, in cases such as this where direct contact information is not available for all class members, "due process does not require that class members actually receive notice."  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

Under the proposed Notice Plan, the first deadline for providing notice does not fall until 60 days after the Court approves the Notice Plan.  Plaintiffs and the proposed Notice Administrator have already developed long form and short form notices with details about the ABB Settlement Agreement for the Court's approval.  *See* Azari Decl., Exs. 1 and 2.  Because the Notice Plan includes "individual notice to all members who can be identified through reasonable efforts," Fed. R. Civ. P. 23(c)(2)(B); *see also* Azari Decl., ¶10, it provides the "best notice practicable under the circumstances," *id.*, ¶32, and should be approved.

Under the proposed Notice Plan, potential Settlement Class Members will be notified that those who have already made claims in either or both of the CVI and B&L settlements need not make another claim to be paid out of the ABB Settlement Fund, but will still have the right to object or opt out of the ABB Settlement, should they choose to do so.  Azari Decl., Ex. 1, p. 1. This will limit duplicative claims and therefore save the Class money by reducing processing fees.

In addition, and due to an oversight in the earlier-disseminated notice concerning potential class members who only purchased B&L lenses, the proposed notice will also give class members

who purchased *only* B&L contact lenses subject to a UPP an additional opportunity to opt out of the Litigation Classes.  Azari Decl., Ex. 1, pp. 1, 9; *see also Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) ("For any class certified under Rule 23(b)(3), the court must direct to class members . . . notice . . . that the court will exclude from the class any member who requests exclusion.").

### F.    The Court Should Set a Schedule for Notice and Final Approval of the ABB Settlement

Plaintiffs request that the Court enter the below schedule:

| | |
|---|---|
| Notice Date (Notice Mailing Completion, Updating of Website and Publication Notice) | 60 Days After Preliminary Approval and Approval of Notice Plan |
| Plaintiffs' Motions for Final Approval, Fees, Expenses, and/or Incentive Awards for the ABB Settlement | 45 Days After Notice Date |
| Opt-Out, Objection, and Claim Deadline for ABB Settlement Class; and Opt-Out Deadline for B&L Only Purchasers from the Litigation Classes | 60 Days After Notice Date |
| Plaintiffs' Replies in Support of Motions for Final Approval, Fees, Expenses, and/or Incentive Awards for the ABB Settlement | 90 Days After Notice Date |
| Fairness Hearing on ABB Settlement | 115 Days After Notice Date |

The proposed schedule, which gives members of the Settlement Class and the Litigation Classes 60 days from the Notice Date to exercise their rights, is consistent with schedules approved by other courts in antitrust and consumer class actions.  *See Prather v. Wells Fargo Bank, N.A.*, 15-cv-04231, 2017 WL 770132, at *4 (N.D. Ga. Feb. 24, 2017) (approving 60-day opt-out and objection deadline); *Legg v. Spirit Airlines, Inc.*, No. 15-cv-61375, 2015 WL 11197784, at *2 (S.D. Fla. Oct. 28, 2015) (same); *see also Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 634 (11th Cir. 2015) ("'Courts have consistently held that 30 to 60 days between the mailing . . . of class notice and the last date to object or opt out, coupled with a few more weeks between the close of

objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement.'") (citation omitted).

### G.   With Only Trial Remaining, Distribution of Funds Should Be Postponed to Save the Class from Incurring Unnecessary Costs

Plaintiffs respectfully request that the Court permit them to defer distribution of the net settlement funds for the CVI, B&L, and ABB settlements until a later date.  The proposed Long Form Notice informs members of the Classes of Plaintiffs' intention to defer distribution, and courts have considerable discretion in determining whether the distribution plan is "fair, reasonable and adequate." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (noting district court's discretion); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (A plan for distribution need only '"have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."') (citation omitted).

In order to minimize administrative expenses and make distribution efficient, Plaintiffs propose to distribute the net settlement funds from the CVI, B&L, and ABB settlements, and any other judgments or settlements that may occur, once trial and any possible appeals are completed. By aggregating the disbursement of future settlements or judgments, Plaintiffs will minimize the impact of administrative fees on the total Net Settlement Funds.  Deferral of disbursement of settlement funds is fair, reasonable, and adequate here because it will likely maximize class member recovery. *See, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-cv-05634, ECF No. 968 (N.D. Cal. Dec. 15, 2014) (order granting plan of allocation related to settling Defendants with claims not being paid until end of case); *In re Auto. Parts Antitrust Litig.*, No. 12-cv-00103, 2017 WL 3499291 (E.D. Mich. July 10, 2017) (approving plan of allocation for second round of settlements that contemplates paying class members at the end of the case to save expenses).  Moreover, because the ABB Settlement Fund will not be fully funded until January

14, 2022, Agreement, ¶3.1, delaying distribution until more money is available to be distributed is in the best interests of the class members.

Once this litigation has been completely resolved, Plaintiffs intend to distribute the Net Settlement Funds to class members that made claims on a *pro rata* basis, subject to details specified in a motion to distribute funds be filed at a later date. The Notice Plan submitted herewith informs potential class members of this fact. *See* Azari Decl., Exs. 1-5.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) approve and order the notice plan and the proposed opt-out and objection procedures; (3) stay the Action against ABB pending final approval of the Settlement; (4) establish a schedule with deadlines for notice, opting out, objecting, filing claims, and setting a fairness hearing, and (5) enter the [Proposed] Order Preliminarily Approving Class Settlement and Notice Plan, attached hereto as Exhibit C.


Dated:  October 22, 2020                              Respectfully submitted,


  _s/ Joseph P. Guglielmo_                        John A. DeVault, III
Joseph P. Guglielmo                              Florida Bar No. 103979
Thomas K. Boardman                               BEDELL, DITTMAR, DEVAULT,
SCOTT+SCOTT                                       PILLANS & COXE, P.A.
ATTORNEYS AT LAW LLP                             101 East Adams Street
The Helmsley Building                            Jacksonville, FL 32202
230 Park Avenue, 17th Floor                      Telephone: (904) 353-0211
New York, NY 10169                               Facsimile:  (904) 353-9307
Telephone: (212) 223-6444                        jad@bedellfirm.com
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com                       *Plaintiffs' Local Counsel*
tboardman@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
cburke@scott-scott.com

*Co-Lead Class Counsel*

Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile:  (904) 353-9307
mel@bedellfirm.com

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

Hollis Salzman
Eamon O'Kelly
Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@robinskaplan.com
eokelly@robinskaplan.com
bsteinberg@robinskaplan.com

*Co-Lead Class Counsel*

Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
1700 K. St., NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile:  (619) 338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

Steven C. Marks
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile:  (305) 358-2382
smarks@podhurst.com

*Plaintiffs' Trial Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Dated:  October 22, 2020

 *s*/ Joseph P. Guglielmo            
Joseph P. Guglielmo
