**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| In Re:<br><br>**DISPOSABLE CONTACT LENS<br>ANTITRUST LITIGATION** | **Case No. 3:15-md-2626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
|---|---|
| **THIS DOCUMENT RELATES TO:**<br>All Class Actions | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AGREEMENT WITH DEFENDANT ABB OPTICAL GROUP LLC**
<u>**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................2

    A.    Investigation, Procedural Posture, and Previous Settlements.................................2

    B.    ABB Settlement ....................................................................................................2

    C.    Summary of the Settlement Terms ........................................................................3

        1.    Monetary Relief for the Benefit of the Class .................................4

        2.    Class Releases .................................................................................5

        3.    Settlement Termination....................................................................5

        4.    Class Representatives' Service Award .............................................5

        5.    Attorneys' Fees and Costs ..............................................................5

        6.    The Court-Approved Notice Program was Implemented ...........................6

        7.    Reaction to the Settlements Has Been Positive ..........................6

    D.    The Standards of Rule 23(a) and (b)(3) Have Already Been Met .........................7

III.    ARGUMENT ..........................................................................................................7

    A.    The Legal Standard for Final Approval .................................................................7

    B.    The Court Has Personal Jurisdiction over the Settlement Classes Because Members of the Settlement Classes Received Adequate Notice and an Opportunity to Be Heard.......................................................................................8

        1.    The Best Notice Practicable Was Furnished................................8

        2.    The Notice and Notice Program Were Reasonably Calculated to Inform Settlement Class Members of Their Rights .............................10

    C.    The Settlements Should Be Approved as Fair, Adequate, and Reasonable..........11

        1.    The Settlement is the Product of Good-Faith, Informed, and Arm's-Length Negotiations During Mediation ...............................................12

        2.    Complexity, Expense, and Duration of Litigation .....................14

3.      The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.....................................................................14

4.      Likelihood of Success on the Merits...........................................................15

5.      Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair ....................................................15

IV.     FAIRNESS HEARING...........................................................................................16

V.      CONCLUSION......................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ................................................................................8

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .......................12, 14, 15

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .................................................................................7, 11, 12

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................................................8, 12, 15

*Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*,
  No. 8:03-cv-02246-SDM-TGW, 2006 WL 2474062 (M.D. Fla. Aug. 25,
  2006) .........................................................................................................................7, 8

*Francisco v. Numismatic Guar. Corp. of Am.*,
  No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ....................................13

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ...................................................................................7

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) .................................11

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................................11

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) .................................................................................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)......................................................................................8

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .................................................................................7

*Leverso v. Southtrust Bank*,
  18 F.3d 1527 (11th Cir. 1994) .................................................................................11, 12

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................................................12, 14, 15, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..........................................................................................8, 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................................8, 11

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ....................................................................14

*Turner v. Gen. Elec. Co.*,
    No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275 (M.D. Fla. Sept. 13,
    2006) ....................................................................................................................12

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
    Rule 23...................................................................................................................6
    Rule 23(a)...............................................................................................................7
    Rule 23(b)(3).......................................................................................................3, 7
    Rule 23(c)(2)(B)......................................................................................................6
    Rule 23(e)......................................................................................................7, 8, 11

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
    §11.41 (4th ed. 2002) .......................................................................................8, 12

MANUAL FOR COMPLEX LITIGATION (THIRD)
    §30.42 (1995) ........................................................................................................11

For the reasons set forth herein, Plaintiffs respectfully move for final approval of the Settlement Agreement with ABB Optical Group, LLC ("ABB") (hereafter, the "ABB Settlement" or "Settlement Agreement").[1]

## I.       INTRODUCTION

As set forth below, the Court should grant Final Approval to the ABB Settlement because it satisfies all the criteria for Final Approval.  The ABB Settlement provides excellent relief for the Settlement Class and is both reasonable and consistent with applicable law.  Indeed, the Settlement, under which ABB will pay $30,200,000 in cash to create a Settlement Fund, is a fantastic result for the Settlement Class after years of hard-fought litigation.  *See* Jt. Decl., ¶¶6, 7, 64.[2]

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court: (1) set a date and time for the Fairness Hearing regarding this Motion and the concurrently filed Application for Attorneys' Fees and Expenses; (2) grant Final Approval to the ABB Settlement and Certify the Settlement Class; and (3) issue an order entering a final judgment and order of dismissal with prejudice as to ABB.[3]

---

[1]       Simultaneously with this motion, Lead Counsel are also filing an Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Application for Fees and Expenses") from the ABB Settlement Fund.  Unless otherwise defined, all capitalized terms used herein shall have the same meanings as those set forth in the ABB Settlement Agreement.  ECF No. 1215-1.

