**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| In Re: | Case No. 3:15-md-2626-HES-JRK |
|---|---|
| **DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Judge Harvey E. Schlesinger** **Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:** All Class Actions | |

**LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF EXPENSES**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ......................................................................... 1

II.  STATEMENT OF FACTS .............................................................................. 2

   A.  Lead Counsel's Initial Investigation ....................................................... 2

   B.  Procedural History ................................................................................... 3

   C.  The Settlements ........................................................................................ 7

III. ARGUMENT ................................................................................................ 10

   A.  Lead Counsel's Request for 33.3% of the ABB Net Settlement Funds Is Fair and
      Reasonable ............................................................................................. 10

     1.  The Law Awards Lead Counsel Fees from the Common Fund ................... 10

     2.  Application of the *Camden I* Factors Supports the Requested Fee ............... 13

       a)  Litigating This Complex and Novel Case Required Substantial Time and Labor ..... 14

       b)  Lead Counsel Achieved a Successful Result Considering the Litigation Risks......... 16

       c)  Lead Counsel Assumed Considerable Risk to Pursue This Action on a Pure
          Contingency Basis ......................................................................... 16

       d)  The Requested Fee Comports with Fees Awarded in Similar Cases ........................ 17

       e)  The Remaining *Camden I* Factors Also Favor Approving the Requested Fee .......... 19

     3.  The Expense Request Is Appropriate ......................................................... 19

IV. FAIRNESS HEARING................................................................................... 20

V.  CONCLUSION ............................................................................................. 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
     454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...................................................................18

*Behrens v. Wometco Enters., Inc.*,
     118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .......................16, 17, 20

*Boeing Co. v. Van Gemert*,
     444 U.S. 472 (1980)...............................................................................................10, 11

*Camden I Condo. Ass'n v. Dunkle*,
     946 F.2d 768 (11th Cir. 1991) ................................................................................. *passim*

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
     No. 1:04-cv-3066, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) ...........................20

*Deposit Guar. Nat'l Bank v. Rope*,
     445 U.S. 326 (1980)................................................................................................11

*Francisco v. Numismatic Guar. Corp. of Am.*,
     2008 WL 649124 (S.D. Fla. 2008) .........................................................................18

*George v. Acad. Mortg. Corp. (UT)*,
     369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...................................................................18

*In re Checking Account Overdraft Litig.*,
     2020 WL 4586398 (S.D. Fla. Aug. 10, 2020)..........................................................18

*In re Checking Account Overdraft Litig.*,
     830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................12, 15, 19

*In re Continental Ill. Sec. Litig.*,
     962 F.2d 566 (7th Cir. 1992) ..................................................................................17, 18

*In Re: Disposable Contact Lens Antitrust Litigation*,
     No. 3:15-md-02626-J-HES-JRK................................................................................3

*In re Friedman's, Inc. Sec. Litig.*,
     2009 WL 1456698 (N.D. Ga. May 22, 2009).............................................................18

*In re Gould Secs. Litig.*,
     727 F. Supp. 1201 (N.D. Ill. 1989) .........................................................................11

*In re Ikon Office Sols., Inc. Secs. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................20

*In re Public Serv. Co. of N.M.*,
  1992 WL 278452 (S.D. Cal. July 28, 1992) ......................................18

*In re Sunbeam Secs. Litig.*,
  176 F. Supp. 2d 1323 ...........................................................11, 12, 14, 16

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................14

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ...............................................11, 12

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)..........................................................................19, 20

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) .............................................17

*Muehler v. Land O'Lakes, Inc.*,
  617 F. Supp. 1370 (D. Minn. 1985)...................................................11

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ......................................................20

*Pierre-Val v. Buccaneers Ltd. P'ship*,
  2015 WL 12843849 (M.D. Fla. Dec. 7, 2015) (32%).....................18

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30%) ...............................18

*Ressler v. Jacobson*,
  149 F.R.D. 561 (M.D. Fla. 1992)......................................................15

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) (30%).................................17, 18, 20

*Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*,
  2002 U.S. Dist. LEXIS 25721 (S.D. Fla. 2002) (30%) ................18

*Swift v. BancorpSouth Bank*,
  No. 1:10-cv-00090, 2016 WL 11529613 (N.D. Fla. July 15, 2016)......20

*Walco Investments, Inc. v. Thenen*,
  975 F. Supp. 1468 (S.D. Fla.1997) ...............................................14, 15

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ......................................................................................12, 17

*Wolff v. Cash 4 Titles*,
No. 03-2278-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)...........................................12

**Statutes, Rules, and Regulations**

15 U.S.C.
§1.............................................................................................................................................3, 4
§3................................................................................................................................................4

