# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Case No. 3:15-md-02626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br><br>**All Class Actions** | |

**JOINT DECLARATION OF CHRISTOPHER LEBSOCK, EAMON O'KELLY, AND JOSEPH GUGLIELMO IN SUPPORT OF LEAD COUNSEL'S MOTIONS FOR (1) PAYMENT OF ATTORNEYS' FEES AND COSTS AND (2) FINAL APPROVAL OF THE SETTLEMENT AGREEMENT WITH ABB OPTICAL GROUP, LLC**

Pursuant to 28 U.S.C. §1746, Christopher Lebsock, Eamon O'Kelly, and Joseph Guglielmo, declare as follows:

1.      We submit this declaration in support of Lead Counsel's two concurrently-filed motions (1) the Motion for Payment of Attorney Fees and Costs and (2) Motion for Final Approval of the Settlement with ABB Optical Group, LLC ("ABB" and "the Settlement").

2.      Christopher Lebsock is a partner with the law firm of Hausfeld LLP ("Hausfeld") and a member in good standing of the State Bar of California.  Eamon O'Kelly is Of Counsel with the law firm of Robins Kaplan LLP ("Robins Kaplan") and a member in good standing of the New York State Bar.  Joseph Guglielmo is a partner with the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott") and a member in good standing of the New York State Bar.  Hausfeld, Robins Kaplan, and Scott+Scott are co-lead counsel ("Lead Counsel") for Plaintiffs and the certified Classes in the U.S. District Court for the Middle District of Florida, No. 3:15-md-02626.  *See* ECF No. 940.

3.      Each of us declares that he has personal knowledge of the matters set forth herein and, if called to testify as a witness, could testify competently thereto.

4.      Lead Counsel have significant experience with antitrust litigation and class actions, including settlements thereof.  Copies of Hausfeld's, Robins Kaplan's, and Scott+Scott's firm résumés are attached hereto as Exhibits A-C, respectively.

5.      The attorneys working for Plaintiffs on this matter (the "Action") are experienced lawyers who have substantial experience prosecuting large-scale class actions and antitrust litigation.

I.      **LEAD COUNSEL'S EFFORTS**

6.      Lead Counsel have been litigating this Action for more than five years in what has been hard-fought litigation against Defendants that are represented by some of the world's largest law firms.

7.      Since the beginning of this Action, Lead Counsel have made significant efforts to prosecute this action and prepare the case for trial, as detailed below.

A.      **Investigation, Complaints, and Motions to Dismiss Briefing**

8.      Lead Counsel devoted substantial time to investigating the potential claims against Defendants before filing their complaints.   Lead Counsel interviewed market participants and potential plaintiffs to gather information about Defendants' conduct and the impact on the market.  This information was essential to Lead Counsel's ability to understand the nature of Defendants' conduct, the nature of Defendants' so-called "Unilateral Pricing Policies" ("UPPs"), and potential remedies. Lead Counsel consulted with experts to develop and refine their legal and damages theories. Lead Counsel also amassed evidence from across the various state and federal government hearings on matters related to disposable contact lenses.

9.      The first class action lawsuit challenging the Defendants' "Unilateral Pricing Policies" ("UPPs") was filed by Plaintiff John Machikawa on March 3, 2015.  *See* Case No. 3:15-cv-01001 (N.D. Cal.).  In the months that followed, more than 120 plaintiffs filed more than 50 additional class action lawsuits challenging these UPPs.  The complaints alleged that the Defendants' UPPs were illegal restraints on competition under Section One of the Sherman

Act, 15 U.S.C. §1, and various state unfair competition laws and sought, among other things, monetary damages, interest, attorneys' fees, restitution, and equitable relief.

10.      The U.S. Judicial Panel on Multidistrict Litigation ("JPML") transferred all of these cases to this District for centralized pre-trial proceedings.  *See, e.g.*, ECF No. 186 in MDL No. 2626 (June 8, 2015).  The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626-HES-JRK.

