# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In Re:<br><br>**DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | Case No. 3:15-md-2626-HES-LLL<br><br>Judge Virginia M. Hernandez Covington<br><br>Magistrate Judge Laura Lothman Lambert |
| **THIS DOCUMENT RELATES TO:**<br><br>**All Class Actions** | |

**PROPOSED JURY INSTRUCTIONS**

**March 25, 2022**

# TABLE OF CONTENTS

PRELIMINARY INSTRUCTIONS..................................................................I

PRELIMINARY INSTRUCTION NO. 1: INTRODUCTION [AGREED] ..................... II

PRELIMINARY INSTRUCTION NO. 2: DUTY OF JURY [AGREED] ..................... III

PRELIMINARY INSTRUCTION NO. 3: OPENING INSTRUCTIONS [AGREED].... IV

PRELIMINARY INSTRUCTION NO. 4: CLASS ACTION [PLAINTIFFS] ............... VI

PRELIMINARY INSTRUCTION NO. 4: CLASS ACTION [DEFENDANT] ............. 7

PRELIMINARY INSTRUCTION NO. 5: IDENTIFICATION OF PARTIES ................... 8

PRELIMINARY INSTRUCTION NO. 6: TREATMENT OF CORPORATE ENTITY [AGREED] ........................................................................................... 9

PRELIMINARY INSTRUCTION NO. 7: OVERVIEW OF THE SHERMAN ACT AND THE CLAIMS AND DEFENSES [PLAINTIFFS] ....................................... 10

PRELIMINARY INSTRUCTION NO. 7: DESCRIPTION OF CLAIMS AND DEFENSES [DEFENDANT] ......................................................................... 11

PRELIMINARY INSTRUCTION NO. 8: BURDEN OF PROOF [AGREED] ............. 17

PRELIMINARY INSTRUCTION NO. 9: WHAT IS EVIDENCE [AGREED] ........... 18

PRELIMINARY INSTRUCTION NO. 10: WHAT IS NOT EVIDENCE [AGREED]  19

PRELIMINARY INSTRUCTION NO. 11: CREDIBILITY OF WITNESSES [AGREED] ......................................................................................... 21

PRELIMINARY INSTRUCTION NO. 12: STIPULATED FACTS ............................... 22

PRELIMINARY INSTRUCTION NO. 13: OUTLINE OF THE TRIAL [AGREED]... 26

PRELIMINARY INSTRUCTION NO. 14: TAKING NOTES [AGREED]................. 27

PRELIMINARY INSTRUCTION NO. 15: CONDUCT OF THE JURY [AGREED]... 28

PRELIMINARY INSTRUCTION NO. 16: IN-TRIAL INSTRUCTIONS ON NEWS COVERAGE [AGREED] ........................................................................ 30

# PRELIMINARY INSTRUCTIONS

**Preliminary Instruction No. 1: Introduction [AGREED]**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

**Source(s):** Eleventh Cir. Pattern Jury Instruction (Civil Cases) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 2:**

**Preliminary Instruction No. 3:  Duty of Jury [AGREED]**

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply— and you must follow the law even if you disagree with it.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 4: Opening Instructions [AGREED]**

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

By your verdict, you will decide disputed issues of fact in this case. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and documentary evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and seen all the written evidence, the lawyers' closing arguments, and my instructions to you on the law.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls or on the sidewalk near

the courthouse and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Source(s):** Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit §§ 1.01, 1.03 (2021).

**Preliminary Instruction No. 5: Class Action [PLAINTIFFS]**

This case is proceeding as a class action. A class action procedure allows the filing of one lawsuit by a representative or a small number of representatives on behalf of a whole group of Plaintiffs who have similar claims. You should not hold the physical absence of any class member against Class Plaintiffs. Your verdict here will be binding on all class members.

I will now read you the class definition:

- All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Johnson & Johnson Vision Care from June 1, 2013 to December 4, 2018 for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Class are Defendants, their parent companies, subsidiaries, and affiliates, any coconspirators, all governmental entities, and any judges, justices, or jurors assigned to hear any aspect of this action.

