## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Case No. 3:15-md-2626-HES-LLL**<br><br>**Judge Harvey E. Schlesinger**<br>**Judge Virginia M. Hernandez Covington**<br>**Magistrate Judge Laura L. Lambert** |
| **THIS DOCUMENT RELATES TO:**<br>**All Class Actions** | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS ALCON VISION, LLC AND
JOHNSON & JOHNSON VISION CARE, INC. AND PROPOSED NOTICE
PLAN AND SUPPORTING MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

I.    INTRODUCTION................................................................................1

II.   STATEMENT OF THE CASE ............................................................3

    A.    Allegations and Defenses........................................................3

    B.    The Earlier Settlements...........................................................4

    C.    Discovery Involving Alcon and JJVCI ...................................5

    D.    Recent Procedural Developments ...........................................5

III.  MEDIATIONS ....................................................................................6

    A.    Alcon .......................................................................................6

    B.    JJVCI ......................................................................................6

    C.    Summary of Settlement Terms................................................6

        1.    The Settlement Classes .................................................7

        2.    Monetary Relief for the Benefit of the Class ...............7

        3.    Class Release.................................................................8

        4.    Settlement Termination .................................................8

        5.    Reimbursement of Class Representatives' Costs and Time ........8

        6.    Attorneys' Fees and Costs.............................................9

        7.    Notice and Distribution .................................................9

IV.   LEGAL STANDARD .........................................................................10

V.    ARGUMENT ......................................................................................12

    A.    The Settlements Satisfy the Criteria for Preliminary Approval ...........12

    B.    Both Settlements are the Product of Good-Faith, Informed, and
          Arm's-Length Negotiations................................................13

    C.    Both Settlements Are Fair, Adequate, and Reasonable......................15

        1.    Likelihood of Success at Trial ...................................15

        2.    Range of Possible Recovery and the Point on or Below
            the Range of Recovery at Which a Settlement Is Fair ..............16

        3.    Complexity, Expense, and Duration of Litigation ...................17

        4.    Stage of the Proceedings ..........................................17

D.      The Court Should Certify the Proposed Settlement Classes ................18

E.      The Court Should Approve the Proposed Notice Plan, Which
        Is Substantially the Same as the Notice Plan the Court Approved
        for the B&L, CVI, and ABB Settlements .............................................19

F.      The Court Should Set a Schedule for Notice and Final Approval of
        the Settlements ....................................................................................21

G.      Plan of Distribution of Funds to the Settlement Classes.....................22

VI.     CONCLUSION ...........................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ........................................................................ 10

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ....... 13, 14, 16

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .................................................................... 10, 11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .............................................................. 10, 13, 16

*Francisco v. Numismatic Guaranty Corp. of Am.*,
   No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ................................ 15

*Fresco v. Auto Data Direct, Inc.*,
   No. 03-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ............................. 11

*Greco v. Ginn Dev. Co., LLC*,
   635 Fed. Appx. 628 (11th Cir. 2015) ................................................................ 22

*Holman v. Student Loan Xpress, Inc.*,
   No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla.
   Nov. 19, 2009) ............................................................................................... 11

*In re Amgen Inc. Sec. Litig.*,
   No. CV-07-2536, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................... 18

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015) ...................................................................... 20

*In re U.S. Oil and Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ........................................................................ 10

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ....................................................................... 20

*Legg v. Spirit Airlines, Inc.*,
   No. 15-cv-61375, 2015 WL 11197784 (S.D. Fla. Oct. 28, 2015) ....................... 22

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005)..............................................13, 15, 16, 17

*Morgan v. Public Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016)................................................................20

*Pierre–Val v. Buccaneers Ltd. P'ship*,
    No. 8:14–cv–01182–CEH, 2015 WL 3776918 (M.D. Fla. June 17,
    2015) ...................................................................................................................11

*Prather v. Wells Fargo Bank, N.A.*,
    15-cv-04231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ..................................22

*Smith v. Wm. Wrigley Jr. Co.*,
    No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010)....................11, 12

*Turner v. Gen. Elec. Co.*,
    No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275 (M.D. Fla.
    Sept. 13, 2006)....................................................................................................13

## Statutes, Rules, and Regulations

Federal Rules of Civil Procedure
    Rule 23.........................................................................................1, 2, 9, 18
    Rule 23(b)(3) ............................................................................................7
    Rule 23(c)(2)(B) ......................................................................................21
    Rule 23(e).........................................................................................10, 11

