## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Case No. 3:15-md-2626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br>**All Class Actions** | |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENTS WITH DEFENDANTS ALCON VISION, LLC AND JOHNSON & JOHNSON VISION CARE, INC. AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................1

II.  STATEMENT OF FACTS.............................................................2

  A.   Investigation, Procedural Posture, and Previous Settlements ...............2

  B.   Alcon Settlement ....................................................................2

  C.   JJVCI Settlement.....................................................................3

  D.   Summary of the Settlement Terms ...............................................3

       1.   The Settlement Classes .......................................................3

       2.   Monetary Relief for the Benefit of the Class ...........................4

       3.   Class Releases ..................................................................5

       4.   Settlement Termination........................................................5

       5.   Attorneys' Fees and Costs ....................................................5

       6.   The Court-Approved Notice Program Was Implemented....................6

       7.   Reaction to the Settlements Has Been Positive .........................6

  E.   The Standards of Rule 23(a) and (b)(3) Have Already Been Met...........7

III. ARGUMENT ...........................................................................7

  A.   The Legal Standard for Final Approval..........................................7

  B.   The Court Has Personal Jurisdiction over the Settlement Class Because
       Members of the Settlement Classes Received Adequate Notice and an
       Opportunity to Be Heard ..........................................................9

       1.   The Best Notice Practicable Was Furnished ...........................9

       2.   The Notice and Notice Program Were Reasonably Calculated to Inform
            Settlement Class Members of Their Rights ...........................11

  C.   The Settlements Should Be Approved as Fair, Adequate, and
       Reasonable..........................................................................12

1.    The Settlements Are the Product of Good-Faith, Informed, and Arm's-Length Negotiations Overseen by Experienced Mediators ................... 13

2.    Complexity, Expense, and Duration of Litigation ............................ 14

3.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment ........................................................ 15

4.    Likelihood of Success on the Merits .................................................. 16

5.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair ........................................... 16

IV.    **FAIRNESS HEARING** .................................................................. **18**

V.    **CONCLUSION** ............................................................................ **18**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ..........................................................................8

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ............ 15, 16

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ................................................................. 8, 12, 13

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ..........................................................................8

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ......................................................................... 16

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ................................. 14

*Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*,
No. 8:03-cv-02246-SDM-TGW, Report and Recommendation
(M.D. Fla. Aug. 4, 2006), *adopted by Merryday, J.*, 2006 WL 2474062
(M.D. Fla. Aug. 25, 2006) ...............................................................................8

*Leverso v. Southtrust Bank*,
18 F.3d 1527 (11th Cir. 1994) ................................................................... 12, 13

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005)....................................................15, 16, 17

*In re Lorazepam & Clorazepate Antitrust Litig.*,
MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003)............................ 12

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................................................. 13

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ........................................................................ 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................... 9, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................... 9

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) .................................................... 15

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................... 7

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
    §11.41 (4th ed. 2002) .............................................................................. 8

Plaintiffs respectfully move for final approval of the Settlement between Plaintiffs and Alcon Vision, LLC ("Alcon"), attached as Exhibit A ("Alcon Settlement" or "Alcon Settlement Agreement"), and the Settlement Agreement between Plaintiffs and Johnson & Johnson Vision Care, Inc. ("JJVCI" and with Alcon, "Settling Defendants"), attached as Exhibit B ("JJVCI Settlement" or "JJVCI Settlement Agreement).[1] The Settlements, if approved, will resolve all claims against the remaining Defendants in the Action and successfully conclude this litigation.[2]

## I.   INTRODUCTION

The Court should grant final approval to the Settlements because they each satisfy all the criteria for final approval and will provide excellent relief and monetary compensation to the Settlement Class. On the eve of trial, Plaintiffs reached Settlements with Alcon and JJVCI that will pay $20 million and $55 million, respectively, into a Settlement Fund for the Settlement Class's benefit. The Settlements represent a fantastic result for the Settlement Class after seven years of complex and hard-fought litigation. *See* Jt. Decl. ¶¶ 6, 7, 8-48.[3]

---

[1]   Collectively, the settlement agreements with simply be referred to as "the Agreements" or "the Settlements" and Alcon, JJVCI, and Plaintiffs collectively as "the Parties."

[2]   All capitalized defined terms used herein have the same meanings ascribed in the Settlement Agreements.

