# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS ANTITRUST LITIGATION** | **Case No. 3:15-md-2626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger**<br>**Magistrate Judge James R. Klindt** |
| **THIS DOCUMENT RELATES TO:**<br>**All Class Actions** | |

## LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................1

II.  STATEMENT OF FACTS ............................................................2

  A.   Recent Procedural History ............................................................3

  B.   The Settlements ............................................................................4

III. ARGUMENT ...................................................................... 10

  A.   Lead Counsel's Request for a Third of the Gross Settlement Fund Is Fair,
       Reasonable, and Commonly Granted in this Circuit ......................................10

  B.   Lead Counsel Is Entitled to Fees from the Common Fund.............................. 10

  C.   The *Camden I* Factors Support the Requested Fee....................................13

    1.   Litigating This Complex and Novel Case Required Substantial Time, Labor,
         and Expertise .........................................................................14

    2.   Lead Counsel Achieved a Successful Result Considering the
         Litigation Risks .......................................................................16

    3.   Lead Counsel Assumed Considerable Risk Litigating This Case on a
         Pure Contingency Basis ..............................................................17

    4.   The Requested Fee Comports with Fees Awarded in Similar Cases ...........18

    5.   The Remaining Camden I Factors Also Favor Approving the
         Requested Fee .........................................................................21

  D.   The Expense Request Is Appropriate.......................................................21

IV.  FAIRNESS HEARING.............................................................. 23

V.   CONCLUSION ...................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ............ 18, 22

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................. 10, 11

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................... 10, 11, 12, 14, 16

*In re Checking Account Overdraft Litig.*,
   No. 1:09-MD-02036, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) .................... 19

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................12, 16, 21

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   No. 1:04-cv-3066, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) ....................... 23

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .................................................................... 17, 20

*Deposit Guar. Nat'l Bank v. Rope*,
   445 U.S. 326 (1980) ...................................................................................... 11

*George v. Acad. Mortg. Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...................................................... 19, 20

*In re Ikon Office Sols., Inc. Secs. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................... 23

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) ............................................................ 11, 12

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ...............................................................................21, 22, 23

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ........................................................... 19

*Muehler v. Land O'Lakes, Inc.*,
617 F. Supp. 1370 (D. Minn. 1985)................................................................12

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014)....................................................................22

*Pierre-Val v. Buccaneers Ltd. P'ship*,
No.: 8:14–cv–01182, 2015 WL 12843849 (M.D. Fla. Dec. 7, 2015)..................19

*In re Public Serv. Co. of N.M.*,
No. 91–0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992)............................20

*Ressler v. Jacobson*,
149 F.R.D. 561 (M.D. Fla. 1992)....................................................................16

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) (30%).................................................... 17, 23

*RJR Nabisco, Inc. Sec. Litig.*,
MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug.
24, 1992) ......................................................................................................20

*In re Sunbeam Secs. Litig.*,
176 F. Supp. 2d 1323 ....................................................... 11, 13, 14, 17

*Swift v. BancorpSouth Bank*,
No. 1:10-cv-00090, 2016 WL 11529613 (N.D. Fla. July 15, 2016)...................23

*Walco Investments, Inc. v. Thenen*,
975 F. Supp. 1468 (S.D. Fla.1997) ......................................................... 16, 17

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999)................................................................ 13, 19

*Wolff v. Cash 4 Titles*,
No. 03-2278-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ........................13

## Other Authorities

1 COURT AWARDED ATTORNEY FEES, ¶ 2.06[3] (Matthew Bender
2010) ...........................................................................................................20

4 NEWBERG ON CLASS ACTIONS, §14:6 (4th ed. 2002) ...........................................20

Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92
    N.Y.U. L. Rᴇᴠ. 937, 951 (2017)..........................................................................13

For the reasons set forth below, Lead Counsel request that the Court enter an order: (1) setting a date and time for the Fairness Hearing regarding this Motion and the concurrently filed Motion for Final Approval of Settlement Agreements with Defendants Alcon Vision, LLC ("Alcon") and Johnson & Johnson Vision Care, Inc. ("JJVCI") ("Motion for Final Approval"); and (2) awarding Lead Counsel the requested $29,333,333 in attorneys' fees from the CooperVision ("CVI"), Bausch & Lomb ("B&L"), Alcon, and JJVCI Settlements and $1,640,110.77 in unreimbursed costs and expenses, plus interest.[1]

