# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| In Re:<br><br>DISPOSABLE CONTACT LENS ANTITRUST LITIGATION | Case No. 3:15-md-02626-HES-JRK<br><br>Judge Harvey E. Schlesinger<br>Magistrate Judge James R. Klindt |
| THIS DOCUMENT RELATES TO:<br><br>All Class Actions | |

**JOINT DECLARATION OF THOMAS BOARDMAN, BENJAMIN STEINBERG, AND NATHANIEL GIDDINGS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENTS WITH DEFENDANTS ALCON VISION, LLC AND JOHNSON & JOHNSON VISION CARE, INC. AND LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES <u>AND REIMBURSEMENT OF EXPENSES</u>**

Pursuant to 28 U.S.C. §1746, Thomas Boardman, Benjamin Steinberg, and Nathaniel Giddings, declare as follows:

1.　　We submit this declaration in support of Lead Counsel's two concurrently-filed motions (1) the Motion for Payment of Attorney Fees and Costs and (2) Motion for Final Approval of the Settlements with Alcon Vision Care, Inc. ("Alcon") and Johnson & Johnson Vision Care, Inc. ("JJVCI") ("the Settlements").

2.　　Nathaniel Giddings is a partner with the law firm of Hausfeld LLP ("Hausfeld") and a member in good standing of the Washington D.C. bar. Benjamin Steinberg is a partner with the law firm of Robins Kaplan LLP ("Robins Kaplan") and a member in good standing of the New York State Bar. Thomas Boardman is a partner with the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott") and a member in good standing of the New York State Bar. Hausfeld, Robins Kaplan, and Scott+Scott are co-lead counsel ("Lead Counsel") for Plaintiffs and the certified Classes in the U.S. District Court for the Middle District of Florida, No. 3:15-md-02626. *See* ECF No. 940.

3.　　Each of us declares that he has personal knowledge of the matters set forth herein and, if called to testify as a witness, could testify competently thereto.

4.　　Lead Counsel have significant experience with antitrust litigation and class actions, including settlements thereof. Copies of Hausfeld's, Robins Kaplan's, and Scott+Scott's firm résumés are attached hereto as Exhibits A-C, respectively.

5.     The attorneys working for Plaintiffs on this matter (the "Action") are experienced lawyers who have substantial experience prosecuting large-scale class actions and antitrust litigation.

## I.     LEAD COUNSEL'S EFFORTS

6.     Lead Counsel have been litigating this Action for more than seven years in what has been hard-fought litigation against Defendants that are represented by some of the world's largest law firms.

7.     Since the beginning of this Action, Lead Counsel have made significant efforts to prosecute this action and prepare the case for trial, as detailed below.

### A.     <u>Investigation, Complaints, and Motions to Dismiss Briefing</u>

8.     Lead Counsel devoted substantial time to investigating the potential claims against Defendants before filing their complaints. Lead Counsel interviewed market participants and potential plaintiffs to gather information about Defendants' conduct and the impact on the market. This information was essential to Lead Counsel's ability to understand the nature of Defendants' conduct, the nature of Defendants' so-called "Unilateral Pricing Policies" ("UPPs"), and potential remedies. Lead Counsel consulted with experts to develop and refine their legal and damages theories. Lead Counsel also amassed evidence from across the various state and federal government hearings on matters related to disposable contact lenses.

9.     The first class action lawsuit challenging the Defendants' "Unilateral Pricing Policies" ("UPPs") was filed by Plaintiff John Machikawa on March 3, 2015. *See* Case No. 3:15-cv-01001 (N.D. Cal.). In the months that followed, more than 120

plaintiffs filed more than 50 additional class action lawsuits challenging these UPPs. The complaints alleged that the Defendants' UPPs were illegal restraints on competition under Section One of the Sherman Act, 15 U.S.C. §1, and various state unfair competition laws and sought, among other things, monetary damages, interest, attorneys' fees, restitution, and equitable relief.

