# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| **In Re:**<br><br>**DISPOSABLE CONTACT LENS<br>ANTITRUST LITIGATION** | **Case No. 3:15-md-2626-HES-JRK**<br><br>**Judge Harvey E. Schlesinger<br>Magistrate Judge Laura L. Lambert** |
| **THIS DOCUMENT RELATES TO:**<br><br>**Alcon Vision, LLC v. Lens.com, Inc.,<br>No. 3:19-cv-706-HES-LLL** | |

# DEFENDANT ALCON VISION, LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................ii

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS ................................................................ 5

    A.    The Parties ................................................................ 5

    B.    Lens.com's Trademark Misconduct................................ 5

    C.    Lens.com's MDL Transfer .............................................. 6

    D.    Lens.com's UPP Claims ................................................. 7

    E.    Failures of Proof........................................................... 7

LEGAL STANDARD ....................................................................... 8

ARGUMENT.................................................................................. 8

I.     LENS.COM'S CLAIMS FAIL FOR LACK OF CAUSATION. .................. 8

II.    LENS.COM CANNOT PROVE ANTITRUST INJURY. ......................... 10

III.   LENS.COM CANNOT PROVE AN APPROPRIATE ANTITRUST PRODUCT MARKET............................................................ 12

    A.    Lens.com's Market Fails the Rule of Reasonable Interchangeability. . 13

    B.    The Alleged Alcon-only Market Disregards the *Brown Shoe* Factors. .. 15

    C.    There Is No Evidence the Alleged Alcon-only Market Satisfies the Hypothetical Monopolist Test. ....................................... 20

IV.   LENS.COM CANNOT PROVE COGNIZABLE DAMAGES.................. 21

V.    LENS.COM CANNOT PROVE AN ACTIONABLE AGREEMENT....... 22

    A.    There Is No Evidence of a Horizontal Agreement. ........................... 23

    B.    There Is No Evidence of a Vertical Agreement................................. 24

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Pepsi-Cola Bottling Co. v. Mid-Atlantic Coca-Cola Bottling Co., Inc.*,
690 F.2d 411 (4th Cir. 1982) ............................................................. 21

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ............................................................. 13, 15, 16

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
429 U.S. 477 (1977) ............................................................. 10

*Cable Holdings of Ga., Inc. v. Home Video*,
825 F.2d 1559 (11th Cir. 1987) ............................................................. 9

*CIBA Vision Corp. v. De Spirito*,
No. 1:09-CV-01343-JOF, 2010 WL 553233 (N.D. Ga. Feb. 10, 2010) ......... 13, 14

*City of Tuscaloosa v. Harcros Chems., Inc.*,
158 F.3d 548 (11th Cir. 1998) ............................................................. 22

*City of Vernon v. S. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) ............................................................. 22

*Epic Games, Inc. v. Apple Inc.*,
559 F. Supp. 3d 898 (N.D. Cal. 2021) ............................................................. 20

*Fisher v. City of Berkeley*,
475 U.S. 260 (1986) ............................................................. 23

*Godix Equip. Export Corp. v. Caterpillar, Inc.*,
948 F. Supp. 1570 (S.D. Fla. 1996) ............................................................. 21

*GSI Tech. v. United Memories, Inc.*,
No. 5:13-CV-01081-PSG, 2014 WL 1572358 (N.D. Cal. Apr. 18, 2014) ............. 8

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ............................................................. 24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
562 F. Supp. 2d 392 (E.D.N.Y. 2008) ............................................................. 16

*In re Publ'n Paper Antitrust Litig.*,
690 F.3d 51 (2d Cir. 2012) ................................................................ 8

*In re Se. Milk Antitrust Litig.*,
739 F.3d 262 (6th Cir. 2014) .......................................................... 10

*JES Properties, Inc. v. USA Equestrian, Inc.*,
253 F. Supp. 2d 1273 (M.D. Fla. 2003) ......................................... 12

*MCA Television Ltd. v. Pub. Int. Corp.*,
171 F.3d 1265 (11th Cir. 1999) ...................................................... 10

*Metzler v. Bear Auto. Serv. Equip. Co.*,
19 F. Supp. 2d 1345 (S.D. Fla. 1998) ............................................ 13

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) ........................................................................ 11

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002) ............................................................. 8

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019) ...................................................... 23

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*,
No. 8:20-CV-2274-VMC-TGW, 2022 WL 3225366 (M.D. Fla. Aug. 10,
2022) ................................................................................................ 15

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
792 F.2d 210 (D.C. Cir. 1986) ........................................... 16, 18, 20

*S. Bus. Commc'ns, Inc. v. Matsushita Elec. Corp. of Am.*,
806 F. Supp. 950 (N.D. Ga. 1992) ............................................ 12, 15

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
376 F.3d 1065 (11th Cir. 2004) ................................................ 11, 23

*Todorov v. DCH Healthcare Auth.*,
921 F.2d 1438 (11th Cir. 1991) .................................................. 8, 23

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
7 F.3d 986 (11th Cir. 1993) ........................................................... 19

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) .................................................................. 11, 24

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956) ...................................................................................... 13

*United States v. Engelhard Corp.*,
  126 F.3d 1302 (11th Cir. 1997) ...................................................................... 20

*Vacation Break U.S.A., Inc. v. Mktg. Response Grp. & Laser Co.*,
  169 F. Supp. 2d 1325 (M.D. Fla. 2001) ......................................................... 10