[2]       "Joint Declaration" or "Jt. Decl." references are to the Joint Declaration of Christopher Lebsock, Eamon O'Kelly, and Joseph Guglielmo, filed concurrently herewith in support of both this Motion and the Application for Fees and Expenses.

[3]       Lead Counsel will submit a Proposed Order with their reply brief on April 9, 2021, after they have the final statistics on settlement participation and once the opt-out and objection deadline has passed.

## II.   STATEMENT OF FACTS

### A.   Investigation, Procedural Posture, and Previous Settlements

Plaintiffs incorporate by reference the Statement of Facts in the concurrently filed Application for Fees and Expenses, which details Lead Counsel's work in this matter, its procedural history, and the previously approved settlements with Bausch & Lomb, Inc. ("B&L") and CooperVision, Inc. ("CVI").

### B.   ABB Settlement

The catalyst for the settlement with ABB was the Court's April 3, 2020 Order regarding the impact of the COVID-19 pandemic on the case schedule.  ECF No. 1180.  In the final paragraph of the Order, the Court stated as follows:

> Notwithstanding the paragraph above, because of this life and death crisis, the Court sincerely urges the Parties to earnestly confer with each other in a deliberate attempt to reach an agreement that completely resolves this litigation.  Specifically, the Court implores the remaining Defendants to have their corporate executives seriously consider this request and the basis for it.

*Id*. at 5.

Plaintiffs and ABB took the Court's words to heart.  On Sunday, August 30, 2020, they engaged in a day-long mediation session with former U.S. District Judge Layn Phillips via video conference.  Jt. Decl., ¶64.  Prior to the August 30, 2020 mediation session, the parties engaged in a series of pre-mediation discussions with Judge Phillips regarding a potential settlement.  *Id.*  With Judge Phillips' guidance and assistance, the Parties were able to reach an agreement to resolve the case against ABB.  *Id.*  ABB will pay $30,200,000 into a settlement fund in exchange for dismissal

and release of all claims against it.[4]  *Id*.  The Parties fully executed the Settlement Agreement on September 22, 2020.  *Id*.

On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement.  ECF No. 1215.  On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement.  ECF No. 1219.  On November 12, 2020, the Court issued an order granting preliminary approval of the ABB Settlement and endorsing the Notice Plan.  ECF No. 1224.

### C.    Summary of the Settlement Terms

The ABB Settlement terms are detailed in the Settlement Agreement.  The following is a summary of the material terms of the Settlement.  The ABB Settlement Classes are opt-out classes under Federal Rule of Civil Procedure 23(b)(3).  Because ABB was a distributor of contact lenses made by all four of the manufacturer Defendants (Alcon, JJVC, CVI, and B&L), the ABB Settlement defines the ABB Settlement Class as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015.  Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

---

[4]      In accordance with the Settlement Agreement, ABB paid $500,000 of the Settlement Amount in cash into the Escrow Account controlled by the Escrow Agent, and the remainder of the Settlement Amount ($29,700,000) will be paid into the Escrow Account as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and the remaining balance ($14,850,000) by January 14, 2022.  ECF No. 1215-1, ¶3.1.

¶1.35.  The ABB Settlement Class tracks the CVI Settlement Class for which the Court has already granted final approval.  ECF No. 1164.

### 1.      Monetary Relief for the Benefit of the Class

As noted above, ABB deposited $500,000 of the Settlement Amount into an Escrow Account following Preliminary Approval.  That deposit created the Settlement Fund.  The remainder of the Settlement Amount ($29,700,000) will be deposited into the Settlement Fund as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and the remaining balance ($14,850,000) by January 14, 2022.  ECF No. 1215-1, ¶3.1.

The Net Settlement Fund – which will be distributed at a later date on a *pro rata* basis among eligible Settlement Class Members who submitted valid claims and did not opt out of the Settlement – is equal to the Settlement Fund plus any accrued interest and less: (1) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (to the extent allowed by the Court); (2) Class Notice and Administration Expenses; (3) Taxes and Tax Expenses; and (4) any other fees or expenses approved by the Court.  ECF No. 1215-1, ¶1.16.