Federal Rules of Civil Procedure
Rule 23(f) ....................................................................................................................................5

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS, §14:6 (4th ed. 2002) ...................................................................18

Theodore Eisenberg, *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92
N.Y.U. L. REV. 937 (2017) .......................................................................................................12

For the reasons set forth below, Lead Counsel request that the Court enter an order: (1) promptly setting a date and time for the Fairness Hearing regarding this Motion and the concurrently filed Motion for Final Approval of Settlement Agreement with Defendant ABB Optical Group LLC ("Motion for Final Approval"); and (2) awarding Lead Counsel the requested $9,315,960.97 in attorneys' fees and $752,117.10 in newly incurred expenses.[1]

## I.   PRELIMINARY STATEMENT

Over the course of nearly six years of hard-fought litigation that has progressed through motions to dismiss, sharply contested discovery, class certification, several motions for interlocutory appeal, and multiple motions for summary judgment, Lead Counsel have reached settlements with three of the original five defendants totaling $43,200,000.[2]  They have not until now, however, requested any award of attorneys' fees for the work they performed litigating the case.  Lead Counsel therefore respectfully request that the Court award attorneys' fees equal to one-third (33.3%) of the $30,200,000 ABB Settlement Fund  ($9,315,960.97), after payment of the Court-approved notice costs ($500,000), anticipated claims administration costs ($1,000,000),[3]

---

[1]  Lead Counsel will submit a Proposed Order with their reply brief on April 9, 2021, once the opt-out and objection deadline has passed and Lead Counsel have had an opportunity to consider and respond to any objections, should they arise.

[2]  On March 4, 2020, the Court granted final approval to settlements of $10,000,000 and $3,000,000 with Bausch & Lomb Incorporated ("B&L" and "B&L Settlement Fund") and CooperVision, Inc. ("CVI" and "CVI Settlement Fund"), respectively.  ECF No. 1164.  A motion for Final Approval of the ABB Optical Group LLC ("ABB") Settlement of $30,200,000 ("ABB Settlement Fund") was submitted concurrently with this motion.  Each settlement is held in a separate fund. Together, they will be referred to herein as the "Settlement Funds."

[3]  As noted in the motions to approve the B&L and CVI Settlements (ECF Nos. 1011, 1037, 1145), payment of additional notice and claims administration costs will be necessary.  Lead Counsel calculated the $1,000,000 figure based on estimates provided by the Court-approved claims administrator and their decades of experience with class action settlements.  All claims administration costs will be subject to court approval and any amount under the estimate will remain in the Settlement Fund for distribution to Class Members.  Lead Counsel presently

and expenses ($752,117.10) also requested in this Motion.[4]  The requested award of attorneys' fees and expense is well within the range approved by courts in this District and Circuit.  Counsel for ABB take no position on Lead Counsel's application for fees and costs.  Declaration of Joseph P. Guglielmo, Christopher Lebsock, and Eamon O'Kelly, filed herewith ("Jt. Decl."), ¶70.

In addition, because the Court has not yet set a date for the Fairness Hearing, Lead Counsel respectfully requests that the Court do so.[5]

## II.   STATEMENT OF FACTS

### A.   Lead Counsel's Initial Investigation

Lead Counsel devoted substantial time to investigating the potential claims against Defendants before filing Plaintiffs' complaints. Lead Counsel interviewed customers and potential plaintiffs to gather information about Defendants' conduct and the impact on customers. *Id.*, ¶¶6-8.  This information was essential to Lead Counsel's ability to understand the nature of Defendants' conduct, the nature of the UPPs, and potential remedies.  Lead Counsel consulted with experts to develop and refine their legal and damages theories and amassed evidence from various state and federal government hearings related to disposable contact lenses.

---

anticipates that they will file a motion for payment of additional notice and claims costs when they file their motion to distribute the settlement funds.  Application for additional notice and claims administration costs after payment of fees and expenses is routine in cases such as this. *See, e.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, Case No. 1:13-cv-07789-LGS (S.D.N.Y.) (ECF Nos. 1178, 1181).

[4]     Lead counsel's fee request of $9,315,960.97 is equal to one-third of the ABB Settlement Amount ($30,200,000), less the expenses requested in this motion of $752,117.10 and the anticipated notice and administration costs of $1,500,000 ($500,000 previously approved by the Court, and $1,000,000 for anticipated future notice and claims administration expenses).  The fees and expenses requested in this motion equal 33.34% to the ABB Settlement Amount. Inclusive of the anticipated notice and claims costs, the total is 36.65% of the ABB Settlement Amount.