11.      On July 15, 2015, the Court entered a case management order (ECF No. 61), the first in a series of scheduling orders to be applicable to this Action.

12.      On October 7, 2015, the Court granted Lead Counsel's motion to appoint Hausfeld, Robins Kaplan, and Scott+Scott as interim lead counsel.  ECF No. 116.

13.      On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act.  ECF No. 133.

14.      On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint.  ECF No. 146.  Following briefing and oral argument, the Court denied Defendants' motion (ECF Nos. 185, 190), and on July 27, 2016, Defendants filed their Answers and Affirmative Defenses.  ECF Nos. 266-70.

15.     On March 1, 2017, Plaintiffs filed the operative complaint in this matter.  ECF No. 395.

**B.      Case Investigation and Discovery**

16.     Even before discovery commenced, Lead Counsel's investigation included, but was not limited to, review and analysis of publicly available documents from and related to the contact lens market, the pricing of contact lenses, and Congress's investigation into the so-called UPPs.

17.     Specifically, in preparation of the complaints, Lead Counsel undertook an extensive investigation regarding contact lenses, including the pricing of contact lenses before and after the UPPs, and potential claims that could be alleged against the contact lens manufacturers and others in the marketplace, including the largest contact lens distributor, Defendant ABB.  Lead Counsel's investigation also included interviews of market participants and potential plaintiffs to gather information about Defendants' conduct and the impact on the market.   This information was essential to Lead Counsel's understanding of Defendants' conduct, the nature of the UPPs, and potential remedies.  Lead Counsel amassed evidence from across the various state and federal government hearings on matters related to disposable contact lenses. Lead Counsel also consulted with experts to develop and refine their legal and damages theories.

18.     Discovery commenced on April 1, 2016.  ECF No. 204.

19.     During the course of discovery, Lead Counsel served written discovery seeking documents and depositions on Defendants and on certain non-parties.  In addition, Defendants sought document and deposition discovery from Plaintiffs and certain non-parties.

20.     In total, the parties and non-parties in this Action have produced roughly 4.3 million pages of documents, as well as voluminous electronic data files and spreadsheets in native format (*i.e.*, transactional data), in response to discovery served by Plaintiffs and Defendants in this Action.  A breakdown of the number of documents and pages produced in this litigation that Plaintiffs uploaded to their document review platform are set forth in the below chart.

| Producing Party | # of Documents | # of Pages |
|---|---|---|
| Defendants | 1,001,296 | 3,933,097 |
| Plaintiffs | 855 | 5,226 |
| Non-Parties | 102,530 | 365,973 |
| *Totals:* | **1,104,681** | **4,304,296** |

21.     Lead Counsel and their experts have reviewed and analyzed substantially all of the documents and electronic data files produced in this Action.

22.     In addition, Plaintiffs and Defendants have collectively taken a total of 79 depositions in this matter.  These depositions are categorized below:

- Defendants' current and former employees: 22 depositions

- Plaintiffs: 16 depositions

- Non-Parties: 23 depositions

- Defendants' experts: 10 depositions

- Plaintiffs' experts: 8 depositions

23.     Much of this discovery has been highly contested.  In total, Plaintiffs and Defendants have filed at least 17 motions to compel with this Court.  *See* ECF Nos. 248, 276, 318, 354, 420, 460, 512, 587, 590-92, 609, 655, 728, 737, 759.  Many of these motions were

fact-intensive and included declarations attaching significant numbers of documents in support of the parties' respective positions.

24.     Apart from the discovery disputes that resulted in motion practice, Lead Counsel separately negotiated resolutions to numerous other discovery disputes with Defendants and non-parties through extensive written correspondence and meet-and-confers.

**C.      Class Certification**

25.     On March 3, 2017, Plaintiffs filed their class certification motion, which was supported by two expert reports and 170 exhibits.  *See* ECF Nos. 396-99.

26.     On June 15, 2017, Defendants filed their motions to strike certain portions of Plaintiffs' expert reports and memorandum of law in opposition to plaintiffs' motion for class certification, accompanying expert reports, and numerous exhibits.  *See* ECF Nos. 500-10.