**Source(s):** NEWBERG ON CLASS ACTIONS § 11:22 (Dec. 2021); Class Certification Order, *In re Disposable Contact Lens Antitrust Litig.*, 15-md-2626, ECF No. 940 (M.D. Fla).

6

**Preliminary Instruction No. 4: Class Action [DEFENDANT]**

This case is proceeding as a class action. A class action procedure allows the filing of one lawsuit by a representative or a small number of representatives on behalf of a whole group of Plaintiffs who have similar claims. You should not hold the physical absence of any class member <span style="color:red">who is not a class representative</span> against Class Plaintiffs. Your verdict here will be binding on all class members.

I will now read you the class definition:

- All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Johnson & Johnson Vision Care from June 1, 2013 to December 4, 2018 for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Class are Defendants, their parent companies, subsidiaries, and affiliates, any coconspirators, all governmental entities, and any judges, justices, or jurors assigned to hear any aspect of this action.

**Source(s):** NEWBERG ON CLASS ACTIONS § 11:22 (Dec. 2021); Class Certification Order, *In re Disposable Contact Lens Antitrust Litig.*, 15-md-2626, ECF No. 940 (M.D. Fla).

7

### Preliminary Instruction No. 5: Identification of Parties

The class is being represented here by the named Plaintiffs: Rachel Berg, Miriam Pardoll, Elyse Ulino, Jennifer Sineni, Susan Gordon, Cora Beth Smith, Brett Watson, Kathleen Schirf, Tamara O'Brien, John Machikawa, Amanda Cunha, Alexis Ito, Catherine Dingle, and Sheryl Marean.

When I refer to "Plaintiffs" generally in these instructions, I will be referring to both the named Plaintiffs as well as the other class members.

The Defendant in this case is a manufacturer of contact lenses, Johnson & Johnson Vision Care, Inc. which also operated in the United States under the "Vistakon" trade name.

**Source(s):** Jury Instructions, *In re Urethane Antitrust Litig.*, 04-md-01616, Dkt. 2797 (D. Kan.)*; In re TFT-LCD (Flat Panel) Antitrust Litig.*, 3:07-md-01827 (N.D. Cal.); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 2.5, at 12 (2020), ("Certain parties are no longer involved in this trial. As jurors it is your duty to consider the issues among the remaining parties.").

**Preliminary Instruction No. 6: Treatment of Corporate Entity [AGREED]**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 3.2.2 (Mar. 2022).

9

**Preliminary Instruction No. 7: Overview of the Sherman Act and the Claims and Defenses [PLAINTIFFS]**

This case involves the antitrust laws of the United States, specifically Section 1 of the Sherman Act.

The goal of the antitrust laws is to protect economic freedom and opportunity by promoting free and fair competition in the marketplace. Competition in a free market benefits American consumers through lower prices, better quality products, and greater choice. The Sherman Act does not protect individual competitors from the rigors of marketplace competition.

The Sherman Act prohibits contracts, combinations, or conspiracies between two or more parties that unreasonably restrain competition or the competitive process. The essence of a contract, combination, or conspiracy is an agreement between two or more parties.

Plaintiffs claim Johnson & Johnson agreed with other parties involved in the distribution and resale of contact lenses to restrain competition between retailers that sold contact lenses subject to minimum retail price policies. Plaintiffs contend that these agreements were unreasonable restraints of competition and that they caused the Class to pay more for contact lenses than they would have in the absence of the restraints.

Johnson & Johnson denies all of Plaintiffs' contentions.

I will cover these points again at the close of the evidence, and at that time I will give you more detail on the antitrust laws at issue in this case. For now, I am simply providing you an overview so that you have some framework to understand the evidence as it is introduced during trial.