## Other Authorities

MANUAL FOR COMPLEX LIT.,
    Fourth §13.14 (4th ed. 2004) ...........................................................................12

4 NEWBERG ON CLASS ACTIONS
    §11.26 ..................................................................................................10
    §11.41 (4th ed. 2002)...................................................................... 10, 14

Plaintiffs and Lead Counsel move for Preliminary Approval of the Settlement Agreement with Alcon Vision, LLC ("Alcon"), attached as Exhibit A ("Alcon Settlement"), and the Settlement Agreement with Johnson & Johnson Vision Care, Inc. ("JJVCI"), attached as Exhibit B ("JJVCI Settlement")[1] which will fully resolve this Action if approved by the Court.[2]

## I.   INTRODUCTION

After more than seven years of vigorously contested litigation and just days before trial, Plaintiffs reached settlements with the two remaining Defendants in this case, Alcon and JJVCI.   Together with the earlier-approved settlements with CooperVision, Inc. ("CVI") ($3 million), Bausch & Lomb Inc. ("B&L") ($10 million), and ABB Optical Group, LLC ("ABB") ($30.2 million), the Alcon Settlement ($20 million) and JJVCI Settlement ($55 million), will fully and finally resolve this class action litigation upon the Court's approval.

Plaintiffs respectfully request that the Court grant Preliminary Approval of the Settlements because, as set forth below, they satisfy Rule 23 and all Eleventh Circuit criteria for preliminary approval.   The Settlements, which total $75 million, will provide substantial monetary relief and represent a tremendous result for Plaintiffs and

---

[1]   Alcon and JJVCI are collectively referred to herein as the "Settling Defendants," and Alcon, JJVCI, and Plaintiffs are collectively referred to as the "Parties."   The Alcon Settlement and JJVCI Settlement are collectively referred to as the "Settlements."

[2]   All capitalized defined terms used herein have the same meanings as defined in the Settlements.

members of the Classes. *See* Declaration of Thomas K. Boardman, ¶2 (hereinafter, the "Boardman Decl."; attached hereto as Exhibit C).

Plaintiffs also request that the Court approve the proposed notice plan for the Settlements. The proposed notice plan is fair and reasonable and substantially the same as the notice plans previously approved by the Court in connection with the CVI, B&L, and ABB settlements. *See* ECF No. 1164 (concluding that the notice plan satisfied the "requirements of Rule 23 . . . and the United States Constitution"). Under the notice plan, Settlement Class Members who already made a timely and valid claim in the CVI, B&L, and/or ABB settlements will not need to make a new claim to receive compensation from the Alcon or JJVCI Settlements. *See* Declaration of Cameron Azari, ¶14 (hereinafter, the "Azari Decl."; attached hereto as Exhibit D).

To initiate the settlement approval process, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlements and preliminarily certify the Settlement Classes; (2) approve the proposed Notice Plan, form of Notice, and opt-out and objection procedures; (3) stay the Action against Alcon and JJVCI pending final approval of the Settlements; (4) establish a schedule with deadlines for notice, opting out, objecting, filing claims, and setting a fairness hearing; and (5) enter the [Proposed] Order Preliminarily Approving Class Settlements and Notice Plan, attached hereto as Exhibit E.

## II.   STATEMENT OF THE CASE

### A.   Allegations and Defenses

Beginning in March of 2015, Plaintiffs filed lawsuits against the four major manufacturers of disposable contact lenses in the U.S. – Alcon, JJVCI, B&L, and CVI (the "Manufacturers") – and their primary distributor, ABB, alleging that Defendants illegally restrained competition under Section 1 of the Sherman Act and state unfair competition laws by imposing "Unilateral Pricing Policies" ("UPPs") on certain disposable contact lenses.  In June of 2015, the cases were consolidated before this Court by the United States Judicial Panel on Multidistrict Litigation.  *See* ECF No. 1.

For the past seven years, this litigation has involved contested questions of law and fact surrounding whether the Manufacturers and ABB illegally restrained competition and whether Plaintiffs had standing to sue for damages.  Boardman Decl., ¶34.[3]  Defendants have vigorously denied, and continue to deny, the existence of any conspiracy and contend that their UPPs did not unreasonably restrain competition; and Defendants contest Plaintiffs' standing to sue on a classwide basis.  *Id*.  Alcon and JJVCI maintained these defenses throughout the litigation leading up to trial, which was scheduled to commence on March 28, 2022.