[3]   "Joint Declaration" or "Jt. Decl." references are to the Joint Declaration of Thomas Boardman, Benjamin Steinberg, and Nathaniel Giddings, filed concurrently herewith in support of both this Motion and the Application for Fees and Expenses.

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court: (1) set a date and time for the Fairness Hearing regarding this Motion and the concurrently filed Application for Attorneys' Fees and Expenses; (2) grant final approval to the Settlements and Certify the Settlement Class; and (3) issue an order entering a final judgment and order of dismissal with prejudice as to Alcon and JJVCI.[4]

## II.   STATEMENT OF FACTS

### A.   <u>Investigation, Procedural Posture, and Previous Settlements</u>

Given the Court's familiarity with this case's procedural posture, Plaintiffs incorporate by reference the case history submitted in the Motion for Preliminary Approval of the Settlement Agreements with Alcon and JJVCI ("Preliminary Approval Motion") (ECF No. 1337), as well as the Statement of Facts in the concurrently filed Application for Fees and Expenses, which details Lead Counsel's work in this matter and the documents submitted during approval of the settlements with Bausch & Lomb, Inc. ("B&L"), CooperVision, Inc. ("CVI") (ECF No. 1136), and ABB Optical Group, LLC ("ABB") (ECF No. 1241).

### B.   <u>Alcon Settlement</u>

On Friday, February 25, 2022, Plaintiffs and Alcon engaged in a day-long mediation with Robert Meyer of JAMS in Los Angeles, California. Jt. Decl. ¶ 73. Although the Parties made progress, the initial mediation did not result in a settlement.

---

[4]      Lead Counsel will submit a Proposed Order with their reply brief after they have the final information regarding settlement participation and the Class's reaction to the Settlements following the opt-out and objection deadline and with sufficient time for review by Class Members in advance of the Fairness Hearing.

*Id.* In the following weeks, as the Parties prepared for trial, they continued to negotiate through Mr. Meyer. *Id.* On March 23, 2022, Plaintiffs and Alcon agreed to settle the action for $20,000,000 and executed the Alcon Settlement. *Id.*

### C.   JJVCI Settlement

JJVCI and Plaintiffs participated in an all-day mediation on September 1, 2020 overseen by Hon. Layn Phillips (Ret.). *Id.* at ¶ 74. The initial mediation did not result in an agreement, and JJVCI and Plaintiffs continued preparing their respective cases for trial. *Id.* The Parties engaged in further settlement negotiations in the weeks preceding the March 28, 2022 trial date with the assistance of Judge Phillips and his staff. *Id.* These negotiations continued into the week before trial, culminating in an agreement to settle the action as to JJVCI for $55,000,000. *Id.* JJVCI and Plaintiffs executed the JJVCI Settlement on March 27, 2022, just one day before the scheduled start of trial proceedings. *Id.*

### D.   Summary of the Settlement Terms

The Settlements contain substantively the same terms, as detailed in the Agreements. The following is a summary of their material terms.

#### 1.   *The Settlement Classes*

The Alcon and JJVCI Settlement Classes are opt-out classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. They are both defined as follows:

> [A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period

when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF Nos. 1337-1, 1337-2, Alcon & JJVCI Settlement Agreements, ¶ 1.35. The Alcon and JJVCI Settlement Classes substantively the same as the CVI and ABB Settlement Classes for which the Court has already granted final approval. ECF Nos. 1164, 1257.

### 2.    *Monetary Relief for the Benefit of the Class*

The Alcon Settlement required Alcon to pay $20,000,000 in cash into an Escrow Account within 15 days following Preliminary Approval and receipt of payment instructions. ECF No. 1337-1, Alcon Settlement Agreement, ¶ 3.1. Alcon made its deposit pursuant to the Alcon Agreement on May 20, 2022. Jt. Decl. ¶ 75. The JJVCI Settlement similarly required JJVCI to pay $55,000,000 in cash into an Escrow Account within 15 days following Preliminary Approval and receipt of payment instructions. ECF No. 1337-2, JJVCI Settlement Agreement, ¶ 3.1.  JJVCI made its deposit pursuant to the JJVCI Agreement on May 19, 2022. Jt. Decl. ¶ 76. The Alcon Settlement and JJVCI Settlement together comprise the Settlement Fund, which has been fully funded. *Id.*¶ 75-77.