## I.   PRELIMINARY STATEMENT

After over seven years of hard-fought litigation spanning motions to dismiss, sharply contested discovery, class certification, petitions for interlocutory appeal, multiple motions for summary judgment, and months of extensive trial preparations, Lead Counsel reached settlements with the two last remaining Defendants, Alcon and JJVCI, just days before trial was scheduled to begin in March of 2022. The Settlements provide tremendous relief to Class Members, and, along with the previous Settlements with Defendants CVI, B&L, and ABB, will fully resolve this litigation upon the Court's Approval. In light of their work securing this excellent result, Lead Counsel respectfully request that the Court award attorneys' fees of $29,333,333, equal to one-third of the combined $75,000,000 Alcon and JJVCI Settlement Funds ($25,000,000),

---

[1]   Lead Counsel will submit a Proposed Order with their reply brief after they have the final information regarding settlement participation and the Class's reaction to the Settlements following the opt-out and objection deadline and with sufficient time for review by Class Members in advance of the Fairness Hearing.

plus one-third of the combined $13,000,000 B&L and CVI Settlement Funds ($4,333,333) from which Lead Counsel has not yet requested attorney's fees.[2] Lead Counsel also request reimbursement of $1,640,110.77 in unreimbursed litigation expenses. The requested award of attorneys' fees and expenses is well within the range approved by courts in this District and this Circuit, as well as in antitrust class actions nationwide. As per the Settlement Agreements, Counsel for Defendants take no position on Lead Counsel's application for fees and costs. *See* CVI, B&L, Alcon, and JJVCI Agreements, Section 9.

In addition, because the Court has not yet set a date for the Fairness Hearing, Lead Counsel respectfully requests that the Court do so.

## II.    STATEMENT OF FACTS

This case has presented a complex and novel set of legal questions, requiring a sustained investment of time and resources from Lead Counsel. Throughout this seven-year litigation, Defendants vigorously denied Plaintiffs' allegations at each

---

[2]    As noted herein, Lead Counsel have not yet received any award of attorneys' fee from any of these four settlements, including the previously approved CVI and B&L Settlements. Lead Counsel requested and received $4,369,000 in spent and forward-looking litigation costs and incentive awards for the Class Representatives from the CVI and B&L Settlements, but merely reserved the right to later ask for attorney fees from those Settlements. ECF No. 1134, p.6 n7. The notice for the CVI and B&L Settlements informed potential class members that "Lead Counsel will ask the Court for attorneys' fees up to one-third (33.3%) of the [CVI/B&L] Settlement[s] and/or reimbursement for costs and expenses for their work in the Litigation." ECF No. 1037-4, p.83. No Class Members objected to the CVI or B&L Settlements or Lead Counsel's request for costs on any grounds. Jt. Decl. ¶ 61. If any Class Members wish to object to Lead Counsel's request for fees from the CVI and B&L Settlements, they should be allowed to be heard at the to be scheduled Fairness Hearing regarding the Alcon and JJVCI Settlements.

stage, challenged Plaintiffs' standing, and defended their conduct by arguing, *inter alia*, that the UPPs were lawful and did not give rise to any agreement or damages. Nonetheless, Lead Counsel successfully advanced Plaintiffs' antitrust claims against five sophisticated multinational defendants represented by some of the largest law firms in the world. After thousands of pages of motion practice, millions of pages of documents exchanged and reviewed in discovery, and months of depositions, hearings, and trial preparations, Lead Counsel negotiated and obtained class settlements totaling $75,000,000 for the final two remaining Defendants, approval of which would bring this long-running litigation to a close. The additional $75,000,000 brings the total value of all settlements reached in this litigation to $118,500,000. Below, Lead Counsel detail their efforts to achieve these results.

### A.    Recent Procedural History

Lead Counsel incorporates by reference all procedural history predating the Court's order granting of Plaintiffs' Motion for Final Approval of the ABB Settlement (ECF No. 1257) and order granting of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses from the ABB Settlement Fund (ECF No. 1258), as detailed in the previously filed motions and supporting documents regarding approval of settlements and requests for attorneys' fees and reimbursement of costs. ECF Nos. 781, 1037, 1136, 1137, 1138, 1215, 1241, 1243, 1337.

On July 27, 2021, the Court rescheduled the trial for March 28, 2022. ECF No. 1266. On December 20, 2021, the United States Judicial Panel on Multidistrict Litigation issued an order assigning Judge Virginia M. Hernandez Covington as an

additional judge to oversee the trial, which was later moved to Tampa, Florida. ECF No. 1290. Judge Covington held virtual pretrial conferences with the remaining parties on January 21, 2022 (ECF No. 1297) and March 9, 2022 (ECF No. 1316).