10.     The U.S. Judicial Panel on Multidistrict Litigation ("JPML") transferred all of these cases to this District for centralized pre-trial proceedings. *See, e.g.*, ECF No. 186 in MDL No. 2626 (June 8, 2015). The cases were re-captioned *In Re: Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626-HES-JRK.

11.     On July 15, 2015, the Court entered a case management order (ECF No. 61), the first in a series of scheduling orders in this Action.

12.     On October 7, 2015, the Court granted Lead Counsel's motion to appoint Hausfeld, Robins Kaplan, and Scott+Scott as interim co-lead counsel. ECF No. 116.

13.     On November 23, 2015, Lead Counsel, on behalf of Plaintiffs, filed the Consolidated Class Action Complaint ("Consolidated Complaint"), asserting six causes of action: (1) Violation of 15 U.S.C. §§ 1 and 3 (*Per Se* Violation of the Sherman Act); (2) Violation of 15 U.S.C. §§ 1 and 3 (Rule of Reason Violations of the Sherman Act); (3) Violation of the California Cartwright Act; (4) Violation of the Maryland Antitrust Act; (5) Violation of the California Unfair Competition Law; and (6) Violation of the Maryland Consumer Protection Act. ECF No. 133.

14.     On December 23, 2015, Defendants filed their Motion to Dismiss the Consolidated Complaint. ECF No. 146. Following briefing and oral argument, the

Court denied Defendants' motion (ECF Nos. 185, 190), and on July 27, 2016, Defendants filed their Answers and Affirmative Defenses. ECF Nos. 266-70.

15. On March 1, 2017, Plaintiffs filed the operative complaint in this matter. ECF No. 395.

**B.  Case Investigation and Discovery**

16. Even before discovery commenced, Lead Counsel's investigation included, but was not limited to, review and analysis of publicly available documents related to the contact lens market, the pricing of contact lenses, and Congress's investigation into Defendants' UPPs.

17. Specifically, in preparation of the complaints, Lead Counsel undertook an extensive investigation regarding contact lenses, including the pricing of contact lenses before and after the UPPs, and potential claims that could be alleged against the contact lens manufacturers and others in the marketplace, including the largest contact lens distributor, Defendant ABB.

18. Discovery commenced on April 1, 2016. ECF No. 204.

19. During the course of discovery, Lead Counsel served written discovery seeking documents and depositions on Defendants and on certain non-parties. In addition, Defendants sought document and deposition discovery from Plaintiffs and certain non-parties.

20. In total, the parties and non-parties in this Action have produced roughly 4.3 million pages of documents, as well as voluminous electronic data files and spreadsheets in native format (*i.e.*, transactional data), in response to discovery served

by Plaintiffs and Defendants in this Action. A breakdown of the number of documents and pages produced in this litigation that Plaintiffs uploaded to their document review platform are set forth in the below chart.

| Producing Party | # of Documents | # of Pages |
|---|---|---|
| Defendants | 1,001,296 | 3,933,097 |
| Plaintiffs | 855 | 5,226 |
| Non-Parties | 102,530 | 365,973 |
| *Totals:* | **1,104,681** | **4,304,296** |

21.     Lead Counsel have reviewed and analyzed substantially all of the documents and electronic data files produced in this Action.

22.     In addition, Plaintiffs and Defendants have collectively taken a total of 79 depositions in this matter. These depositions are categorized below:

- Defendants' current and former employees: 22 depositions
- Plaintiffs: 16 depositions
- Non-Parties: 23 depositions
- Defendants' experts: 10 depositions
- Plaintiffs' experts: 8 depositions

23.     Much of this discovery has been highly contested. In total, Plaintiffs and Defendants have filed at least 17 motions to compel with this Court. *See* ECF Nos. 248, 276, 318, 354, 420, 460, 512, 587, 590-92, 609, 655, 728, 737, 759. Many of these

motions were fact-intensive and included declarations attaching significant numbers of documents in support of the parties' respective positions.