*Williamson Oil Co. v. Philip Morris USA*,
  346 F.3d 1287 (11th Cir. 2003) ........................................................................ 8

**Statutes & Rules**

Fed. R. Civ. P. 56 ............................................................................................1, 8

Local Rule 3.01 .................................................................................................. 1

Section 1 of the Sherman Act .................................................................... passim

**Other Authorities**

U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger
  Guidelines § 4.1.1 (2010) ............................................................................. 20

Pursuant to Local Rule 3.01 and Federal Rule of Civil Procedure 56, Defendant Alcon Vision, LLC ("Alcon") respectfully submits the following Motion for Summary Judgment on the claims asserted by Plaintiff Lens.com, Inc. ("Lens.com"). As further explained below, summary judgment should be entered against Lens.com because: (i) it cannot prove but-for causation; (ii) it cannot prove antitrust injury; (iii) the alleged product market does not exist; (iv) it cannot prove cognizable damages; and (v) there is no evidence of an unlawful agreement.

## PRELIMINARY STATEMENT

This case concerns a gray-market reseller of contact lenses, Lens.com, that seeks to distract from its repeated infringement of Alcon's trademarks by parroting now-settled allegations made about Alcon's long-withdrawn Unilateral Pricing Policy ("UPP"). But Lens.com is very different from the consumer plaintiffs in the UPP cases over which this Court presided from 2015-2022. Lens.com is a gray-market retailer (not a consumer); it was never authorized by Alcon to purchase Alcon contact lenses (subject to a UPP or otherwise); and it exploited Alcon's UPP to its advantage. Lens.com's claims fail as a matter of law because Lens.com cannot prove causation, antitrust injury, its alleged product market, cognizable damages or unlawful concerted action. Summary judgment should be entered in favor of Alcon.

Alcon adopted its UPP in 2013 with the launch of a revolutionary new contact lens called Dailies Total1. Alcon implemented its UPP unilaterally to better compete in a crowded marketplace. Among other things, Alcon adopted its UPP to increase interbrand competition, ensure education about its new lenses, discourage free-

riding, promote consumer choice and encourage future innovation. After Alcon gained market share following the adoption of its UPP, other manufacturers responded by adopting similar pricing policies. It is the industry-wide adoption of UPPs that led to the class actions that became MDL 2626.

Lens.com cuts and pastes many allegations from the complaint filed in the prior UPP class actions (now fully settled), but the substance of Lens.com's claims is very different. Lens.com alleges a single-brand (Alcon-only) market that is simultaneously overbroad and underinclusive; it seeks lost profits on the theory that Alcon's UPP prevented Lens.com from purchasing an adequate supply of Alcon lenses on the gray market; and it alleges a conspiracy focused on preventing it from obtaining Alcon contact lenses. Further distinguishing this case from the class actions, Lens.com exploited Alcon's UPP to its advantage by disregarding the policy and regularly charging prices below the UPP price and thus gaining an advantage over retailers who followed the policy and charged at or above the UPP price. As is further discussed below, Lens.com's claims fail as a matter of law for at least five reasons:

*First*, Lens.com cannot prove causation. Lens.com alleges it was "blackballed" and prevented from obtaining enough Alcon lenses to resell at a profit because it sold lenses below Alcon's UPP. As a result, to survive summary judgment, Lens.com must provide evidence that but for Alcon's UPP, Alcon and/or its authorized distributors would have sold Lens.com its preferred quantity of Alcon contact lenses for resale by Lens.com. That evidence does not exist. Instead,

Lens.com concedes that Alcon did not sell lenses to Lens.com for an entirely different reason: Alcon sells its lenses only to "authorized retailers," and it is undisputed that Lens.com has never been an authorized retailer. Thus, Lens.com cannot show the UPP caused the alleged harm. (*See* Section I below.)

*Second*, Lens.com cannot demonstrate antitrust injury, *i.e.*, injury of the kind the antitrust laws were intended to prevent and that flows from that which makes a defendant's acts unlawful. Unlike the class action plaintiffs in MDL 2626, Lens.com does not allege harm to competition generally—it claims an injury only to Lens.com's ability to obtain its desired amount of Alcon lenses for resale. However, Lens.com's purported inability to source Alcon lenses flows not from Alcon's UPP, but rather from Alcon's long-standing policy (since before and after its UPP) not to deal with unauthorized retailers. Lens.com has not and cannot base its claims on Alcon's authorized retailer policy because it asserted a claim on precisely that theory in the New York case, from which Lens.com's claims were transferred, and the court dismissed the claim with prejudice. Thus, Lens.com's case suffers from another dispositive flaw. (*See* Section II below.)

*Third*, Lens.com's claims fail because they depend on a relevant antitrust product market that does not exist. Absent an appropriately defined relevant product market, Lens.com's claims fail as a matter of law. Lens.com defines the relevant product market to include every Alcon-branded contact lens but no other brand of lens (the "Alleged Alcon-only Market"). In defining the market to consist of any and all Alcon lenses, Lens.com violates every rule of market definition in an antitrust

case: (i) the rule of reasonable interchangeability, (ii) the *Brown Shoe* practical indicia

test and (iii) the hypothetical monopolist test ("HMT"). What's more, Lens.com's

Alleged Alcon-only Market is both overbroad (because it includes Alcon lenses used

for very different conditions and by very different patient populations) and

underinclusive (because it excludes products made by other manufacturers frequently

substituted for Alcon products). (*See* Section III below.)