Any uncashed or returned checks will remain in the Settlement Fund for a reasonable period of time after the first Settlement Fund payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member payments.  ECF No. 1215-1, ¶8.9.  Any residual funds still remaining after that period will be distributed to Authorized Claimants until no fund remains, or there is a *de minimis* amount remaining in the Settlement Funds.  *Id.*  If a *de minimis* amount remains after distribution to Authorized Claimants, any remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Lead Counsel and approved by the Court.  *Id.*

### 2.      Class Releases

In exchange for the benefits conferred by the ABB Settlement, all Settlement Class Members who do not timely opt out will release ABB from the Released Claims.  ECF No. 1215-1, ¶7.

### 3.      Settlement Termination

Any party may terminate the ABB Settlement if the ABB Settlement is rejected or materially modified by the Court or by an appellate court.  ECF No. 1215-1, ¶10.2.

### 4.      Class Representatives' Service Award

Lead Counsel do not request service awards from the ABB Settlement but reserve the right to seek such awards from any future recoveries, should they reach a settlement with one of the remaining defendants or prevail at trial against the remaining defendants.

### 5.      Attorneys' Fees and Costs

Contemporaneous with this motion, and as allowed by the ABB Settlement, Lead Counsel has filed a motion for an award of attorneys' fees for their time litigating this case for over five years, as well as reimbursement of certain costs.  ECF No. 1215-1, ¶9.1.  Specifically, Lead Counsel request reimbursement of $752,117.10 in costs they have incurred since the Court's last Order approving payment of common fund costs from the CVI and B&L Settlement Funds.  *See* ECF No. 1164. Lead Counsel also seek attorneys' fees equal to one-third of the Net ABB Settlement Fund – after the payment of Court-approved cost – for a total of $9,315,960.97 in fees.[5]

---

[5]      Lead counsel's fee request of $9,315,960.97 is equal to one-third of the ABB Settlement Amount ($30,200,000) less the expenses requested of $752,117.10 and the anticipated notice and administration costs of $1,500,000 ($500,000, previously approved by the Court, and $1,000,000 for anticipated future notice and claims administration expenses).

### 6.     The Court-Approved Notice Program Was Implemented

The ABB Settlement provides that Claims Notice and Administration Expenses were to be paid out of the Settlement Fund.  ECF No. 1215-1, ¶¶3.9, 8.3.  The Settlement Agreement further provides that, prior to the Effective Date, Lead Counsel, without further approval of ABB, may pay from the Settlement Funds an amount up to $500,000 to cover Class Notice and Administration Expenses, Taxes and Tax Expenses associated with providing notice to the Settlement Classes.  ECF Nos. 1215-1, ¶¶3.9, 8.1, 8.2.  In an Order dated November 13, 2020, the Court authorized Lead Counsel to spend up to $500,000 of the ABB Settlement Fund for Class Notice and Administration Expenses for the purposes of effectuating notice consistent with the Settlement Agreement and F.R.C.P. 23.  ECF No. 1224.  Plaintiffs' Notice was the best notice practicable, in accordance with the standards laid out under F.R.C.P. 23(c)(2)(B).  Epiq Decl., ¶¶11-13.[6]

### 7.     Reaction to the Settlements Has Been Positive

In accordance with the Notice Plan, class members who wish to opt out of or object to the ABB Settlement, this Motion, or the Application for Fees and Expenses, must do so by no later than March 10, 2021.  As of February 26, 2021, there have been just six requests for exclusion from and one objection to the Settlements whereas there have been 23,166 claims filed (59,793 claims have been filed across all settlements)[7] – an overwhelmingly favorable response on par with the B&L and CVI Settlements for which the Court has already granted final approval.  *Id*., ¶37.  Lead Counsel and Epiq

---

[6]     All "Epiq Decl." references are to the Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan filed in support of this Motion and the Motion for Attorneys' Fees.

[7]     The number of duplicate claims is not yet known.

will provide updated information regarding the requests for exclusions and any objections to the Settlements by April 9, 2021, after the close of the opt-out and objection period.[8]

  **D.**  **The Standards of Rule 23(a) and (b)(3) Have Already Been Met**

  The Court previously found that the requirements of Rule 23(a) and 23(b)(3) have been satisfied in this Action when certifying the litigation classes.  ECF No. 940.  This Court should make the same determinations in granting Final Approval and certifying the ABB Settlement Class, as it did with the similar CVI Settlement Class.

  For the reasons set forth herein and in the Joint Declaration, Plaintiffs and Lead Counsel respectfully request that the Court grant Final Approval of the ABB Settlement.