[5]     Lead Counsel will submit a Proposed Order with their reply brief on April 9, 2021, once the opt-out and objection deadline has passed and Lead Counsel have had an opportunity to consider and respond to any objections, should they arise.

### B.       Procedural History

This case has presented a complex set of legal questions and novel defenses throughout. For nearly six years, Lead Counsel have successfully advanced Plaintiffs' antirust claims against five sophisticated multinational defendants, represented by counsel from some of the largest law firms in the world.  After thousands of pages of motion practice, millions of pages of documents exchanged and reviewed in discovery, and hours of depositions and hearings, Lead Counsel have negotiated and obtained class settlements totaling $43,200,000 and prepared the case for trial. Below, Lead Counsel detail their efforts to achieve these results.

This litigation began on March 3, 2015, when Plaintiff John Machikawa, among others, filed the first complaint against the four dominant manufacturers of disposable contact lenses, B&L, Johnson & Johnson Vision Care, Inc. ("JJVC"), Alcon Laboratories, Inc. ("Alcon"), CVI, and their primary distributor, ABB (collectively, "Defendants"), in the U.S. District Court for the Northern District of California ("*Machikawa*").  The complaints alleged that the Defendants' so-called "Unilateral Pricing Policies" ("UPPs") were illegal restraints on competition under Section One of the Sherman Act, 15 U.S.C. §1, and various state unfair competition laws and sought, *inter alia*, monetary damages, interest, attorneys' fees, restitution, and equitable relief.  Jt. Decl., ¶9.

On June 10, 2015, the Judicial Panel on Multidistrict Litigation consolidated and centralized *Machikawa*, along with other lawsuits alleging similar wrongdoing, in this Court.  *Id.* The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626-J-HES-JRK.

On October 7, 2015, the Court granted Lead Counsel's motion appointing Hausfeld LLP ("Hausfeld"), Scott+Scott Attorneys at Law LLP ("Scott+Scott"), and Robins Kaplan LLP ("Robins Kaplan") as interim co-lead counsel.  ECF No. 116.  On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated

Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act.  ECF No. 133.

On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint.  ECF No. 146.  Following briefing and oral argument, the Court denied Defendants' motion.  ECF Nos. 185, 190.  Discovery commenced on April 1, 2016.  ECF No. 204.  On July 27, 2016, Defendants filed their Answers and Affirmative Defenses.  ECF Nos. 266-70.

The Parties engaged in significant motion practice and extensive formal discovery, including approximately 79 depositions of Plaintiffs, Defendants' employees, experts, and third parties, and the production of more than 4.3 million pages of documents and voluminous electronically stored information by Defendants and third parties.  Jt. Decl., ¶¶20-22.

On March 1, 2017, Plaintiffs filed the operative complaint in this matter.  ECF No. 395. On March 3, 2017, Plaintiffs filed a Motion for Class Certification with accompanying expert reports.  ECF Nos. 396-98.  On June 15, 2017, Defendants filed their Motion to Strike certain portions of Plaintiffs' Expert Reports and their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, accompanying expert reports, and other declarations.  ECF Nos. 500-10, 693.  Plaintiffs filed their Reply in support of their Motion for Class Certification on September 8, 2017, as well as their oppositions to Defendants' Motion to Strike portions of Plaintiffs' Expert Reports.  ECF Nos. 611-18, 715.  On October 20, 2017, Defendants filed their Sur-Reply Memorandum of Law in Further Opposition to Plaintiffs' Motion for Class Certification.  ECF Nos. 674-78.  On August 1 and 2, 2018, the Court held a hearing on Plaintiffs'

Class Certification motion, which involved examination and cross-examination of Plaintiffs' and Defendants' experts, presentation of more than 50 exhibits; the hearing spanned more than ten hours.  ECF Nos. 865-1, 865-2, 866.

On December 4, 2018, the Court granted Plaintiffs' Motion for Class Certification ("Class Certification Order") and certified four litigation Classes, including the following Horizontal Class:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, or B&L for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Class are any purchases from 1-800[-]Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 940 at 162.  The Court appointed Hausfeld, Scott+Scott, and Robins Kaplan as counsel for the certified Classes and appointed the Plaintiffs as class representatives.

On December 18, 2018, Defendants filed petitions to appeal the Class Certification Order, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  The Parties briefed Defendants' petitions.  On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Class Certification Order, and on June 20, 2019, denied Alcon and B&L's virtually identical petition.  Jt. Decl., ¶¶31-32.