27.     On July 10, 2017, Plaintiffs responded to Defendants' motions to strike (ECF Nos. 548-51), and on September 8, 2017, Plaintiffs filed their class certification reply, which included two supporting expert reports and 191 exhibits.  *See* ECF Nos. 611-14.

28.     On October 20, 2017, Defendants filed their sur-reply in further opposition to Plaintiffs' class certification motion, which included two additional expert reports and numerous exhibits.  *See* ECF Nos. 674-78.

29.     On August 1 and 2, 2018, the Court held an evidentiary hearing on Plaintiffs' class certification motion, which involved examination and cross examination of Plaintiffs' and Defendants' experts and presentation of more than 50 exhibits relating to Plaintiffs' motion for class certification and Defendants' motions to strike portions of Plaintiffs' expert reports. *See* ECF Nos. 865-1, 865-2, 866.  The hearing lasted more than 10 hours.

30.     On December 4, 2018, the Court granted Plaintiffs' class certification motion and certified horizontal and vertical litigation classes.  *See* ECF No. 940.  The Court also appointed Lead Counsel as counsel for the litigation classes and named Plaintiffs Rachel Berg, Miriam Pardoll, Jennifer Sineni, Elyse Ulino, Susan Gordon, Cora Beth Smith, Brett Watson, Tamara O'Brien, Sheryl Marean, Catherine Dingle, Amanda Cunha, Alexis Ito, Kathleen Schirf, John Machikawa, and Joseph Felson as class representatives.

31.     On December 18, 2018, Defendants filed petitions to appeal the Court's class certification order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  The parties briefed Defendants' petitions.

32.     On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Court's class certification order, and on June 20, 2019, denied Defendant Alcon's and B&L's virtually identical petition.

### D.     Summary Judgement

33.     After the class certification hearing, but before the Court had resolved Plaintiffs' class certification motion, the parties began briefing summary judgment.

34.     On August 20, 2018, Defendants filed four summary judgment motions, attaching declarations and more than 200 exhibits in support thereof.  *See* ECF Nos. 872-77.

35.     Plaintiffs responded to these motions in a single, omnibus summary judgment brief on October 22, 2018.  ECF No. 917.  In support of their opposition, Plaintiffs attached a total of 429 exhibits, including the merits reports of three experts.  *See* ECF Nos. 918-23.

36.    On November 19, 2018, Defendants filed four additional reply briefs in support of their summary judgment motions, which attached additional declarations and more than 200 exhibits.  *See* ECF Nos. 930-35.

37.    Plaintiffs filed a single sur-reply brief in opposition to Defendants' summary judgment motions on December 17, 2018.  ECF No. 942.

38.    On May 20, 2019, Defendants filed a notice of supplemental authority in further support of their summary judgment motions (ECF No. 967), which Plaintiffs responded to on May 23 and, with the Court's permission, on August 22.  *See* ECF Nos. 969, 1014.

39.    The Court held a hearing on the summary judgment motions on August 21 and 22, 2019.  ECF Nos. 1015-16.

40.    On November 27, 2019, the Court denied Defendants' motions for summary judgment.  ECF No. 1091.

**E.    Pre-Trial Preparation and Motions**

41.    Plaintiffs began preparing for trial in earnest in the fall of 2019.  These efforts included, among other things, negotiating a final pre-trial schedule and final pre-trial memorandum with Defendants (ECF No. 1099); exchanging preliminary exhibit lists and objections thereto; exchanging deposition designations and objections and counters thereto; exchanging witness lists; filing and opposing motions *in limine* (ECF Nos. 1058-60, 1089, 1103, 1106); opposing motions to strike Plaintiffs' experts (ECF No. 1114); moving to amend the case management order and opposing Defendants' motion to enforce the scheduling order (ECF Nos. 1063, 1065); and opposing a motion for leave to seek interlocutory appeal of the Court's summary judgment order.  ECF No. 1123.