**Source(s):** ABA MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, ch. 1.A.1 (Jun. 2016) (hereinafter "ABA Model Jury Instructions") ("The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress."); ABA Model Jury Instructions, ch. 2.A.1; *Mission,*U.S. DEP'T OF JUST., https://www.justice.gov/atr/mission ("The goal of the antitrust laws is to protect economic freedom and opportunity by promoting free and fair competition in the marketplace. Competition in a free market benefits American consumers through lower prices, better quality and greater choice."); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) ("The goal is to 'distinguis[h] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest.'") (citation omitted); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The purpose of the Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself. It does so not out of solicitude for private concerns but out of concern for the public interest."); 15 U.S.C. **§** 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."); *In re Chocolate Confectionary Antitrust Litig.,* 801 F.3d 383, 395–96 (3d Cir. 2015) ("the 'very essence of a section 1 claim ... is the existence of an agreement.'"). *Am. Express Co.*, 138 S. Ct. at 2284 ("Direct evidence of anticompetitive effects would be 'proof of actual detrimental effects [on competition],'. . .such as reduced output, increased prices, or decreased quality in the relevant market . . . . Indirect evidence would be proof of market power plus some evidence that the challenged restraint harms competition.") (citation omitted); *Aya Healthcare Servs., Inc. v. AMN*

11

*Healthcare, Inc.*, 9 F.4th 1102, 1112 (9th Cir. 2021) ("the plaintiff may provide the court with "[d]irect evidence of anticompetitive effects," which would include "proof of actual detrimental effects [on competition], such as reduced output, increased prices, or decreased quality in the relevant market.") (quotations and citations omitted); *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 118 (2d Cir. 2021) ("Anticompetitive effects in a relevant market may be shown through direct evidence of output reductions, increased prices, or reduced quality in the relevant market.") (citation omitted).

**Preliminary Instruction No. 7: Description of Claims and Defenses [DEFENDANT]**

This case involves the antitrust laws of the United States, specifically Section 1 of the Sherman Act.   The Sherman Act prohibits contracts, combinations, or conspiracies between two or more parties that unreasonably restrain competition or the competitive process. The essence of a contract, combination, or conspiracy is an agreement between two or more parties.

Plaintiffs assert a claim under Section 1 of the Sherman Act: based on alleged unlawful vertical agreements between Johnson & Johnson Vision Care and resellers of its contact lenses.   To establish their vertical claim against Johnson & Johnson Vision Care, Plaintiffs must prove that Johnson & Johnson Vision Care entered into an unlawful agreement with resellers of its contact lenses to restrain competition between resellers that sold contact lenses subject to minimum retail price policies, and that that unlawful agreement caused Plaintiffs to suffer an injury to their business or property.

Further, a vertical agreement to restrain competition is only unlawful if you find that it is unreasonable under what is referred to as the "rule of reason". Under the rule of reason, in addition to the elements I have just told you about, you will consider whether the restraint had an anticompetitive effect—meaning whether it raised consumer prices while reducing the quantity of the product or products sought by consumers.   If you find that there was an anticompetitive

13

effect, then you will also determine whether there were pro-competitive benefits of the policy.  If you do find pro-competitive benefits, you will be asked to determine whether the anticompetitive effects substantially outweigh the pro-competitive benefits.

In addition, Plaintiffs can establish liability, and recover damages, only as to contact lens purchases that they prove by a preponderance of the evidence were made directly from a party to an unlawful agreement in the chain of distribution.  A party to an unlawful agreement in the chain of distribution is a reseller that had a conscious commitment to a common scheme designed to achieve an unlawful objective.  If you find that Johnson & Johnson Vision Care entered into an unlawful agreement to restrain competition with some resellers, but not others, then Plaintiffs can recover damages only as to the resellers that you find were participants in the alleged agreement to restrain competition.

I will cover these points again at the close of the evidence, and at that time I will give you more detail on the antitrust laws at issue in this case. For now, I am simply providing you an overview so that you have some framework to understand the evidence as it is introduced during trial.