---

[3]      The Court is familiar with most of the prior proceedings in this case, which were set forth in the motion and declaration supporting preliminary approval of the B&L and ABB settlements.  *See* ECF Nos. 1037, 1037-2, 1145.  Rather than repeat such facts, Plaintiffs incorporate by reference the facts regarding the prior litigation history from that declaration.

### B.    The Earlier Settlements

On August 30, 2017, Plaintiffs reached a $3,000,000 settlement with CVI. Boardman Decl., ¶22.  On July 10, 2018, the Court preliminarily approved the CVI settlement, but deferred disseminating notice until a later date.  *See* ECF No. 841.  On August 8, 2018, Plaintiffs moved for final approval of the CVI settlement.  ECF No. 1011.

On September 17, 2019, Plaintiffs filed a Motion for Preliminary Approval of a $10,000,000 settlement with B&L and Approval of Amendment of Proposed Notice Plan.  *See* ECF No. 1037.  The notice plan was to be amended, in part, to provide notice of and an opportunity to opt-out of the now-certified Litigation Classes, as well as the B&L and CVI settlements.  *Id*.  On October 8, 2019, the Court preliminarily approved the B&L settlement and the amended Notice Plan.  *See* ECF No. 1046. Notice was thereafter disseminated in the manner and form approved by the Court. Azari Decl., ¶5. On January 16, 2020, Plaintiffs moved for final approval of the B&L and CVI settlements.  ECF Nos. 1136-39.  The Court held a fairness hearing on February 25, 2020, ECF No. 1154, and granted final approval to both settlements on March 4, 2020.  ECF No. 1164.  The claims period for both settlements ended on March 31, 2020.  *See* ECF No. 1176.

On September 22, 2020, Plaintiffs reached a $30,200,000 settlement with ABB. Plaintiffs moved for preliminary approval of the ABB settlement and accompanying notice plan on October 22, 2020.  *See* ECF No. 1215.  The Court granted preliminary approval of the ABB settlement on November 13, 2020, *see* ECF No. 1224, and notice

was thereafter disseminated in the manner and form approved by the Court.  Azari Decl., ¶5.  On February 26, 2021, Plaintiffs moved for final approval of the ABB settlement.  ECF No. 1241.  The Court held a fairness hearing on May 19, 2021, *see* ECF No. 1253, and granted final approval of the ABB settlement on June 1, 2021.  *See* ECF No. 1257.

### C.    Discovery Involving Alcon and JJVCI

Plaintiffs undertook substantial discovery of Alcon and JJVCI over the course of this case.  Alcon produced more than 621,000 pages of documents to Plaintiffs, and JJVCI produced more than 365,000 pages of documents.  Plaintiffs also took six depositions of current and former Alcon employees and five depositions of current and former JJVCI employees.  Boardman Decl., ¶16.

### D.    Recent Procedural Developments

On March 30, 2020, the Parties filed a Joint Notice in which they requested the Court's guidance on the impact of the COVID-19 pandemic on the trial schedule.  *See* ECF No. 1178.  On April 3, 2020, the Court delayed the start of trial indefinitely due to the pandemic.  ECF No. 1180.  The Court also called for Plaintiffs and Defendants to seriously consider resolving the litigation through settlement.  *Id.*

On July 27, 2021, the Court rescheduled trial for March 28, 2022.  ECF No. 1266.  On December 20, 2021, Judge Virginia M. Hernandez Covington was assigned to preside over the trial.  ECF No. 1290.

## III.   MEDIATIONS

### A.   Alcon

On Friday, February 25, 2022, Plaintiffs and Alcon engaged in a day-long mediation with Robert Meyer of JAMS in Los Angeles, California.  Boardman Decl., ¶29.  Although the Parties made progress, the initial mediation did not result in a settlement.  *Id*. at 32.  As the Parties prepared for trial over the following weeks, they also continued settlement negotiations through Mr. Meyer.  *Id*.  On March 23, 2022, Plaintiffs and Alcon agreed to settle the action for $20,000,000 and executed the Alcon Settlement.  *Id*.