The Net Settlement Fund – which, along with the Net Settlement Funds from the CVI, B&L, and ABB Settlements (for which distribution has been deferred, pursuant to this Court's earlier order, *see* ECF Nos. 841, 1046 & 1224, Lead Counsel intend to distribute at a later date on a *pro rata* basis among eligible Settlement Class

Members who do not opt out of the Settlements – is equal to the Settlement Fund plus any accrued interest and less: (i) the amount of any Fee and Expense Award and any Plaintiffs' Service Award (if requested and to the extent allowed by the Court); (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court. Agreements, ¶ 1.16.

### 3.    *Class Releases*

In exchange for the benefits conferred by the Settlements, all Settlement Class Members who do not timely opt out will release Alcon and JJVCI from claims relating to the subject matter of the Action. The detailed release language is found in Section 7 of the Agreements.

### 4.    *Settlement Termination*

Any party to a Settlement may terminate a Settlement if the Settlement is rejected or materially modified by the Court or by an appellate court. Agreements, ¶ 10.2.

### 5.    *Attorneys' Fees and Costs*

Contemporaneous with this motion, and as allowed by the Settlement Agreements, Lead Counsel has filed a motion for an award of attorneys' fees for their time litigating this case for over seven years, as well as reimbursement of certain costs. ECF No. 1215-1, ¶ 9.1. Specifically, Lead Counsel request reimbursement of $1,640,110.77 in costs incurred litigating this case since its inception that have not yet been reimbursed. Jt. Decl. ¶ 92. Lead Counsel also seek a total of $29,333,333 in attorneys' fees, equal to one-third of the Settlement Funds created by the Alcon, JJVCI, CVI and B&L Settlements. Jt. Decl. ¶¶ 79, 80.

### 6.    *The Court-Approved Notice Program Was Implemented*

The Settlements provide that Claims, Notice, and Administration Expenses are to be paid out of the Settlement Fund. ECF No. 1337, ¶¶ 3.9, 8.3. The Settlement Agreements further provide that Lead Counsel, without further approval of Alcon or JJVCI, may pay from the Settlement Funds up to $1,500,000 to cover Class Notice and Administration Expenses, Taxes, and Tax Expenses associated with providing notice to the Settlement Classes. ECF No. 1337, ¶¶ 3.9, 8.1, 8.2. On May 9, 2022, the Court authorized Lead Counsel to withdraw up to $1,500,000 of the Settlement Fund for Class Notice and Administration Expenses for the purposes of effectuating notice consistent with the Settlement Agreement and Federal Rule of Civil Procedure 23. ECF No. 1343. Plaintiffs' Notice was the best notice practicable, in accordance with the standards laid out under Rule 23(c)(2)(B). Epiq Decl. ¶¶ 11-13.[5]

### 7.    *Reaction to the Settlements Has Been Positive*

In accordance with the Notice Plan, class members who wish to opt out of or object to the Settlements, this Motion, or the Application for Fees and Expenses, must do so by Monday, August 22, 2022. As of July 21, 2022, there have been just six (6) requests for exclusion from and no objection to the Settlements, Epiq Decl. ¶ 41, despite 26,518 claims filed (108,678 claims have been filed across all settlements).[6] *Id.* ¶ 42. This reflects an

---

[5]    All "Epiq Decl." references are to the Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan filed in support of this Motion and the Motion for Attorneys' Fees.

[6]    The number of duplicate claims is not yet known.

overwhelmingly favorable response from the Settlement Class on par with the prior Settlements for which the Court has already granted final approval. Lead Counsel and Epiq will provide updated information regarding the requests for exclusions and any objections to the Settlements by September 6, 2022, after the close of the opt-out and objection period and in advance of the Fairness Hearing.

### E.  The Standards of Rule 23(a) and (b)(3) Have Already Been Met

The Court previously found that the requirements of Rule 23(a) and 23(b)(3) were satisfied in this Action when it certified the litigation classes. ECF No. 940. This Court should certify the Settlement Classes for the same reasons, as it did with the substantively identical CVI and ABB Settlement Classes. *See* ECF Nos. 1164, 1257

## III.  ARGUMENT

For the reasons set forth herein and in the Joint Declaration, Plaintiffs and Lead Counsel respectfully request that the Court grant final approval of the Alcon and JJVCI Settlements.