Lead Counsel dedicated substantial resources to preparing the case for trial in advance of the new March 28, 2022 trial date. Most of Lead Counsels' trial team, including key support staff and witnesses, relocated to Tampa, Florida in mid-March to oversee final trial preparations. Jt. Decl. ¶ 47. This work included finalizing the presentation and cross-examination of fact and expert witnesses, deposition designations, trial exhibits and graphics, and opening statements. *Id.*

On March 15, 2022, Alcon and JJVCI filed a motion requesting that the Court give certain jury instructions regarding antitrust injury and proximate causation (ECF No. 1317), which Plaintiffs opposed on March 24, 2022 (ECF No. 1332). On Friday, March 25, 2022, after multiple rounds of meet and confers, JJVCI and Plaintiffs submitted their final proposed jury instructions. ECF No. 1333. Had the case not fully settled, as detailed below, trial proceeding would have commenced on Monday, March 28, 2022.

**B.    The Settlements**

On August 30, 2017, Plaintiffs reached an "ice-breaker" settlement with Defendant CVI. Jt. Decl. ¶ 52. The settlement included a monetary payment of $3,000,000 and was reached on behalf of the following settlement class:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch &

Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1, ¶ 1.37 (the "CVI Settlement Class").

On July 10, 2018, the Court preliminarily approved the settlement with CVI, but delayed dissemination of notice. ECF No. 841.

On August 19, 2019, Plaintiffs reached a settlement agreement with Defendant B&L. Jt. Decl. ¶ 54. The settlement included a monetary payment of $10,000,000 and was reached on behalf of the following settlement class:

[A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 1037-1, ¶ 1.35 (the "B&L Settlement Class").

On October 8, 2019, the Court granted preliminary approval of the B&L settlement and approved a plan to disseminate notice to members of the litigation classes, the CVI Settlement Class, and the B&L Settlement Class. ECF No. 1046. The notice for the CVI and B&L Settlements informed potential class members that "Lead

Counsel will ask the Court for attorneys' fees up to one-third (33.3%) of the [CVI/B&L] Settlement[s] and/or reimbursement for costs and expenses for their work in the Litigation." ECF No. 1037-4, p.83.

On January 16, 2020, Plaintiffs filed their Motion for Final Approval of Settlement Agreements with Defendants B&L and CVI, as well as a Motion for Payment of Common Expenses and Class Representatives' Service Awards. ECF Nos. 1136, 1137. The Motion for Payment of Common Expenses informed the potential Class Members that while Lead Counsel were not seeking attorneys' fees at the time, "Lead Counsel reserve their right to seek an award of attorneys' fees and unreimbursed costs at an appropriate point in the future." ECF No. 1137, p. 6 n.7. On February 25, 2020, the Court held a Fairness Hearing regarding the settlements with B&L and CVI. *See* ECF No. 1154 and February 25, 2020 Hearing Transcript. On March 4, 2020, the Court granted Plaintiffs' Motion for Final Approval and issued its Final Approval Order and Final Judgment and Order of Dismissal with Prejudice as to B&L and CVI. ECF No. 1164. The Court also granted Plaintiffs' Motion for Payment of Common Expenses and Class Representatives' Service Awards. ECF No. 1165.

As permitted by the Court, Lead Counsel withdrew $4,329,000 from the collective $13,000,000 in the B&L and CVI Settlement Funds to cover incurred and anticipated common litigation expenses. Jt. Decl. ¶ 60.[3] These costs included

---

[3]     $3,330,800 was paid from the B&L Settlement Fund and $999,000 was paid from the CVI Settlement Fund. *Id.*

$664,206.86 for some, but not all, of the future costs Lead Counsel anticipated they would incur to litigate the case through trial. ECF No. 1165. Until now, Lead Counsel have not sought any award of attorneys' fees from the settlements with B&L or CVI.

On April 3, 2020, the Court issued an Order regarding the impact of COVID-19 on the case schedule. ECF No. 1180. In the Order's final paragraph, the Court "sincerely urge[d] the Parties to earnestly confer with each other in a deliberate attempt to reach an agreement that completely resolves this litigation. Specifically, the Court implores the remaining Defendants to have their corporate executives seriously consider this request and the basis for it." *Id*. at 5.