24.     Apart from the discovery disputes that resulted in motion practice, Lead Counsel separately negotiated resolutions to numerous other discovery disputes with Defendants and non-parties through extensive written correspondence and meet-and-confers.

### C.     Class Certification

25.     On March 3, 2017, Plaintiffs filed their class certification motion, which was supported by two expert reports and 170 exhibits. *See* ECF Nos. 396-99.

26.     On June 15, 2017, Defendants filed their motions to strike certain portions of Plaintiffs' expert reports and memorandum of law in opposition to plaintiffs' motion for class certification, accompanying expert reports, and numerous exhibits. *See* ECF Nos. 500-10.

27.     On July 10, 2017, Plaintiffs responded to Defendants' motions to strike (ECF Nos. 548-51), and on September 8, 2017, Plaintiffs filed their class certification reply, which included two supporting expert reports and 191 exhibits. *See* ECF Nos. 611-14.

28.     On October 20, 2017, Defendants filed their sur-reply in further opposition to Plaintiffs' class certification motion, which included two additional expert reports and numerous exhibits. *See* ECF Nos. 674-78.

29.     On August 1 and 2, 2018, the Court held an evidentiary hearing on Plaintiffs' class certification motion, which involved examination and cross-

examination of Plaintiffs' and Defendants' experts and presentation of more than 50 exhibits relating to Plaintiffs' motion for class certification and Defendants' motions to strike portions of Plaintiffs' expert reports. *See* ECF Nos. 865-1, 865-2, 866. The hearing lasted more than 10 hours.

30.     On December 4, 2018, the Court granted Plaintiffs' class certification motion and certified horizontal and vertical litigation classes. *See* ECF No. 940. The Court also appointed Lead Counsel as counsel for the litigation classes and named Plaintiffs Rachel Berg, Miriam Pardoll, Jennifer Sineni, Elyse Ulino, Susan Gordon, Cora Beth Smith, Brett Watson, Tamara O'Brien, Sheryl Marean, Catherine Dingle, Amanda Cunha, Alexis Ito, Kathleen Schirf, John Machikawa, and Joseph Felson as class representatives.

31.     On December 18, 2018, Defendants filed petitions to appeal the Court's class certification order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. The parties briefed Defendants' petitions.

32.     On April 5, 2019, the Eleventh Circuit denied Defendants ABB's and JJVC's petition to appeal the Court's class certification order, and on June 20, 2019, denied Defendant Alcon's and B&L's virtually identical petition.

**D.     Summary Judgement**

33.     After the class certification hearing, but before the Court had resolved Plaintiffs' class certification motion, the parties began briefing summary judgment.

34.     On August 20, 2018, Defendants filed four summary judgment motions, attaching declarations and more than 200 exhibits in support thereof. *See* ECF Nos. 872-77.

35.     Plaintiffs responded to these motions in a single, omnibus summary judgment brief on October 22, 2018. ECF No. 917. In support of their opposition, Plaintiffs attached a total of 429 exhibits, including the merits reports of three experts. *See* ECF Nos. 918-23.

36.     On November 19, 2018, Defendants filed four additional reply briefs in support of their summary judgment motions, which attached additional declarations and more than 200 exhibits. *See* ECF Nos. 930-35.

37.     Plaintiffs filed a single sur-reply brief in opposition to Defendants' summary judgment motions on December 17, 2018. ECF No. 942.

38.     On May 20, 2019, Defendants filed a notice of supplemental authority in further support of their summary judgment motions (ECF No. 967), which Plaintiffs responded to on May 23, and, with the Court's permission, on August 22. *See* ECF Nos. 969, 1014.