*Fourth*, Lens.com cannot prove cognizable damages proximately caused by the

alleged antitrust violation. Lens.com claims damages of approximately ███████.

But its computation comprises: (i) ████████████████████████████,

(ii) ████████████████████████████████████████████

██████████ and (iii) ████████████████████████████.

Thus, Lens.com seeks to recover damages for sales that were not subject to Alcon's

UPP and could not have been caused by Alcon's UPP. If ██████████████

████████████████████████████████████████████

████████████████████ and █████████████████████

████████████ are excluded from the analysis, Lens.com suffered no damages.

(*See* Section IV below.)

*Finally*, to prevail on its UPP claims, Lens.com must prove an agreement

between Alcon and either (i) a competitor (here, another manufacturer) or (ii) a

distributor (such as ABB). On the contrary, it is undisputed that Alcon adopted its

UPP unilaterally without any agreement with any other contact lens manufacturer

and/or distributor from whom Lens.com claims to have purchased contact lenses.

Moreover, in the Alcon-only market alleged by Lens.com, there could never have been a horizontal conspiracy because the relevant market contains only Alcon's lenses. As a result, Lens.com's claims fail as a matter of law for yet another reason. (*See* Section V below.)

## STATEMENT OF FACTS[1]

### A. The Parties

Alcon is a leading producer of soft contact lenses and contact lens care products. (¶ 4.) Alcon's mission is to provide innovative products that enhance quality of life by helping people see better. (*Id.*)

Lens.com is a gray-market reseller of contact lenses. (¶ 25.) It does not make contact lenses; it seeks to purchase other companies' lenses overseas for resale in the United States at a profit. (*Id.*)

Over the years, Alcon and Lens.com have discussed Lens.com becoming an authorized retailer of Alcon lenses, but Lens.com has refused to accept the terms to which Alcon's authorized retailers have long agreed. (¶ 27.)

### B. Lens.com's Trademark Misconduct

In 2017, Alcon discovered that Lens.com was selling Alcon products in the United States that did not comply with Alcon-authorized U.S.-specific packaging.

---

[1] In support of this Memorandum, Alcon submits the Declaration of David Dowd, citations to which appear as "¶ _", and the Declaration of David Marriott. Citations to the exhibits appended to the Dowd and Marriott Declarations appear as "Ex. _", and are identified by letter in the body of the Declarations.

(¶ 29.)  Among other things, these products lacked U.S.-specific lot numbers and readily accessible insertion and removal instructions.  (*Id.*)

Alcon sued Lens.com in the United States District Court for the Eastern District of New York.  (Ex. F; ¶ 30.)  Alcon's First Amended Complaint asserted claims for trademark infringement, false designation of origin, deceptive trade practices, false advertising and unfair competition.  (Ex. G ¶¶ 99-136; ¶ 30.)

After the New York court denied its motion to dismiss/transfer, Lens.com asserted eleven counterclaims against Alcon, alleging a group boycott, unlawful tying arrangements, trademark misuse, unlawful monopolization, attempted monopolization, exclusive dealing, false advertising and deceptive practices, as well as two claims under Section 1 of the Sherman Act concerning Alcon's UPP.  (Ex. H at 68-88; ¶ 31.)  These counterclaims were based on a wide range of allegations, only some of which related to Alcon's UPP.  (Ex. H at 30-67.)

## C.     Lens.com's MDL Transfer

Lens.com sought to transfer the entirety of the New York case, including all eleven of its counterclaims, to this Court for inclusion in MDL 2626.  (Ex. I; ¶ 32.)  The Judicial Panel on Multidistrict Litigation ("JPML"), however, transferred only Lens.com's two UPP-related, Section 1 claims to this Court, declining to transfer Lens.com's remaining nine counterclaims or any of Alcon's claims against Lens.com.  (Ex. J at 2; ¶ 32.)

In 2022, after discovery and significant motion practice, the New York court sanctioned Lens.com and dismissed Lens.com's counterclaims against Alcon with

prejudice, including those counterclaims based on Alcon's authorized-retailer policy and based on allegations of a "group boycott." (Ex. M at 13; *see also id.* at 23 ("Lens.com's non-UPP antitrust counterclaims are dismissed with prejudice."); ¶ 32.). The court's reasoning for the sanction included its finding that Lens.com "acted in bad faith in filing and pursuing its counterclaims, and they served no legitimate purpose." (Ex. M at 13.)

### D.    Lens.com's UPP Claims

Lens.com's claims are materially different from those asserted by the class action plaintiffs in MDL 2626. Lens.com is a reseller and claims harm from Alcon's alleged refusal to deal, whereas the class-action plaintiffs were consumers and alleged harm from inflated prices and decreased competition for contact lenses. (*See* Ex. S at 1, 3-4.) Lens.com's claims are directed only at Alcon, whereas the class-action claims were against all major U.S. manufacturers and a distributor (ABB). (Ex. T at 1.) Lens.com's alleged relevant market is all Alcon lenses, whereas the class-action plaintiffs defined the relevant market as all disposable lenses in the United States. (*See id.* at 7.) And Lens.com seeks lost-profits damages, whereas the class-action plaintiffs sought over-charge damages. (*See id.* at 10.)