**III.**  **ARGUMENT**

  **A.**  **The Legal Standard for Final Approval**

  Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  The Eleventh Circuit instructs that courts determining whether to approve a settlement be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-cv-02246-SDM-TGW, Report and

---

[8]  As per the Court's Preliminary Approval Order of the ABB Settlement, the deadline to opt-out or object to the Settlement is March 10, 2021.  ECF No. 1224.

Recommendation (M.D. Fla. Aug. 4, 2006) (ECF No. 111), *adopted by Merryday, J.*, 2006 WL 2474062 (M.D. Fla. Aug. 25, 2006). The policy favoring settlement is especially relevant in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) (citing cases).

The Settlement here meets the standards of Rule 23(e) and applicable case law, and Final Approval should be granted.

**B.      The Court Has Personal Jurisdiction over the Settlement Class Because Members of the Settlement Classes Received Adequate Notice and an Opportunity to Be Heard**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

**1.      The Best Notice Practicable Was Furnished**

The Notice Program was comprised of three parts: (1) direct email and mail postcard notice ("Mailed Notice") to all identifiable Settlement Class Members; (2) publication notice ("Published Notice") designed to use advertisements in publications, the internet, and social media to reach Settlement Class Members for whom direct mail notice was not possible; and (3) a "Long-Form"

Notice, with more detail than the Mailed or Published Notices, that has been available on the Settlement Website and via mail upon request. Epiq Decl., ¶31.

Each facet of the Notice Program was timely and properly accomplished. *Id.*, ¶¶11-35. The Notice Administrator received data files, to the extent available from Defendants, which identified the names and last known addresses of identifiable Settlement Class Members and mailed postcards to 493,488 Settlement Class Members. *Id.*, ¶19. The Notice Administrator performed follow-up research and is continuing to attempt, prior to the Final Approval Hearing, to re-mail postcards to Settlement Class Members whose initial postcard notices were returned by the postal service. *Id.*, ¶21. The Long-Form Notice was also available on the Settlement Website and could be mailed in response to requests from Settlement Class Members. *Id.*, ¶31. The Notice Administrator also performed and timely completed the Published Notice program through advertisements in *People* magazine. *Id.*, ¶23. The Notice Administrator also published Notice via advertisements on the internet and social media through banner advertisements and sponsored search listings on websites, such as *Google*, *Yahoo!*, *Facebook*, and *Instagram*. *Id.*, ¶25. Ads and press releases were also translated into Spanish and targeted to Spanish speakers. *Id.*, ¶¶25, 26, 30.

The Notice Administrator also established the Settlement Website, including the Long-Form Notice, to enable Settlement Class Members to obtain detailed information about the Action and the Settlement. *Id.*, ¶¶31-35. As of February 26, 2021, the Settlement Website had 240,953 unique visitors. *Id.* In addition, a toll-free number was established and has been operational since December 1, 2019. *Id.*, ¶33. By calling this number, Settlement Class Members can listen to answers to frequently asked questions and request a copy of the Long-Form Notice. *Id.* As of

February 23, 2021, the toll-free number had handled 2,226 calls representing 8,062 minutes of use. *Id.*

> ### 2.     The Notice and Notice Program Were Reasonably Calculated to Inform Settlement Class Members of Their Rights

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).  The Notice, among other things, defined the Settlement Class, described the release provided to ABB under the ABB Settlement, as well as the plan of distribution, and informed members of the Settlement Class of their right to opt out or object, the procedures for doing so, and information regarding a Final Approval Hearing.  It also notified Settlement Class Members that a class judgment would bind them unless they opted out and told them where they could get more information – for example, the Settlement Website where copies of the Settlement Agreement, as well as other important documents, have been posted.  Further, the Notice described Lead Counsel's intention to do as follows:

> [A]sk the Court for attorneys' fees of up to one-third (33.3%) of the ABB, B&L, and CVI Settlement Funds, after payment of Court-approved costs and expenses. In addition, Lead Counsel will ask the Court for reimbursement from the ABB Settlement Fund of costs and expenses for their work in the Action, and may also seek service awards for the Class Representatives for their time and work spent prosecuting this Action. Any fees and expenses awarded by the Court will be paid out of the Settlement Funds.