On August 20, 2018, Defendants filed four motions for summary judgment regarding all of Plaintiffs' claims.  ECF Nos. 872-74, 877.  Briefing on the motions was completed on December 17, 2018 (ECF No. 942), and a two-day hearing was held on August 21 and 22, 2019. ECF Nos. 1015, 1017.  On November 27, 2019, the Court denied Defendants' Motions for Summary Judgement, concluding as follows:

The Court finds Plaintiffs have produced satisfactory evidence supporting their position that Defendants had a conscious commitment to a common scheme designed to achieve an unlawful objective. There is evidence that the UPPs were instituted pursuant to coordinated pressure exerted by certain ECPs and ABB, the manufacturers sought agreement regarding the UPPs and the Defendants jointly policed the pricing policies. Plaintiffs have also proffered ample evidence of potential or actual anticompetitive market effects, demonstrated the alleged conspiracy was economically reasonable and substantiated their allegation that the UPPs imposed an unreasonable restraint on competition with no pro-competitive benefit.

***

Finally, the Court finds that Plaintiffs have done more than show conduct that is as consistent with lawful competition as it is with an illicit conspiracy; weighing the competing inferences, it is reasonable for a jury to find Defendants were engaged in an illicit price fixing.

ECF No. 1091 at 23.

For the next few months, the Parties worked to prepare their respective cases for trial, which was then schedule for February of 2020. Jt. Decl., ¶41. This included drafting, exchanging, and meeting and conferring regarding proposed jury instructions, witnesses, deposition designations, and exhibit lists. *Id*. The Parties also filed competing motions *in limine* (ECF Nos. 1055, 1056, 1058-61, 1064, 1092, 1103, 1160), which this Court ultimately ruled on, granting some in favor of Defendants and some in favor of Plaintiffs. ECF Nos. 1142, 1150, 1174.

At a January 8, 2020 hearing, the Court set a trial date of June 22, 2020 and a final pre-trial hearing for May 13, 2020. ECF No. 1131. On March 30, 2020, Plaintiffs and Defendants filed a Joint Notice in which they requested the Court's guidance on pre-trial and trial scheduling issues regarding the impact of the COVID-19 pandemic. ECF No. 1178. On April 3, 2020, the Court issued its Order in response, delaying the start of trial indefinitely on account of the many difficulties and dangers of attempting to hold a trial during the pandemic. ECF No. 1180. The Court also urged the parties to use this time to discuss and seriously consider a potential resolution of the litigation. *Id*.

6

Defendants have repeatedly denied all of Plaintiffs' allegations of wrongdoing.  They have consistently defended their conduct by arguing, *inter alia*, that the UPPs were lawful and that they never entered into an agreement with anyone to adopt, implement, or enforce the UPPs. Defendants have advanced additional defenses.

### C.    The Settlements

On August 30, 2017, Plaintiffs reached an "ice-breaker" settlement with Defendant CVI. Joint Decl., ¶48.  The settlement included a monetary payment of $3,000,000 and was reached on behalf of the following settlement class:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1, ¶1.37 (the "CVI Settlement Class").  On July 10, 2018, the Court preliminarily approved the settlement with CVI, but delayed dissemination of notice.  ECF No. 841.

On August 19, 2019, Plaintiffs reached a settlement agreement with Defendant B&L.  Jt. Decl., ¶50.  The settlement included a monetary payment of $10,000,000 and was reached on behalf of the following settlement class:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1, ¶1.37 (the "B&L Settlement Class").   On October 8, 2019, the Court granted preliminary approval of the B&L settlement and approved a plan to disseminate notice to members of the litigation classes, the CVI Settlement Class, and the B&L Settlement Class.   ECF No. 1046.

On January 16, 2020, Plaintiffs filed their Motion for Final Approval of Settlement Agreements with Defendants B&L and CV, as well as a Motion for Payment of Common Expenses and Class Representatives' Service Awards.   ECF Nos. 1136, 1137.   On February 25, 2020, the Court held a Fairness Hearing regarding the settlements with B&L and CVI.   *See* ECF No. 1154 and February 25, 2020 Hearing Transcript.   On March 4, 2020, the Court granted Plaintiffs' Motion for Final Approval and issued its Final Approval Order and Final Judgment and Order of Dismissal with Prejudice as to B&L and CVI.   ECF No. 1164.   The Court also granted Plaintiffs' Motion for Payment of Common Expenses and Class Representatives' Service Awards.   ECF No. 1165.

As permitted by the Court, Lead Counsel withdrew 33.3% ($4,329,000) from the collective $13,000,000 in the B&L and CVI Settlement Funds to cover incurred and anticipated common litigation expenses.   Jt. Decl., ¶56.[6]   These costs included $664,206.86 for some, but not all, of the future costs Lead Counsel anticipated they would incur to litigate the case through trial.   ECF No. 1165.   Lead Counsel did not seek any award of attorneys' fees from the settlements with B&L or CVI.