42.     The Court held a pre-trial conference on December 11, 2019 (ECF No. 1109), and Plaintiffs filed a notice to address the Court's comments at that hearing on January 5, 2020. ECF No. 1125.

43.     The Court held a further pre-trial conference on January 8, 2020.  ECF No. 1126.  At this hearing, the parties argued a number of the pending pre-trial motions and agreed to new dates for the final pre-trial conference and the start of trial.

44.     Due to the COVID-19 pandemic, the Court has postponed the trial date in this matter. ECF No. 1180. Lead Counsel and counsel for the remaining defendants continue to monitor the situation and confer about possible new trial dates.

**A.     CVI Settlement**

45.     Lead Counsel and counsel for CVI began settlement discussions in July of 2017.

46.     After nearly a month of negotiations, which included both in-person, written, and telephonic communications, the parties reached an agreement-in-principle on August 11, 2017, to resolve the litigation against CVI based on CVI's payment of $3,000,000.

47.     Based on Dr. William's calculations in his Class Report (*see* ECF No. 612), the $3,000,000 cash payment represents 38% of the maximum recovery Lead Counsel could have achieved at trial against CVI on Plaintiffs' vertical claims (before trebling)

48.     On August 30, 2017, Plaintiffs and CVI executed the CVI Settlement.

49.     The CVI Settlement defines the settlement class as follows:

[A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy.  Excluded from the Settlement Class are Defendants,

9

their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1, ¶1.37.

**B.    B&L Settlement**

50.    Beginning in the summer of 2018, Lead Counsel and counsel for B&L began bilateral settlement discussions.  Ultimately, after approximately one year of negotiations, which included both in-person, written, and telephonic communications, and exchanges of various proposals for settlement, the parties reached an agreement-in-principle on August 17, 2019, to resolve the litigation against B&L based on B&L's payment of $10,000,000.

51.    Based on Dr. Williams' calculations in his Merits Report (*see* ECF No. 918-2), the $10,000,000 cash payment represents between 72% and 81% of the maximum recovery Lead Counsel could have achieved at trial against B&L on Plaintiffs' vertical claims (before trebling).

52.    On August 19, 2019, the parties executed the B&L Settlement.

53.    The B&L Settlement defines the settlement class as follows:

[A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect.  Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015.  Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 1037-1, ¶1.35.

54.     On October 8, 2019, the Court granted preliminary approval of the B&L settlement and approved the notice to be disseminated to putative members of the litigation classes, the CVI Settlement Class, and the B&L Settlement Class.  ECF No. 1046.

55.     On January 16, 2020, Plaintiffs filed their Motion for Final Approval of Settlement Agreements with Defendants B&L and CVI.  ECF No. 1136.  On February 25, 2020, the Court held a fairness hearing regarding the CVI and B&L settlements.  *See* ECF No. 1154 and the February 25, 2020 Hearing Transcript.  On March 4, 2020, the Court granted Plaintiffs' Motion for Final Approval and issued its Final Approval Order and Final Judgment and Order of Dismissal with Prejudice as to B&L and CVI.  ECF No. 1164.

56.     Also on January 16, 2020, Plaintiffs filed a Motion for Payment of Common Expenses and Class Representatives' Service Awards from the B&L and CVI Settlement Funds.  ECF No. 1137. On March 4, 2020, the Court granted Plaintiffs' motion.  ECF No. 1165.  Subject to the Court's order, Lead Counsel withdrew 33.3%, or $4,329,000, from the collective $13,000,000 in the B&L and CVI Settlement Funds.  $3,330,800 was withdrawn from the B&L Settlement Fund and $999,000 was withdrawn from the CVI Settlement Fund. *Id*.  These costs included $664,206.86 for some, but not all, of the future costs Lead Counsel anticipated incurring during the litigation of this case through trial.  ECF No. 1165.