**Source(s):** 15 U.S.C. **§** 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."); ABA Model Jury Instruction in Civil Antitrust Cases 1.B.2: Sherman Act Section 1 ("Plaintiff

challenges defendant's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following: 1, the existence of a contract, combination, or conspiracy between or among at least two separate entities; 2. that the contract, combination, or conspiracy unreasonably restrains trade; 3. that the restraint affects interstate or foreign commerce; and 4. that the restraint caused plaintiff to suffer an injury to its business or property."); *In re Chocolate Confectionary Antitrust Litig.,* 801 F.3d 383, 395–96 (3d Cir. 2015) ("the "very essence of a section 1 claim ... is the existence of an agreement."); ABA Model Jury Instruction in Civil Antitrust Cases 2.D.3: Elements of Resale Price Maintenance ("Plaintiff must prove each of the following elements by a preponderance of the evidence: (1) defendant entered into a resale price maintenance agreement with [describe the other party to the arrangement]; (2) the agreement was an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in a relevant market; (3) defendant's conduct occurred in or affected interstate [or foreign] commerce; and (4) plaintiff was injured in its business or property because of the resale price maintenance agreement. If you find that the evidence is insufficient to prove any one or more of these elements then you must find for defendant and against plaintiff on this claim. If you find that the evidence is sufficient to prove all four elements, then you must find for plaintiff and against defendant on this claim."); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) ("[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.") (internal quotations omitted); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) ("There must be evidence that tends to exclude the possibility that the manufacturer and [seller] were acting independently."); *Lakeland Regional Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 280, 1285 (2014) ("Under the direct purchaser rule, only the customer who purchased the goods or services at issue *directly* from the alleged antitrust violator can recover damages."); *Lowell v. Am. Cyanamid Co.*, 177 F.3d 1228, 1232 (11th Cir. 1999) (Sherman Act claims must be made "directly against a conspiring party in the chain of distribution"); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 138 (2d Cir. 2021) ("Amex 'enabling' other credit card companies to raise the appellants' fees does not establish the 'direct relation' between injury and antitrust violation that the first-step rule requires."); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520-21 (2019) ("the immediate buyers from the alleged antitrust violators may maintain a suit

15

against the antitrust violators", but "indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue.").

**Preliminary Instruction No. 8: Burden of Proof [AGREED]**

Plaintiffs have the burden of proving their case by what the law calls a "preponderance of the evidence." That means Plaintiffs must prove that, in light of all the evidence, what they claim is more likely true than not. So, if you could put the evidence favoring Plaintiffs and the evidence favoring Defendants on opposite sides of balancing scales, Plaintiffs need to make the scales tip to their side. If Plaintiffs fail to meet this burden, you must find in favor of Defendants.

To decide whether any fact has been proved by a preponderance of the evidence, you may—unless I instruct you otherwise—consider the testimony of all witnesses, regardless of who called them, and all exhibits that the Court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 9: What is Evidence [AGREED]**

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence"—simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

18

**Preliminary Instruction No. 10: What is Not Evidence [AGREED]**

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did—unless the witness agrees with it.

There are rules of evidence that control what the Court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the Court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the Court cannot receive the exhibit. When I sustain

19

an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence—this is also called "striking" evidence—and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

**Source(s):** Eleventh Cir. Pattern Jury Instruction (Civil Cases) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 11: Credibility of Witnesses [AGREED]**

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

1.      the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

2.      the witness's memory;

3.      the witness's manner while testifying;

4.      any interest the witness has in the outcome of the case;

5.      any bias or prejudice the witness may have;

6.      any other evidence that contradicts the witness's testimony;

7.      the reasonableness of the witness's testimony in light of all the evidence; and

8.      any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 12: Stipulated Facts**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case:

**A.     Plaintiffs**

1.     Plaintiffs are individual consumers who purchased disposable contact lenses.

2.     Each Manufacturer adopted a Unilateral Pricing Policy ("UPP") on certain disposable contact lenses in the United States, as set forth in greater detail below.

**B.     Defendant**

3.     Defendant Johnson & Johnson Vision Care is a Florida corporation headquartered in Jacksonville, Florida. Johnson & Johnson Vision Care makes eye care products, including contact lenses.

**C.     Other Manufacturers or Distributors**

4.     Alcon is a Delaware corporation headquartered in Fort Worth, Texas. Alcon makes eye care products, including contact lenses.

5.     Bausch + Lomb, Inc. ("B&L") is headquartered in Rochester, New York. B&L makes eye care products, including contact lenses.