### B.   JJVCI

Plaintiffs and JJVCI participated in an all-day mediation on September 1, 2020 overseen by Hon. Layn Phillips (Ret.).  *Id*. at 33.  The initial mediation did not result in an agreement, and JJVCI and Plaintiffs continued preparing their respective cases for trial.  *Id*.  In the weeks preceding trial, the Parties engaged in further settlement negotiations with the assistance of Judge Phillips and his staff.  *Id*.  These negotiations continued into the week before trial, culminating in an agreement to settle the action as to JJVCI for $55,000,000.  *Id*.  JJVCI and Plaintiffs executed the JJVCI Settlement on March 27, 2022.  *Id*.

### C.   Summary of Settlement Terms

The Settlements contain substantively the same terms.  The following is a summary of their material terms.

6

### 1.    The Settlement Classes

The Settlement Classes are opt-out classes under Rule 23(b)(3) of the Federal

Rules of Civil Procedure.  The Settlement Classes are identical to the certified ABB

Settlement Class and are defined as follows:

> [A]ll persons and entities residing in the United States who made retail
> purchases of disposable contact lenses manufactured by Alcon, JJVC,
> CVI, or B&L during the Settlement Class Period for their own use and
> not for resale, where the prices for such contact lenses were subject to a
> "Unilateral Pricing Policy" and the purchase occurred during the period
> when the Unilateral Pricing Policy was in effect.  Excluded from the
> Settlement Class are any purchases from 1-800 Contacts of disposable
> contact lenses subject to B&L's Unilateral Pricing Policy, where the
> purchase occurred on or after July 1, 2015.  Also excluded from the
> Settlement Class are Defendants, their parent companies, subsidiaries
> and affiliates, any alleged co-conspirators, all governmental entities, and
> any judges or justices assigned to hear any aspect of this action.

Settlements, ¶1.35; *compare* ECF No. 1257 at 6-7.

### 2.    Monetary Relief for the Benefit of the Class

The Alcon Settlement requires Alcon to deposit $20,000,000 in cash into an

Escrow Account[4] within 15 days following Preliminary Approval.  Alcon Settlement,

¶3.1.  The JJVCI Settlement Requires JJVCI to deposit $55,000,000 in cash into an

Escrow Account within 15 days following Preliminary Approval.  JJVCI Settlement,

¶3.1. The Alcon Settlement and JJVCI Settlement will be combined to create the

Settlement Fund.

---

[4]    As with the previously approved Settlements, Lead Counsel intend to use
Huntington National Bank as Escrow Agent for the Alcon and JJVCI Settlement
Fund, subject to Court approval.

The Net Settlement Fund – which Lead Counsel intend to distribute at a later date on a *pro rata* basis among eligible Settlement Class Members who do not opt-out – is equal to the Settlement Fund plus any accrued interest and less: (i) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (if requested and to the extent allowed by the Court); (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court. Settlements, ¶1.16.

### 3.    Class Release

In exchange for the benefits conferred by the Settlements, all Settlement Class Members who do not timely opt-out will release Alcon and JJVCI from claims relating to the subject matter of the Action.  The detailed release language is found in Section 7 of the Settlements.

### 4.    Settlement Termination

Any party to a Settlement may terminate a Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court.  Settlements, ¶10.2.

### 5.    Reimbursement of Class Representatives' Costs and Time

Lead Counsel have not yet determined whether they will seek permission from the Court to reimburse the Class Representatives for the costs and time they have expended in this litigation.  The Settlements provide that, prior to the deadline to opt-out or object to the Settlements, Lead Counsel may seek, and Alcon and JJVCI will not oppose, such reimbursements, which may include reimbursement of costs,

expenses, and lost wages for the Class Representatives.  Settlements, ¶9.2.  If any such reimbursements are requested, Lead Counsel will do so as part of a motion filed at least 14 days before the deadline to opt-out or object to the Settlements.  If the Court approves it, the costs will be reimbursed from the Settlement Fund.  *Id.*

### 6.    Attorneys' Fees and Costs

The Settlements also provide that, prior to the deadline to opt-out or object to the Settlements, Lead Counsel may apply for, and Alcon and JJVCI will not oppose, attorneys' fees that represent a reasonable percentage of the Settlement Fund, plus reimbursement of litigation costs and expenses.  Settlements, ¶9.1.  Lead Counsel will file any motion for fees and costs at least 14 days before the deadline to opt-out or object to the Settlements.