### A.  The Legal Standard for Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).[7] Final approval may be granted when a settlement is "fair, adequate, reasonable, and not the

---

[7]     Unless otherwise indicated, citations are omitted and emphasis is added.

product of collusion." *Leverso v. Southtrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 (11th Cir. 1994).

The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). The Eleventh Circuit instructs that courts determining whether to approve a settlement be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-cv-02246-SDM-TGW, Report and Recommendation (M.D. Fla. Aug. 4, 2006) (ECF No. 111), *adopted by Merryday, J.*, 2006 WL 2474062 (M.D. Fla. Aug. 25, 2006).

The policy favoring settlement is especially relevant in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2002) (citing cases).

**B.**   **The Court Has Personal Jurisdiction over the Settlement Class Because Members of the Settlement Classes Received Adequate Notice and an Opportunity to Be Heard**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Classes because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

### 1.   *The Best Notice Practicable Was Furnished*

The Notice Program was comprised of three parts: (1) direct email and mail postcard notice ("Mailed Notice") to all identifiable Settlement Class Members; (2) publication notice ("Published Notice") designed to use advertisements in publications, the internet, and social media to reach Settlement Class Members for whom direct mail notice was not possible; and (3) a "Long-Form" Notice, with more detail than the Mailed or Published Notices, that has been available on the Settlement Website and via mail upon request. Epiq Decl. ¶¶ 16-40.

Each facet of the Notice Program was timely and properly accomplished.[8] *Id.* The Notice Administrator received data files, to the extent available from Defendants,

---

[8]      In addition, on July 21, 2022, Epiq sent 1,381,741 Corrective/Reminder Email Notices to all potential Settlement Class Members who were sent the initial Email Notice and it was not returned as a hard bounce undeliverable after multiple attempts. Epiq Decl. ¶ 39. This Corrective/Reminder Email Notice was done to address the fact that a single link to the Claim Form at the Settlement Website included in the initial

which identified the names and last known addresses of identifiable Settlement Class Members and attempted to mail postcards to 74,131 Settlement Class Members. *Id.* ¶ 22 The Notice Administrator performed follow-up research and is continuing to attempt, prior to the Final Approval Hearing, to re-mail postcards to Settlement Class Members whose initial postcard notices were returned by the postal service. *Id.* ¶ 23. The Long-Form Notice was also available on the Settlement Website and could be mailed in response to requests from Settlement Class Members. *Id.* ¶ 35. Furthermore, the Notice Administrator performed and timely completed the Published Notice program through advertisements in *People* magazine and published Notice via advertisements on the internet and social media through banner advertisements and sponsored search listings on websites, such as *Google*, *Yahoo!*, *Facebook*, and *Instagram*. *Id.* ¶¶ 26, 31. Ads and press releases were also translated into Spanish and targeted to Spanish speakers. *Id.* ¶¶ 28.

The Notice Administrator also established the Settlement Website, including the Long-Form Notice, to enable Settlement Class Members to obtain detailed information about the Action and the Settlements. *Id.* ¶ 35. As of July 21, 2022, the Settlement Website had 376,709 unique visitors. *Id.* ¶ 35. In addition, on June 22, 2022, the existing toll-free number (877-253-3649) for the three previous Settlements was updated with information regarding the JJVCI and Alcon Settlements. *Id.* ¶ 36.

---

Email Notice directed Settlement Class members to an older version of the webpage. *Id.* ¶ 38.

By calling this number, Settlement Class Members can listen to answers to frequently asked questions and request a copy of the Long-Form Notice. *Id.* As of July 21, 2022, the toll-free number had handled 845 calls representing 2,797 minutes of use. *Id.*

### 2. The Notice and Notice Program Were Reasonably Calculated to Inform Settlement Class Members of Their Rights

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Classes, described the release provided to Alcon and JJVCI under the Agreements, as well as the plan of distribution, and informed members of the Settlement Classes of their right to opt out or object, the procedures for doing so, and information regarding a Final Approval Hearing. It also notified Settlement Class Members that a class judgment would bind them unless they opted out and informed that additional information and copies of key documents were available on the Settlement Website. Further, the Notice advised Settlement Class Members of Lead Counsel's intent to seek attorney's fees and expenses:

> At least fifteen (15) days before the deadline to opt-out or object to the Settlements, Lead Counsel will ask the Court for attorneys' fees of up to one-third (33.3%) of the Alcon and JJVCI Settlement Funds, as well as reimbursement of costs and expenses incurred by Lead Counsel during the litigation. In addition, Lead Counsel may also seek reimbursement of costs for the Class Representatives for their time and work spent prosecuting this Action. Any fees and expenses awarded by the Court will be paid out of the Settlement Funds.