On Sunday, August 30, 2020, the Plaintiffs and ABB engaged in a day-long mediation session with former U.S. District Judge, Layn Phillips, via video conference. Jt. Decl. ¶ 62. The parties then reached and executed the ABB Settlement Agreement on September 22, 2020, under which ABB agreed to pay $30,200,000 into a settlement fund in exchange for dismissal and release of all claims against it. *Id*.

On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement. ECF No. 1215. On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement. ECF No. 1219. On November 12, 2020, the Court preliminarily approved the ABB Settlement and approved the Notice Plan. ECF No. 1224. On February 26, 2021, Plaintiffs filed motions for Final Approval of the ABB Settlement and for an Award of Attorneys' Fees and Costs. ECF Nos. 1241, 1242. On May 19, 2021, the Court held a Fairness Hearing regarding the Motion for Final Approval and Award of Attorneys'

Fees and Costs. ECF No. 1254. On June 1, 2021, the Court granted Final Approval and Final Judgment as to the ABB Settlement and granted Lead Counsel's request for attorneys' fees ($9,315,960.97), notice costs ($1,000,000) and incurred and anticipated litigation costs ($752,117.10). ECF Nos. 1257, 1258. In doing so, the Court certified the following ABB Settlement Class:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from l-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 1257, p.6.

The ABB Settlement Class is identical to the proposed Alcon and JJVCI Settlement Classes. Jt. Decl. ¶ 97.

JJVCI and Plaintiffs participated in an all-day mediation on September 1, 2020 overseen by Hon. Layn Phillips (Ret.). *Id.* ¶ 74. The initial mediation did not result in an agreement, and JJVCI and Plaintiffs continued preparing their respective cases for trial. *Id.* Plaintiffs engaged in further settlement negotiations with both Alcon and JJVCI in the weeks preceding trial.

On Friday, February 25, 2022, Plaintiffs and Alcon engaged in a day-long mediation with Robert Meyer of JAMS in Los Angeles, California. *Id.* ¶ 73. Although

the initial mediation did not result in a settlement, Plaintiffs and Alcon continued their settlement negotiations through Mr. Meyer as they prepared for trial. *Id*. On March 23, 2022, just five days before trial, Plaintiffs and Alcon agreed to settle the action for $20,000,000 and executed the Alcon Settlement. *Id*.

Plaintiffs also continued their negotiations with JJVC with the assistance of Judge Phillips and his staff. *Id*. ¶ 74. These negotiations culminated on March 26, 2022 in an agreement in principle to settle the action as to JJVCI for $55,000,000. *Id*. JJVCI and Plaintiffs executed the JJVCI Settlement the next day on March 27, 2022, just one day before the start of trial proceedings. ECF No. 1334. On March 28, 2022, the day trial was to begin, the Court entered an order canceling the trial. ECF No. 1335. On April 20, 2022, Lead Counsel filed a Motion for Preliminary Approval of Settlements with Defendants Alcon and JJVCI. ECF No. 1337. The Court granted the Preliminary Approval Motion on May 9, 2022. ECF No. 1343. The Notice Plan proposed in the Preliminary Approval Motion was thereafter implemented. The Court-approved Notice Plan informed potential Settlement Class Members that "Lead Counsel will ask the Court for attorneys' fees of up to one-third (33.3%) of the Alcon and JJVCI Settlement Funds, as well as reimbursement of costs and expenses incurred by Lead Counsel during the litigation." *Id*.; ECF No. 1337-4. Lead Counsel now bring this Motion and the concurrently-filed Motion for Final Approval.

## III.    ARGUMENT

### A.    Lead Counsel's Request for a Third of the Gross Settlement Fund Is Fair, Reasonable, and Commonly Granted in this Circuit

As set forth in the Settlement Agreements and Notice Plan, and consistent with standard class action practice and procedure, Lead Counsel respectfully request $29,333,333 in attorneys' fees, which equals one-third of the total $75,000,000 from the JJVCI and Alcon Settlement Funds ($25 million), plus one-third of the total $13,000,000 from the CVI and B&L Settlement Funds ($4.333 million). Agreements, ¶ 9.1; ECF No. 1337. Lead Counsel's fee request of a third is appropriate, fair, and well within the range of reasonableness under the factors established by the Eleventh Circuit in *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Lead Counsel's application for attorneys' fees should be approved.

### B.    Lead Counsel Is Entitled to Fees from the Common Fund

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine permits "the creation of a common fund in order to pay reasonable attorneys' fees for legal services beneficial to persons other than a particular client, thus spreading the cost of the litigation to all beneficiaries." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2019 WL 7859557, at *5 (N.D. Fla. Dec. 6, 2019), *report and recommendation adopted,* 2019 WL 7019219 (N.D.