39.     The Court held a hearing on the summary judgment motions on August 21 and 22, 2019. ECF Nos. 1015-16.

40.     On November 27, 2019, the Court denied Defendants' motions for summary judgment. ECF No. 1091.

### E.   Pre-Trial Preparation and Motions

41.   Plaintiffs began preparing for trial in earnest in the Fall of 2019. These efforts included, among other things, negotiating a final pre-trial schedule and final pre-trial memorandum with Defendants (ECF No. 1099); exchanging preliminary exhibit lists and objections thereto; exchanging deposition designations and objections and counters thereto; exchanging witness lists; filing and opposing motions *in limine* (ECF Nos. 1055, 1056, 1058-61, 1064, 1089, 1092, 1103, 1106, 1160); opposing motions to strike Plaintiffs' experts (ECF No. 1114); moving to amend the case management order and opposing Defendants' motion to enforce the scheduling order (ECF Nos. 1063, 1065); and opposing a motion for leave to seek interlocutory appeal of the Court's summary judgment order. ECF No. 1123.

42.   The Court held a pre-trial conference on December 11, 2019 (ECF No. 1109), and Plaintiffs filed a notice to address the Court's comments at that hearing on January 5, 2020. ECF No. 1125.

43.   The Court held a further pre-trial conference on January 8, 2020. ECF No. 1126. At this hearing, the parties argued a number of the pending pre-trial motions and agreed to new dates for the final pre-trial conference and the start of trial.

44.   The Parties worked to prepare their respective cases for trial, which was then scheduled for February of 2020. Lead Counsel's trial preparations included drafting, exchanging, and meeting and conferring regarding proposed jury instructions, witness lists, deposition designations, and trial exhibits. As noted, the Parties also filed competing motions *in limine*, which this Court ultimately ruled on,

granting some in favor of Defendants and some in favor of Plaintiffs. ECF Nos. 1142, 1150, 1174.

45.     At a January 8, 2020 hearing, the Court set a new trial date of June 22, 2020 and a final pre-trial hearing for May 13, 2020. ECF No. 1131. On March 30, 2020, Plaintiffs and Defendants filed a Joint Notice requesting the Court's guidance on pre-trial and trial scheduling issues regarding the impact of the COVID-19 pandemic. ECF No. 1178. On April 3, 2020, the Court delayed the start of trial indefinitely due to the pandemic. ECF No. 1180. The Court also urged the parties to use the delay to seriously consider a potential resolution of the litigation. *Id.*

46.     During this time, the Parties continued to litigate the case, filing various pretrial motions regarding expert testimony (ECF Nos. 1188, 1190, 1191, 1193), jury instructions (ECF Nos. 1196, 1200, 1202, 1206), and a number of status reports. (ECF Nos. 1192, 1195, 1213, 1227, 1232, 1251). On July 27, 2021, the Court rescheduled the trial for March 28, 2022. ECF No. 1266. On December 20, 2021, the United States Judicial Panel on Multidistrict Litigation issued an order assigning Judge Virginia M. Hernandez Covington as an additional judge to oversee the trial, which was later moved to Tampa, Florida. ECF No. 1290. Judge Covington held virtual pretrial conferences with the remaining parties on January 21, 2022 (ECF No. 1297) and March 9, 2022 (ECF No. 1316).

47.     Lead Counsel dedicated substantial resources to preparing the case for trial in advance of the new March 28, 2022 trial date. Most of Lead Counsels' trial team, including key support staff and witnesses, relocated to Tampa, Florida in mid-

March to oversee final trial preparations. This work included finalizing the presentation and cross-examination of fact and expert witnesses, deposition designations, trial exhibits and graphics, and opening statements.

48. On March 15, 2022, Alcon and JJVCI filed a motion requesting that the Court give certain jury instructions regarding antitrust injury and proximate causation (ECF No. 1317), which Plaintiffs opposed on March 24, 2022 (ECF No. 1332). On Friday, March 25, 2022, after multiple rounds of meet and confers, JJVCI and Plaintiffs submitted their final proposed jury instructions. ECF No. 1333. Had the case not fully settled, as detailed below, trial proceeding would have commenced on Monday, March 28, 2022.