### E.    Failures of Proof

The only claims before this Court concern Alcon's UPP. Lens.com claims that Alcon: (i) entered a horizontal conspiracy with other manufacturers to adopt and implement UPPs, and (ii) entered unlawful vertical agreements with distributors and eye care professionals ("ECPs") to adopt and implement its UPP. (Ex. K

¶¶ 329-47; Ex. W at 5-6; ¶ 33.)

Both claims fail as a matter of law for multiple independent reasons. Lens.com cannot establish: (i) causation, (ii) antitrust injury, (iii) a relevant antitrust market, (iv) cognizable damages or (v) an unlawful agreement.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment is particularly favored [in antitrust cases] because of the concern that protracted litigation will chill pro-competitive market forces." *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1300 (11th Cir. 2003) (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 104 (2d Cir. 2002)).

## ARGUMENT

## I.     LENS.COM'S CLAIMS FAIL FOR LACK OF CAUSATION.

"A private party seeking to invoke the antitrust laws must show that the defendants caused the alleged injury." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1459 (11th Cir. 1991). An antitrust "plaintiff must establish that the injuries alleged would not have occurred *but for* [the defendant's] antitrust violation". *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 66 (2d Cir. 2012) (quotations omitted); *GSI Tech. v. United Memories, Inc.*, No. 5:13-CV-01081-PSG, 2014 WL 1572358, at *4

(N.D. Cal. Apr. 18, 2014).[2]

Lens.com alleges that Alcon acted anticompetitively by declining to deal with Lens.com (or allow its authorized distributors to deal with Lens.com) because Lens.com was unwilling to adhere to Alcon's UPP. (Ex. K ¶ 174.) That is contrary to the undisputed evidence. Alcon declined to deal with Lens.com for reasons unrelated to Alcon's UPP. Alcon deals only with authorized retailers, and Lens.com concedes that it is not and never has been an authorized retailer. (Ex. V at 31-37; ¶ 26.) Because Lens.com was not an authorized retailer, Alcon would not have dealt with Lens.com irrespective of whether it adhered to Alcon's UPP. (*See* ¶ 26.)

Lens.com's corporate representative conceded that ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ (Ex. N at 53:10-13.)

Lens.com's corporate representative further conceded the reason for this:

████████████████████████████████████████████████

████████████████ (*Id.* at 83:17-20.)

While not required, these admissions are fatal to Lens.com's case.

That Alcon's UPP is not the reason Alcon has not dealt with Lens.com is

---

[2] *See also Cable Holdings of Ga., Inc. v. Home Video*, 825 F.2d 1559, 1561-62 (11th Cir. 1987) ("To recover under the antitrust laws, a plaintiff must prove that a defendant's illegal conduct materially contributed to his injury. Proof of a violation of the Sherman Act standing alone does not establish civil liability." (citation omitted)).

further confirmed by two additional undisputed facts. Alcon did not do business with Lens.com before its UPP was adopted because Lens.com was not an authorized retailer. (¶ 39.) And it is undisputed that Alcon has not done business with Lens.com in the six-plus years since Alcon withdrew its UPP. (*Id.*) Alcon's UPP expired in 2016, and Alcon still does not sell to Lens.com because Lens.com has refused to become an authorized retailer of Alcon lenses. (*Id.*)[3]

## II.    LENS.COM CANNOT PROVE ANTITRUST INJURY.

In addition to its inability to prove causation, Lens.com cannot prove antitrust injury, an additional essential element of its claims. *See MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1279 (11th Cir. 1999); *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 284 (6th Cir. 2014). To show antitrust injury, "a plaintiff 'must prove more than injury casually [sic] linked to an illegal presence in the market [i.e., but for causation]. Plaintiffs must prove . . . injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *Vacation Break U.S.A., Inc. v. Mktg. Response Grp. & Laser Co.*, 169 F. Supp. 2d 1325, 1333 (M.D. Fla. 2001) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)). Lens.com also "must show harm to

_____

[3] Alcon did send Lens.com a letter stating that it was discontinuing supply to Lens.com of a particular lens from Alcon and its authorized distributors for a period of one year, because Lens.com was not honoring Alcon's UPP. (Ex. U; ¶ 37.) However, the letter was only sent out of an abundance of caution in case Lens.com became authorized, and expressly stated that the cut-off only applied to one type of lens. (Ex. U; ¶ 38.) The letter had no practical effect on Lens.com's ability to purchase lenses from Alcon because Lens.com was never an authorized retailer. (¶ 38.)

competition rather than to competitors." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004). The Eleventh Circuit has held that alleging "damage to a single competitor . . . does not state a claim under Section One of the Sherman Act." *Id.* at 1072.

Lens.com's alleged injury—its inability to obtain sufficient Alcon lenses for resale—does not flow from Alcon's UPP; nor has Lens.com alleged or demonstrated that the alleged acts harmed competition. Lens.com contends it was not able to obtain an adequate supply of Alcon lenses from Alcon and its authorized distributors. (¶ 35; Ex. K ¶ 331.) But that alleged injury flows not from Alcon's UPP, but rather Alcon's long-standing policy (in place since before, during and after Alcon's UPP) not to deal with unauthorized retailers. (¶ 36; *see also* ¶ 26.) Lens.com rejected Alcon's terms to become an authorized retailer on terms unrelated to Alcon's UPP—which dozens of other retailers accepted—and it was Lens.com's rejection of those terms—not Alcon's UPP—that caused Lens.com's alleged harm. (¶ 27.) Thus, Lens.com has failed to prove an antitrust injury.