ECF No. 1216.  The Notice also detailed that Lead Counsel could request a Service Award for the Class Representatives (though Lead Counsel is deciding not to seek such Service Awards from the ABB Settlement).  *Id.*  Settlement Class Members were thus provided with the best practicable notice that was "reasonably calculated, under . . . the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of February 23, 2021, the Notice Administrator had received six requests to opt out of the ABB Settlement.  Epiq Decl., ¶36.  Lead Counsel and Epiq will provide updated information regarding the requests for exclusions and any objections to the Settlements by April 9, 20201, after the close of the opt-out and objection period.  On the same date, Lead Counsel also intend to file a reply brief to any objections that are timely filed and to further advocate for Final Approval using the complete set of class participation data.

### C.   The Settlements Should Be Approved as Fair, Adequate, and Reasonable

In deciding whether to approve class action settlements, courts analyze whether they are "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett*, 737 F.2d at 986.  A settlement is fair, reasonable, and adequate when "'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'"  *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) §30.42 at 238 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."  *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).[9]

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1)   the existence of fraud or collusion behind the settlement;

---

[9]   Unless otherwise indicated, citations are omitted and emphasis is added.

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of the Plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows that the ABB Settlement is eminently fair, adequate, and reasonable.

> **1.     The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations During Mediation**

A class action settlement should be approved, so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced [Lead] Counsel").  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.'") (quoting *Behrens*, 118 F.R.D. at 538); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41.

The Settlement here is the product of an adversarial mediation that took place on Sunday, August 30, 2020. The Parties engaged in a day-long mediation session with former U.S. District

Judge Layn Phillips via video conference. Jt. Decl., ¶64. Prior to the August 30, 2020 mediation session, the Parties engaged in a series of pre-mediation discussions with Judge Phillips regarding a potential settlement. *Id.* With Judge Phillips' guidance and assistance, the Parties were able to reach an agreement to resolve the case against ABB. *Id.* ABB will pay $30,200,000 in exchange for dismissal and release of all claims against it. *Id.* The Parties fully executed the Settlement Agreement on September 22, 2020. *Id.*

Furthermore, Lead Counsel are particularly experienced in the litigation, class certification, trial, and settlement of nationwide class actions. *Id.*, ¶¶74, 76. Lead Counsel zealously represented their clients and the Classes throughout the litigation including, *inter alia*, prevailing at the motion to dismiss stage and aggressively pursuing discovery, which included a review of more than 4.3 million pages of documents and electronic data, as well as taking and defending approximately 79 depositions of party and non-party witnesses. *Id.*, ¶¶20-22. Lead Counsel ultimately prevailed at class certification, where this Court determined that "Plaintiffs' counsel are skilled and adequate in all respects." ECF No. 940 at 127.

In negotiating the Settlement, Lead Counsel had the benefit of decades of experience and a familiarity with the facts of this Action, as well as with other cases involving similar claims. As detailed above, Lead Counsel thoroughly investigated Plaintiffs' claims and engaged in extensive discovery with ABB and other Defendants. Lead Counsel's review of that discovery enabled them to understand the key evidence in this case and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where

counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2. Complexity, Expense, and Duration of Litigation

Given the time and resources that would be necessary to litigate this matter to a verdict and through a potential post-judgment appeal, the ABB Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. These considerations, and the other considerations noted above, militate heavily in favor of granting Final Approval to the Settlement. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (noting likely "battle of experts" at trial regarding damages that would pose "great difficulty" for plaintiffs); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### 3. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The ABB Settlement was reached after extensive pretrial discovery, including significant motion practice. Discovery from non-Settling Parties and third parties had also been completed before the Settlement was reached. This resulted in millions of pages of documents and dozens of depositions that bolstered the factual record. Jt. Decl., ¶¶20-22. Further, the ABB Settlement was reached after Court orders on key motions, including on motions to dismiss, class certification, motions to exclude Plaintiffs' experts, summary judgment, and motions in *limine*.

As a result, Lead Counsel are well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims and their prospects for success at trial and on appeal. *Id.* Lead Counsel are also highly familiar with the claims and defenses at issue in this litigation through their experience litigating similar claims in MDL No. 1030 and elsewhere. *Id.*, ¶63.

### 4.    Likelihood of Success on the Merits

Plaintiffs and Lead Counsel are confident in the strength of their case but are also aware of the defenses available to ABB and the risks inherent in any trial and post-judgment appeal. Although Plaintiffs defeated Defendants' motions to dismiss and summary judgment motions and successfully certified the Horizontal Class, among others, absent a settlement, Plaintiffs will still need to prevail at trail and during any post-judgment appeal, which could delay recovery by years. *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Under the circumstances, Lead Counsel determined that the ABB Settlement was appropriate and in the Settlement Class's best interest. Jt. Decl., ¶61.