On April 3, 2020, the Court issued an Order regarding the impact of COVID-19 on the case schedule.   ECF No. 1180.   In the Order's final paragraph, the Court stated that it "sincerely urges the Parties to earnestly confer with each other in a deliberate attempt to reach an agreement that

---

[6]     $3,330,800 was paid from the B&L Settlement Fund and $999,000 was paid from the CVI Settlement Fund.   *Id*.

completely resolves this litigation.  Specifically, the Court implore[d] the remaining Defendants to have their corporate executives seriously consider this request and the basis for it."  *Id*. at 5.

Plaintiffs and ABB took the Court's words to heart.  On Sunday, August 30, 2020, they engaged in a day-long mediation session with former U.S. District Judge, Layn Phillips, via video conference.  Jt. Decl., ¶64.  Prior to the August 30, 2020 mediation session, the Parties engaged in a series of pre-mediation discussions with Judge Phillips regarding a potential settlement.  *Id.*  With Judge Phillips' guidance and assistance, the Parties were able to reach an agreement to resolve the case against ABB.  *Id*.  ABB will pay $30,200,000 into a settlement fund in exchange for dismissal and release of all claims against it.[7]  *Id*.  The Parties fully executed the Settlement Agreement on September 22, 2020.  *Id*.

On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement.  ECF No. 1215.  Because ABB was a distributor of contact lenses made by all of the manufacturer Defendants including Alcon, JJVC, CVI, and B&L, the ABB Settlement Class define the ABB Settlement Class as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015.  Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

---

[7]     ABB already paid $500,000 of the Settlement Amount in cash into the Escrow Account controlled by the Escrow Agent for purposes of disseminating notice.  ABB will pay the remainder of the Settlement Amount ($29,700,000) into the Escrow Account as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and the remaining balance ($14,850,000) by January 14, 2022. Agreement, ¶3.1.

Agreement, ¶1.35.  The ABB Settlement Class tracks the CVI Settlement Class for which the Court has already granted final approval.  ECF No. 1164.

On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement. ECF No. 1219.  On November 12, 2020, the Court preliminarily approved the ABB Settlement and approved the Notice Plan.  ECF No. 1224.

The Court-approved Notice Plan for the ABB Settlement informed potential Class Members that Lead Counsel would ask the Court for attorneys' fees "up to one-third (33.3%)" of the Settlement Fund, "after payment of Court-approved costs and expenses."  ECF No. 1216.

## III.    ARGUMENT

### A.    Lead Counsel's Request for 33.3% of the ABB Net Settlement Funds Is Fair and Reasonable

As stated in the ABB Settlement Agreement and Notice Plan, and consistent with standard class action practice and procedure, Lead Counsel respectfully request $9,315,960.97 in attorneys' fees, which equals one-third of the $30,200,000 Settlement Fund, after payment of the already-approved $500,000 in notice costs, $1,000,000 in anticipated claims administration costs, and $752,117.10 in expenses also requested in this Motion.  Agreement, ¶9.1; ECF No. 1216; Jt. Decl., ¶84.  Lead Counsel's 33.3% fee request is appropriate, fair, and well within the range of reasonableness under the factors established by the Eleventh Circuit in *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons detailed herein, Lead Counsel's application for attorneys' fees should be approved.

### 1.    The Law Awards Lead Counsel Fees from the Common Fund

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine

serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Secs. Litig.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989).[8]  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "'[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1333 (quoting *Boeing*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 687 (M.D. Ala. 1988); *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980).  Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear. . . .  We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law.  It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit.  It is an experience in which few of us have participated.  The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985).

---

[8]    Unless otherwise noted, citations are omitted.

11

In the Eleventh Circuit, class counsel receives a percentage of the funds obtained through a settlement.  In *Camden I*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this [C]ircuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  946 F.2d at 774.  Courts in this Circuit have applied the percentage of the fund approach since, holding as follows:

> The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions.  *Camden I*, 946 F.2d at 774.  Even before *Camden I*, courts in this Circuit recognized that "a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases."  [*Mashburn*, 684 F. Supp. at 670.]  More importantly, the Court observed first hand the monumental effort exerted by Class Counsel in this case, and does not need to see timesheets to know how much work Class Counsel have put in to reach this point.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011).