## II.     THE ABB SETTLEMENT

57.     A true and correct copy of the ABB Settlement was previously filed with the Court.  ECF No. 1215-1.

58.     The Settlement was reached in the absence of collusion and is the product of good-faith, informed, and arm's-length negotiations by competent counsel.

59.     Lead Counsel believe that the ABB Settlement is fair, reasonable, and adequate and that it fits well within the range of reasonableness, such that Final Approval is appropriate.

60.     Lead Counsel believe that the benefits of the ABB Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time, and expenses associated with completing trial and final appellate review, particularly in the context of a large and complex multi-district litigation.

61.     The ABB Settlement is the result of intensive, arm's-length negotiations between experienced attorneys as overseen by an experienced mediator, all of which are familiar with class action litigation and the legal and factual issues of this Action.

62.     Furthermore, Lead Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Lead Counsel have zealously represented Plaintiffs and the Classes throughout this Action.  Lead Counsel ultimately prevailed at class certification, where this Court made its own independent determination that "Lead Counsel are skilled and adequate in all respects" (ECF No. 940 at 127), and at summary judgment.

63.     Lead Counsel are confident in the strength of this Action but are also cognizant of the defenses available to Defendants and the risks inherent in trial and post-judgment appeal. Lead Counsel are also highly familiar with the challenged practices and defenses at issue in this Action through their experience litigating similar cases in MDL No. 1030 and elsewhere. Lead Counsel believe that the ABB Settlement is fair and reasonable.

64.     On Sunday, August 30, 2020, counsel for ABB and Lead Counsel engaged in a day-long mediation session with former U.S. District Judge Layn Phillips via video conference.

Prior to the August 30, 2020 mediation session, the parties engaged in a series of pre-mediation discussions with Judge Phillips regarding a potential settlement. With Judge Phillips' guidance and assistance, the Parties were able to reach an agreement to resolve the case against ABB. ABB will pay $30,200,000 into a settlement fund in exchange for dismissal of all claims against it. The Parties fully executed the Settlement Agreement on September 22, 2020.

65.     As provided by ¶3.1 of the Settlement Agreement, ABB paid $500,000 in cash into the Escrow Account controlled by the Escrow Agent, with this amount designated to pay for the cost of disseminating notice. ABB will pay the remainder of the Settlement Amount ($29,700,000) into the Escrow Account as follows: 50% of the remainder ($14,850,000) by April 15, 2021, and the remaining balance ($14,850,000) by January 14, 2022.

66.     On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement. (ECF No. 1215.) Because ABB was a distributor of contact lenses made by all of the manufacturer Defendants including Alcon, JJVC, CVI, and B&L, the ABB Settlement Class is defined as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

Agreement, ¶1.35. The ABB Settlement Class tracks the CVI Settlement Class for which the Court has already granted final approval. ECF No. 1164.

67. On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement. (ECF No. 1219.) On November 12, 2020, the Court issued an order granting preliminary approval of the ABB Settlement and endorsing the Notice Plan. ECF No. 1224.

68. Each of the above-discussed Court-approved Notice Plans contained language that Lead Counsel would later ask the Court for attorneys' fees "up to one-third (33.3%)" of the Settlement Funds, net the payment of Court-approved costs and expenses. ECF Nos. 1139, 1216.

## III.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES

69. The ABB Settlement Notice Plan, approved by the Court, informed potential Settlement Class Members that "Lead Counsel will ask the Court for attorneys' fees of up to one-third (33.3%) of the ABB, B&L, and CVI Settlement Funds, after payment of Court-approved costs and expenses." ECF No. 1216.

70. The parties have conferred, and ABB's counsel takes no position on Lead Counsel's request for attorneys' fees.

71. Lead Counsel have collectively spent thousands of hours litigating this case since its inception nearly six years ago.

72. During the pendency of this litigation, Lead Counsel have diligently worked to make sure that all efforts were efficient and coordinated so as to minimize duplication.