22

6.  Cooper Vision, Inc. ("CVI") is headquartered in Lake Forest, California. CVI makes eye care products, including contact lenses.

7.  ABB Optical Group ("ABB") is a Delaware corporation headquartered in Coral Springs, Florida. ABB is a distributor of contact lenses.

**D.   Contact Lenses**

8.  Contact lenses include both spherical lenses, which contain a single refractive power, and specialty lenses, which are crafted to address specific vision conditions, such as toric lenses (for people diagnosed with astigmatism), and bifocal and multifocal contact lenses (for people diagnosed with presbyopia).

9.  By law, before an individual consumer can buy contact lenses, she must first get a prescription from an eye care practitioner (an "ECP") that specifies both the lenses' measurements and the specific brand of contact lenses the consumer is permitted to buy.

10.  By law, a consumer is entitled to receive his or her prescription from his or her ECP and use that prescription to purchase contact lenses where he or she chooses.

23

**E.   The Market for Disposable Contact Lenses**

11.   Contact lens manufacturers do not sell their contact lenses directly to consumers. Instead, contact lenses are sold to consumers through retailers in several different distribution channels.

**F.   The Contact Lens Manufacturer's UPPs**

12.   Alcon was the first contact lens manufacturer to adopt a UPP. In June 2013, Alcon adopted its UPP on a product called Dailies Total1. Over the next 13 months, Alcon applied its UPP on four additional products, with announcements in January 2014, April 2014, and July 2016. Alcon discontinued its UPP in December 2016.

13.   B&L was the second contact lens manufacturer to adopt a UPP. It first did so in February 2014 when it announced its UPP on its Ultra contact lens. In July 2014, B&L launched Biotrue ONEday for Presbyopia subject to its UPP, and in March 2016, B&L launched Ultra for Presbyopia subject to its UPP. B&L discontinued its UPP in February 2017.

14.   JJVCI announced its adoption of a UPP in June 2014. JJVCI's UPP went into effect on July 1, 2014 for the ACUVUE OASYS®

24

12 Pack, and on August 1, 2014 for a number of other products. JJVCI subsequently applied its UPP to additional products. JJVCI applied its UPP to the majority of its contact lens products. JJVCI announced the discontinuation of its UPP on April 13, 2016.

15. In August 2014, CVI purchased Sauflon, which had adopted a UPP in January 2014 to certain contact lens products. CVI maintained this UPP after the acquisition. CVI also applied its UPP to three additional products. CVI discontinued its UPP on several of its products in March 2017 and fully discontinued its UPP in September 2017.

The parties have also agreed about which lenses were subject to the manufacturers' respective UPPs, at what UPP prices, and the time periods those UPPs were in place, and may refer to those agreed-on facts during the trial.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 2.1 (Mar. 2022); Pretrial Stipulation, *In re Disposable Contact Lens Antitrust Litig.*, 15-md-2626, (ECF No. 1099, Ex. E.)

**Preliminary Instruction No. 13: Outline of the Trial [AGREED]**

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiffs will present their witnesses and ask them questions. After Plaintiffs question the witness, Johnson & Johnson Vision Care may ask the witness questions—this is called "cross-examining" the witness. Then Johnson & Johnson Vision Care will present its witnesses, and Plaintiffs may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[*Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).*]

You'll then go to the jury room to deliberate.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

26

**Preliminary Instruction No. 14: Taking Notes [AGREED]**

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

27

**Preliminary Instruction No. 15: Conduct of the Jury [AGREED]**

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything—all the evidence, the lawyers' closing arguments, and my instructions on the law— before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites and apps such as Facebook, Instagram, SnapChat, YouTube, and Twitter. You may not use any similar technology or social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or

28

what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, their attorneys, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair—no one else is so qualified.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 1.1 (Mar. 2022).

**Preliminary Instruction No. 16: In-Trial Instructions on News Coverage
[AGREED]**

Reports about this trial [or about this incident] may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Source(s):** ELEVENTH CIR. PATTERN JURY INSTRUCTION (CIVIL CASES) § 2.7 (Mar. 2022).