### 7.    Notice and Distribution

The Settlements provide that Claims Notice and Administration Expenses will be paid out of the Settlement Fund.  Settlements, ¶¶1.16 & 8.2.  The Settlements further provide that Lead Counsel, without further approval of Alcon or JJVCI, may pay from the Settlement Fund up to $500,000 from each ($1,000,000 total) to cover Class Notice and Administration Expenses, as well as Taxes and Tax Expenses associated with providing the foregoing.  Settlements, ¶¶3.9, 8.1-8.2.

Through this motion, Plaintiffs request that the Court authorize Lead Counsel to spend an additional $500,000 (a total of $1,500,000) of the Settlement Fund for Class Notice and Administration Expenses for the purposes of effectuating notice, claims, and distribution consistent with the Settlement Agreements and Rule 23.  Any

notice, claims, and distribution costs above $1,500,000 will only be paid from the Settlement Fund subject to further application by Lead Counsel and Court approval.

## IV. LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 NEWBERG ON CLASS ACTIONS §11.26. Prior to final approval, courts undertake a two-step process that includes (1) preliminary approval and (2) a subsequent fairness

hearing. *See Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009).

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Courts in this District have likewise recognized that "[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of the written submissions." *Pierre–Val v. Buccaneers Ltd. P'ship*, No. 8:14–cv–01182–CEH, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015). Moreover, "[a] proposed settlement should be preliminarily approved if it is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Id.* (citing *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007)).

In addition to the factors enumerated by Rule 23(e), courts in this Circuit have also looked to the six factors set forth in *Bennett* (the "Bennett Factors") to determine whether a settlement is fair, adequate, and reasonable: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Some courts have engaged in a "preliminary evaluation" of

11

these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.  *See, e.g.*, *Smith*, 2010 WL 2401149, at *2.[5]

Neither formal notice nor a hearing is required at the preliminary-approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *See* MANUAL FOR COMPLEX LIT., Fourth §13.14 (4th ed. 2004).

## V.   ARGUMENT

### A.   The Settlements Satisfy the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of preliminary approval. First, the Settlements were reached after fact discovery was complete and on the eve of trial.  The Settlements were thus the product of informed and competent counsel, who conducted arm's-length negotiations in the absence of collusion.  Boardman Decl., ¶44.  Furthermore, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the Settlements demonstrate that they fit well within the range of reasonableness and thus merit preliminary approval.

Any settlement requires the parties to balance the merits of the claims and defenses against the risks of continued litigation and delay.  Plaintiffs and Lead Counsel believe that their claims are meritorious, and that Plaintiffs would prevail at trial.  The Settling Defendants dispute Plaintiffs' claims, deny liability, and have

---

[5]   Lead Counsel do not address the fifth factor related to objections to the Settlements because, at the preliminary-approval stage, notice has not yet been disseminated.

continued to litigate vigorously.  Under these circumstances, the Parties concluded that the benefits of the Settlements outweigh the risks and uncertainties of continued litigation, including the risks, time, and expenses associated with completing trial and final appellate review, particularly in the context of a large and complex antitrust multi-district litigation.  *Id.*, ¶45.

### B. Both Settlements are the Product of Good-Faith, Informed, and Arm's-Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton*, 559 F.2d 1326 at 1330; *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF8, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice. . . .'") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla.

1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also* 4 NEWBERG ON CLASS ACTIONS §11.41.

Both Settlements are the result of intensive, arm's-length negotiations, overseen by skilled mediators and experienced attorneys who are familiar with the legal and factual claims asserted in this litigation and the arguments advanced by the Parties. Boardman Decl., ¶46. Plaintiffs and Alcon engaged in settlement discussions with Mr. Meyer regarding the strengths and weaknesses of their respective cases and submitted detailed mediation briefs. *Id.* The same was true of the settlement discussions with JJVCI and Judge Philips. *Id.*

Furthermore, Lead Counsel have extensive experience in the litigation, certification, trial, and settlement of nationwide antitrust class actions. *Id.*, ¶47. Lead Counsel zealously represented their clients throughout this litigation including, *inter alia*, prevailing at the motion-to-dismiss stage and overseeing expansive discovery involving more than 4.1 million pages of documents and 68 depositions. *Id.*, ¶16. Plaintiffs ultimately prevailed at class certification and summary judgment, where this Court found that Lead Counsel "are skilled and adequate in all respects." ECF No. 940 at 127.