ECF No. 1337-4. Settlement Class Members were thus provided with the best practicable notice that was "reasonably calculated, under . . . the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As stated above, the Settlement Class's reaction to the Notice Plan and Settlements has been overwhelmingly positive. Lead Counsel and Epiq will provide updated information regarding the requests for exclusions and their response to any timely objections to the Settlements by September 6, 2022, after the close of the opt-out and objection period and with sufficient time for review by Class Members in advance of the to be scheduled Fairness Hearing.

## C.   The Settlements Should Be Approved as Fair, Adequate, and Reasonable

In deciding whether to approve class action settlements, courts analyze whether they are "fair, adequate, reasonable, and not the product of collusion." *Leverso*, 18 F.3d at 1530; *see also Bennett*, 737 F.2d at 986. A settlement is fair, reasonable, and adequate when "'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 at 238 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as

they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1)    the existence of fraud or collusion behind the settlement;

(2)    the complexity, expense, and likely duration of the litigation;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the probability of the Plaintiffs' success on the merits;

(5)    the range of possible recovery; and

(6)    the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. As set forth below, each factor demonstrates that the Settlements are fair, adequate, and reasonable, and thus merit final approval.

### 1.   *The Settlements Are the Product of Good-Faith, Informed, and Arm's-Length Negotiations Overseen by Experienced Mediators*

As detailed above in Sections II. B & C, both Settlements were the result of prolonged, adversarial negotiations overseen by experienced counsel and mediators. The negotiations were hard-fought and persisted until that final week before the case was set to go to trial. Jt. Decl. ¶¶ 73, 74.

Lead Counsel was well-positioned to oversee the negotiations given their extensive experience litigating large antitrust class actions and their seven-years' of work on this case specifically. *Id.* ¶¶ 69, 72. Lead Counsel zealously represented

Plaintiffs and the Classes throughout the litigation including, *inter alia*, prevailing at the motion to dismiss stage and aggressively pursuing discovery, which included a review of more than 4.3 million pages of documents and electronic data, as well as taking and defending approximately 79 depositions of party and non-party witnesses. *Id*. ¶¶ 20-22. Lead Counsel ultimately prevailed at class certification, where this Court determined that "Plaintiffs' counsel are skilled and adequate in all respects." ECF No. 940 at 127.

In negotiating the Settlements, Lead Counsel had the benefit of decades of experience and a familiarity with the facts of this Action, as well as with other cases involving similar claims. As detailed above, Lead Counsel thoroughly investigated Plaintiffs' claims and engaged in extensive discovery with JJVCI, Alcon, and all other Defendants. Lead Counsel's review of that discovery enabled them to understand the key evidence in this case and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

### 2.      *Complexity, Expense, and Duration of Litigation*

Given the time, resources, and risks that would be necessary to litigate this matter to a verdict and through a potential post-judgment appeal, the Settlements are the best vehicle for Settlement Class Members to receive the relief to which they are

entitled in a prompt and efficient manner. The promptness and certainty of the relief provided by the Settlements militate heavily in favor of granting final approval. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting likely "battle of experts" at trial regarding damages that would pose "great difficulty" for plaintiffs), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553-54 (M.D. Fla. 1992) (noting that battle of the experts in securities fraud class action militated in favor of approving class settlement).

### 3. *The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment*

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

The Settlements here were reached after all phases of pre-trial litigation were completed and just days before trial was set to commence. By that time, Lead Counsel had carefully refined their trial preparations after reviewing millions of pages of documents and nearly 80 depositions and had the benefit of the Court's rulings on motions to dismiss, class certification, motions to exclude Plaintiffs' experts, summary judgment, and motions in *limine*. Jt. Decl. ¶¶ 20-22. Lead Counsel were therefore well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims and their prospects for success at trial and on appeal. *Id.* Lead Counsel are also highly familiar

with the claims and defenses at issue in this litigation through their experience litigating similar claims in MDL No. 1030 and elsewhere. *Id.* ¶ 72.