Fla. Dec. 21, 2019).[4] The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478.

As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "'[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Sunbeam Secs. Litig.*, 176 F. Supp. 2d 1323, 1333 (quoting *Boeing*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 687 (M.D. Ala. 1988); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). This is because adequate attorney compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear. . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience

---

[4]      Unless otherwise noted, citations, and quotations are omitted.

in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985).

In the Eleventh Circuit, class counsel receive a percentage of the funds obtained through a settlement. In *Camden I*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this [C]ircuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774. Courts in this Circuit have applied the percentage of the fund approach since, holding as follows:

> The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions. *Camden I*, 946 F.2d at 774. Even before *Camden I*, courts in this Circuit recognized that "a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases." [*Mashburn*, 684 F. Supp. at 670.] More importantly, the Court observed first hand the monumental effort exerted by Class Counsel in this case, and does not need to see timesheets to know how much work Class Counsel have put in to reach this point.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011).

The Court has discretion in determining an appropriate fee. "'There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case.'" *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "'[t]he majority of common fund fee awards fall between 20% to 30% of the fund'" – though "'an upper limit of 50% of the fund may be stated as a general

12

rule.'" *Id*. (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one-third"); Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 951 (2017) (showing, through an empirical study, that the median fee award in Eleventh Circuit is 33% and the mean is 30%). Lead Counsel's fee request falls within this accepted range and the practice within the Eleventh Circuit.

### C.    The *Camden I* Factors Support the Requested Fee

In the Eleventh Circuit, courts use the below factors to determine a reasonable percentage to award as an attorneys' fee to class counsel in class actions:

    (1)    the time and labor required;

    (2)    the novelty and difficulty of the questions involved;

    (3)    the skill requisite to perform the legal service properly;

    (4)    the preclusion of other employment by the attorney due to acceptance of the case;

    (5)    the customary fee;

    (6)    whether the fee is fixed or contingent;

    (7)    time limitations imposed by the client or the circumstances;

    (8)    the amount involved and the results obtained;

    (9)    the experience, reputation, and ability of the attorneys;

(10)   the "undesirability" of the case;

(11)   the nature and the length of the professional relationship with the clients; and

(12)   [fee] awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These factors are guidelines; they are neither exhaustive nor mandatory in every case. *See Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775) ("'Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.'"); *id.* at 1333-34 (encouraging "'the lower courts to consider additional factors unique to the particular case'") (quoting *Walco Investments, Inc. v. Thenen,* 975 F. Supp. 1468, 1472 (S.D. Fla.1997)). Here, the *Camden I* factors demonstrate that the Court should approve the requested fee.

### 1. *Litigating This Complex and Novel Case Required Substantial Time, Labor, and Expertise*

The enormous amount of time, labor, and expertise that Lead Counsel invested over the course of this seven-year litigation demonstrates that their fee request is reasonable. Lead Counsel and supporting attorneys and staff invested well over $50 million worth of their time prosecuting Plaintiffs' claims all the way until the literal eve of trial. Jt. Decl. ¶ 81. The value of that time exceeds, by a significant margin, the

$29,333,333 in fees that Lead Counsel now seek, plus the $9,315,960.97 in attorney's fees the Court approved as part of the ABB Settlement. There is thus no possibility that Lead Counsel will receive anything close to a windfall if their fee request is granted.[5]

The novelty and difficulty of this case also supports Lead Counsels' fee request. Lead Counsel navigated, along with their experts, millions of pages of documents, novel questions of antitrust standing and damages, complex econometric analyses, and intersecting issues of horizontal, vertical, and hub-and-spoke conspiracy law. *Id.* ¶ 84. Litigation of this type required counsel who were highly trained in class action law and procedure, as well as the specialized antitrust issues presented here. Lead Counsel possess these attributes and met these challenges at every juncture. *Id.*

For example, Defendants repeatedly argued to this Court and the Eleventh Circuit that Plaintiffs lacked standing because they were not direct purchasers of contact lenses under the antitrust laws. *See* ECF Nos. 505, 674, 906-908, 912, 930, 931, 934, 935, 967, 1015, 1016, 1023. Yet Lead Counsel prevailed on this question at every turn, drawing on decades of combined antitrust class action experience to successfully counter Defendants' standing arguments. Jt. Decl. ¶ 85; ECF Nos. 940, 993, 1091.