**F.  CVI Settlement**

49. Lead Counsel and counsel for CVI began settlement discussions in July of 2017.

50. After nearly a month of negotiations, which included both in-person, written, and telephonic communications, the parties reached an agreement-in-principle on August 11, 2017, to resolve the litigation against CVI based on CVI's payment of $3,000,000.

51. Based on Dr. William's calculations in his Class Report (*see* ECF No. 612), the $3,000,000 cash payment represents 38% of the maximum recovery Lead Counsel could have achieved at trial against CVI on Plaintiffs' vertical claims (before trebling).

52. On August 30, 2017, Plaintiffs and CVI executed the CVI Settlement.

53.     The CVI Settlement defines the settlement class as follows:

[A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb, Inc., or CVI (or distributed by ABB Concise Optical Group) during the Settlement Class Period for their own use and not for resale, which were sold at any time subject to a Unilateral Pricing Policy. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 781-1, ¶ 1.37.

**G.     B&L Settlement**

54.     Beginning in the summer of 2018, Lead Counsel and counsel for B&L began bilateral settlement discussions. Ultimately, after approximately one year of negotiations, which included both in-person, written, and telephonic communications, and exchanges of various proposals for settlement, the parties reached an agreement-in-principle on August 17, 2019 to resolve the litigation against B&L based on B&L's payment of $10,000,000.

55.     Based on Dr. Williams' calculations in his Merits Report (*see* ECF No. 918-2), the $10,000,000 cash payment represents between 72% and 81% of the maximum recovery Lead Counsel could have achieved at trial against B&L on Plaintiffs' vertical claims (before trebling).

56.     On August 19, 2019, the parties executed the B&L Settlement.

57.     The B&L Settlement defines the settlement class as follows:

[A]ll persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon

Laboratories, Inc., Johnson & Johnson Vision Care, Inc., or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a Unilateral Pricing Policy and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800-Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF No. 1037-1, ¶ 1.35.

58. On October 8, 2019, the Court granted preliminary approval of the B&L settlement and approved the notice to be disseminated to putative members of the litigation classes, the CVI Settlement Class, and the B&L Settlement Class. ECF No. 1046.

59. On January 16, 2020, Plaintiffs filed their Motion for Final Approval of Settlement Agreements with Defendants B&L and CVI. ECF No. 1136. On February 25, 2020, the Court held a fairness hearing regarding the CVI and B&L settlements. *See* ECF No. 1154; February 25, 2020 Hearing Tr. On March 4, 2020, the Court granted Plaintiffs' Motion for Final Approval and issued its Final Approval Order and Final Judgment and Order of Dismissal with Prejudice as to B&L and CVI. ECF No. 1164.

60. Also on January 16, 2020, Plaintiffs filed a Motion for Payment of Common Expenses and Class Representatives' Service Awards from the B&L and CVI Settlement Funds. ECF No. 1137. On March 4, 2020, the Court granted Plaintiffs' motion. ECF No. 1165. Subject to the Court's order, Lead Counsel withdrew 33.3%,

or \$4,329,000, from the collective \$13,000,000 in the B&L and CVI Settlement Funds. \$3,330,800 was withdrawn from the B&L Settlement Fund and \$999,000 was withdrawn from the CVI Settlement Fund. *Id.* These costs included \$664,206.86 for some, but not all, of the future costs Lead Counsel anticipated incurring during the litigation of this case through trial. ECF No. 1165. Lead Counsel did not apply for attorneys' fees from the B&L and CVI Settlements at this time, and instead notified the Court that they may do so at a later date.