Alcon's UPP served only to benefit Lens.com. Alcon's UPP gave Lens.com a competitive advantage over any retailer that followed Alcon's UPP price because Lens.com could then undercut retailers charging at or above the UPP price. (¶ 40.)

Lens.com cannot challenge Alcon's general refusal to deal with Lens.com because Lens.com was not an authorized retailer. A manufacturer is free to choose with whom it will deal. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761

(1984); *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). Moreover, Lens.com asserted a general refusal-to-deal claim in its non-UPP counterclaims. (Ex. K ¶¶ 367-76.) The JPML declined to transfer those claims to this Court. (Ex. J at 2; ¶ 32.) And they were later dismissed with prejudice by the New York court. (Ex. M at 23.) Lens.com's claims thus fail for want of antitrust injury as well as lack of causation.

## III. LENS.COM CANNOT PROVE AN APPROPRIATE ANTITRUST PRODUCT MARKET.

Another independent basis for summary judgment in Alcon's favor is Lens.com's failure to prove—with evidence—the relevant product market. "[A]ntitrust plaintiffs have [the] burden of defining [a] relevant market." *JES Properties, Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1281 (M.D. Fla. 2003). Absent proof of a "well-defined" relevant product market, Lens.com's claims fail as a matter of law. *S. Bus. Commc'ns, Inc. v. Matsushita Elec. Corp. of Am.*, 806 F. Supp. 950, 956 (N.D. Ga. 1992).

Lens.com contends the relevant product market consists of all Alcon lenses and only Alcon lenses. (Ex. R at 134:10-14; ¶ 41.) While Alcon's UPP was in place, Alcon sold no less than 26 different lenses, falling into at least 9 distinct categories: daily spherical lenses, daily toric lenses, daily multifocal lenses, 1-2 week spherical lenses, 1-2 week toric lenses, monthly spherical lenses, monthly toric lenses, monthly multifocal lenses and disposable color lenses. (¶ 5.) As defined by Lens.com, the relevant product market consists of lenses to treat near- and farsightedness, astigmatism and presbyopia, as well as lenses to be worn for a single day and lenses

to be worn for multiple weeks or even a month at a time. (*See* ¶¶ 6-7.) There is no such antitrust market. Lens.com's Alleged Alcon-only Market violates every rule of market definition in an antitrust case: (i) the rule of reasonable interchangeability, (ii) the *Brown Shoe* practical indicia test and (iii) the HMT.

### A. Lens.com's Market Fails the Rule of Reasonable Interchangeability.

A relevant product market must include "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). Single-brand markets—like that proposed by Lens.com—virtually always fail as a matter of law, because companies do not normally compete with themselves, and "it would be inappropriate to punish a firm for its natural monopoly on its own products". *Metzler v. Bear Auto. Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1354-55 (S.D. Fla. 1998); *see also CIBA Vision Corp. v. De Spirito*, No. 1:09-CV-01343-JOF, 2010 WL 553233, at *7-8 (N.D. Ga. Feb. 10, 2010) (rejecting a single-manufacturer contact lens market).

Lens.com's Alleged Alcon-only Market does not reflect products that are reasonably interchangeable with, or substitutes for, one another. (¶ 10.) As noted above, Lens.com's proposed market includes at least 26 different types of Alcon lenses, each of which treats a different patient population. (¶ 6.) For example,

Alcon's spherical lenses are used to correct near- or farsightedness; its toric lenses correct vision problems associated with astigmatism; its multifocal lenses correct both near- and farsightedness for patients with presbyopia; and its color lenses change the appearance of a patient's eye color. (*Id.*) A patient seeking a lens to treat near- or farsightedness would consider only lenses that could do so. (*See* ¶¶ 10, 52.) Similarly, a patient with astigmatism would choose a lens that treats that ailment rather than a lens to merely alter the appearance of their eye color. (¶ 10.)

Lens.com's proposed market also ignores the differences in modality (*e.g.*, single-day versus monthly) and price for all 26 types of Alcon lenses. (¶¶ 7-8.) Some are "dailies" (*e.g.*, Dailies Total1 Sphere or Dailies All Day Comfort Toric); and some are "monthlies" (*e.g.*, O2Optix Sphere or Focus Monthly Toric). (¶ 7.) Alcon's lenses also differ in price. (¶ 53; *see also* ¶ 8.) For example, during the UPP-period a 90-pack of its Dailies Total1 lenses sold for $119.95, whereas a 90-pack of its Focus Dailies lenses sold for $52.95. (¶ 8; Ex. A at 2.)