### 5.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is

unfair or inadequate.").  "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  *Lipuma*, 406 F. Supp. 2d at 1323.

The ABB Settlement's $30,200,000 cash recovery is a great result for members of the Settlement Class, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement.  These risks and barriers included, among other things, further pre-trial motions, a jury trial, and potential appellate review.  Furthermore, ABB's $30,200,000 cash payment is substantially larger than the previously approved settlements with CVI and B&L, both in absolute terms and relative to each Defendant's share of UPP commerce. During the Class Period, the volume of commerce of UPP lenses sold in the United States was approximately $5.3 billion. Jt. Decl., ¶85.  During the Class Period, ABB distributed $994,371,643 in UPP lens commerce.  *Id*., ¶86.  The $30.2 million settlement therefore represents over 3% of ABB's total UPP commerce.[10]  It is also more than three-times larger than the previously approved B&L settlement, and more than ten-times larger than the previously approved CVI settlement.

In light of ABB's defenses, and the challenging and unpredictable path of litigation and appeal, the ABB Settlement is an excellent result for the Settlement Class and represents a fair and reasonable recovery.

## IV.    FAIRNESS HEARING

Lead Counsel requests that the Court set a date and time for a Fairness Hearing regarding this Motion and Plaintiffs' concurrently filed Application for Fees and Expenses.  Lead Counsel and ABB's counsel have conferred and are happy to make themselves available for a hearing, remote or in person, should state and federal COVID protocols allow, at the Court's convenience

---

[10]    For comparison, CVI's $3 million settlement represented 1.6% of CVI's total UPP lens commerce and B&L's $10 million settlement represented 2.7% of its UPP sales.  *Id*., ¶87.

any time during the week of May 10, 2021, consistent with the Court's Preliminary Approval Order.  ECF No. 1224.  This will give any interested parties and/or objectors thirty (30) days to review Plaintiffs' and Lead Counsel's reply briefs in further support of this Motion and the Application for Fees and Expenses, which will be filed by April 9, 2021.

## V.     CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) set a date and time for the Fairness Hearing the week of May 10, 2021 regarding this Motion and the concurrently filed Application for Fees and Expenses; (2) grant Final Approval to the ABB Settlement and Certify the ABB Settlement Class; and (3) issue an order entering a final judgment and order of dismissal with prejudice as to ABB.

Dated:  February 26, 2021                                    Respectfully submitted,


  _s/ Joseph P. Guglielmo_                       John A. DeVault, III
Joseph P. Guglielmo                              Florida Bar No. 103979
Thomas K. Boardman                               BEDELL, DITTMAR, DEVAULT,
SCOTT+SCOTT                                       PILLANS & COXE, P.A.
ATTORNEYS AT LAW LLP                              101 East Adams Street
The Helmsley Building                            Jacksonville, FL 32202
230 Park Avenue, 17th Floor                      Telephone: (904) 353-0211
New York, NY 10169                               Facsimile:  (904) 353-9307
Telephone: (212) 223-6444                        jad@bedellfirm.com
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com                        *Plaintiffs' Local Counsel*


Christopher M. Burke                             Michael D. Hausfeld
SCOTT+SCOTT                                      James J. Pizzirusso
ATTORNEYS AT LAW LLP                             Nathaniel C. Giddings
600 W. Broadway, Suite 3300                      HAUSFELD LLP
San Diego, CA 92101                              888 16th Street NW, Suite 300
Telephone: (619) 233-4565                        Washington, DC 20006
Facsimile:  (619) 233-0508                       Telephone: (202) 540-7200
cburke@scott-scott.com                           Facsimile:  (202) 540-7201
                                                 mhausfeld@hausfeld.com
                                                 jpizzirusso@hausfeld.com
*Co-Lead Class Counsel*                          ngiddings@hausfeld.com

Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile:  (904) 353-9307
mel@bedellfirm.com

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

Eamon O'Kelly
Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@robinskaplan.com
eokelly@robinskaplan.com
bsteinberg@robinskaplan.com

*Co-Lead Class Counsel*

Steven C. Marks
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile:  (305) 358-2382
smarks@podhurst.com

*Plaintiffs' Trial Counsel*

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile:  (619) 338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/ Joseph P. Guglielmo
Joseph P. Guglielmo