The Court has discretion in determining an appropriate fee.  "'There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case.'"  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).  Nonetheless, "'[t]he majority of common fund fee awards fall between 20% to 30% of the fund'" – though "'an upper limit of 50% of the fund may be stated as a general rule.'"  *Id.* (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case); *Wolff v. Cash 4 Titles*, No. 03-2278-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one-third"); Theodore Eisenberg, *et al*., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (showing, through an

empirical study, that the median fee award in Eleventh Circuit is 33% and the mean is 30%).  Lead

Counsel's fee request falls within this accepted range.  *See, e.g.*, *In re CNL Hotels & Resorts, Inc.*

*Secs. Litig.*, No. 04-cv-01231 (M.D. Fla. Aug. 1, 2006) (granting 34% in fees, over $12 million,

of a $35 million class settlement); *Johns Manville v. Tennessee Valley Auth.*, No. 99-2294 (N.D.

Ala. Aug. 20, 2007) (awarding 35% as fees for a $18 million class settlement); *Neal v. Chase*

*Manhattan Bank, U.S.A., N.A.*, No. 06-00049 (S.D. Ala. May 30, 2006) (awarding 37% in fees of

$2.7 million class settlement).

> **2.   Application of the *Camden I* Factors Supports the Requested Fee**

In the Eleventh Circuit, courts use the below factors to determine a reasonable

percentage to award as an attorneys' fee to class counsel in class actions:

(1)   the time and labor required;

(2)   the novelty and difficulty of the relevant questions;

(3)   the skill required to properly carry out the legal services;

(4)   the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5)   the customary fee;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the clients or the circumstances;

(8)   the results obtained, including the amount recovered for the clients;

(9)   the experience, reputation, and ability of the attorneys;

(10)  the "undesirability" of the case;

(11)  the nature and the length of the professional relationship with the clients; and

(12)  fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These factors are guidelines; they are neither exhaustive nor mandatory in every case. *See Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775) ("'Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.'"); *id.* at 1333-34 (encouraging "'the lower courts to consider additional factors unique to the particular case'") (quoting *Walco Investments, Inc. v. Thenen,* 975 F. Supp. 1468, 1472 (S.D. Fla.1997)).   As applied here, the *Camden I* factors demonstrate that the Court should approve the requested fee.

### a)   Litigating This Complex and Novel Case Required Substantial Time and Labor

Litigating and settling these claims demanded considerable time and labor, making this fee request reasonable.  Jt. Decl., ¶¶71-75.  Since the inception of this case, Lead Counsel ensured their efforts were efficient and coordinated to minimize duplication of effort. *Id.*, ¶72.  Lead Counsel's efforts have been considerable; it is a massive undertaking to advance such a complex multi-defendant antitrust class action such as this to the precipice of trial. *Id.*, ¶¶71-75.

Consideration of the novelty and difficulty of the questions involved in the case further support the fee request here.  Lead Counsel acquired and analyzed, along with experts, a substantial amount of factual and legal information. *Id.*, ¶73. Litigation of this action required counsel who were highly trained in class action law and procedure, as well as the specialized antitrust issues, presented here.  Lead Counsel possess these attributes, and their participation added value to the representation of the Classes. *Id.*, ¶74.  The record demonstrates that the action

14

involved a broad range of complex challenges by Defendants, which Lead Counsel met at every juncture. *Id.*, ¶¶74-75. For example, Defendants have repeatedly argued to this Court, and the Eleventh Circuit, that Plaintiffs lack standing to bring this lawsuit because they are not direct purchasers under the antitrust laws (ECF Nos. 505, 674, 906-908, 912, 930, 931, 934, 935, 967, 1015, 1016, 1023), an issue on which Lead Counsel prevailed at every turn. ECF Nos. 940, 993, 1091. The ability and knowledge to successfully navigate the nuanced issues regarding purchaser standing in antitrust matters is rare, even among class action attorneys. Thankfully, Lead Counsel were able to draw on their decades of combined experience representing plaintiffs in large antitrust class actions to successfully counter Defendants' arguments. Jt. Decl., ¶76.

In evaluating the quality of representation by Lead Counsel, the Court should also consider the quality of opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler v. Jacobson*, 149 F.R.D. 561, 654 (M.D. Fla. 1992). Litigating against capable opposing attorneys regarding an array of complex legal issues, Lead Counsel maintained a superlative quality of novel legal work, which conferred a substantial benefit on the Settlement Class. Jt. Decl., ¶¶71-77. Throughout the litigation, Plaintiffs, represented by Lead Counsel, have repeatedly prevailed against Defendants represented by experienced counsel from some of the world's largest law firms. *Id.*, ¶77; *see also Checking Account Overdraft*, 830 F. Supp. 2d at 1348 ("Class Counsel confronted not merely a single large bank, but 'the combined forces of a substantial portion of the entire American banking industry, and with them a large contingent of some of the largest and most sophisticated law firms in the country.'"); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.").