73. Lead Counsel acquired and analyzed, along with experts, an immense amount of factual and legal information.

74.    Litigation of this action required counsel that was highly trained in class action law and procedure, as well as the specialized antitrust issues, presented here.  Lead Counsel possess these attributes, and their participation added value to the representation of the Classes. The record demonstrates that the action involved a broad range of complex challenges by Defendants, which Lead Counsel met at every juncture.

75.    For example, Defendants have repeatedly argued to this Court, and the Eleventh Circuit, that Plaintiffs lack standing to bring this lawsuit because they are not direct purchasers under the antitrust laws (ECF Nos. 505, 674, 906-908, 912, 930, 931, 934, 935, 967, 1015, 1016, 1023), an issue on which Lead Counsel have prevailed at every turn.  ECF Nos. 940, 993, 1091.  The ability and knowledge to successfully navigate the issues regarding purchaser standing in antitrust matters is rare among even general class action attorneys.

76.    Lead Counsel were able to draw on their decades of combined experience, specifically in representing plaintiffs in large antitrust class actions against these kinds of arguments.

77.    Opposing counsel for the Defendants similarly possessed experience and skill in litigating these specific kinds of large antitrust class actions.

78.    Lead Counsel represents the Named Plaintiffs on an entirely contingent-fee basis.

79.    Thus far, Lead Counsel have not been paid any money from Plaintiffs or the Class for their time and effort litigating this matter.

80.    Lead Counsel attorneys Ben Steinberg and Nathaniel Giddings were recognized for their work on this Action with the award for Outstanding Antitrust Litigation Achievement

by a Young Lawyer by the American Antitrust Institute.  (https://www.antitrustinstitute.org/aai-2020-antitrust-enforcement-awards-honorees-announced/.)

## IV.    LEAD COUNSEL'S EXPENSES

81.    Lead Counsel established a litigation fund in order to pay common litigation expenses.

82.    Non-common expenses (*e.g.*, travel, lodging, legal research, long-distance phone calls, etc.) have not been paid from the litigation fund, and Lead Counsel may seek the reimbursement of these expenses at an appropriate point in the future.

83.    As detailed and categorized in the below schedule, Lead Counsel have incurred a total of $752,117.10 since the Court's last Order approving payment of common fund costs from the CVI and B&L Settlement Funds.  *See* ECF No. 1164.  These costs are unreimbursed common expenses in connection with the prosecution of this Action.  These common expenses have been paid or will be paid from the litigation fund, were reasonably necessary to the prosecution of this Action, and are of the type that Lead Counsel normally incurs in litigation and that would be reimbursed by clients under fee arrangements where the client was paying expenses.

84.    The following schedule was prepared from accounting records from the litigation fund and regularly prepared and maintained by Lead Counsel, which are available for *in camera* review at the request of the Court.

| # | Expense Category | Amount |
|---|---|---|
| 1 | Experts & Consultants | $500,208.37 |
| 2 | Mediation Services | $45,790.00 |
| 3 | Data and Document Hosting | $172,316,30 |
| 5 | Service of Process & Couriers | $553.20 |

| 6 | Printing | $1,537.73 |
|---|---|---|
| 8 | Trial Preparation Consultant Expenses | $31,711.50 |
| | *Total:* | *$752,117.10* |

85.     The total volume of commerce of UPP lenses sold in the United States during the

Class Period was approximately $5.3 billion.

86.     During the Class Period, ABB distributed $994,371,643 in UPP lens commerce.

87.     CVI's $3 million settlement represented 1.6% of CVI's total UPP lens commerce and

B&L's $10 million settlement represented 2.7% of its UPP sales.

SIGNATURES ON FOLLOWING PAGE

HAUSFELD LLP

Christopher L. Lebsock
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile:  (415) 217-6813
clebsock@hausfeld.com

SCOTT+SCOTT
ATTORNEYS AT LAW LLP

Joseph P. Guglielmo
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

ROBINS KAPLAN LLP

Eamon O'Kelly
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile:  (212) 980-7499
eokelly@robinskaplan.com

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>s/ Joseph P. Guglielmo</u>
Joseph P. Guglielmo