In negotiating the Settlements, Lead Counsel had the benefit of years of experience and a deep familiarity with the facts of the case, as well as other cases involving similar claims. Lead Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with both Alcon and JJVCI. Boardman Decl., ¶¶6, 47-48. Lead Counsel's review of that discovery enabled

them to assess the evidence related to the key issues in the case and prepared them for well-informed settlement negotiations.  *See Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### C.    Both Settlements Are Fair, Adequate, and Reasonable

The Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlements fall within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlements are warranted.

### 1.    Likelihood of Success at Trial

Plaintiffs and Lead Counsel are confident in the strength of their case but are also aware of the defenses available to Alcon and JJVCI and the risks inherent in trial and post-judgment appeal.  As noted above, Plaintiffs defeated Defendants' dismissal motions, successfully certified litigation classes, and prevailed at summary judgment. The success of Plaintiffs' claims, however, turn on questions that would arise again at trial and during any post-judgment appeal.  Under the circumstances, Lead Counsel appropriately determined that the relief provided by the Settlements outweigh the risks of continued litigation and the potential delay of appeals.  Boardman Decl., ¶48; *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

### 2.      Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $20,000,000 cash recovery provided for in the Alcon Settlement and the $55,000,000 cash recovery provided for in the JJVCI Settlement are excellent results, particularly given the complexity of the litigation and the significant risks and barriers of a jury trial and appellate review. Both Settlements are significantly larger in value than the previous settlements reached with the other Manufacturers: CVI ($3 million) and B&L ($10 million).

Finally, based on the analysis of Plaintiffs' expert, Dr. Michael Williams, the $20,000,000 Alcon Settlement represents between 44.6%-77.7% of the Settlement Class Members' possible single vertical damages recovery against Alcon. Boardman

Decl., ¶37.  And the $55,000,000 JJVCI settlement represents between 22.3%-33.7% of the Settlement Class Members' possible single vertical damages recovery against JJVCI.[6]  *Id.* at 37.  In light of Alcon's and JJVCI's defenses, and the challenging and unpredictable path towards recovery that Settlement Class Members would face absent a settlement, these settlement values are a wonderful result for the Settlement Classes and represent a fair and reasonable recovery.

### 3.      Complexity, Expense, and Duration of Litigation

Trying Plaintiffs' claims before a jury and litigating the likely post-judgment appeals would tax the court system and require a substantial expenditure of public and private resources.  Thus, the Settlements are the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  These considerations, and the other considerations noted above, militate in favor of the Settlements.

### 4.      Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

---

[6]      For comparison, the $10,000,000 recovery from B&L represented between 63.5% and 72.4% of the Settlement Class Members' estimated damages recovery as against B&L.  *Id.*

The Settlements were reached after over seven years of litigation including extensive pretrial discovery and motion practice, as well as the production and review of more than 4.1 million pages of documents.  The Parties took 68 depositions and engaged in contested expert discovery and motions to exclude Plaintiffs' experts.  Boardman Decl., ¶17.  Further, the Parties litigated motions to dismiss, class certification, motions for summary judgment, motions *in limine*, and other pre-trial briefing, which continued until the eve of trial.  As a result, Lead Counsel were well-positioned to evaluate the strengths and weaknesses of the Parties' claims and their prospects for success at trial and on appeal.  *See In re Amgen Inc. Sec. Litig.*, No. CV-07-2536, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016) ("Given that . . . this case was on the verge of trial at the time of the settlement, the Court finds that Class Representative had enough information to make an informed decision about settlement based on the strengths and weaknesses of its case.  This factor thus weighs in favor of granting final approval.").

**D.    The Court Should Certify the Proposed Settlement Classes**

The Court should certify the Alcon and JJVCI Settlement Classes because they satisfy Fed. R. Civ. P. 23 and are identical to the ABB settlement class that the Court already certified.  In granting final approval to the ABB Settlement, the Court certified an identical settlement class under Rule 23 and held as follows:

> (a) Pursuant to Rule 23(a)(1), the Court determines that the Settlement Class Members are so numerous that their joinder before the Court would be impracticable.