### 4. Likelihood of Success on the Merits

Plaintiffs and Lead Counsel are confident in the strength of their case but are also aware of the defenses available to JJVCI and Alcon and the risks inherent in any trial and post-judgment appeal. Although Plaintiffs defeated Defendants' motions to dismiss and summary judgment motions and successfully certified the Horizontal Class, among others, absent a settlement, Plaintiffs would still need to prevail at trail and during any post-judgment appeal, which could delay recovery by years. *Lipuma*, 406 F. Supp. 2d at 1322 (noting the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Under the circumstances, Lead Counsel determined that the Settlements were appropriate and in the Settlement Classes' best interest. Jt. Decl. ¶ 69.

### 5. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Settlements are reasonable even where plaintiffs recover only part of their actual losses. *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts

to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $20 million provided for by the Alcon Settlement, and the $55 million provided for by the JJVCI Settlement represent an excellent recovery for members of the Settlement Classes, particularly given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement. These risks and barriers included, among other things, a jury trial and potential appellate review. Furthermore, both cash payments are substantially larger than the previously approved settlements with the two other manufacturer defendants, CVI and B&L.

Based on Plaintiffs' expert's damages estimates, the recoveries provided for under the Settlements represent 63.1% of possible recoverable single damages against Alcon, and 28.5% of possible recoverable single damages against JJVCI. Jt. Decl. ¶ 94. These recovery shares are significantly higher than most antitrust class actions, where plaintiffs' median recovery is just 19% of single damages. *See* John M. Connor & Robert H. Lande, Not Treble Damages: Cartel Recoveries are Mostly Less Than Single Damages, 100 Iowa L. Rev. 1997, 2010 (2015).

In light of Alcon's and JJVCI's defenses, and the challenging and unpredictable path of litigation and appeal, the Settlements are an excellent result for the Settlement Classes and represents a fair and reasonable recovery.

## IV.   FAIRNESS HEARING

Plaintiffs request that the Court set a date and time for a Fairness Hearing regarding this Motion and Lead Counsel's concurrently filed Application for Fees and Expenses. Lead Counsel and counsel for Alcon and JJVCI have conferred and are happy to make themselves available for a hearing, at the Court's convenience, any time on Wednesday, September 21, 2022, or any date thereafter, consistent with the Court's Preliminary Approval Order. ECF No. 1343. This will give any interested parties and/or objectors at least fifteen (15) days to review Plaintiffs' and Lead Counsel's reply briefs in further support of this Motion and the Application for Fees and Expenses, which will be filed by Tuesday, September 6, 2022.

## V.   CONCLUSION

Based on the foregoing, Plaintiffs and Lead Counsel respectfully request that the Court: (1) set a date and time for the Fairness Hearing on September 21, 2022, or any date thereafter, regarding this Motion and the concurrently filed Application for Fees and Expenses; (2) grant final approval to the Alcon and JJVCI Settlements and Certify the Settlement Classes; and (3) issue an order entering a final judgment and order of dismissal with prejudice as to Alcon and JJVCI.


Dated: July 22, 2022                                         Respectfully submitted,

  *s/* Thomas K. Boardman                              John A. DeVault, III
Thomas K. Boardman                                  Florida Bar No. 103979
Joseph P. Guglielmo                                 Michael E. Lockamy
SCOTT+SCOTT                                         Florida Bar No. 69626
ATTORNEYS AT LAW LLP                                BEDELL, DITTMAR, DEVAULT,

18

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tboardman@scott-scott.com
jguglielmo@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com

Benjamin Steinberg
ROBINS KAPLAN LLP
1325 Avenue of the Americas
Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
bsteinberg@robinskaplan.com

Michael D. Hausfeld
Nathaniel C. Giddings
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
mhausfeld@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 217-6813

PILLANS & COXE, P.A.
101 East Adams Street
Jacksonville, FL 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307
jad@bedellfirm.com
mel@bedellfirm.com

*Plaintiffs' Local Counsel*

George W. Sampson
SAMPSON DUNLAP LLP
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 414-8340
george@sampsondunlap.com

Dennis Stewart
GUSTAFSON GLUEK PLLC
600 W. Broadway, Suite 3300
San Diego, CA, 92101
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dstewart@gustafsongluek.com

*Plaintiffs' Trial Counsel*

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT
2800 Ponce de Leon Boulevard
Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

19

mlehmann@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/ Thomas K. Boardman 
Thomas K. Boardman