---

[5]      Should the Court grant this motion in full, it would bring the total of attorneys' fees awarded to Lead Counsel to $38,649,294 when added to the $9,315,960.97 in fees granted from the ABB Settlement. ECF No. 1258. That total award of attorneys' fees would represent 32.6% of the total $118,500,000 in settlement funds in all of the litigation. As discussed at length herein, such a percentage is well within the range of attorneys' fees granted from settlement funds in the Eleventh Circuit and slightly less than the full third that each settlement notice set as a cap.

The Court should also consider the quality of opposing counsel when evaluating Lead Counsel's contributions. *See Camden I*, 946 F.2d at 772 n.3; *Ressler v. Jacobson*, 149 F.R.D. 561, 654 (M.D. Fla. 1992). Here, Lead Counsel repeatedly prevailed against Defendants represented by experienced counsel from some of the world's largest law firms. Jt. Decl. ¶ 87; *see also Checking Account Overdraft*, 830 F. Supp. 2d at 1348 ("Class Counsel confronted not merely a single large bank, but 'the combined forces of a substantial portion of the entire American banking industry, and with them a large contingent of some of the largest and most sophisticated law firms in the country.'"); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results."). The fact that Lead Counsel secured such successful settlements despite facing top notch opposition weighs in favor of their fee request.

### 2.   Lead Counsel Achieved a Successful Result Considering the Litigation Risks

Rather than face uncertainty at trial, Lead Counsel secured settlements that will provide excellent cash compensation to the Settlement Class. The total $88,000,000 cash recovery obtained through the CVI, B&L, Alcon, and JJVCI Settlements is an outstanding result, particularly when compared to the risks that Plaintiffs faced over the course of the case, including the many trial risks that remained at the time of settlement. Jt. Decl. ¶¶ 70, 72.

Prosecuting this action was risky from the outset. *Id.* If Defendants had been successful in even one of their dispositive motions, or on any of their standing or class certification arguments, members of the Classes might have recovered little-to-nothing at all. Indeed, even after overcoming those challenges, Plaintiffs still faced meaningful risks in establishing liability and damages at trial, and then litigating those issues on appeal. These risks underscore the successful nature of the Settlements secured by Lead Counsel. *Id.*

        **3.**      ***Lead Counsel Assumed Considerable Risk Litigating This Case on a Pure Contingency Basis***

In undertaking this complex case on a contingent-fee basis, Lead Counsel assumed a significant risk of nonpayment or underpayment. *Id.* ¶ 88. That risk warrants approval of the requested fee. Indeed, "'[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees.'" *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Public policy concerns – namely, ensuring that experienced and capable counsel are available to represent classes of plaintiffs holding small individual claims – support the requested fee. As courts in this Circuit have held:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The progress of the case shows the inherent risk faced by Lead Counsel in prosecuting this case on a contingency-fee basis. Despite Lead Counsel's work in litigating this action for more than seven years, Lead Counsel have only once been compensated with attorneys' fees (as part of the ABB Settlement) for the considerable time they have invested in this case . Jt. Decl. ¶ 65. Eleventh Circuit precedent dictates that Lead Counsel should also be entitled to fees from the CVI, B&L, Alcon, and JJVCI Settlement given the work they performed on a contingent-fee basis to secure those settlements.

### 4.    *The Requested Fee Comports with Fees Awarded in Similar Cases*

The fee sought here is consistent with the fees typically awarded in similar cases and with Eleventh Circuit guidelines. "The average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one-third." *Wolff*, 2012 WL 5290155, at *5-6; *see also* Theodore Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 951 (2017) (showing, through an empirical study, that the median fee award in Eleventh Circuit is 33% and the mean is 30%).

Fees of one-third of the gross settlement fund are thus commonplace and reasonable under the *Camden I* factors. *See*, *e.g.*, *Waters*, 190 F.3d 1291 (affirming fee award of a third of $40 million settlement); *Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ."). "Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-22782, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017); *see also, e.g., In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036, 2020 WL 4586398, at *22 (S.D. Fla. Aug. 10, 2020) (35% of gross common fund); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("one-third of a common fund"); *Pierre-Val v. Buccaneers Ltd. P'ship*, No.: 8:14–cv–01182, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (32% of gross common fund); *Barba v. Shire U.S., Inc.,* No. 13-cv-21158, ECF No. 441 at 11 (S.D. Fla. Dec. 2, 2016) (awarding attorneys' fees of 35% of the settlement fund where the litigation was "very hard fought," complex, and required a considerable amount of effort); *Reyes, et al. v. AT&T Mobility Servs., LLC,* Case No. 10-20837, ECF No. 196 at 6 (S.D. Fla. Jun. 21, 2013) (Cooke, J.) (awarding a third of the total maximum settlement fund, noting that the award was consistent with the trend in this Circuit); *Waters v. Cook's Pest Control, Inc.,* No. 2:07–cv–00394, 2012 WL 2923542, at *16-19 (N.D. Ala. July 17, 2012) (awarding fees of 35% based on the complexities of the case, including complex discovery issues, where "defense counsel presented a vigorous defense at every stage of the case, requiring multiple hearings on motions to