61.　No Class Member objected to the CVI or B&L Settlements or Lead Counsel request for costs on any grounds.

### H.　The ABB Settlement

62.　On Sunday, August 30, 2020, counsel for ABB and Lead Counsel engaged in a day-long mediation session with former U.S. District Judge Layn Phillips via video conference. Prior to the August 30, 2020 mediation session, the parties engaged in a series of pre-mediation discussions with Judge Phillips regarding a potential settlement. With Judge Phillips' guidance and assistance, the Parties reached an agreement to resolve the case against ABB based on ABB's payment of \$30,200,000 into a settlement fund. The Parties fully executed the Settlement Agreement on September 22, 2020.

63.　As provided by ¶ 3.1 of the Settlement Agreement, ABB ultimately paid \$30,200,000 total into an escrow account to establish the Settlement Fund.

64.　On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement. ECF No. 1215.

65.    On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement. ECF No. 1219. On November 12, 2020, the Court issued an order granting preliminary approval of the ABB Settlement and endorsing the Notice Plan. ECF No. 1224. On October 22, 2020, Plaintiffs filed their Motion for Preliminary Approval and Notice Plan regarding the ABB Settlement. ECF No. 1215. On November 4, 2020, the Court held a hearing on the Motion for Preliminary Approval of the ABB Settlement. ECF No. 1219. On November 12, 2020, the Court preliminarily approved the ABB Settlement and approved the Notice Plan. ECF No. 1224. On February 26, 2021, Plaintiffs filed motions for Final Approval of the ABB Settlement and for an Award of Attorneys' Fees and Costs. ECF Nos. 1241, 1242. On May 19, 2021, the Court held a Fairness Hearing regarding the Motion for Final Approval and Award of Attorneys' Fees and Costs. ECF No. 1254. On June 1, 2021, the Court granted Final Approval and Final Judgment as to the ABB Settlement and granted Lead Counsel's request for attorneys' fees ($9,315,960.97), and incurred and anticipated litigation costs ($752,117.10). ECF Nos. 1257, 1258.

## II.    THE ALCON AND JJVCI SETTLEMENTS

66.    A true and correct copy of the Alcon and JJVCI Settlements were previously filed with the Court. ECF No. 1337-1&2.

67.    The Settlements were reached in the absence of collusion and are the product of good-faith, informed, and intensive arm's-length negotiations between experienced attorneys and were overseen by experienced mediators, all of whom are

familiar with class action antitrust litigation and the legal and factual issues of this Action.

68.     Lead Counsel believe that the Settlements are fair, reasonable, and adequate and fall well within the range of reasonableness, such that Final Approval is appropriate.

69.     Lead Counsel believe that the benefits of the Settlements outweigh the risks and uncertainties attendant to continued litigation, which include, but are not limited to, the risks, time, and expenses associated with completing trial and likely appellate review.

70.     Furthermore, Lead Counsel are particularly experienced in the litigation, class certification, trial, and settlement of nationwide class action cases. Lead Counsel have zealously represented Plaintiffs and the Classes throughout this Action. Lead Counsel ultimately prevailed at class certification, where this Court made its own independent determination that "[Lead] [C]ounsel are skilled and adequate in all respects," ECF No. 940 at 127, and at summary judgment. Further, in 2020, Lead Counsel were recognized by the American Antitrust Institute for their work on this case for Outstanding Antitrust Litigation Achievement by a Young Lawyer. *See* https://www.antitrustinstitute.org/aai-2020-antitrust-enforcement-awards-honorees-announced.

71.     Lead Counsel are confident in the strength of this Action but are also cognizant of the defenses available to Defendants and the risks inherent in trial and post-judgment appeal.

72.     Lead Counsel are also highly familiar with the challenged practices and defenses at issue in this Action through their experience litigating similar cases in MDL No. 1030 and elsewhere.

73.     On Friday, February 25, 2022, Plaintiffs and Alcon engaged in a day-long mediation with Robert Meyer of JAMS in Los Angeles, California. Although the Parties made progress, the initial mediation did not result in a settlement. In the following weeks, as the Parties prepared for trial, they continued to negotiate through Mr. Meyer. On March 23, 2022, Plaintiffs and Alcon agreed to settle the action for $20,000,000 and executed the Alcon Settlement.