In addition to including in the Alleged Alcon-only Market lenses that are very different from one another, Lens.com excludes other lenses that are interchangeable with Alcon lenses. As illustrated in the below table, Lens.com's Alleged Alcon-only Market excludes multiple products made by other manufacturers (specifically, CooperVision ("CV"), Bausch+Lomb ("B+L") and Johnson & Johnson Vision Care ("JJVC")) that are reasonable substitutes for Alcon lenses. (¶ 44.) This Court expressly found sufficient evidence to demonstrate such interchangeability between lenses made by different manufacturers in its 2019 summary judgment order on the

class action plaintiffs' claims.  (Ex. T at 14.)

| Lens Type | Alcon | Excluded Substitute |
|---|---|---|
| Spherical | • Dailies AquaComfort Plus<br>• Focus Dailies | • BioTrue ONEday<br>• ClearSight 1 Day<br>• SofLens Daily Disposables<br>• 1-Day Acuvue Moist<br>• 1-Day Acuvue TruEye |
| Toric | • Dailies AquaComfort Plus Toric<br>• Focus Dailies Toric | • ClearSight 1 Day Toric<br>• Clariti 1 Day Toric<br>• Fresh Day Toric<br>• SofLens Daily Disposables Toric for Astigmatism |
| Multifocal | • Dailies AquaComfort Plus Multifocal<br>• Focus Dailies Progressive | • 1-Day Acuvue Moist Multifocal<br>• Proclear 1 Day Multifocal<br>• Clariti 1 Day Multifocal<br>• Fresh Day Multifocal |
| Color | • Air Optix Colors<br>• Focus Monthly SoftColors | • Acuvue 2 Colors<br>• Expressions Accents |

Lens.com's failure to include reasonable substitutes in its Alleged Alcon-only Market—including products this Court has recognized to be reasonably interchangeable—is fatal to its claims.  *See S. Bus. Commc'ns*, 806 F. Supp. at 958.

**B.      The Alleged Alcon-only Market Disregards the *Brown Shoe* Factors.**

Courts often look to the *Brown Shoe* factors to determine an appropriate relevant market.  *See Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-CV-2274-VMC-TGW, 2022 WL 3225366, at *5 (M.D. Fla. Aug. 10, 2022) (citing *Brown Shoe*, 370 U.S. at 325)).  The *Brown Shoe* factors include: (1) industry or public recognition of the submarket as a separate economic entity, (2) the product's peculiar characteristics and uses, (3) unique production facilities, (4) distinct customers,

(5) distinct prices, (6) sensitivity to price changes and (7) specialized vendors. *Brown Shoe*, 370 U.S. at 325. None of these factors supports an Alcon-only market.

*Industry or public recognition.* A proposed market is more likely to be sufficient for an antitrust analysis if it accurately reflects the perception of the industry or the public. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 n.4 (D.C. Cir. 1986). This matters because courts generally assume that economic actors have accurate perceptions of economic realities, and if those actors do not behave as if they recognize a distinct market, it will cast doubt on that market's existence. *See id.* There is no industry or public recognition of all Alcon lenses as a distinct market. (¶ 45.) On the contrary, if there is any industry or public recognition concerning the markets in which Alcon lenses compete, it is that they compete within separate markets as defined by at least the 9 categories described above. (¶¶ 5, 46.) That is how they are marketed to doctors and patients, described in industry publications and treated in the ordinary course of Alcon's business. (*See id.*)

*Peculiar characteristics and uses.* A product or group of products constitutes a distinct market when the "product's characteristics make it unique or circumstances prevent consumers from substituting alternatives for the same purposes." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 562 F. Supp. 2d 392, 403 (E.D.N.Y. 2008). Lens.com's Alleged Alcon-only Market is comprised of lenses that have very different characteristics and uses. For example, Alcon's lenses vary by category, as described above, and are designed to treat different conditions in different patient populations. (*See* ¶ 48.) Its toric lenses (but not its spherical lenses)

16

are used for astigmatism; its multifocal lenses (but not its toric lenses) are used for presbyopia; and its color lenses (but not its multifocal lenses) are used to alter the appearance of patients' eye color. (*Id.*) The specific characteristics of many Alcon lenses also differ significantly. For example, Alcon's Dailies Total1 lenses incorporate Water Gradient technology such that they have more than 80% water content at the surface of the lens, whereas its Dailies AquaComfort Plus lenses do not; its Dailies AquaComfort Plus Multifocal lenses are made with a Precision Profile design for uninterrupted vision from near to far, whereas its Air Optix Color lenses are not; and its monthly Air Optix Plus Hydraglyde for Astigmatism lenses include SmartShield technology to protect the lenses from deposits, whereas its Dailies Total1 lenses do not. (¶ 47.) Thus, Lens.com's proposed market is overinclusive. (*See* ¶ 58.)

Lens.com's proposed market is also underinclusive, as it excludes lenses made by other manufacturers with characteristics similar to Alcon lenses and used for the same conditions as Alcon lenses. (*See id.*; *see also* Ex. T at 14.) For instance, an Alcon-only market excludes CV's ClearSight 1 Day lens, B+L's SofLens Daily Disposable lens and JJVC's 1-Day Acuvue lens, though each has characteristics similar to Alcon's Dailies AquaComfort Plus lens. (¶ 49.) Similarly, an Alcon-only market excludes CV's Clariti 1 Day Multifocal lens, B+L's BioTrue ONEday for Presbyopia and JJVC's 1-Day Acuvue Moist Multifocal lens, though each treats the same vision condition as Alcon's Dailies AquaComfort Plus Multifocal lens. (*Id.*)

*Unique production facilities.*  Products are less likely to constitute a market if they require different types of production facilities.  *See Rothery*, 792 F.2d at 218 n.4.  The lenses included in Lens.com's Alleged Alcon-only Market were not all manufactured in the same production facilities.  (*See* ¶ 50.)  In fact, new production facilities had to be built specially to manufacture Alcon's Dailies Total1 lenses; none of its other lenses are made using the same production facilities.  (*Id.*)  At the same time, an Alcon-only market excludes lenses of other manufacturers made in production facilities similar to the facilities in which certain Alcon lenses are made.  (¶¶ 50-51.)  Thus, in this respect too, Lens.com's Alcon-only market is both over- and underinclusive; it includes products that are not reasonable substitutes and excludes products that are.