15

           **b)**      **Lead Counsel Achieved a Successful Result Considering the Litigation Risks**

Rather than face uncertainty at trial, the Settlement Class Members who file valid and timely claims will receive a meaningful cash benefit. Jt. Decl., ¶64. The ABB Settlement is particularly noteworthy given the combined litigation risks over the more than five years of litigation. *Id.*, ¶¶60, 63. Defendants raised numerous defenses. Success under these circumstances was far from certain, and this Settlement represents a fantastic result.

Prosecuting this action was risky from the outset. *Id.* If Defendants had been successful in even one of their potentially dispositive motions, members of the Classes would have obtained limited to no recovery for their losses. Given these risks, as well as the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement, the $30,200,000 cash recovery obtained through the ABB Settlement is outstanding.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiffs and Settlement Class Members, through continued litigation, could only have been achieved if Plaintiffs and the certified litigation Classes established liability and recovered damages at trial; and the final judgment was affirmed on appeal. The Settlement is, therefore, an extraordinary recovery for the Settlement Class in light of all of the risks that Lead Counsel faced and continue to face. *Id.*

           **c)**      **Lead Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis**

In undertaking to litigate this complex case on a contingency-fee basis, Lead Counsel assumed a significant risk of nonpayment or underpayment. *Id.*, ¶78. That risk warrants approval of the requested fee. Indeed, "'[a] contingency fee arrangement often justifies an increase in the award of attorney's fees.'" *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also*

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.  As courts in this Circuit have held:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . .  A contingency fee arrangement often justifies an increase in the award of attorney's fees.  This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The progress of the action shows the inherent risk faced by Lead Counsel in accepting and prosecuting the action on a contingency-fee basis.  Despite Lead Counsel's tireless work in litigating this action for almost six years, Lead Counsel have, until now, neither requested nor received compensation for the considerable time they have invested in this case.  Jt. Decl., ¶79. Under Eleventh Circuit precedent, this fact supports an award of the requested fee.

### d) The Requested Fee Comports with Fees Awarded in Similar Cases

The fee sought here is within the range of fees typically awarded in similar cases. Numerous decisions within and outside of the Eleventh Circuit have found that a 33.3% fee is within the range of reasonableness under the factors listed by *Camden I.  See, e.g., Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of $33^{1}/_{3}$% on settlement of $40 million); *Morgan*

*v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . .").[9]

Lead Counsel's fee request also falls within the range of what is customary in the private legal marketplace, where contingency fee arrangements often approach or equal 40% of any recovery. *See Acad. Mortg. Corp.,* 369 F. Supp. 3d at 1382 ("Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery."); *Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market.").[10]  This, too, supports an award of the requested fee.

---

[9]     *See also In re Checking Account Overdraft Litig.*, 2020 WL 4586398, at *22 (S.D. Fla. Aug. 10, 2020) (35%); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1375 (N.D. Ga. 2019) (33.3%); *Pierre-Val v. Buccaneers Ltd. P'ship*, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (32%). *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (31.3%); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33.3%); *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. LEXIS 25721 (S.D. Fla. 2002) (30%); *In re CHS Elecs., Inc. Sec. Litig.*, 99-8186-CIV-Gold (S.D. Fla. 2002) (30%); *Ehrenreich v. Sensormatic Elecs. Corp.*, 95-6637-CIV-Zloch (S.D. Fla. 1998) (30%); *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33%); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698 (N.D. Ga. May 22, 2009) (30%); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124 (S.D. Fla. 2008) (30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30%); *In re BellSouth Corp. Sec. Litig.*, Civil Action No. 1:02-cv-2142-WSD (N.D. Ga. Apr. 9, 2007) (30%); *In re Cryolife, Inc. Sec. Litig.*, Civil Action No. 1:02-cv-1868-BBM (N.D. Ga. Nov. 9, 2005) (30%); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, Civil Action No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005) (33.25%); *In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005) (33.25%); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, Civil Action No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002) (33.25%); *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (30%).

[10]     *See also RJR Nabisco, Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases."); *In re Public Serv. Co. of N.M.*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); 1 COURT AWARDED ATTORNEY FEES, ¶2.06[3], at 2-88 (Matthew Bender 2010) (noting that, "when appropriate circumstances have been identified, a court may award a percentage significantly higher" than 25%); 4 NEWBERG ON CLASS ACTIONS, §14:6, at 551 (4th ed. 2002) ("Empirical studies show that,

        **e)**        **The Remaining *Camden I* Factors Also Favor Approving the Requested Fee**

The remaining *Camden I* factors further support granting the fee request. As demonstrated by the experience and acumen of Lead Counsel throughout this litigation, Lead Counsel are among the most highly regarded attorneys in their field. Jt. Decl., ¶74. Indeed, Lead Counsel have been recognized by their peers for their superlative work in litigating this case specifically. *Id*., ¶80. Had Lead Counsel not been so skilled in these matters, the Classes might not have received a similar result. Without adequate compensation and financial reward, cases such as this simply would not be pursued despite the widespread aggregate harm to consumers. As courts have held, "given the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized." *Checking Account Overdraft*, 830 F. Supp. 2d at 1364.