(b) Pursuant to Rule 23(a)(2), the Court determines that there are one or more questions of fact or law common to the Settlement Class.

(c) Pursuant to Rule 23(a)(3), the Court determines that Plaintiffs' claims are typical of the claims of the Settlement Class.

(d) Pursuant to Rule 23(a)(4), the Court determines that Plaintiffs will fairly and adequately protect the interests of the Settlement Class. Plaintiffs are certified as class representatives.

(e) Pursuant to Rule 23(b)(3), the Court determines that common questions of law and fact predominate over questions affecting only individual members of the Settlement Class.

(f) Also pursuant to Rule 23(b)(3), the Court determines that a class action is superior to other available methods for the fair and efficient adjudication of this Action with respect to the Settlement Class.

ECF No. 1257 at 7-8. Given that the Alcon and JJVCI Settlement Classes are identical to the previously certified ABB Settlement Class, certification is appropriate here for the same reasons.

**E.    The Court Should Approve the Proposed Notice Plan, Which Is Substantially the Same as the Notice Plan the Court Approved for the B&L, CVI, and ABB Settlements**

Plaintiffs previously sought, and obtained approval of, a notice plan that provided putative members of the CVI Settlement Class, the B&L Settlement Class, the ABB Settlement Class, and the Litigation Classes of their rights, including the opportunity to opt-out. *See* ECF Nos. 1011, 11037, 1046, 1164, 1215, and 1224.

Plaintiffs intend to use effectively the same notice plan for the Alcon and JJVCI Settlements, with two important additions. <u>First</u>, class members that have provided

19

their email addresses to the claims administrator (*e.g.*, class members who submitted an electronic claim in one of the earlier settlements) will receive notice to the email account they already provided.  Second, class members who have made a timely and valid claim in any of the B&L, CVI, and ABB settlements will be informed that they do not need to make another claim in the Alcon or JJVCI Settlements; they will be able to benefit without taking any further action.  Using the same general means of notice as the previous settlements with these two additions will promote efficiency, streamline costs, and avoid confusion.

Like before, Plaintiffs' proposed notice plan features a multi-layered approach incorporating direct mailings, email, social media ads, and traditional publication notice.  Azari Decl., ¶¶9-32.  Plaintiffs' proposed notice provider and claims administrator, Epiq, estimates that the various components of the Notice Plan will "effectively reach at least an estimated 70% of the Classes (users of disposable contact lenses)."  Azari Decl., ¶13.

Courts routinely approve similar multi-layered notice programs.  *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261-66 (S.D. Fla. 2016) (notice primarily by email and newspaper advertising); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 317-8 (E.D. La. 2015) (email, digital ads, and print publication).  In addition, courts have consistently recognized that, in cases such as this where direct contact information is not available for all class members, "due process does not require that class members actually receive notice."  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

Under the proposed Notice Plan, the first deadline for providing notice does not fall until 60 days after the Court approves the Notice Plan.  Plaintiffs and the proposed Notice Administrator have already developed long form and short form notices with details about the Alcon and JJVCI Settlement Agreements for the Court's approval. *See* Azari Decl., Exs. 1-5.  Because the Notice Plan includes "individual notice to all members who can be identified through reasonable efforts," Fed. R. Civ. P. 23(c)(2)(B); *see also* Azari Decl., ¶11, it provides the "best notice practicable under the circumstances," *id.*, ¶35, and should be approved.

Under the proposed Notice Plan, potential Settlement Class Members will be notified that those who have already made claims in any of the CVI, B&L, or ABB settlements need not make another claim to be paid out of the Alcon or JJVCI Settlement Fund but will still have the right to object or opt-out of the Alcon Settlement or JJVCI Settlement, should they choose to do so.  Azari Decl., Ex. 1 at 1.  This will limit duplicative claims and save the Class money by reducing processing fees.