19

quash and motions for protective orders"); *In re: Terazosin Hydrochloride Antitrust Litigation,* No. 99-1317 (S.D. Fla. Apr. 19, 2005) (awarding fees of one-third of settlement of over $30 million); *Gutter v. E.I. Dupont De Nemours & Co.,* No. 95-2152 (S.D. Fla. May 30, 2003) (awarding fees of one-third of the gross settlement fund of $77.5 million).

Lead Counsel's fee request of a third also falls within the range of what is customary in the private legal marketplace, where contingency fee arrangements often approach or equal 40% of any recovery. *See Acad. Mortg. Corp.,* 369 F. Supp. 3d at 1382 ("Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery."); *Continental,* 962 F.2d at 572 ("The object in awarding a reasonable attorney's fee . . . is to simulate the market.").[6] This, too, supports granting Lead Counsel's fee request.

---

[6]     *See also RJR Nabisco, Inc. Sec. Litig.,* MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases."); *In re Public Serv. Co. of N.M.,* No. 91–0536M, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); 1 COURT AWARDED ATTORNEY FEES, ¶ 2.06[3], at 2-88 (Matthew Bender 2010) (noting that, "when appropriate circumstances have been identified, a court may award a percentage significantly higher" than 25%); 4 NEWBERG ON CLASS ACTIONS, §14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

### 5. *The Remaining Camden I Factors Also Favor Approving the Requested Fee*

The remaining *Camden I* factors further support Lead Counsel's fee request. As demonstrated by the experience and acumen of Lead Counsel throughout this litigation, Lead Counsel are among the most highly regarded attorneys in their field. Jt. Decl. ¶¶ 4, 5, 70, 72. Indeed, Lead Counsel have been recognized by their peers for their achievements in this case specifically. *Id*. ¶ 70. Without reasonable attorney compensation, important cases like this might not be pursued private counsel despite the widespread harm to consumers. "[G]iven the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized." *Checking Account Overdraft*, 830 F. Supp. 2d at 1364. Fees should be granted to Lead Counsel on this basis, as well.

### D. The Expense Request Is Appropriate

Lead Counsel also request reimbursement of $1,640,110.77 in unreimbursed expenses incurred by Plaintiffs' Counsel in this action, plus interest. Jt. Decl. ¶¶ 92, 93; *see Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 391-92 (1970). This sum reflects the litigation expenses incurred by Lead Counsel and supporting firms throughout the litigation that have yet to be reimbursed. These expenses are comprised of: (1) $12,192.88 in expenses incurred for experts, trial consultants, and their support staff; (2) $156,069.16 in electronic legal research fees; (3) $34,147.00 in court fees and expenses; (4) $23,644.05 in telephone fees; (5) $582.15 in process server fees; (6) $72,908.53 in printing fees; (7) $644,307.72 in travel, housing, and office fees,

including those paid by Lead and Trial Counsel during final preparation for trial in Tampa, FL; (8) $4,095.70 in fees regarding depositions and court reporters; (9) $28,490.44 in postage and courier fees; (10) $5,331.25 for investigator costs; (11) $1,022.71 in staff overtime costs; (12) $36,990.67 for other miscellaneous costs, including supplies; (13) $790,000.00 in unreimbursed litigation fund assessments; and less the $169,671.49 currently remaining in the litigation fund.[7] Jt. Decl. ¶ 93. These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action and exclude the expenses that were previously reimbursed. *Id.*; ECF No. 1137. All costs submitted by supporting firms have been attested to as reasonable and necessary expenses incurred in prosecuting this action in sworn declarations by knowledgeable attorneys from those firms. Jt. Decl. ¶ 93. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *see also Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."). Courts in this Circuit thus routinely approve payment of expenses from the common fund where they were reasonable and necessary for the litigation. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008)

---

[7]     Lead Counsel are prepared to submit detailed records and sworn declarations from supporting counsel for review should the Court believe it prudent.