74.     JJVCI and Plaintiffs participated in an all-day mediation on September 1, 2020 overseen by Hon. Layn Phillips (Ret.). The initial mediation did not result in an agreement, and JJVCI and Plaintiffs continued preparing their respective cases for trial. The Parties engaged in further settlement negotiations in the weeks preceding the March 28, 2022 trial date with the assistance of Judge Phillips and his staff. These negotiations continued into the week before trial, culminating in an agreement to settle the action as to JJVCI for $55,000,000. JJVCI and Plaintiffs executed the JJVCI Settlement on March 27, 2022, just one day before the scheduled start of trial proceedings.

75.     The Alcon Settlement required Alcon to pay $20,000,000 in cash into an Escrow Account within 15 days following Preliminary Approval. ECF No. 1337-1, Alcon Settlement Agreement, ¶ 3.1. On May 20, 2022, Alcon deposited $20,000,000 in cash into the Escrow Account.

76.     The JJVCI Settlement similarly required JJVCI to pay $55,000,000 in cash into an Escrow Account within 15 days following Preliminary Approval. ECF No. 1337-2, JJVCI Settlement Agreement, ¶ 3.1. On May 19, 2022, JJVCI deposited $55,000,000 in cash into the Escrow Account.

77.     The Alcon Settlement and JJVCI Settlement together comprise the Settlement Fund, which as noted, has been fully funded.

78.     The Alcon and JJVCI Settlement Classes are opt-out classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure. They are both defined as follows:

> All persons and entities residing in the United States who made retail purchases of disposable contact lenses manufactured by Alcon, JJVC, CVI, or B&L during the Settlement Class Period for their own use and not for resale, where the prices for such contact lenses were subject to a "Unilateral Pricing Policy" and the purchase occurred during the period when the Unilateral Pricing Policy was in effect. Excluded from the Settlement Class are any purchases from 1-800 Contacts of disposable contact lenses subject to B&L's Unilateral Pricing Policy, where the purchase occurred on or after July 1, 2015. Also excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any alleged co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

ECF Nos. 1337-1, 1337-2, Alcon & JJVCI Agreements, ¶ 1.35.

79.     The above-discussed Court-approved Notice Plans for the CVI, B&L, Alcon, and JJVCI Settlements each contained language that Lead Counsel would later ask the Court for attorneys' fees "up to one-third (33.3%)" of the Settlement Funds, as well as Court-approved costs and expenses. ECF Nos. 1139, 1216, 1337.

## III.  LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES

80.  The Notice Plan, approved by the Court, informed potential Settlement Class Members that "Lead Counsel will ask the Court for attorneys' fees of up to one-third (33.3%) of the Alcon and JJVCI Settlement Funds, as well as reimbursement of costs and expenses incurred by Lead Counsel during the litigation." ECF No. 1337-4.

81.  Lead Counsel and supporting law firms have collectively spent thousands of hours litigating this case since its inception more than seven years ago, with lodestar exceeding $50,000,000 using historic billing rates.

82.  During the pendency of this litigation, Lead Counsel have diligently worked to make sure that all efforts were efficient and coordinated so as to minimize duplication.

83.  Lead Counsel acquired and analyzed, along with experts, an immense amount of factual and legal information.

84.  Litigation of this action required counsel that was highly trained in class action law and procedure, as well as the specialized antitrust issues, presented here. Lead Counsel possess these attributes, and their participation added value to the representation of the Classes. The record demonstrates that the action involved a broad range of complex challenges by Defendants, which Lead Counsel met at every juncture.