*Distinct customers.*  Products are less likely to constitute a market if they have different customers.  *See Rothery*, 792 F.2d at 218 n.4.  Products that target different customers are less likely to be considered substitutes for one another and therefore are less likely to constitute a single market.  *See id.*  Each category of Alcon's lenses is used by a distinct set of customers.  (¶ 52.)  For example, Alcon's toric lenses are used by patients with astigmatism; its multifocal lenses are used by patients with presbyopia; and its spherical lenses are used by patients that lack either of those conditions but instead are either near- or farsighted.  (*Id.*)  Alcon lenses are also used by customers that potentially also could use lenses made by other manufacturers.  (*Id.*)  Most of the initial adopters of Alcon's Dailies Total1 lenses switched to Dailies Total1 from the lenses of other manufacturers.  (*Id.*)

*Distinct prices.* The distinct prices inquiry asks "whether a sizeable price disparity between different types of . . . sellers . . . persists over time for equivalent amounts of comparable goods and services." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (citation omitted). Alcon's lenses are sold at different price points. (¶ 53.) For example, in 2014, a 90-pack of its Dailies Total1 lenses sold for $119.95, whereas a 90-pack of its Focus Dailies lenses sold for $52.95. (*Id.*; Ex. A at 2.) On the flip side, many of the lenses excluded from Lens.com's proposed market are sold at price points similar to certain Alcon lenses. (*See* ¶¶ 54, 56.) For example, in 2014, 90-packs of CV's ProClear 1 Day lens and B+L's SofLens Daily Disposable lens sold for $64.95 and $44.95, respectively, in the same ballpark as Alcon's Focus Dailies lens. (Ex. A at 2, 6.) Thus, the prices of the lenses within and outside Lens.com's Alleged Alcon-only Market cut against it.

*Sensitivity to price changes.* Not all of Alcon's lenses are sensitive to the prices of other Alcon lenses. (¶ 55.) For example, the price of Alcon's Air Optix Color lenses is not sensitive to the price of Alcon's Dailies AquaComfort Plus Multifocal lenses, given the very different purpose of each lens. (*Id.*) Yet, Alcon's Dailies AquaComfort Plus Toric lenses are sensitive to the prices of CV's Fresh Day Toric lenses, B+L's SofLens Daily Disposable for Astigmatism lenses and JJVC's 1-Day Acuvue Moist for Astigmatism lenses. (¶ 56.) Lens.com's Alcon-only market disregards the price dynamics of Alcon's lenses and those of other manufacturers.

*Specialized vendors.* Finally, specialized vendors "may indicate unique product attributes, which refers again to the fact that products with distinct physical and

functional attributes tend to be priced differently." *Rothery*, 792 F.2d at 218 n.4. A product has specialized vendors when it has "avenues for distribution . . . which differ[] in both kind and degree". *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 970 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded*, 67 F.4th 946 (9th Cir. 2023). Alcon sells its lenses through many of the same distributors (and to the same ECPs and retailers) as other contact lens manufacturers. (¶ 57.) Like all of the *Brown Shoe* factors, this factor points away from an Alcon-only market.

### C. There Is No Evidence the Alleged Alcon-only Market Satisfies the Hypothetical Monopolist Test.

Some courts have defined the relevant product market based on the HMT. *See, e.g.*, *United States v. Engelhard Corp.*, 126 F.3d 1302, 1306 (11th Cir. 1997). The HMT asks whether a hypothetical monopolist of the alleged product market could profitably impose a "'small but significant and nontransitory' increase in price" ("SSNIP"). U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, HORIZONTAL MERGER GUIDELINES § 4.1.1 (2010). The HMT predicts whether substitutes to the product in question will constrain the price, making a SSNIP unprofitable for the alleged monopolist. *Id.* If so, those substitutes are added to the relevant product market and the test begins again. *Id.*

There is no evidence an Alcon-only market satisfies the HMT. Lens.com's expert, Mr. Klenk, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. O ¶¶ 97-104.) ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ The HMT does not support an Alcon-only market.

## IV.  LENS.COM CANNOT PROVE COGNIZABLE DAMAGES.

Lens.com contends it suffered damages based on Alcon's alleged direction to

ABB to cut off Lens.com's supply of Alcon lenses.  Specifically, Lens.com claims

(i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (ii) ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ and (iii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ (Ex. P at 4-5.)  The claimed damages are not actionable.

Lens.com must show damages caused by Alcon's allegedly unlawful UPP

conduct, not a general refusal to deal with Lens.com.  "A plaintiff's damages in a lost

profits antitrust case are simply the profits that a plaintiff would have made in a

competitive market absent the effects of the antitrust activity."  *Godix Equip. Export

Corp. v. Caterpillar, Inc.*, 948 F. Supp. 1570, 1582 (S.D. Fla. 1996) (citation omitted).