In sum, the record here justifies Lead Counsel's fee request.

        **3.**        **The Expense Request Is Appropriate**

Lead Counsel also request reimbursement $752,117.10 in expenses. Jt. Decl., ¶83; *see Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970). This sum reflects the common litigation expenses that have been invoiced or paid from the litigation since final approval of the B&L and CVI Settlements. These expenses are comprised of: (1) $500,208.37 in fees and expenses incurred for experts and their support staff; (2) $172,316.30 in data hosting fees; (3) $45,790.00 in mediator's fees and expenses incurred for the services rendered by Hon. Layn Phillips and the staff at Phillips ADR; (4) $31,711.50 in trial consultant fees; (5) $553.20 in process

---

regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

server fees; and (6) $1,537.73 in printing fees.[11]   *Id.*   These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action and are outside of those contemplated in Lead Counsel's previous request for costs.   *Id.*; ECF No. 1137.   "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."   *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *see also Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.").   Courts in this Circuit have thus routinely approved payment of expenses from the common fund where they were reasonable and necessary for the litigation.   *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008) (approving $2.4 million for reimbursement of litigation expenses); *Swift v. BancorpSouth Bank*, No. 1:10-cv-00090, 2016 WL 11529613, at *20 (N.D. Fla. July 15, 2016) (approving application for reimbursement of costs that "were necessarily incurred in furtherance of the litigation of the Action and the Settlement"); *Ressler*, 149 F.R.D. at 657 (approving requested expenses as reasonable and necessary); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *In re Ikon Office Sols., Inc. Secs. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000).

## IV.   FAIRNESS HEARING

Lead Counsel request that the Court set a date and time for a Fairness Hearing regarding this Motion and the concurrently filed Motion for Final Approval.   Lead Counsel and ABB's counsel have conferred and are happy to make themselves available for a hearing, remote or in person, should state and federal COVID protocols allow, at the Court's convenience any time

---

[11]   Lead Counsel are prepared to submit detailed invoices for *in camera* review should the Court believe it prudent.

during the week of May 10, 2021, consistent with the Court's Preliminary Approval Order.  ECF No. 1224.  This will give any interested parties and/or objectors thirty (30) days to review Plaintiffs' and Lead Counsel's reply briefs in further support of this Motion and the Motion for Final Approval, to be filed on April 9, 2021.

## V.     CONCLUSION

The Settlement with ABB, which secures $30,200,000 in cash compensation for the benefit of the Settlement Class, represents an excellent result, particularly given the obstacles confronted in this case.  Lead Counsel's application for attorneys' fees and expenses is reasonable and consistent with governing law.  The request more than satisfies the guidelines of *Camden I* in light of the results achieved, the significant litigation risks, the complexity of the factual and legal issues, and the time, effort, and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court: (1) promptly set a date and time for the Fairness Hearing during the week of May 10, 2021 regarding this Motion and the concurrently filed Motion for Final Approval; and (2) award Lead Counsel the requested $9,315,960.97 in attorneys' fees and $752,117.10 in incurred and anticipated expenses.

Dated: February 26, 2021

Respectfully submitted,

  *s*/ Joseph P. Guglielmo
Joseph P. Guglielmo
Thomas K. Boardman
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com

John A. DeVault, III
Florida Bar No. 103979
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile:  (904) 353-9307
jad@bedellfirm.com

*Plaintiffs' Local Counsel*

Christopher M. Burke
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
cburke@scott-scott.com

*Co-Lead Class Counsel*

Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile:  (904) 353-9307
mel@bedellfirm.com

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

Eamon O'Kelly
Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@robinskaplan.com
eokelly@robinskaplan.com
bsteinberg@robinskaplan.com

*Co-Lead Class Counsel*

Michael D. Hausfeld
James J. Pizzirusso
Nathaniel C. Giddings
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile:  (202) 540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*

Dennis Stewart
HULETT HARPER STEWART LLP
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile:  (619) 338-1139
dennis@hulettharper.com

*Plaintiffs' Trial Counsel*

Steven C. Marks
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
Facsimile:  (305) 358-2382
smarks@podhurst.com

*Plaintiffs' Trial Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Dated: February 26, 2021

                                            *s*/ Joseph P. Guglielmo
                                            Joseph P. Guglielmo