**F.     The Court Should Set a Schedule for Notice and Final Approval of the Settlements**

Plaintiffs request that the Court enter the below schedule:

| Notice Date (Notice Mailing Completion, Updating of Website and Publication Notice) | 45 Days After Preliminary Approval and Approval of Notice Plan |
|---|---|
| Plaintiffs' Motions for Final Approval, Fees, Expenses, and/or Incentive Awards for the Alcon and JJVCI Settlements | 30 Days After Notice Date |

| Opt-Out, Objection, and Claim Deadline for Alcon and JJVCI Settlement Classes | 60 Days After Notice Date |
|---|---|
| Plaintiffs' Replies in Support of Motions for Final Approval, Fees, Expenses, and/or Incentive Awards for the Alcon and JJVCI Settlements | 75 Days After Notice Date |
| Fairness Hearing on Alcon and JJVCI Settlements | 90 Days After Notice Date |

The proposed schedule, which gives members of the Settlement Classes 60 days from the Notice Date to exercise their rights, is consistent with schedules approved by other courts in antitrust and consumer class actions. *See Prather v. Wells Fargo Bank, N.A.*, 15-cv-04231, 2017 WL 770132, at *4 (N.D. Ga. Feb. 24, 2017) (approving 60-day opt-out and objection deadline); *Legg v. Spirit Airlines, Inc.*, No. 15-cv-61375, 2015 WL 11197784, at *2 (S.D. Fla. Oct. 28, 2015) (same); *see also Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 634 (11th Cir. 2015) ("'Courts have consistently held that 30 to 60 days between the mailing . . . of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement.'") (citation omitted).

### G.   Plan of Distribution of Funds to the Settlement Classes

As noted in previous motions seeking approval of the earlier settlements, Plaintiffs intend to distribute the Net Settlement Fund to qualifying Settlement Class Members on a *pro rata* basis, subject to details specified in a motion to distribute funds to be filed at a later date. The Settlement Class definitions of the CVI, ABB, Alcon,

and JJVCI Settlements are all substantively the same and their funds will be distributed accordingly.   Settlements, ¶1.35; ECF Nos. 1164, 1257.   The B&L Settlement Class definition does not include claims related to CVI, ECF No. 1164, so its fund has been, and will be, kept separate and not comingled with the funds from the other settlements. Boardman Decl., ¶¶41-42.   The distribution of funds will be overseen by the Court-appointed Claims Administrator, Epiq.

The motion for distribution will account for these facts.  *Id*.  Class Members that file valid claims for purchases of lenses made by B&L, JJVCI and/or Alcon will draw funds on a *pro rata* basis from all five Settlement Funds, whereas purchasers of lenses made by CVI who filed valid claims will draw funds on a *pro rata* basis from the CVI, ABB, Alcon, and JJVCI Settlement Funds (but not the B&L Settlement Fund).  *Id*. The Notice Plan submitted herewith informs potential class members of these facts. *See* Azari Decl., Exs. 1-5.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlements and certify the Settlement Classes; (2) approve the Notice Plan, the form of Notice, and the proposed opt-out and objection procedures; (3) stay the Action against Alcon and JJVCI pending final approval of the Settlements; (4) establish a schedule with deadlines for notice, opting out, objecting, filing claims, and setting a fairness hearing, and (5) enter the [Proposed] Order Preliminarily Approving Class Settlements and Notice Plan, attached hereto as Exhibit E.

## <u>LOCAL RULE 3.01(g) – CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 3.01(g), counsel for Plaintiffs have conferred with counsel for Defendants. Defendants do not oppose the relief sought in this motion.

Dated: April 20, 2022

Respectfully submitted,

*/s/Michael E. Lockamy*
Michael E. Lockamy
Florida Bar No. 69626
BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307
mel@bedellfirm.com

Benjamin Steinberg
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
bsteinberg@robinskaplan.com

Jacob M. Holdreith
Kelsey J. McElveen
ROBINS KAPLAN, LLP
800 LaSalle Ave S, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
jholdreith@robinskaplan.com
kmcelveen@robinskaplan.com

*Co-Lead Class Counsel*

Joseph P. Guglielmo
Thomas K. Boardman
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
tboardman@scott-scott.com

*Co-Lead Class Counsel*

Nathaniel C. Giddings
HAUSFELD LLP
1700 K. St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
ngiddings@hausfeld.com

Christopher L. Lebsock
Halli Spraggins
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813

Dennis Stewart
GUSTAFSON GLUEK PLLC
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: (619) 333-8844
Facsimile: (619) 339-6622
dstewart@gustafsongluek.com

*Plaintiffs' Trial Counsel*

Michael Schrag
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9710
mls@classlawgroup.com

*Plaintiffs' Trial Counsel*

hspraggins@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

*Plaintiffs' Trial Counsel*