(approving $2.4 million for reimbursement of litigation expenses); *Swift v. BancorpSouth Bank*, No. 1:10-cv-00090, 2016 WL 11529613, at *20 (N.D. Fla. July 15, 2016) (approving application for reimbursement of costs that "were necessarily incurred in furtherance of the litigation of the Action and the Settlement"); *see also Ressler*, 149 F.R.D. at 657; *Mills*, 396 U.S. at 391-92; *In re Ikon Office Sols., Inc. Secs. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000).

## IV.    FAIRNESS HEARING

Lead Counsel request that the Court set a date and time for a Fairness Hearing regarding this Motion and the concurrently filed Motion for Final Approval. Lead Counsel and counsel for Alcon and JJVCI have conferred and are happy to make themselves available for a hearing at the Court's convenience any time on Wednesday, September 21, 2022, or any date thereafter, consistent with the Court's Preliminary Approval Order. ECF No. 1343. This will give any interested parties and/or objectors fifteen (15) days to review Plaintiffs' and Lead Counsel's reply brief in further support of this Motion and the Motion for Final Approval, to be filed on September 6, 2022.

## V.    CONCLUSION

Lead Counsel have achieved settlements totaling $118,500,000 throughout the seven years it took to resolve this litigation, including $88,000,000 from which they have not been paid for their efforts. Lead Counsel's application for attorneys' fees and expenses is reasonable and consistent with governing law and common practice. It should be granted given the excellent results Lead Counsel achieved; the significant

risks and complex legal issues Lead Counsel faced; and the time, effort, and skill Lead Counsel invested to prosecute this case up to the eve of trial.

Accordingly, Plaintiffs and Lead Counsel respectfully request that the Court: (1) promptly set a date and time for the Fairness Hearing regarding this Motion and the concurrently filed Motion for Final Approval, as described above; and (2) award Lead Counsel the requested $29,333,333 in attorneys' fees and $1,640,110.77 in incurred and anticipated expenses, plus interest.

Dated: July 22, 2022                           Respectfully submitted,

 *s/ Thomas K. Boardman*                        John A. DeVault, III
Thomas K. Boardman                             Florida Bar No. 103979
Joseph P. Guglielmo                            Michael E. Lockamy
SCOTT+SCOTT                                     Florida Bar No. 69626
ATTORNEYS AT LAW LLP                            BEDELL, DITTMAR, DEVAULT,
The Helmsley Building                          PILLANS & COXE, P.A.
230 Park Avenue, 17th Floor                     101 East Adams Street
New York, NY 10169                             Jacksonville, FL 32202
Telephone: (212) 223-6444                       Telephone: (904) 353-0211
Facsimile: (212) 223-6334                       Facsimile: (904) 353-9307
tboardman@scott-scott.com                       jad@bedellfirm.com
jguglielmo@scott-scott.com                      mel@bedellfirm.com

Christopher M. Burke                            *Plaintiffs' Local Counsel*
SCOTT+SCOTT
ATTORNEYS AT LAW LLP                            George W. Sampson
600 W. Broadway, Suite 3300                     SAMPSON DUNLAP LLP
San Diego, CA 92101                            1001 4th Ave., Suite 3200
Telephone: (619) 233-4565                       Seattle, WA 98154
Facsimile: (619) 233-0508                       Telephone: (206) 414-8340
cburke@scott-scott.com                          george@sampsondunlap.com

Benjamin Steinberg
ROBINS KAPLAN LLP

1325 Avenue of the Americas
Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
bsteinberg@robinskaplan.com

Michael D. Hausfeld
Nathaniel C. Giddings
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
mhausfeld@hausfeld.com
ngiddings@hausfeld.com

Michael P. Lehmann
Christopher L. Lebsock
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 217-6813
mlehmann@hausfeld.com
clebsock@hausfeld.com

*Co-Lead Class Counsel*

Dennis Stewart
GUSTAFSON GLUEK PLLC
600 W. Broadway, Suite 3300
San Diego, CA, 92101
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dstewart@gustafsongluek.com

*Plaintiffs' Trial Counsel*

Robert C. Gilbert
Florida Bar No. 561861
KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT
2800 Ponce de Leon Boulevard
Suite 1100
Coral Gables, FL 33134
Telephone: (305) 384-7270
gilbert@kolawyers.com

*Plaintiffs' Liaison Counsel*

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/ Thomas K. Boardman 
Thomas K. Boardman