85.  For example, Defendants have repeatedly argued to this Court, and the Eleventh Circuit, that Plaintiffs lack standing to bring this lawsuit because they are not direct purchasers under the antitrust laws. ECF Nos. 505, 674, 906-908, 912, 930, 931,

934, 935, 967, 1015, 1016, 1023. Lead Counsel prevailed on this issue at every turn. ECF Nos. 940, 993, 1091. The ability and knowledge to successfully navigate the issues regarding purchaser standing in antitrust matters is rare, even among class action attorneys.

86. Lead Counsel were able to draw on their decades of combined experience, specifically in representing plaintiffs in large antitrust class actions against these kinds of arguments.

87. Opposing counsel for the Defendants similarly possessed experience and skill in litigating large antitrust class actions.

88. Lead Counsel represents the Named Plaintiffs on an entirely contingent-fee basis.

89. Thus far, Lead Counsel have not been paid any money from Plaintiffs or the Class for their time and effort litigating this matter; Lead Counsel's only attorneys' fees to date in this matter were paid from the ABB Settlement Fund.

## IV. LEAD COUNSEL'S EXPENSES

90. Lead Counsel established a litigation fund in order to pay common expenses throughout the litigation.

91. Non-common expenses (*e.g.*, travel, lodging, legal research, long-distance phone calls, etc.) have not been paid from the litigation fund, and Lead Counsel now seek reimbursement of these expenses on behalf of themselves and other supporting firms.

92.     As detailed and categorized in the below schedule, Lead Counsel have incurred a total of $1,640,110.77 in litigation-related expenses unreimbursed by any of the previous orders awarding costs. *See* ECF Nos. 1164 & 1258. These costs are unreimbursed litigation expenses incurred in connection with the prosecution of this Action. Lead Counsel's expenses were reasonably necessary to the prosecution of this Action; and are the type of expenses that Lead Counsel normally incur in litigation and that would be reimbursed by clients under fee arrangements where the client was paying expenses. In addition, all litigation expenses submitted by the law firms that assisted Lead Counsel have been attested to as reasonable and necessary expenses incurred in prosecuting this action in sworn declarations by knowledgeable attorneys from those firms. Lead Counsel are happy to provide those declarations to the Court if requested to do so.

93.     The following chart of expenses was prepared from Lead Counsel's review of their own accounting records, as well as the declarations submitted by the supporting law firms.

| EXPENSE | AMOUNT |
|---|---|
| Experts and Trial Consultants | $12,192.88 |
| Filing & Other Court Fees | $34,147.00 |
| Litigation-Related Transportation, Hotels & Meals | $644,307.72 |
| Litigation Fund Assessments (Less Previous Reimbursements) | $790,000.00 |
| Telephone, Facsimile & Conference Calling | $23,644.05 |
| Messenger & Postages Fees | $28,490.44 |
| Process Server Fees | $582.15 |

| | |
|---|---|
| Printing Fees | $72,908.53 |
| Online Legal & Factual Research | $156,069.16 |
| Investigators | $5,331.25 |
| Depositions and Court Reporters/Transcripts | $4,095.70 |
| Staff Overtime | $1,022.71 |
| Miscellaneous Costs (Supplies, etc.) | $36,990.67 |
| Less Current Litigation Fund Balance | ($169,671.49) |
| **TOTAL** | **$1,640,110.77** |

## V.    DAMAGES

94.    Based on Plaintiffs' expert's damages estimates, the recoveries provided for under the Settlements represent 63.1% of possible recoverable single damages against Alcon, and 28.5% of possible recoverable single damages against JJVCI.

95.    These recovery shares are significantly higher than most antitrust class actions, where plaintiffs' median settlement recovery is roughly 19% of single damages. *See* John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries are Mostly Less Than Single Damages*, 100 Iowa L. Rev. 1997, 2010 (2015).


We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 22nd Day of July 2022.

| _/s/ Thomas Boardman_ | _/s/ Benjamin Steinberg_ | _/s/ Nathaniel Giddings_ |
|---|---|---|
| Thomas Boardman | Benjamin Steinberg | Nathaniel Giddings |