"An antitrust plaintiff is entitled to recover only for that portion of . . . [its losses]

caused by the defendants' unlawful conduct."  *Allegheny Pepsi-Cola Bottling Co. v. Mid-

Atlantic Coca-Cola Bottling Co., Inc.*, 690 F.2d 411, 415 (4th Cir. 1982).

Yet, Lens.com's damages calculation comprises allegedly lost sales of

(i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (ii) ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ and (iii) ▮▮▮▮▮▮▮▮

█████████████████████████████████████. Such damages could not possibly be the result of the alleged antitrust violation, Alcon's UPP. ████████████████████

████████████████████████████████████████ *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992) (affirming grant of summary judgment where plaintiff's damages model "failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were").

Not only is Lens.com's damages methodology thus legally flawed, but also, when it is adjusted ██████████████████████████████████████ ███████████████, Lens.com suffered no damages at all. As explained in Dr. Gilbert's expert report, if the model put forward by Lens.com's expert is modified to exclude (i) ████████████████████████████████, (ii) ██████████████████ and (iii) █████████████████████ ███████████████████████████████ (Ex. Q ¶ 271; Ex. X at 12.) Tellingly, Lens.com's expert did not bother to run his model without ████████ ████████████████. (*See* Ex. R at 233:1-234:9.) Nor did he take account of ███████████████████████, which Dr. Gilbert computed at no less than ████████. (Ex. Q ¶ 244; *see* Ex. Y ¶¶ 481-503.) Thus, Lens.com cannot establish damages as a matter of law.

## V.    LENS.COM CANNOT PROVE AN ACTIONABLE AGREEMENT.

Plaintiff's claims—each asserted under Section 1 of the Sherman Act—require proof of an agreement with another entity. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 (11th Cir. 1998) ("It is settled law that a threshold requirement of

every antitrust conspiracy claim . . . is an agreement to restrain trade." (quotations omitted)). "Section One [of the Sherman Act] applies only to agreements between two or more businesses; it does not cover unilateral conduct." *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071 (citing *Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986)). There is no evidence of such an agreement.

## A. There Is No Evidence of a Horizontal Agreement.

To make out its horizontal claims, Lens.com must show Alcon entered into a contract, combination or conspiracy with a competing manufacturer. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1262 (11th Cir. 2019); *Todorov*, 921 F.2d at 1455. Lens.com necessarily fails this step because its defined relevant market only includes Alcon lenses. By restricting the market to a single lens manufacturer—Alcon—Lens.com has foreclosed the possibility that Alcon combined or conspired with another manufacturer through a horizontal agreement within that market.

But even if Lens.com's horizontal claim did not fail under the weight of its own market definition, the claim fails because Alcon entered into its UPP independently. (¶ 20.) The decision was made at Alcon by Alcon representatives, without any input from any other contact lens manufacturer. (*Id.*) In fact, Alcon adopted its UPP to, among other things, better compete against other contact lens manufacturers. (¶ 22.) The policy was part of a strategy to beat the competition (*i.e.*, other contact lens manufacturers), not collaborate with them. (*Id.*) Alcon gained market share when Alcon alone had a UPP and lost that ground when other

manufacturers responded by adopting UPPs of their own.  (*Id.*)

**B.    There Is No Evidence of a Vertical Agreement.**

To make out its vertical conspiracy claims, Lens.com must show Alcon entered into a vertical agreement with a distributor from which Lens.com claims it could not acquire sufficient lenses.  *See, e.g., Colgate*, 250 U.S. at 307; *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254, 257 (3d Cir. 2010).

Just as there is no evidence Alcon adopted its UPP pursuant to an agreement with other contact lens manufacturers, there is no evidence of a vertical agreement between Alcon and any distributor to adopt, implement or enforce Alcon's UPP against Lens.com.  As stated, Alcon adopted its UPP independently, without any agreement with any other company.  (¶ 20.)  The only company Lens.com identifies as potentially having entered into an agreement with Alcon is ABB.  (*See* Ex. K ¶ 331.)  ████████████████████████████████████████████████████████████ ████████████████████████████████████████  (Ex. R at 306:18-310:14.)  Alcon not only decided to adopt its UPP without any agreement with ABB, but the companies entered into a distributor agreement making crystal clear that they had no agreement concerning Alcon's UPP.  (*See* Ex. C at 19; *see also* ¶ 21.)  The distributor agreement expressly states: "[N]o agreement is made between the parties" with respect to the UPP.  (Ex. C at 19; ¶ 21.)  Thus, Lens.com's claims fail for still another reason.

## **CONCLUSION**

Alcon respectfully requests that summary judgment be entered against

Lens.com and in favor of Alcon.

Respectfully submitted:  July 31, 2023

/s/  Brian G. Kelley
A. Graham Allen - Fla Bar No. 117110
James. M. Riley - Fla Bar No. 700411
Samuel J. Horovitz -Fla Bar No. 0059015
Brian G. Kelley - Fla Bar No. 0106430
ROGERS TOWERS, P.A.
1301 Riverplace Boulevard, Suite 1500
Jacksonville, FL 32207
Telephone: 904-398-3911
Facsimile: 904-396-0663
gallen@rtlaw.com
shorovitz@rtlaw.com

David R. Marriott
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: 212-474-1000
Facsimile: 212-474-3700
dmarriott@cravath.com

*Attorneys for Alcon Vision, LLC*